Eric J. Olson (SBN 37630)
EJOlsonLaw
301 East Colorado Boulevard, Suite 520
Pasadena, California 91101
T: (818) 245-2246
C: (626) 224-5619
E: Eric@EJOlsonLaw.com

Attorney for Debtor and Defendant
Leslie Klein

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No.: 2:23-bk-10990-SK |
| LESLIE KLEIN, | Chapter 11 |
| Debtor. | Adv. No.: 2:23-ap-01169-SK |
| | |
| DAVID BERGER, | **MOTION FOR RELIEF FROM JUDGMENT INCLUDING RECONSIDERATION (FRBP 9024) AND/OR NEW TRIAL (FRBP 9023) RELATIVE TO AMENDED JUDGMENT FOR NONDISCHARGEABILITY OF DEBT PURSUANT TO 11 USC § 523(A)(2)(A), 11 USC § 523(A)(4), & 11 USC § 523(A)(6) IN THE AMOUNT OF $7,401,369.86 (DOC 66); POINTS AND AUTHORITIES; DECLARATION AND EXHIBITS** |
| Plaintiff, | |
| v. | |
| LESLIE KLEIN, | |
| Defendant. | |
| | Date:      April 10, 2024 |
| | Time:      9:00 AM |
| | Courtroom: 1575 |
| | Place:     255 E. Temple St. |
| |            Los Angeles, CA 90012 |

# TABLE OF CONTENTS

MOTION ............................................................................. -1-

POINTS AND AUTHORITIES ................................................. -4-

    FACTS ......................................................................... -4-

    ARGUMENT ...................................................................-6-

The Court should have permitted the substitution of Mr. Olson and the presentation to the Court

of the Safety Vision, LLC v. Enter. Funding Corp., and should have considered the Declaration as

timely filed. ...........................................................................................-6-

The Rule exemplified by Safety Vision, of "opening a default" is well established and recognized

in Federal Courts. ...................................................................................-7-

Even if all requirements for opening default are not met, the Defendant should be given

opportunity to move to set aside default. ..................................................-13-

Even if a default exists, there is no ground for entry of default judgment. ...........................-13-

    CONCLUSION ...............................................................-14-

DECLARATION OF ERIC J. OLSON ........................................-15-

# TABLE OF AUTHORITIES

## CASES

*Safety Vision, LLC v. Enter. Funding Company 2022 U.S. Dist. LEXIS 240385*……….……..… -1, 6, 7, 8-

*Eitel v. McCool 782 F.2d 1470 (9th Cir. 1986)* ……………………………………..….……. -2, 13-

*Schneider v. Bank of Am. N.A. 2015 U.S. Dist. LEXIS 24294* …………………………..……….. -9, 12-

*Mkay, Inc. v. City of Huntington Park 2017 U.S. Dist. LEXIS 225830* ………………………… -10, 13-

*River Wuhai, LLC v. E.O.A. Mgmt. Grp., LLC 2023 U.S. Dist. LEXIS 74935* ……………….… -12, 13-

## STATUTES AND RULES

FRBP 9024 …………………………………………………………………………………….. -1-

FRBP 9023 …………………………………………………………………………………….… -1-

LBR 9013(c)(2) …………………………………………………………………………….. -2, 5, 7, 16-

28 USC §1654 ……………………………………………………………………….……. -6-

1

## **EXHIBITS**

Exhibit I A ...................................... Plaintiff Mermelstein's Complaint for Nondischargeability of Debt

Exhibit I B ...................................... Plaintiff Berger's Complaint for Nondischargeability of Debt

Exhibit II A ...................................... Plaintiff Mermelstein's Motion for Default Judgment on Amended
Claims

Exhibit II B ...................................... Plaintiff Berger's Motion for Default Judgment on Amended
Claims

Exhibit III A ...................................... Defendant Klein's Answer to Plaintiff Mermelstein's Complaint to
Deny Discharge of Debt and Denial of Discharge

Exhibit III B ...................................... Defendant Klein's Answer to Plaintiff Berger's Complaint to Deny
Discharge of Debt and Denial of Discharge

Exhibit IV A ...................................... Defendant Klein's Declaration of Eric J. Olson in Response to
Plaintiff Mermelstein's Motion for Default

Exhibit IV B ...................................... Defendant Klein's Declaration of Eric J. Olson in Response to
Plaintiff Berger's Motion for Default

Exhibit V A ...................................... Plaintiff Mermelstein's Reply to Declaration of Eric J. Olson in
Response to Motion for Default

Exhibit V B ...................................... Plaintiff Berger's Reply to Declaration of Eric J. Olson in
Response to Motion for Default

## **MOTION**

Debtor and Defendant Leslie Klein seeks in this motion Relief from

Judgment including Reconsideration (FRBP 9024) and/or New Trial

(FRBP 9023) relative to Judgment for Nondischargeability of Debt

Pursuant to 11 USC § 523(A)(2)(A), 11 USC § 523(A)(4), & 11 USC

§523(A)(6) in the Amount of $7,401,369.86 (Doc 66) on the following

bases:

1. The Court should have permitted Defendant Klein in pro se to have

    substituted in Attorney Olson as his attorney for the hearings

    February 14, 2024.

2. The Court should have permitted either or both Defendant Klein or

    Attorney Olson to present to the Court or otherwise identify to the

    Court the case of *Safety Visions, LLC v. Enter. Funding Company*

    *2022 U.S. Dist. LEXIS 240538* in support of their contention that the

    actions of Plaintiff by filing amended claim(s) and moving for default

    judgments based thereon had opened the default whereupon

    Defendant Klein filed Answers which, by definition, meant there was

    no default upon which to base a Default Judgment.

3. Insofar as the Declaration of Eric J. Olson was contended to be and may have been deemed by the Court to be late, there was no notice pursuant to LBR 9013(c)(2) of the 14-day requirement.

4. The Answers (filed amply more than 14 days before the February 14, 2024, hearing) which called out that defaults had been opened by the filing by Plaintiffs of amended claims and moving for judgment based thereon went unchallenged by Plaintiffs or even inquired about by the Plaintiffs.

5. Plaintiffs by their own conduct filing of amended claims and moving for default judgment based thereon caused any default to be opened (so there was no need to be set aside by motion) and the Answers on file precluded any default on which to base a default judgment.

6. No default judgment should be entered (whether or not there were deemed to be a default) under the tests of the 9th Circuit case of *Eitel v. McCool*, including because of the substantial amounts involved (which implicate the other creditors and the estate as well as the Debtor), the strong policy that cases be determined on the merits, and that Plaintiffs cannot be said to be prejudiced in that

they face only the burden that any Plaintiff would have in filing a complaint.

7. The fact of Plaintiffs' actions opening the defaults should be dispositive to eliminate any default, but if for any reason there were deemed to be a default, that Defendant be given a reasonable time to file a motion to set aside such default.

8. This motion is timely as within 14 days of the relevant judgment.

The Motion will be presented on this Motion and the moving papers presented herewith, the transcript of the hearings on February 14, 2024 (not yet received by Defendant, the files, and records of the Court, and such other and further matters as may be presented at the hearing.

Dated: March 1, 2024

Eric J. Olson
Attorney for Defendant
Leslie Klein

## POINTS AND AUTHORITIES

## FACTS

Plaintiffs Mermelstein filed a Complaint for Nondischargeability of Debt Pursuant to 11 USC §523(a)(2)(A), 11 USC §523(a)(4), & 11 USC §523(a)(6); & for Denial of Discharge Pursuant to 11 USC §727(a)(2)(A); 11 USC §727(a)(2)(B); 11 USC §727(a)(3); 11 USC §727(a)(4); 11 USC §727(a)(5) seeking damages of **$13,480,949** on May 12, 2023 (**See Exhibit I A**). Plaintiff Berger filed a Complaint for Nondischargeability of Debt Pursuant to 11 USC §523(a)(2)(A), 11 USC §523(a)(4), & 11 USC §523(a)(6); & for Denial of Discharge Pursuant to 11 USC §727(a)(2)(A); 11 USC §727(a)(2)(B); 11 USC §727(a)(3); 11 USC §727(a)(4); 11 USC §727(a)(5) seeking damages of **$7,143,835.62** on June 9, 2023 (**See Exhibit I B**).

Default thereon was entered on November 28, 2023 in both cases.

Plaintiff Berger filed an amended claim on December 19, 2023 in the amount of **$12,511,547.00** and on December 19, 2023 filed a motion for Default Judgment (**See Exhibit II B**). Defendant Klein filed an Answer to Complaint to Deny Discharge of Debt and Denial of Discharge on January 2, 2024 which stated in part, "*Plaintiff caused a request for entry default to be filed November 28, 2023 and Default was entered thereon*

*November 29, 2023. Plaintiff filed Proof of Claim dated December 19, 2023 thereby opening the default*". (**See Exhibit III B**)

Plaintiffs Mermelstein filed 7 amended claims on January 10, 2024, totaling in the amount of **$21,737,740.70** and on January 10, 2024 filed a motion for Default Judgment (**See Exhibit II A**). Defendant Klein filed an Answer to Complaint to Deny Discharge of Debt and Denial of Discharge on January 12, 2024 which stated in part, "*Plaintiff caused a request for entry default to be filed November 28, 2023 and Default was entered thereon November 28, 2023. Plaintiff filed 6 [sic] amended Proof of Claim dated January 10, 2024 thereby opening default*". (**See Exhibit III A**)

Defendant Klein filed in each case a Declaration of Eric J. Olson in Response to Plaintiff's Motion for Default on February 5, 2024 (**See Exhibit IV A and Exhibit IV B**) To the best of Defendant's knowledge and belief he did not receive a 14 day notice pursuant to LBR 9013(c)(2) and no such notice appears on the docket.

Late in the day before the hearing, on February 13, 2024, the Court ordered the personal appearance of Defendant Leslie Klein and Eric Olson. They both appeared at the hearing February 14, 2024.

At the outset of the hearing on February 14, 2024, Mr. Olson and Defendant Klein stated to the Court that they desired that Mr. Klein, who

had been appearing in pro se substitute Mr. Olson as his attorney of

record for the purposes of the arguments. They stated that one of the

purposes of the substitution was that Mr. Olson would present to the

Court a copy of an opinion in the case supporting the proposition that the

filing of an amended pleading "opened" any default thus permitting the

Defendant an opportunity to file an answer which he did. The Court

denied permission to make such a substitution or for him or Defendant

Klein to present a copy of the case or otherwise identify it for the record

and Defendant is informed and believes that it was not considered in

awarding Plaintiff's judgment.

## ARGUMENT

### The Court should have permitted the substitution of Mr. Olson and the presentation to the Court of the Safety Vision, LLC v. Enter. Funding Corp., and should have considered the Declaration as timely filed.

Defendant should have been permitted to substitute Mr. Olson, a

member of the Bar of this Court, and previous attorney of record, to

appear on his behalf at the hearing. A party is permitted to appear in pro

se or by counsel as provided in 28 USC §1654. *Appearance personally or

by counsel in all courts of the United States the parties may plead and*

*conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein.* No cause was given for not permitting Mr. Olson to substitute in. A formal substitution is being submitted herewith.

This was not a harmless error because Mr. Olson was proposing to give the Court a copy of the case of *Safety Vision, LLC v. Enter. Funding Corp. 2022 U.S. Dist. LEXIS 240385*, supporting the point referred to both in the Answers and his declaration filed February 5, 2024, that the default had been opened. He further offered it to Mr. Klein in pro se but the Court did not allow Mr. Klein to present it.

Insofar as Plaintiffs did not serve a notice pursuant to LBR 9013(c)(2) giving 14 days' notice and the Court acted on the contention of lateness the matter should be reconsidered on the assumption that declaration is timely, the Court should consider Defendant's contention, and should set aside the Judgment.

**The Rule exemplified by Safety Vision, of "opening a default" is well established and recognized in Federal Courts.**

The case that Messrs. Olson and Klein sought to give to the Court at the hearing, but the Court declined, is *Safety Vision, LLC v. Enter. Funding Corp. 2022 U.S. Dist. LEXIS 240385*, Lexis states with respect to

such case, "*In federal practice, when a default has been entered and the plaintiff amends the complaint, the amendment can open the default if it involves a matter of substance rather than a matter of form. For instance, adding an additional cause of action or an additional defendant is considered a matter of substance. In such cases, the default entered against the defendant must be re-opened and the newly added defendant must be given an opportunity to respond Safety Vision, LLC v. Enter. Funding Corp., 2022 U.S. Dist. LEXIS 240385. However, if the plaintiff is not prejudiced by the defendant's failure to timely respond, the drastic sanction of default judgment may not be warranted. Furthermore, a plaintiff is not entitled to a default judgment for the defendant's failure to file a timely answer to the plaintiff's second amended complaint, where the complaint re-alleges all claims of the first amended complaint and adds claims under federal statute and common law as alternative grounds for relief USCS Fed Rules Civ Proc R 55, Default; Default Judgment. Therefore, whether an amended complaint opens the default depends on the nature of the amendment and the specific circumstances of the case Safety Vision, LLC v. Enter. Funding Corp., 2022 U.S. Dist. LEXIS 240385, USCS Fed Rules Civ Proc R 55, Default; Default Judgment.*"

**MOTION FOR RELIEF FROM JUDGMENT**

Safety Vision is not just a "one off" case or the subject of an arcane point.

Among California Federal cases to which the rule is applied are: *Schneider v. Bank of Am. N.A. 2015 U.S. Dist. LEXIS 24294* which states *"However, it was explained to plaintiff that by adding new claims and new allegations against Home Retention Group to the second amended complaint, that party's default is opened and the plaintiff was required to serve that defendant with a copy of the second amended complaint. See The Rutter Group, Cal. Prac. Guide Fed. Civ. Pro. Before Trial, § 8:1437 ("An amended complaint need not be served on defendants whose default has been entered for failure to respond to the original complaint . . . unless the amendment asserts new or additional claims for relief against those defendants. . . . If new or additional claims for relief are sought against the party in default, the amendment 'opens' the default and new service is required under Rule 4." (emphasis added) (citing Fed. R. Civ. P. 5(a)(2); Blair v. City of Worcester, 522 F.3d 105, 109 (1st Cir. 2008); D'Angelo v. Potter, 221 F.R.D. 289, 293 (D. Mass. 2004)). …The proof of service filed with plaintiff's second amended complaint indicates that Home Retention Group was not served a copy of the second amended complaint. ECF No. 91 at 48-49."*

1
2
3      *MKay, Inc. v. City of Huntington Park* 2017 U.S. Dist. LEXIS 225830

which states: "*While the Federal Rules of Civil Procedure do not*
4
*specifically address the effect of amending a pleading on an entry of*
5
6      *default, Rule 5 provides that "[n]o service is required on a party who is in*
7      *default for failing to appear. But a pleading that asserts a new claim for*
8      *relief against such a party must be served on that party under Rule 4."*
9
10     *Fed. R. Civ. P. 5(a)(2). This Rule "ensures that a party, having been*
11     *served, is able to make an informed decision not to answer a complaint*
12     *without fearing additional exposure to liability for claims raised only in*
13
14     *subsequent complaints that are never served." ...*
15     "*As an initial matter, neither the Federal Rules nor the cases cited by*
16
17     *Plaintiffs or Defendants directly address the effect of an amended*
18     *pleading on an entry of default. JBR, Inc. v. Café Don Paco, Inc., cited by*
19
20     *Plaintiffs, discusses only whether service on a defendant in default is*
21     *required when new factual allegations, but not new claims, are added to*
22     *an amended complaint. No. 12-cv-02377-JD, 2014 U.S. Dist. LEXIS*
23
24     *142850, 2014 WL 5034292, at *1 (N.D. Cal. 2014). Ferdik, cited by*
25     *Defendants, rejects the notion that an earlier complaint can be used to fill*
26     *in the names of defendants omitted in a later amended complaint. 963*
27
28

**MOTION FOR RELIEF FROM JUDGMENT**

*F.2d at 1262. This decision was based on "the well-established doctrine that an amended pleading supersedes the original pleading." Id.*

*"Federal Bankruptcy Courts, for example, have held that "[a]n amendment of a complaint after a default has been taken which introduces a new cause of action or goes to the substance of the pleading operates to open the default." In re Johnson, 24 B.R. 751, 754 (Bankr. N.D. Ill. 1982). California courts have also held that "[w]here, after the default of a defendant has been entered, a complaint is amended in a matter of substance as distinguished from a matter of form, the amendment opens the default, and unless the amended pleading is first served on the defaulting defendant, no judgment can properly be entered on the default." Ostling v. Loring, 27 Cal. App. 4th 1731, 1736, 33 Cal. Rptr. 2d 391 (3d Dist. 1994); see also Beeman v. Burling, 216 Cal. App. 3d 1586, 1594-95, 265 Cal. Rptr. 719 (1st Dist. 1990)." ...*

*"For the foregoing reasons, the Court DENIES Defendants MJIC, Inc., C4Eversystems, Inc., Goodness 4 Life, Inc., Robert Hodge, Natural Compassionate Center, Vibha C. Patel, Michael A. Schenone, and United Health & Care Center's Special Motion to Strike Under California Code of Civil Procedure § 425.16. Defendants MJIC, Inc., C4Eversystems, Inc., Goodness 4 Life, Inc., Robert Hodge, Natural Compassionate Center,*

*Vibha C. Patel, Michael A. Schenone, and United Health & Care Center*

*are ORDERED to file within ten (10) days of the issuance of this Order:*

*(1) a motion to set aside entry of default pursuant to Fed. R. Civ. P. 55(a);*

*and (2) a request for leave to file Defendants' Special Motion to Strike*

*Under California Code of Civil Procedure § 425.16."*

 *River Wuhai, LLC v. E.O.A. Mgmt. Grp., LLC 2023 U.S. Dist. LEXIS*

*74935* which states: "*Before seeking default judgment, a plaintiff must first*

*seek entry of default from the clerk of court. Fed. R. Civ. P. 55(b)(2).*

*Once default is entered, "[i]f new or additional claims for relief are sought*

*against the party in default, the amendment 'opens' the default and new*

*service is required under Rule 4." Schneider v. Bank of Am., 2015 U.S.*

*Dist. LEXIS 24294, 2015 WL 13651208, at *2 (E.D. Cal. Feb. 26, 2015);*

*see also Mackey v. Wash. Mut. Bank F.A., 2019 U.S. Dist. LEXIS*

*241020, 2019 WL 13038586 (C.D. Cal. Mar. 26, 2019) ("Further, because*

*the amendment adds a new claim for violation of RESPA and Regulation*

*Z against Defendant JP Morgan, JP Morgan's default on the previous*

*complaint no longer has any effect")."*

 While Plaintiffs did not literally amend their complaints, they sought

to achieve the same result (avoiding the need to seek leave to amend) by,

after the clerk entered defaults to the original complaints, Plaintiffs then

filed amended claims and sought default judgments based on the original

complaints plus substantial amounts so that in the case of the Plaintiffs

Mermelstein with a complaint seeking **$13,480,949** moved for a default

judgment based on 7 amended claims of **$21,737,740.70** (See Motion

Doc 46 pages 26 and 36) Plaintiff Berger with a complaint seeking

**$7,143,835.62** moved for a default judgment based on amended claims of

**$12,511,547**.

## Even if all requirements for opening default are not met, the Defendant should be given opportunity to move to set aside default.

In the MKay and River Wuhai cases, supra, where the Court that the

defendant had not literally met all requirements, it gave defendant an

opportunity to file a further motion to set aside default.

## Even if a default exists, there is no ground for entry of default judgment.

The leading case in the Ninth Circuit on entry of a default judgment

is *Eitel v. McCool 782 F.2d 1470 (9th Cir. 1986)*. Among the criteria cited in

the Court are the sum of money at stake and the strong policy underlying

the Federal Rules of Civil Procedure favoring decisions on the merits and

prejudice to the Plaintiff. *Eitel v. McCool 782 F.2d @1471-1472*. In this case,

not only were the amounts in the original complaints substantial, but by

filing amended claims, Plaintiff sought to increase the amounts sought in their motions for default judgments by some $13,000,000. These would be substantial amounts under any circumstances but in Bankruptcy proceedings, they impact not only the Defendant but also the other creditors involved in the proceeding whose claims would be materially impacted by a default judgment in the favor of other creditors in such amounts. A party bringing a complaint accepts as part of their burden that they will have to bear the burden of proving up their claims and it is not "prejudice" if Plaintiff does not enjoy the windfall of an early judgment which it does not need to bear the burden of trial. *(See United States v. Signed Personal Check 615 F.3d 1085, 1094-1095 (9th Cir. 2010)*

## **CONCLUSION**

For the reasons set forth, the Judgment should be vacated and the motion for default judgment denied, the default be determined to have been opened and hence of no effect, and the Answer of Defendant to be in effect.

Dated: March 1, 2024

Eric J. Olson
Attorney for Defendant
Leslie Klein

- 14 -
MOTION FOR RELIEF FROM JUDGMENT

## <u>DECLARATION OF ERIC J. OLSON</u>

Eric J. Olson states:

1. I am the attorney for Defendant Klein in the matters set forth herein. All matters are of my own firsthand knowledge unless otherwise stated and I am competent to testify thereto.

2. Plaintiffs Mermelstein filed a Complaint for Nondischargeability of Debt Pursuant to 11 USC §523(a)(2)(A), 11 USC §523(a)(4), & 11 USC §523(a)(6); & for Denial of Discharge Pursuant to 11 USC §727(a)(2)(A); 11 USC §727(a)(2)(B); 11 USC §727(a)(3); 11 USC §727(a)(4); 11 USC §727(a)(5) seeking damages of $13,480,949 on May 12, 2023 (**See Exhibit I A**). Plaintiff Berger filed a Complaint for Nondischargeability of Debt Pursuant to 11 USC §523(a)(2)(A), 11 USC §523(a)(4), & 11 USC §523(a)(6); & for Denial of Discharge Pursuant to 11 USC §727(a)(2)(A); 11 USC §727(a)(2)(B); 11 USC §727(a)(3); 11 USC §727(a)(4); 11 USC §727(a)(5) seeking damages of $7,143,835.62 on June 9, 2023 (**See Exhibit I B**).

3. Default on such complaints was entered on November 28, 2023 in both cases.

4. Plaintiff Berger filed an amended claim on December 19, 2023 in the amount of $12,511,547.00 and on December 19, 2023 filed a motion

for Default Judgment (**See Exhibit II B**). Defendant Klein filed an Answer to Complaint to Deny Discharge of Debt and Denial of Discharge on January 2, 2024 which stated in part, "Plaintiff caused a request for entry default to be filed November 28, 2023 and Default was entered thereon November 29, 2023. Plaintiff filed Proof of Claim dated December 19, 2023 thereby opening the default". (**See Exhibit III B**)

5. Plaintiffs Mermelstein filed 7 amended claims on January 10, 2024, totaling in the amount of $21,737,740.70 and on January 10, 2024 filed a motion for Default Judgment (**See Exhibit II A**). Defendant Klein filed an Answer to Complaint to Deny Discharge of Debt and Denial of Discharge on January 12, 2024 which stated in part, "Plaintiff caused a request for entry default to be filed November 28, 2023 and Default was entered thereon November 28, 2023. Plaintiff filed 6 [sic] amended Proof of Claim dated January 10, 2024 thereby opening default". (**See Exhibit III A**)

6. Defendant Klein filed in each case a Declaration of Eric J. Olson in Response to Plaintiff's Motion for Default on February 5, 2024 (**See Exhibit IV A and Exhibit IV B**).  To the best of my knowledge and belief Mr. Klein did not receive a 14 day notice pursuant to LBR

9013(c)(2), I have never seen any such notices and no such notice appears on the docket.

7. Plaintiffs filed in their cases Replies to the Declarations of Eric J Olson. (**See Exhibit V A and Exhibit V B**)

8. Late in the day before the hearing, on February 13, 2024, the Court ordered the personal appearance of Defendant Leslie Klein and me. We both appeared personally at the hearing February 14, 2024.

9. At the outset of the hearing on February 14, 2024, I and Defendant Klein stated to the Court that they desired that Mr. Klein, who had been appearing in pro se substitute me as his attorney of record for the purposes of the arguments. We stated that one of the purposes of the substitution was that I would present to the Court a copy of an opinion in the case supporting the proposition that the filing of an amended claims and motion for default judgment thereon "opened" any default thus permitting the Defendant an opportunity to file an answer which he did. The Court denied permission to make such a substitution or for me or Defendant Klein to present a copy of the case or otherwise identify it for the record and I informed and believes that it was not considered in awarding Plaintiff's judgment.

10.     The point that Plaintiffs' actions in filing amended claims and

seeking default judgment thereon "opens the default" is dispositive

and moots any questions of needing to show cause to set aside the

default.  However, if deemed necessary, I believe that I could make

such showing including confusion engendered by the fact that the

original response date was a Saturday, the circumstances set forth in

my Declaration, and the failure of Plaintiffs to give 14-day notices as

required by the LBRs.

I declare under penalty of perjury under the laws of the United States that

the foregoing is true and correct and executed March 1, 2024 at Pasadena,

California.


Dated: March 1, 2024

Eric J. Olson

# EXHIBIT I A

1  Baruch C. Cohen, Esq. (SBN 159455)
   LAW OFFICE OF BARUCH C. COHEN
2      A Professional Law Corporation
   4929 Wilshire Boulevard, Suite 940
3  Los Angeles, California 90010
   Tel: (323) 937-4501   Fax: (888) 316-6107
4  email: baruchcohen@baruchcohenesq.com

5  *Attorney For Plaintiffs Robert & Esther Mermelstein*

6              UNITED STATES BANKRUPTCY COURT
                CENTRAL DISTRICT OF CALIFORNIA
7                 LOS ANGELES ANA DIVISION

8

9  In re                              Case No. 2:23-bk-10990-SK

10 LESLIE KLEIN,                       Hon. Sandra Klein

11     Debtor and Debtor in Possession,  Chapter 11

12  ─────────────────────────────

13 ROBERT & ESTHER MERMELSTEIN,        **COMPLAINT FOR
                                       NONDISCHARGEABILITY**
14          Plaintiffs                 **OF DEBT PURSUANT TO 11 USC §
                                       523(a)(2)(A), 11 USC § 523(a)(4), & 11**
15 vs.                                 **USC § 523(a)(6); & FOR DENIAL OF
                                       DISCHARGE PURSUANT TO 11 USC**
16 LESLIE KLEIN                        **§ 727(a)(2)(A); 11 USC § 727(a)(2)(B);
                                       11 USC § 727(a)(3); 11 USC § 727(a)(4);**
17          Defendant                  **11 USC § 727(a)(5)**

18

19
       **TO THE HONORABLE SANDRA R. KLEIN, UNITED STATES BANKRUPTCY**
20
   **JUDGE, THE DEBTOR AND HIS COUNSEL, AND ALL OTHER INTERESTED**
21
   **PARTIES**:
22
       Plaintiffs-Creditors, Robert & Esther Mermelstein ("Plaintiffs"), complain for
23
   nondischargeability of debt & for denial of discharge against Defendant-Debtor, Leslie Klein
24
   ("Defendant"), and alleges respectfully as follows:
25
                      **CORE/NON-CORE DESIGNATION**
26
   1.   In accordance with Local Bankruptcy Rule 7008-1, Plaintiffs allege that this adversary
27
        proceeding constitutes a core proceeding under 28 USC § 157(b)(2). Plaintiffs
28
        acknowledge that the Court has the power to enter final orders and judgments in this

matter. Plaintiffs also consent to the Court's entry of final orders and judgments in this matter under FRBP Rule 7008..

### JURISDICTION, VENUE & STANDING

2. This adversary proceeding arises under *In re Klein*, 2:23-bk-10990-SK, a Chapter 11 case commenced in the United States Bankruptcy Court for the Central District of California ("Bankruptcy Case"). The Court has jurisdiction under 11 USC §§ 523 and 727, and 28 USC §§ 157 and 1334.

3. The venue is proper in this Court pursuant to 28 USC § 1409.

4. Plaintiffs have standing to bring this action because Plaintiffs are creditors in the Bankruptcy Case under 11 USC § 101(10).

### PARTIES

5. The following is a description of the relevant parties involved in the facts forming the basis of this Complaint.

6. Plaintiffs are individuals, senior citizens residing in Brooklyn, NY.

7. Defendant is an individual, whose principal residence is in Los Angeles County, California and who regularly conducted business from Los Angeles County, California. Defendant was a certified public accountant, formerly licensed by the State of California, and a former, and an attorney licensed by the State of California.[1] Defendant is the debtor in the above-captioned Chapter 11 bankruptcy case.

///

---

[1] On September 10, 1992, the Supreme Court of the State of California, in State Bar Court Case No. 86-O-14258, ordered that Defendant be suspended from the practice of law for 18 months and further ordered that he take and pass the California Professional Responsibility Examination ("CPRE"). Defendant failed the November 1993 and January 1994 CPREs. In Case No. 86-O-14258, Defendant admitted to intentional misrepresentations. On August 3, 1995, the Supreme Court of the State of California, in State Bar Court Case No. 92-O-11716 (consolidated with Case Nos. 93-O-11825, 94-O-13951, 94-O12055, and 94-O15901) ordered that Defendant be suspended from the practice of law for one year. In Case No. 92-O-11716, as consolidated, Defendant admitted to willful violations of Rules of Professional Conduct concerning client trust accounts and conflicts of interest.

-2-

## GENERAL ALLEGATIONS

8. The following general allegations form the background for the Plaintiffs' claims for relief against Defendant.

9. Plaintiffs are family relatives of Defendant, are Orthodox Jews, and are the settlors and beneficiaries of the Mermelstein Charitable Remainder Unitrust Dated July 27, 2009, (the " Mermelstein Trust").

10. Defendant, on behalf of The Klein Charitable Remainder Unitrust dated 2-20-1996 (the "Klein Trust") solicited Plaintiffs to invest in at least seven (7) life insurance policies: (1) Garza; (2) Times Square; (3) Ganz; (4) Spitzer; (5) Kohn; (6) Friedman; & (7) Zimmerman.

## GARZA

11. On 8-3-2009, Defendant on behalf of The Klein Charitable Remainder Unitrust dated 2-20-1996 (the "Klein Trust") entered into a Memorandum of Agreement for Joint Venture (the "Garza Memo"). The purpose of the Garza Memo, was to purchase a $1,000,000.00 life insurance Policy ("Garza Policy"); American General on the life of Emanuel Garza ("Garza"). In furtherance of the Garza Memo, Plaintiffs paid Klein $100,000.00 towards the purchase of the Garza Policy. Defendant instructed Plaintiffs to make said payments to Defendant's IOLTA - Attorney Client Trust Account. Per the Garza Memo, Defendant promised to pay the Mermelstein Trust $500,000.00 ($400,000.00 plus return of premiums paid; plus $100,000.00).

12. On 4-30-2021, Defendant executed a First Amendment to the Memorandum of Agreement for Joint Venture (Garza), changing the recipient of the $500,000.00 from the Mermelstein Trust to Robert & Esther Mermelstein.

13. Plaintiffs are informed and believe that Defendant sold 50% to the Garza Policy, to the Longevity Fund of NY and partially to the Longevity Fund of Michigan without their consent.

14. Plaintiffs are informed and believe that Garza apparently died in 2018, and on or about 7-

-3-

2-2018, Defendant collected the Garza Proceeds, on the Garza Policy. Defendant concealed this information from Plaintiffs, misappropriated & kept the Garza Proceeds for himself, and failed to pay Plaintiffs the $500,00.00 per the Garza Memo.

## TIMES SQUARE

15. On 7-16-2012, Defendant issued Plaintiffs a Non-Recourse Promissory Note, in the amount of $333,333.00, due and payable by 7-16-2013, by Defendant on behalf of the Times Square Media Inc., containing a "*Heter Iska*" document (an approved way of restructuring a loan or debt so that it becomes an investment instead of a loan, per *Halacha* - Jewish law).

16. Plaintiffs are informed and believe that Defendant had no intention of paying the Times Square Non-Recourse Promissory Note, as Plaintiffs made no payments whatseoever.

## GANZ

17. On 8-3-2009, Defendant on behalf of The Klein Charitable Remainder Unitrust dated 2-20-1996 (the "Klein Trust") entered into a Memorandum of Agreement for Joint Venture with plaintiffs (the "Ganz Memo"). The purpose of the Ganz Memo, was to purchase a $1,000,000.00 life insurance Policy ("Ganz Policy"); American General on the life of Emanuel Ganz ("Ganz"). In furtherance of the Ganz Memo, Plaintiffs paid Klein $100,000.00 towards the purchase of the Ganz Policy. Defendant instructed Plaintiffs to make said payments to Defendant's IOLTA - Attorney Client Trust Account. Per the Ganz Memo, Defendant promised to pay the Mermelstein Trust $500,000.00 ($400,000.00 plus return of premiums paid; plus $100,000.00).

18. On 4-30-2021, Defendant executed a First Amendment to the Memorandum of Agreement for Joint Venture (Ganz), changing the recipient of the $500,000.00 from the Mermelstein Trust to Robert & Esther Mermelstein.

19. Plaintiffs are informed and believe that Defendant apparently sold 50% to the Ganz Policy, to the Longevity Fund of NY and partially to the Longevity Fund of Michigan, without Plaintiff's consent.

-4-

20. Plaintiffs are informed and believe that Ganz apparently died in 2018, and on or about 7-2-2018, Defendant collected the Ganz Proceeds, on the Ganz Policy. Defendant concealed this information from Plaintiffs, misappropriated & kept the Ganz Proceeds for himself, and failed to pay Plaintiffs the $500,00.00 per the Ganz Memo.

**SPITZER**

21. On 8-3-2009, Defendant on behalf of The Klein Charitable Remainder Unitrust dated 2-20-1996 (the "Klein Trust") entered into a Memorandum of Agreement for Joint Venture with Plaintiffs (the "Spitzer Memo"). The purpose of the Spitzer Memo, was to make premium payments of a $5,000,000.00 life insurance Policy Number: US 0023546L ("Spitzer Policy"); American General on the life of Malvine Spitzer ("Spitzer"). In furtherance of the Spitzer Memo, Plaintiffs paid Defendant $250,000.00 towards the purchase of the Spitzer Policy. Defendant instructed Plaintiffs to make said payments to Defendant's IOLTA - Attorney Client Trust Account. Per the Spitzer Memo, Defendant promised to pay the Mermelstein Trust $2,250,000.00 ($2,000,000 plus $250,000 and all premiums paid of the proceeds).

22. On 4-30-2021, Defendant executed a First Amendment to the Memorandum of Agreement for Joint Venture (Spitzer), changing the recipient of the $2,250,000.00 from the Mermelstein Trust to Robert & Esther Mermelstein.

23. Plaintiffs are informed and believe that Defendant apparently sold portions of the Spitzer Policy, without their consent - but Plaintiffs do not know to whom. Defendant concealed this information from Plaintiffs.

**KOHN**

24. On 3-10-2010, Defendant on behalf of The Klein Charitable Remainder Unitrust dated 2-20-1996 (the "Klein Trust") entered into a Memorandum of Agreement for Joint Venture with Plaintiffs (the "Kohn Memo"). The purpose of the Kohn Memo, was to make premium payments of a $3,000,000.00 life insurance Policy ("Kohn Policy"); American General on the life of Eugene Kohn ("Kohn"). In furtherance of the Kohn

Memo, Plaintiffs paid Defendant $200,000.00 towards the purchase of the Kohn Policy. Defendant instructed Plaintiffs to make said payments to Defendant's IOLTA - Attorney Client Trust Account. Per the Kohn Memo, Defendant promised to pay the Mermelstein Trust $1,200,000.00 ($200,000 and $1,000,000 and all premiums paid of the proceeds).

25.  On 4-30-2021, Klein executed a First Amendment to the Memorandum of Agreement for Joint Venture (Kohn), changing the recipient of the $1,200,000.00 from the Mermelstein Trust to Robert & Esther Mermelstein.

26.  Plaintiffs are informed and believe that Defendant paid premiums of the Kohn Policy up to 2011. Thereafter, Defendant apparently sold portions or the entirety of the Kohn Policy - without Plaintiffs' consent - to Life Capital Group, LLC ("LCG"), where Shlomo Yehuda Rechnitz ("Rechnitz") was to resume paying the Kohn Policy premiums from 2011 onwards. Defendant concealed this information from Plaintiffs.

27.  According to information recently received by Plaintiffs an unsigned Amended and Restated Limited Liability Company Agreement of Life Capital Group, LLC, Defendant and Rechnitz agreed that upon the death of Kohn, Defendant and Rechnitz would be reimbursed the premiums that they paid, plus interest on the premiums. Thereafter, Defendant and Rechnitz would split the profits 50/50 of the Kohn Policy, and that Plaintiffs would receive their $1,200,000.00.

**FRIEDMAN**

28.  On 3-1-2010, Defendant on behalf of The Klein Charitable Remainder Unitrust dated 2-20-1996 (the "Klein Trust") entered into a Memorandum of Agreement for Joint Venture with Plaintiffs (the "Friedman Memo"). The purpose of the Friedman Memo, was to purchase a $1,500,000.00 life insurance Policy ("Friedman Policy"); American General on the life of Goldie Friedman ("Friedman"). In furtherance of the Friedman Memo, Plaintiffs paid Klein $250,000.00 towards the purchase of the Friedman Policy. Defendant instructed Plaintiffs to make said payments to Defendant's IOLTA - Attorney Client Trust Account. Per the Friedman Memo, Defendant promised to pay the

Mermelstein Trust $1,000,000.00 ($250,000.00 and $750,000.00 and all premiums paid of the proceeds).

29. On 4-30-2021, Defendant executed a First Amendment to the Memorandum of Agreement for Joint Venture (Friedman), changing the recipient of the $1,000,000.00 from the Mermelstein Trust to Robert & Esther Mermelstein.

30. Plaintiffs are informed and believe that Defendant apparently sold portions of the Friedman Policy, to the Longevity Fund of NY and partially to the Longevity Fund of Michigan, without Plaintiff's consent.

31. Plaintiffs are informed and believe that Friedman apparently died in 2020, and Defendant collected the Friedman Proceeds, on the Friedman Policy. Defendant concealed this information from Plaintiffs, misappropriated & kept the Friedman Proceeds for himself, and failed to pay Plaintiffs the $1,000,000.00 per the Friedman Memo.

## ZIMMERMAN

32. On 8-3-2009, Defendant on behalf of The Klein Charitable Remainder Unitrust dated 2-20-1996 (the "Klein Trust") entered into a Memorandum of Agreement for Joint Venture with Plaintiffs (the "Zimmerman Memo"). The purpose of the Zimmerman Memo, was to purchase a $9,000,000.00 life insurance Policy ("Zimmerman Policy"); American General Policy # US 0023738L on the life of Rozy Pearl Zimmerman ("Zimmerman"). In furtherance of the Zimmerman Memo, Plaintiffs paid Defendant $150,000.00 towards the purchase of the Zimmerman Policy. Defendant instructed Plaintiffs to make said payments to Defendant's IOLTA - Attorney Client Trust Account. Per the Zimmerman Memo, Defendant promised to pay the Mermelstein Trust $2,400,000.00 ($2,250,000.00 plus $150,000.00).

33. On 4-30-2021, Defendant executed a First Amendment to the Memorandum of Agreement for Joint Venture (Zimmerman), changing the recipient of the $2,400,000.00 from the Mermelstein Trust to Robert & Esther Mermelstein.

34. Plaintiffs are informed and believe that Defendant paid premiums of the Zimmerman

-7-

Policy up to 2011. Thereafter, Defendant apparently sold portions or the entirety of the Zimmerman Policy to Life Capital Group, LLC ("LCG") - without Plaintiffs' consent - , where Shlomo Yehuda Rechnitz ("Rechnitz") was to resume paying the Zimmerman Policy premiums from 2011 onwards. Defendant concealed this information from Plaintiffs.

35.  Defendant, as Trustee of the Rozy Pearl Zimmerman Irrevocable Life Insurance Trust (the "Zimmerman Trust") issued three Non-Recourse Promissory Notes (the "Zimmerman Notes") to Plaintiffs secured by the Zimmerman Policy in the amount of $2,357,679.50:

   a.  Non-Recourse Promissory Notes # 1, principal sum of $1,412,679.53, dated June 15, 2011 - due June 15, 2020 (the "$1,412,679.53 Zimmerman Note");

   b.  Non-Recourse Promissory Notes # 2, principal sum of $570,000.00, dated December 7, 2009 - due December 7, 2019 (the "$570,000.00 Zimmerman Note");

   c.  Non-Recourse Promissory Notes # 2, principal sum of $375,000.00, dated January 14, 2010 - due January 14, 2020 (the "$375,000.00 Zimmerman Note").

   d.  Interest on the three Non-Recourse Zimmerman Notes until 4-30-2023 comes to $2,939,936.84. Therefore the total amount of the claim is: $7,697,616.34 ($2,400,000.00 (Zimmerman Policy) + $2,357,679.50 (3 Zimmerman Notes) + 2,939,936.84 (interest) = $7,697,616.34.

36.  According to information recently received by Plaintiffs, an unsigned Amended and Restated Limited Liability Company Agreement of Life Capital Group, LLC, Defendant and Rechnitz agreed that upon the death of Zimmerman, Defendant and Rechnitz would be reimbursed the premiums that they paid, plus interest on the premiums. Thereafter, Defendant and Rechnitz would split the profits 50/50 of the Zimmerman Policy, and that Plaintiffs would receive their $2,400,000.00. Defendant concealed this information from Plaintiffs.

**PERIODIC PAYMENTS TO PLAINTIFFS FROM DEFENDANT'S IOLTA ACCOUNT**

37.   During this entire time, Defendant repeatedly assured Plaintiffs that their investments in the 7 policies were secure and accruing interest. Defendant mailed Plaintiffs periodic monthly checks of $5,000.00 issued from Defendant's IOLTA - Attorney Client Trust Account.

**PLAINTIFFS' DISCOVERY OF DEFENDANT'S FRAUD**

38.   On or about 1-21-2021, Plaintiffs discovered the above-referenced frauds and concealment.

39.   On or about 6-22-2022, Defendant wrote Plaintiffs assuring them that their investments were "secure" when in reality, Defendant sold them off to third parties without Plaintiffs' consent:

I received you e mail and I disagree. I paid in on the Zmerman policy over $1,000,000. The interest for the last 10 years is over $2,300,000 . I also own 25%of the profits. *You are well secured*. You can call me if you have any questions. [Emphasis Added]

40.   On or about 7-18-2022, Defendant wrote Plaintiffs admitting that he used Plaintiffs' monies from the Friedman Garza and Gans to pay for his legal fees in his lawsuit with Rechnitz.

I got your email. I want to make it very clear we are family and I don't want to fight. I think I can make a deal with Rechnitz because I have the best lawyers in LA. If not we will go to court. I have big leverage on Rechnitz due to the Menlo case. I am not assigning the Zimmerman case to you. *I am using the money from the Friedman Garza and Gans cases for attorney fees in the Rechnitz case*. On Zimmerman Rechnitz and I paid $4,000,000 in premiums but it is return of premium. We also gave Mrs Zimmerman $200,000. I am sure they will sue to get more. It is a big policy and all big policies have big fights. [Emphasis Added]

**PLAINTIFFS' PROOF OF CLAIMS**

41.   Plaintiffs timely filed seven (7) *Proofs of Claim* against Defendant totaling $13,480,949, primarily based on Defendant misappropriating insurance policies and the proceeds, as follows:

a.   Claim # 19-1 (Garza) $500,000.00;

b.   Claim # 20-1 (Times Square) $333,333.00;

-9-

c.    Claim # 21-1 (Ganz) $500,000.00;

d.    Claim # 22-1 (Spitzer) $2,250,000.00;

e.    Claim # 23-1 (Kohn) $1,200,000.00;

f.    Claim # 24-1 (Friedman) $1,000,000.00; &

g.    Claim # 25-2 (Zimmerman) $7,697,616.34.

TOTAL:   **$13,480,949**

## FIRST CLAIM FOR RELIEF
### (Nondischargeability of Debt - 11 USC § 523(a)(2)(A))

42.   Plaintiffs reallege and incorporate by reference all of the prior and subsequent allegations in this Complaint as though fully set forth herein.

43.   At all relevant times, Defendant acted as Plaintiffs' fiduciary - investment adviser. Plaintiffs entrusted Defendant implicitly with their investments in the insurance policies.

44.   Defendant owed Plaintiffs fiduciary duties at all relevant times, including the duty of loyalty and candor. Defendant further owed a duty to use Plaintiffs' funds for legitimate business purposes and to refrain from using their funds and other property for his own personal non-business purposes.

45.   Defendant embezzled and stole from Plaintiffs. Defendant misrepresented the above-referenced information to Plaintiffs for the purpose of convincing Plaintiffs to invest in additional policies into Defendant's IOLTA client trust account. Defendant then stole more than $13,480,949 of Plaintiffs' money in a complicated life insurance scam, constituting intentional fraudulent, fraudulent concealment, breach of fiduciary duty and elder abuse.

46.   Defendant's misappropriation of Plaintiffs' funds and other property was unauthorized, without their consent and fraudulent. Defendant acted with the intent to permanently deprive Plaintiffs of the possession, use and benefit of their funds and other property.

47.   As a result of Defendant's unauthorized and fraudulent misappropriation of Plaintiffs' funds and other property and Defendant's false pretenses, false representations, and actual fraud set forth herein, Plaintiffs have suffered damages in the amount of not less

-10-

than $13,480,949.

48. Defendant's debt to Plaintiffs is nondischargeable under 11 USC § 523(a)(2) because it was incurred as a result of false pretenses, false representations, and actual fraud.

49. The damages arising from Defendant's willful and malicious false pretenses, false representation and actual fraud to Plaintiffs constitutes a debt against Defendant that is nondischargeable pursuant to 11 USC § 523(a)(2)(A).

## SECOND CLAIM FOR RELIEF
## (Nondischargeability of Debt - 11 USC § 523(a)(4))

50. Plaintiffs reallege and incorporate by reference all of the prior and subsequent allegations in this Complaint as though fully set forth herein.

51. At all relevant times, Defendant acted as Plaintiffs' fiduciary - investment adviser. Plaintiffs entrusted Defendant implicitly with their investments in the insurance policies.

52. Defendant owed Plaintiffs fiduciary duties at all relevant times, including the duty of loyalty and candor. Defendant further owed a duty to use Plaintiffs' funds for legitimate business purposes and to refrain from using their funds and other property for his own personal non-business purposes.

53. Defendant embezzled and stole from Plaintiffs. Defendant misrepresented the above-referenced information to Plaintiffs for the purpose of convincing Plaintiffs to invest in additional policies into Defendant's IOLTA client trust account. Defendant then stole more than $13,480,949 of Plaintiffs' money in a complicated life insurance scam, constituting intentional fraudulent, fraudulent concealment, breach of fiduciary duty and elder abuse.

54. Defendant's misappropriation of Plaintiffs' funds and other property was unauthorized, without their consent and fraudulent. Defendant acted with the intent to permanently deprive Plaintiffs of the possession, use and benefit of their funds and other property.

55. As a result of Defendant's unauthorized and fraudulent misappropriation of Plaintiffs' funds and other property and Defendant's false pretenses, false representations, and actual fraud set forth herein, Plaintiffs have suffered damages in the amount of not less

-11-

1     than $13,480,949.

2  56.  The damages to Plaintiffs arising from Defendant's fraud, defalcation, embezzlement and

3     larceny while acting in a fiduciary capacity constitutes a debt against Defendant that is

4     non-dischargeable pursuant to 11 USC § 523(a)(4).

5                    **THIRD CLAIM FOR RELIEF**
                 **(Nondischargeability of Debt - 11 USC § 523(a)(6))**
6

7  57.  Plaintiffs reallege and incorporate by reference all of the prior and subsequent allegations

8     in this Complaint as though fully set forth herein.

9  58.  At all relevant times, Defendant acted as Plaintiffs' fiduciary - investment adviser.

10     Plaintiffs entrusted Defendant implicitly with their investments in the insurance policies.

11  59.  Defendant owed Plaintiffs fiduciary duties at all relevant times, including the duty of

12     loyalty and candor. Defendant further owed a duty to use Plaintiffs' funds for legitimate

13     business purposes and to refrain from using their funds and other property for his own

14     personal non-business purposes.

15  60.  Defendant embezzled and stole from Plaintiffs. Defendant misrepresented the above-

16     referenced information to Plaintiffs for the purpose of convincing Plaintiffs to invest in

17     additional policies into Defendant's IOLTA client trust account. Defendant then stole

18     more than $13,480,949 of Plaintiffs' money in a complicated life insurance scam,

19     constituting intentional fraudulent, fraudulent concealment, breach of fiduciary duty and

20     elder abuse.

21  61.  Defendant's misappropriation of Plaintiffs' funds and other property was unauthorized,

22     without their consent and fraudulent. Defendant acted with the intent to permanently

23     deprive Plaintiffs of the possession, use and benefit of their funds and other property.

24  62.  As a result of Defendant's unauthorized and fraudulent misappropriation of Plaintiffs'

25     funds and other property and Defendant's false pretenses, false representations, and

26     actual fraud set forth herein, Plaintiffs have suffered damages in the amount of not less

27     than $13,480,949.

28  63.  The damages to Plaintiffs arising from Defendant's willful and malicious injury to

-12-

Plaintiffs constitutes a debt against Defendant that is non-dischargeable pursuant to 11 USC § 523(a)(6).

### FOURTH CAUSE OF ACTION
### (Objection to Debtor's Discharge 11 USC § 727(a)(2)(A))

64. Plaintiffs reallege and incorporate by reference all of the prior and subsequent allegations in this Complaint as though fully set forth herein.

65. Plaintiffs are informed and believe that within one year before the Petition, Defendant transferred, removed, and/or concealed, or permitted to be transferred, removed, and/or concealed, Defendant's property.

66. As of the dates of the transfers, removals, and/or concealments of Defendant's property, Defendant had one or more unsecured creditors.

67. The transfers, removals, and/or concealments of Defendant's property prevented the distribution of Defendant's property to Defendant's unsecured creditors.

68. Defendant, with intent to hinder, delay, and/or defraud at least one of Defendant's creditors, including, without limitation, Plaintiffs, transferred, removed, and/or concealed, or permitted to be transferred, removed, and/or concealed, Defendant's property.

69. By transferring, removing, concealing, and/or permitting the transfer, removal, and/or concealment of Defendant's property with the intent to hinder, delay, and/or defraud at least one of Defendant's creditors, Defendant violated 11 USC § 727(a)(2)(A).

70. Defendant failed to list valuable property on his schedule of assets and failed in his statement of affairs to disclose property transfers.

71. Defendant has a reckless indifference to the truth.

### FIFTH CAUSE OF ACTION
### (Objection to Debtor's Discharge 11 USC § 727(a)(2)(B))

72. Plaintiffs reallege and incorporate by reference all of the prior and subsequent allegations in this Complaint as though fully set forth herein.

73. Plaintiffs are informed and believe that After the Petition, Defendant transferred,

-13-

1  removed, concealed, and/or permitted to be transferred, removed, and/or concealed,

2  property of the Bankruptcy estate.

3  74.  As of the dates of the transfers, removals, and/or concealments of the property of the

4  estate, Defendant had one or more unsecured creditors.

5  75.  The transfers, removals, and/or concealments of the property of the estate prevented the

6  distribution of this property to Defendant's unsecured creditors.

7  76.  Defendant, with intent to hinder, delay, and/or defraud at least one of Defendant's

8  creditors, transferred, removed, and/or concealed, or permitted to be transferred,

9  removed, and/or concealed, property of the estate.

10  77.  By transferring, removing, concealing, and/or permitting the transfer, removal, and/or

11  concealment of estate property, with the intent to hinder, delay, and/or defraud at least

12  one of Defendant's creditors, Defendant violated 11 USC § 727(a)(2)(B).

13  78.  Defendant failed to list valuable property on his schedule of assets and failed in his

14  statement of affairs to disclose property transfers.

15  79.  Defendant has a reckless indifference to the truth.

16  ## SIXTH CAUSE OF ACTION
### (Objection to Debtor's Discharge  11 USC § 727(a)(3))

17

18  80.  Plaintiffs reallege and incorporate by reference all of the prior and subsequent allegations

19  in this Complaint as though fully set forth herein.

20  81.  Plaintiffs are informed and believe that Defendant has not maintained adequate books

21  and records from which Debtor's financial condition can be ascertained. Debtor has

22  consistently not maintained adequate books and records. His failure to keep adequate

23  books and records is not justified considering the circumstances articulated in this

24  Complaint.

25  82.  Defendant has concealed, destroyed, falsified, and/or failed to keep or preserve

26  information from which Defendant's financial condition and/or business transactions

27  might be ascertained.

28  83.  Defendant has not been cooperative with the Office of the United States Trustee

("OUST") or with his creditors. Defendant has intentionally withheld records, books,

documents, and/or other papers relating to Defendant's property and/or financial affairs.

84.  Considering the foregoing, Defendant's discharge must be denied under 11 USC § 727(a)(3).

### SEVENTH CAUSE OF ACTION
### (Objection to Debtor's Discharge  11 USC § 727(a)(4))

85.  Plaintiffs reallege and incorporate by reference all of the prior and subsequent allegations in this Complaint as though fully set forth herein.

86.  Plaintiffs are informed and believe that Defendant has not made simple isolated errors or omissions in his Bankruptcy filings. Defendant's filings, such as his schedules and statement of affairs, do not reflect inadvertence or incompetence; rather, they exhibit fraudulent intent.

87.  Defendant has a pattern of misleading conduct.

88.  Defendant has a reckless indifference to the truth.

89.  Defendant has failed to list assets in his schedules.

90.  Defendant has falsely testified in the 341 Meeting.[2]

---

[2]  At the 3-13-2023 341(a) Meeting, Defendant at circa 11:15 testified in response to omissions to be brought to the attention of the United States Trustee ("UST"), that there were only "three minor errors" which he thought that his attorney corrected. Defendant testified that there were "no" errors related to any assets that he owns. At circa 12:52, Defendant testified that he identified all assets on his schedules. Defendant at circa 1:18:30-1:09:21 testified that in the year before the Bankruptcy, he received no commissions from his third-party life insurance deals. At circa 1:20:18, Defendant testified that he has not ever collected money on his third-party life insurance deals. At circa 1:22:18, Defendant testified that he has never received a payoff on his third-party life insurance deals. At circa 1:23:21, Defendant testified that four people have died and that he has received no money. Defendant at circa 1:39:00 testified, in response to whether he had transactions with Shlomo Rechnitz in the last five or six months relating to the thirdparty life insurance policies, "nope." Defendant testified that he does not remember paying the premiums for these policies out of his attorney client trust account at any time. Defendant at circa 1:40:03 testified that he does not remember depositing his own funds into his attorney-client trust account so that these insurance premiums could be paid. In response to the question of whether Defendant traveled out of the country anywhere recently, other than Israel, Defendant at circa 2:23:00 testified, "nope." In response

91. Defendant has knowingly and fraudulently made false oaths and/or accounts in the Bankruptcy Case.

92. Defendant has failed to provide records which are necessary for the OUST and his creditors to properly understand Defendant's financial condition and/or recent business transactions.

93. Considering the foregoing, Defendant's discharge must be denied under 11 USC § 727(a)(4).

### EIGHTH CAUSE OF ACTION
**(Objection to Debtor's Discharge 11 USC § 727(a)(5))**

94. Plaintiffs reallege and incorporate by reference all of the prior and subsequent allegations in this Complaint as though fully set forth herein.

95. Defendant has failed to explain satisfactorily his deficiency and/or loss of assets to meet Debtor's liabilities. No determination has yet been made of an entitlement to a discharge in this Bankruptcy Case.

96. Considering the foregoing, Defendant's discharge must be denied under 11 USC § 727(a)(5).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request judgment on the Complaint as follows:

1. On the First Claim for Relief, Plaintiffs seek an order determining that Defendant is indebted to Plaintiffs in an amount not less than $13,480,949 and that Defendant's debt is excepted from discharge pursuant to 11 USC § 523(a)(2)(A);

2. On the Second Claim for Relief, Plaintiffs seek an order determining that Defendant is indebted to Plaintiffs in an amount not less than $13,480,949 and that Defendant's debt is excepted from discharge pursuant to 11 USC § 523(a)(4);

3. On the Third Claim for Relief, Plaintiffs seek an order determining that Defendant is

---

to the question of whether Defendant has bank accounts in Israel, Defendant at circa 2:26:48 testified, "nope." Defendant at circa 2:59:15 testified that he has not transferred any assets within the last year to a third party. Defendant at circa 2:59:33 testified that he has not given any gifts more than $12,000.00 to his family.

-16-

1    indebted to Plaintiffs in an amount not less than $13,480,949 and that Defendant's debt is

2    excepted from discharge pursuant to 11 USC § 523(a)(6);

3    4.    On the Fourth Claim for Relief, Plaintiffs seek an order denying Defendant his discharge

4          pursuant to 11 USC § 727(a)(2)(A);

5    5.    On the Fifth Claim for Relief, Plaintiffs seek an order denying Defendant his discharge

6          pursuant to 11 USC § 727(a)(2)(B);

7    6.    On the Sixth Claim for Relief, Plaintiffs seek an order denying Defendant his discharge

8          pursuant to 11 USC § 727(a)(3);

9    7.    On the Seventh Claim for Relief, Plaintiffs seek an order denying Defendant his

10         discharge pursuant to 11 USC § 727(a)(4);

11    8.   On the Eighth Claim for Relief, Plaintiffs seek an order denying Defendant his discharge

12         pursuant to 11 USC § 727(a)(5);

13    9.   For costs of suit incurred herein; and

14    10.  For such other and further relief as the Court may deem appropriate.

15

16    DATED:        May 12, 2023                    LAW OFFICE OF BARUCH C. COHEN
                                                    A Professional Law Corporation

17
                                                    By      /S/ Baruch C. Cohen
18                                                  Baruch C. Cohen, Esq.
                                                    *Attorney For Creditors Robert & Esther*
19                                                  *Mermelstein*

20

21

22

23

24

25

26

27

28

-17-

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br><br>ROBERT & ESTHER MERMELSTEIN | DEFENDANTS<br><br>LESLIE KLEIN |
|---|---|

| ATTORNEYS (Firm Name, Address, and Telephone No.)<br><br>Baruch C. Cohen, Esq. (SBN 159455)    (323) 937-4501<br>LAW OFFICE OF BARUCH C. COHEN, A Professional Law Corporation<br>4929 Wilshire Boulevard, Suite 940, Los Angeles CA 90010 | ATTORNEYS (If Known) |
|---|---|

| PARTY (Check One Box Only)<br>□ Debtor        □ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor      □ Other<br>□ Trustee | PARTY (Check One Box Only)<br>☒ Debtor        □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor      □ Other<br>□ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

COMPLAINT FOR NONDISCHARGEABILITY OF DEBT PURSUANT TO 11 USC § 523(a)(2)(A), 11 USC § 523(a)(4), & 11 USC § 523(a)(6); & FOR DENIAL OF DISCHARGE PURSUANT TO 11 USC § 727(a)(2)(A); 11 USC § 727(a)(2)(B); 11 USC § 727(a)(3); 11 USC § 727(a)(4); 11 USC § 727(a)(5)

---

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
- ☐ 11-Recovery of money/property - §542 turnover of property
- ☐ 12-Recovery of money/property - §547 preference
- ☐ 13-Recovery of money/property - §548 fraudulent transfer
- ☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
- ☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
- ☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
- ☒ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
- ☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
- ☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
- ☒ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
- ☒ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
- ☐ 61-Dischargeability - §523(a)(5), domestic support
- ☒ 68-Dischargeability - §523(a)(6), willful and malicious injury
- ☐ 63-Dischargeability - §523(a)(8), student loan
- ☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
- ☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
- ☐ 71-Injunctive relief – imposition of stay
- ☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
- ☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
- ☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
- ☐ 01-Determination of removed claim or cause

**Other**
- ☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
- ☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| □ Check if this case involves a substantive issue of state law | □ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| □ Check if a jury trial is demanded in complaint | Demand $ 13,480,949 |
| Other Relief Sought | |

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | | |
|---|---|---|---|
| NAME OF DEBTOR<br><br>LESLIE KLEIN | | BANKRUPTCY CASE NO.<br>2:23-bk-10990-SK | |
| DISTRICT IN WHICH CASE IS PENDING<br>Central District of California | | DIVISION OFFICE<br>Los Angeles | NAME OF JUDGE<br>Klein |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | | |
| PLAINTIFF | DEFENDANT | | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | | |
| DATE<br><br>5/12/2023 | | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>Baruch C. Cohen, Esq. | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

1  Baruch C. Cohen, Esq. (SBN 159455)
   LAW OFFICE OF BARUCH C. COHEN
2      A Professional Law Corporation
   4929 Wilshire Boulevard, Suite 940
3  Los Angeles, California 90010
   Tel: (323) 937-4501   Fax: (888) 316-6107
4  email: baruchcohen@baruchcohenesq.com

5  *Attorney For Plaintiffs Robert & Esther Mermelstein*

6              UNITED STATES BANKRUPTCY COURT
               CENTRAL DISTRICT OF CALIFORNIA
7                 LOS ANGELES ANA DIVISION

8

9  In re                                    Case No. 2:23-bk-10990-SK

10 LESLIE KLEIN,                            Hon. Sandra Klein

11     Debtor and Debtor in Possession,     Chapter 11

12

13 ROBERT & ESTHER MERMELSTEIN,             **COMPLAINT FOR
                                            NONDISCHARGEABILITY
14            Plaintiffs                     OF DEBT PURSUANT TO 11 USC §
                                            523(a)(2)(A), 11 USC § 523(a)(4), & 11
15 vs.                                      USC § 523(a)(6); & FOR DENIAL OF
                                            DISCHARGE PURSUANT TO 11 USC
16 LESLIE KLEIN                             § 727(a)(2)(A); 11 USC § 727(a)(2)(B);
                                            11 USC § 727(a)(3); 11 USC § 727(a)(4);
17            Defendant                     11 USC § 727(a)(5)**

18

19    **TO THE HONORABLE SANDRA R. KLEIN, UNITED STATES BANKRUPTCY**

20 **JUDGE, THE DEBTOR AND HIS COUNSEL, AND ALL OTHER INTERESTED**

21 **PARTIES**:

22    Plaintiffs-Creditors, Robert & Esther Mermelstein ("Plaintiffs"), complain for

23 nondischargeability of debt & for denial of discharge against Defendant-Debtor, Leslie Klein

24 ("Defendant"), and alleges respectfully as follows:

25                    **CORE/NON-CORE DESIGNATION**

26 1.   In accordance with Local Bankruptcy Rule 7008-1, Plaintiffs allege that this adversary

27      proceeding constitutes a core proceeding under 28 USC § 157(b)(2). Plaintiffs

28      acknowledge that the Court has the power to enter final orders and judgments in this

1   matter. Plaintiffs also consent to the Court's entry of final orders and judgments in this

2   matter under FRBP Rule 7008..

3                   **JURISDICTION, VENUE & STANDING**

4   2.   This adversary proceeding arises under *In re Klein*, 2:23-bk-10990-SK, a Chapter 11 case

5        commenced in the United States Bankruptcy Court for the Central District of California

6        ("Bankruptcy Case"). The Court has jurisdiction under 11 USC §§ 523 and 727, and 28

7        USC §§ 157 and 1334.

8   3.   The venue is proper in this Court pursuant to 28 USC § 1409.

9   4.   Plaintiffs have standing to bring this action because Plaintiffs are creditors in the

10       Bankruptcy Case under 11 USC § 101(10).

11                              **PARTIES**

12  5.   The following is a description of the relevant parties involved in the facts forming the

13       basis of this Complaint.

14  6.   Plaintiffs are individuals, senior citizens residing in Brooklyn, NY.

15  7.   Defendant is an individual, whose principal residence is in Los Angeles County,

16       California and who regularly conducted business from Los Angeles County, California.

17       Defendant was a certified public accountant, formerly licensed by the State of California,

18       and a former, and an attorney licensed by the State of California.[1] Defendant is the debtor

19       in the above-captioned Chapter 11 bankruptcy case.

20  ///

21

22  [1]   On September 10, 1992, the Supreme Court of the State of California, in State Bar
23        Court Case No. 86-O-14258, ordered that Defendant be suspended from the practice
          of law for 18 months and further ordered that he take and pass the California
24        Professional Responsibility Examination ("CPRE"). Defendant failed the November
          1993 and January 1994 CPREs. In Case No. 86-O-14258, Defendant admitted to
25        intentional misrepresentations. On August 3, 1995, the Supreme Court of the State
          of California, in State Bar Court Case No. 92-O-11716 (consolidated with Case Nos.
26        93-O-11825, 94-O-13951, 94-O12055, and 94-O15901) ordered that Defendant be
          suspended from the practice of law for one year. In Case No. 92-O-11716, as
27        consolidated, Defendant admitted to willful violations of Rules of Professional
28        Conduct concerning client trust accounts and conflicts of interest.

-2-

1                          **GENERAL ALLEGATIONS**

2   8.   The following general allegations form the background for the Plaintiffs' claims for relief
3        against Defendant.

4   9.   Plaintiffs are family relatives of Defendant, are Orthodox Jews, and are the settlors and
5        beneficiaries of the Mermelstein Charitable Remainder Unitrust Dated July 27, 2009, (the
6        " Mermelstein Trust").

7   10.  Defendant, on behalf of The Klein Charitable Remainder Unitrust dated 2-20-1996 (the
8        "Klein Trust") solicited Plaintiffs to invest in at least seven (7) life insurance policies: (1)
9        Garza; (2) Times Square; (3) Ganz; (4) Spitzer; (5) Kohn; (6) Friedman; & (7)
10       Zimmerman.

11                                **GARZA**

12  11.  On 8-3-2009, Defendant on behalf of The Klein Charitable Remainder Unitrust dated
13       2-20-1996 (the "Klein Trust") entered into a Memorandum of Agreement for Joint
14       Venture (the "Garza Memo"). The purpose of the Garza Memo, was to purchase a
15       $1,000,000.00 life insurance Policy ("Garza Policy"); American General on the life of
16       Emanuel Garza ("Garza"). In furtherance of the Garza Memo, Plaintiffs paid Klein
17       $100,000.00 towards the purchase of the Garza Policy. Defendant instructed Plaintiffs to
18       make said payments to Defendant's IOLTA - Attorney Client Trust Account. Per the
19       Garza Memo, Defendant promised to pay the Mermelstein Trust $500,000.00
20       ($400,000.00 plus return of premiums paid; plus $100,000.00).

21  12.  On 4-30-2021, Defendant executed a First Amendment to the Memorandum of
22       Agreement for Joint Venture (Garza), changing the recipient of the $500,000.00 from the
23       Mermelstein Trust to Robert & Esther Mermelstein.

24  13.  Plaintiffs are informed and believe that Defendant sold 50% to the Garza Policy, to the
25       Longevity Fund of NY and partially to the Longevity Fund of Michigan without their
26       consent.

27  14.  Plaintiffs are informed and believe that Garza apparently died in 2018, and on or about 7-
28

                                    -3-

2-2018, Defendant collected the Garza Proceeds, on the Garza Policy. Defendant concealed this information from Plaintiffs, misappropriated & kept the Garza Proceeds for himself, and failed to pay Plaintiffs the $500,00.00 per the Garza Memo.

**TIMES SQUARE**

15.   On 7-16-2012, Defendant issued Plaintiffs a Non-Recourse Promissory Note, in the amount of $333,333.00, due and payable by 7-16-2013, by Defendant on behalf of the Times Square Media Inc., containing a "*Heter Iska*" document (an approved way of restructuring a loan or debt so that it becomes an investment instead of a loan, per *Halacha* - Jewish law).

16.   Plaintiffs are informed and believe that Defendant had no intention of paying the Times Square Non-Recourse Promissory Note, as Plaintiffs made no payments whatseoever.

**GANZ**

17.   On 8-3-2009, Defendant on behalf of The Klein Charitable Remainder Unitrust dated 2-20-1996 (the "Klein Trust") entered into a Memorandum of Agreement for Joint Venture with plaintiffs (the "Ganz Memo"). The purpose of the Ganz Memo, was to purchase a $1,000,000.00 life insurance Policy ("Ganz Policy"); American General on the life of Emanuel Ganz ("Ganz"). In furtherance of the Ganz Memo, Plaintiffs paid Klein $100,000.00 towards the purchase of the Ganz Policy. Defendant instructed Plaintiffs to make said payments to Defendant's IOLTA - Attorney Client Trust Account. Per the Ganz Memo, Defendant promised to pay the Mermelstein Trust $500,000.00 ($400,000.00 plus return of premiums paid; plus $100,000.00).

18.   On 4-30-2021, Defendant executed a First Amendment to the  Memorandum of Agreement for Joint Venture (Ganz), changing the recipient of the $500,000.00 from the Mermelstein Trust to Robert & Esther Mermelstein.

19.   Plaintiffs are informed and believe that Defendant apparently sold 50% to the Ganz Policy, to the Longevity Fund of NY and partially to the Longevity Fund of Michigan, without Plaintiff's consent.

20. Plaintiffs are informed and believe that Ganz apparently died in 2018, and on or about 7-2-2018, Defendant collected the Ganz Proceeds, on the Ganz Policy. Defendant concealed this information from Plaintiffs, misappropriated & kept the Ganz Proceeds for himself, and failed to pay Plaintiffs the $500,00.00 per the Ganz Memo.

**SPITZER**

21. On 8-3-2009, Defendant on behalf of The Klein Charitable Remainder Unitrust dated 2-20-1996 (the "Klein Trust") entered into a Memorandum of Agreement for Joint Venture with Plaintiffs (the "Spitzer Memo"). The purpose of the Spitzer Memo, was to make premium payments of a $5,000,000.00 life insurance Policy Number: US 0023546L ("Spitzer Policy"); American General on the life of Malvine Spitzer ("Spitzer"). In furtherance of the Spitzer Memo, Plaintiffs paid Defendant $250,000.00 towards the purchase of the Spitzer Policy. Defendant instructed Plaintiffs to make said payments to Defendant's IOLTA - Attorney Client Trust Account. Per the Spitzer Memo, Defendant promised to pay the Mermelstein Trust $2,250,000.00 ($2,000,000 plus $250,000 and all premiums paid of the proceeds).

22. On 4-30-2021, Defendant executed a First Amendment to the Memorandum of Agreement for Joint Venture (Spitzer), changing the recipient of the $2,250,000.00 from the Mermelstein Trust to Robert & Esther Mermelstein.

23. Plaintiffs are informed and believe that Defendant apparently sold portions of the Spitzer Policy, without their consent - but Plaintiffs do not know to whom. Defendant concealed this information from Plaintiffs.

**KOHN**

24. On 3-10-2010, Defendant on behalf of The Klein Charitable Remainder Unitrust dated 2-20-1996 (the "Klein Trust") entered into a Memorandum of Agreement for Joint Venture with Plaintiffs (the "Kohn Memo"). The purpose of the Kohn Memo, was to make premium payments of a $3,000,000.00 life insurance Policy ("Kohn Policy"); American General on the life of Eugene Kohn ("Kohn"). In furtherance of the Kohn

Memo, Plaintiffs paid Defendant $200,000.00 towards the purchase of the Kohn Policy.

Defendant instructed Plaintiffs to make said payments to Defendant's IOLTA - Attorney

Client Trust Account. Per the Kohn Memo, Defendant promised to pay the Mermelstein

Trust $1,200,000.00 ($200,000 and $1,000,000 and all premiums paid of the proceeds).

25.    On 4-30-2021, Klein executed a First Amendment to the Memorandum of Agreement for

Joint Venture (Kohn), changing the recipient of the $1,200,000.00 from the Mermelstein

Trust to Robert & Esther Mermelstein.

26.    Plaintiffs are informed and believe that Defendant paid premiums of the Kohn Policy up

to 2011. Thereafter, Defendant apparently sold portions or the entirety of the Kohn

Policy - without Plaintiffs' consent - to Life Capital Group, LLC ("LCG"), where Shlomo

Yehuda Rechnitz ("Rechnitz") was to resume paying the Kohn Policy premiums from

2011 onwards. Defendant concealed this information from Plaintiffs.

27.    According to information recently received by Plaintiffs an unsigned Amended and

Restated Limited Liability Company Agreement of Life Capital Group, LLC, Defendant

and Rechnitz agreed that upon the death of Kohn, Defendant and Rechnitz would be

reimbursed the premiums that they paid, plus interest on the premiums. Thereafter,

Defendant and Rechnitz would split the profits 50/50 of the Kohn Policy, and that

Plaintiffs would receive their $1,200,000.00.

**FRIEDMAN**

28.    On 3-1-2010, Defendant on behalf of The Klein Charitable Remainder Unitrust dated

2-20-1996 (the "Klein Trust") entered into a Memorandum of Agreement for Joint

Venture with Plaintiffs (the "Friedman Memo"). The purpose of the Friedman Memo,

was to purchase a $1,500,000.00 life insurance Policy ("Friedman Policy"); American

General on the life of Goldie Friedman ("Friedman"). In furtherance of the Friedman

Memo, Plaintiffs paid Klein $250,000.00 towards the purchase of the Friedman Policy.

Defendant instructed Plaintiffs to make said payments to Defendant's IOLTA - Attorney

Client Trust Account. Per the Friedman Memo, Defendant promised to pay the

1   Mermelstein Trust $1,000,000.00 ($250,000.00 and $750,000.00 and all premiums paid

2   of the proceeds).

3   29.   On 4-30-2021, Defendant executed a First Amendment to the Memorandum of

4   Agreement for Joint Venture (Friedman), changing the recipient of the $1,000,000.00

5   from the Mermelstein Trust to Robert & Esther Mermelstein.

6   30.   Plaintiffs are informed and believe that Defendant apparently sold portions of the

7   Friedman Policy, to the Longevity Fund of NY and partially to the Longevity Fund of

8   Michigan, without Plaintiff's consent.

9   31.   Plaintiffs are informed and believe that Friedman apparently died in 2020, and Defendant

10   collected the Friedman Proceeds, on the Friedman Policy. Defendant concealed this

11   information from Plaintiffs, misappropriated & kept the Friedman Proceeds for himself,

12   and failed to pay Plaintiffs the $1,000,000.00 per the Friedman Memo.

13   **ZIMMERMAN**

14   32.   On 8-3-2009, Defendant on behalf of The Klein Charitable Remainder Unitrust dated

15   2-20-1996 (the "Klein Trust") entered into a Memorandum of Agreement for Joint

16   Venture with Plaintiffs (the "Zimmerman Memo"). The purpose of the Zimmerman

17   Memo, was to purchase a $9,000,000.00 life insurance Policy ("Zimmerman Policy");

18   American General Policy # US 0023738L on the life of Rozy Pearl Zimmerman

19   ("Zimmerman"). In furtherance of the Zimmerman Memo, Plaintiffs paid Defendant

20   $150,000.00 towards the purchase of the Zimmerman Policy. Defendant instructed

21   Plaintiffs to make said payments to Defendant's IOLTA - Attorney Client Trust Account.

22   Per the Zimmerman Memo, Defendant promised to pay the Mermelstein Trust

23   $2,400,000.00 ($2,250,000.00 plus $150,000.00).

24   33.   On 4-30-2021, Defendant executed a First Amendment to the Memorandum of

25   Agreement for Joint Venture (Zimmerman), changing the recipient of the $2,400,000.00

26   from the Mermelstein Trust to Robert & Esther Mermelstein.

27   34.   Plaintiffs are informed and believe that Defendant paid premiums of the Zimmerman

28

-7-

1  Policy up to 2011. Thereafter, Defendant apparently sold portions or the entirety of the

2  Zimmerman Policy to Life Capital Group, LLC ("LCG") - without Plaintiffs' consent -,

3  where Shlomo Yehuda Rechnitz ("Rechnitz") was to resume paying the Zimmerman

4  Policy premiums from 2011 onwards. Defendant concealed this information from

5  Plaintiffs.

6  35.  Defendant, as Trustee of the Rozy Pearl Zimmerman Irrevocable Life Insurance Trust

7  (the "Zimmerman Trust") issued three Non-Recourse Promissory Notes  (the

8  "Zimmerman Notes") to Plaintiffs secured by the Zimmerman Policy in the amount of

9  $2,357,679.50:

10  a.  Non-Recourse Promissory Notes # 1, principal sum of $1,412,679.53, dated June

11  15, 2011 - due June 15, 2020 (the "$1,412,679.53 Zimmerman Note");

12  b.  Non-Recourse Promissory Notes # 2, principal sum of $570,000.00, dated

13  December 7, 2009 - due December 7, 2019 (the: "$570,000.00 Zimmerman

14  Note");

15  c.  Non-Recourse Promissory Notes # 2, principal sum of $375,000.00, dated

16  January 14, 2010 - due January 14, 2020 (the "$375,000.00 Zimmerman Note").

17  d.  Interest on the three Non-Recourse Zimmerman Notes until 4-30-2023 comes to

18  $2,939,936.84. Therefore the total amount of the claim is: $7,697,616.34

19  ($2,400,000.00 (Zimmerman Policy) + $2,357,679.50 (3 Zimmerman Notes) +

20  2,939,936.84 (interest) = $7,697,616.34.

21  36.  According to information recently received by Plaintiffs, an unsigned Amended and

22  Restated Limited Liability Company Agreement of Life Capital Group, LLC, Defendant

23  and Rechnitz agreed that upon the death of Zimmerman, Defendant and Rechnitz  would

24  be reimbursed the premiums that they paid, plus interest on the premiums. Thereafter,

25  Defendant and Rechnitz would split the profits 50/50 of the Zimmerman Policy, and that

26  Plaintiffs would receive their $2,400,000.00. Defendant concealed this information from

27  Plaintiffs.

28

-8-

**PERIODIC PAYMENTS TO PLAINTIFFS FROM DEFENDANT'S IOLTA ACCOUNT**

37.    During this entire time, Defendant repeatedly assured Plaintiffs that their investments in the 7 policies were secure and accruing interest. Defendant mailed Plaintiffs periodic monthly checks of $5,000.00 issued from Defendant's IOLTA - Attorney Client Trust Account.

**PLAINTIFFS' DISCOVERY OF DEFENDANT'S FRAUD**

38.    On or about 1-21-2021, Plaintiffs discovered the above-referenced frauds and concealment.

39.    On or about 6-22-2022, Defendant wrote Plaintiffs assuring them that their investments were "secure" when in reality, Defendant sold them off to third parties without Plaintiffs' consent:

I received you e mail and I disagree. I paid in on the Zmerman policy over $1,000,000. The interest for the last 10 years is over $2,300,000 . I also own 25%of the profits. *You are well secured*. You can call me if you have any questions. [Emphasis Added]

40.    On or about 7-18-2022, Defendant wrote Plaintiffs admitting that he used Plaintiffs' monies from the Friedman Garza and Gans to pay for his legal fees in his lawsuit with Rechnitz.

I got your email. I want to make it very clear we are family and I don't want to fight. I think I can make a deal with Rechnitz because I have the best lawyers in LA. If not we will go to court. I have big leverage on Rechnitz due to the Menlo case. I am not assigning the Zimmerman case to you. *I am using the money from the Friedman Garza and Gans cases for attorney fees in the Rechnitz case*. On Zimmerman Rechnitz and I paid $4,000,000 in premiums but it is return of premium. We also gave Mrs Zimmerman $200,000. I am sure they will sue to get more. It is a big policy and all big policies have big fights. [Emphasis Added]

**PLAINTIFFS' PROOF OF CLAIMS**

41.    Plaintiffs timely filed seven (7) *Proofs of Claim* against Defendant totaling $13,480,949, primarily based on Defendant misappropriating insurance policies and the proceeds, as follows:

a.    Claim # 19-1 (Garza) $500,000.00;

b.    Claim # 20-1 (Times Square) $333,333.00;

c.     Claim # 21-1 (Ganz) $500,000.00;

d.     Claim # 22-1 (Spitzer) $2,250,000.00;

e.     Claim # 23-1 (Kohn) $1,200,000.00;

f.     Claim # 24-1 (Friedman) $1,000,000.00; &

g.     Claim # 25-2 (Zimmerman) $7,697,616.34.

    TOTAL:    **$13,480,949**

## FIRST CLAIM FOR RELIEF
### (Nondischargeability of Debt - 11 USC § 523(a)(2)(A))

42.    Plaintiffs reallege and incorporate by reference all of the prior and subsequent allegations in this Complaint as though fully set forth herein.

43.    At all relevant times, Defendant acted as Plaintiffs' fiduciary - investment adviser. Plaintiffs entrusted Defendant implicitly with their investments in the insurance policies.

44.    Defendant owed Plaintiffs fiduciary duties at all relevant times, including the duty of loyalty and candor. Defendant further owed a duty to use Plaintiffs' funds for legitimate business purposes and to refrain from using their funds and other property for his own personal non-business purposes.

45.    Defendant embezzled and stole from Plaintiffs. Defendant misrepresented the above-referenced information to Plaintiffs for the purpose of convincing Plaintiffs to invest in additional policies into Defendant's IOLTA client trust account. Defendant then stole more than $13,480,949 of Plaintiffs' money in a complicated life insurance scam, constituting intentional fraudulent, fraudulent concealment, breach of fiduciary duty and elder abuse.

46.    Defendant's misappropriation of Plaintiffs' funds and other property was unauthorized, without their consent and fraudulent. Defendant acted with the intent to permanently deprive Plaintiffs of the possession, use and benefit of their funds and other property.

47.    As a result of Defendant's unauthorized and fraudulent misappropriation of Plaintiffs' funds and other property and Defendant's false pretenses, false representations, and actual fraud set forth herein, Plaintiffs have suffered damages in the amount of not less

-10-

than $13,480,949.

48. Defendant's debt to Plaintiffs is nondischargeable under 11 USC § 523(a)(2) because it was incurred as a result of false pretenses, false representations, and actual fraud.

49. The damages arising from Defendant's willful and malicious false pretenses, false representation and actual fraud to Plaintiffs constitutes a debt against Defendant that is nondischargeable pursuant to 11 USC § 523(a)(2)(A).

<div align="center">

**SECOND CLAIM FOR RELIEF**
**(Nondischargeability of Debt - 11 USC § 523(a)(4))**

</div>

50. Plaintiffs reallege and incorporate by reference all of the prior and subsequent allegations in this Complaint as though fully set forth herein.

51. At all relevant times, Defendant acted as Plaintiffs' fiduciary - investment adviser. Plaintiffs entrusted Defendant implicitly with their investments in the insurance policies.

52. Defendant owed Plaintiffs fiduciary duties at all relevant times, including the duty of loyalty and candor. Defendant further owed a duty to use Plaintiffs' funds for legitimate business purposes and to refrain from using their funds and other property for his own personal non-business purposes.

53. Defendant embezzled and stole from Plaintiffs. Defendant misrepresented the above-referenced information to Plaintiffs for the purpose of convincing Plaintiffs to invest in additional policies into Defendant's IOLTA client trust account. Defendant then stole more than $13,480,949 of Plaintiffs' money in a complicated life insurance scam, constituting intentional fraudulent, fraudulent concealment, breach of fiduciary duty and elder abuse.

54. Defendant's misappropriation of Plaintiffs' funds and other property was unauthorized, without their consent and fraudulent. Defendant acted with the intent to permanently deprive Plaintiffs of the possession, use and benefit of their funds and other property.

55. As a result of Defendant's unauthorized and fraudulent misappropriation of Plaintiffs' funds and other property and Defendant's false pretenses, false representations, and actual fraud set forth herein, Plaintiffs have suffered damages in the amount of not less

-11-

1    than $13,480,949.

2    56.    The damages to Plaintiffs arising from Defendant's fraud, defalcation, embezzlement and

3    larceny while acting in a fiduciary capacity constitutes a debt against Defendant that is

4    non-dischargeable pursuant to 11 USC § 523(a)(4).

5    **THIRD CLAIM FOR RELIEF**
**(Nondischargeability of Debt - 11 USC § 523(a)(6))**

6

7    57.    Plaintiffs reallege and incorporate by reference all of the prior and subsequent allegations

8    in this Complaint as though fully set forth herein.

9    58.    At all relevant times, Defendant acted as Plaintiffs' fiduciary - investment adviser.

10    Plaintiffs entrusted Defendant implicitly with their investments in the insurance policies.

11    59.    Defendant owed Plaintiffs fiduciary duties at all relevant times, including the duty of

12    loyalty and candor. Defendant further owed a duty to use Plaintiffs' funds for legitimate

13    business purposes and to refrain from using their funds and other property for his own

14    personal non-business purposes.

15    60.    Defendant embezzled and stole from Plaintiffs. Defendant misrepresented the above-

16    referenced information to Plaintiffs for the purpose of convincing Plaintiffs to invest in

17    additional policies into Defendant's IOLTA client trust account. Defendant then stole

18    more than $13,480,949 of Plaintiffs' money in a complicated life insurance scam,

19    constituting intentional fraudulent, fraudulent concealment, breach of fiduciary duty and

20    elder abuse.

21    61.    Defendant's misappropriation of Plaintiffs' funds and other property was unauthorized,

22    without their consent and fraudulent. Defendant acted with the intent to permanently

23    deprive Plaintiffs of the possession, use and benefit of their funds and other property.

24    62.    As a result of Defendant's unauthorized and fraudulent misappropriation of Plaintiffs'

25    funds and other property and Defendant's false pretenses, false representations, and

26    actual fraud set forth herein, Plaintiffs have suffered damages in the amount of not less

27    than $13,480,949.

28    63.    The damages to Plaintiffs arising from Defendant's willful and malicious injury to

-12-

1  Plaintiffs constitutes a debt against Defendant that is non-dischargeable pursuant to 11

2  USC § 523(a)(6).

3  <center>**FOURTH CAUSE OF ACTION**
**(Objection to Debtor's Discharge  11 USC § 727(a)(2)(A))**</center>

4

5  64.  Plaintiffs reallege and incorporate by reference all of the prior and subsequent allegations

6  in this Complaint as though fully set forth herein.

7  65.  Plaintiffs are informed and believe that within one year before the Petition, Defendant

8  transferred, removed, and/or concealed, or permitted to be transferred, removed, and/or

9  concealed, Defendant's property.

10  66.  As of the dates of the transfers, removals, and/or concealments of Defendant's property,

11  Defendant had one or more unsecured creditors.

12  67.  The transfers, removals, and/or concealments of Defendant's property prevented the

13  distribution of Defendant's property to Defendant's unsecured creditors.

14  68.  Defendant, with intent to hinder, delay, and/or defraud at least one of Defendant's

15  creditors, including, without limitation, Plaintiffs, transferred, removed, and/or

16  concealed, or permitted to be transferred, removed, and/or concealed, Defendant's

17  property.

18  69.  By transferring, removing, concealing, and/or permitting the transfer, removal, and/or

19  concealment of Defendant's property with the intent to hinder, delay, and/or defraud at

20  least one of Defendant's creditors, Defendant violated 11 USC § 727(a)(2)(A).

21  70.  Defendant failed to list valuable property on his schedule of assets and failed in his

22  statement of affairs to disclose property transfers.

23  71.  Defendant has a reckless indifference to the truth.

24  <center>**FIFTH CAUSE OF ACTION**
**(Objection to Debtor's Discharge  11 USC § 727(a)(2)(B))**</center>

25  72.  Plaintiffs reallege and incorporate by reference all of the prior and subsequent allegations

26  in this Complaint as though fully set forth herein.

27  73.  Plaintiffs are informed and believe that After the Petition, Defendant transferred,

28

<center>-13-</center>

1    removed, concealed, and/or permitted to be transferred, removed, and/or concealed,

2    property of the Bankruptcy estate.

3    74.    As of the dates of the transfers, removals, and/or concealments of the property of the

4    estate, Defendant had one or more unsecured creditors.

5    75.    The transfers, removals, and/or concealments of the property of the estate prevented the

6    distribution of this property to Defendant's unsecured creditors.

7    76.    Defendant, with intent to hinder, delay, and/or defraud at least one of Defendant's

8    creditors, transferred, removed, and/or concealed, or permitted to be transferred,

9    removed, and/or concealed, property of the estate.

10   77.    By transferring, removing, concealing, and/or permitting the transfer, removal, and/or

11   concealment of estate property, with the intent to hinder, delay, and/or defraud at least

12   one of Defendant's creditors, Defendant violated 11 USC § 727(a)(2)(B).

13   78.    Defendant failed to list valuable property on his schedule of assets and failed in his

14   statement of affairs to disclose property transfers.

15   79.    Defendant has a reckless indifference to the truth.

16                              **SIXTH CAUSE OF ACTION**
                      **(Objection to Debtor's Discharge  11 USC § 727(a)(3))**
17

18   80.    Plaintiffs reallege and incorporate by reference all of the prior and subsequent allegations

19   in this Complaint as though fully set forth herein.

20   81.    Plaintiffs are informed and believe that Defendant has not maintained adequate books

21   and records from which Debtor's financial condition can be ascertained. Debtor has

     consistently not maintained adequate books and records. His failure to keep adequate
22
     books and records is not justified considering the circumstances articulated in this
23
     Complaint.
24
25   82.    Defendant has concealed, destroyed, falsified, and/or failed to keep or preserve

26   information from which Defendant's financial condition and/or business transactions

     might be ascertained.
27
28   83.    Defendant has not been cooperative with the Office of the United States Trustee

-14-

1    ("OUST") or with his creditors. Defendant has intentionally withheld records, books,

2    documents, and/or other papers relating to Defendant's property and/or financial affairs.

3  84.  Considering the foregoing, Defendant's discharge must be denied under 11 USC §

4    727(a)(3).

5               **SEVENTH CAUSE OF ACTION**

6      **(Objection to Debtor's Discharge  11 USC § 727(a)(4)**

7  85.  Plaintiffs reallege and incorporate by reference all of the prior and subsequent allegations

8    in this Complaint as though fully set forth herein.

9  86.  Plaintiffs are informed and believe that Defendant has not made simple isolated errors or

10    omissions in his Bankruptcy filings. Defendant's filings, such as his schedules and

11    statement of affairs, do not reflect inadvertence or incompetence; rather, they exhibit

12    fraudulent intent.

13  87.  Defendant has a pattern of misleading conduct.

14  88.  Defendant has a reckless indifference to the truth.

15  89.  Defendant has failed to list assets in his schedules.

16  90.  Defendant has falsely testified in the 341 Meeting.[2]

---

[2]  At the 3-13-2023 341(a) Meeting, Defendant at circa 11:15 testified in response to omissions to be brought to the attention of the United States Trustee ("UST"), that there were only "three minor errors" which he thought that his attorney corrected. Defendant testified that there were "no" errors related to any assets that he owns. At circa 12:52, Defendant testified that he identified all assets on his schedules. Defendant at circa 1:18:30-1:09:21 testified that in the year before the Bankruptcy, he received no commissions from his third-party life insurance deals. At circa 1:20:18, Defendant testified that he has not ever collected money on his third-party life insurance deals. At circa 1:22:18, Defendant testified that he has never received a payoff on his third-party life insurance deals. At circa 1:23:21, Defendant testified that four people have died and that he has received no money. Defendant at circa 1:39:00 testified, in response to whether he had transactions with Shlomo Rechnitz in the last five or six months relating to the thirdparty life insurance policies, "nope." Defendant testified that he does not remember paying the premiums for these policies out of his attorney client trust account at any time. Defendant at circa 1:40:03 testified that he does not remember depositing his own funds into his attorney-client trust account so that these insurance premiums could be paid. In response to the question of whether Defendant traveled out of the country anywhere recently, other than Israel, Defendant at circa 2:23:00 testified, "nope." In response

91. Defendant has knowingly and fraudulently made false oaths and/or accounts in the Bankruptcy Case.

92. Defendant has failed to provide records which are necessary for the OUST and his creditors to properly understand Defendant's financial condition and/or recent business transactions.

93. Considering the foregoing, Defendant's discharge must be denied under 11 USC § 727(a)(4).

**EIGHTH CAUSE OF ACTION**
**(Objection to Debtor's Discharge  11 USC § 727(a)(5))**

94. Plaintiffs reallege and incorporate by reference all of the prior and subsequent allegations in this Complaint as though fully set forth herein.

95. Defendant has failed to explain satisfactorily his deficiency and/or loss of assets to meet Debtor's liabilities. No determination has yet been made of an entitlement to a discharge in this Bankruptcy Case.

96. Considering the foregoing, Defendant's discharge must be denied under 11 USC § 727(a)(5).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request judgment on the Complaint as follows:

1. On the First Claim for Relief, Plaintiffs seek an order determining that Defendant is indebted to Plaintiffs in an amount not less than $13,480,949 and that Defendant's debt is excepted from discharge pursuant to 11 USC § 523(a)(2)(A);

2. On the Second Claim for Relief, Plaintiffs seek an order determining that Defendant is indebted to Plaintiffs in an amount not less than $13,480,949 and that Defendant's debt is excepted from discharge pursuant to 11 USC § 523(a)(4);

3. On the Third Claim for Relief, Plaintiffs seek an order determining that Defendant is

to the question of whether Defendant has bank accounts in Israel, Defendant at circa 2:26:48 testified, "nope." Defendant at circa 2:59:15 testified that he has not transferred any assets within the last year to a third party. Defendant at circa 2:59:33 testified that he has not given any gifts more than $12,000.00 to his family.

-16-

1  indebted to Plaintiffs in an amount not less than $13,480,949 and that Defendant's debt is

2  excepted from discharge pursuant to 11 USC § 523(a)(6);

3  4.  On the Fourth Claim for Relief, Plaintiffs seek an order denying Defendant his discharge

4  pursuant to 11 USC § 727(a)(2)(A);

5  5.  On the Fifth Claim for Relief, Plaintiffs seek an order denying Defendant his discharge

6  pursuant to 11 USC § 727(a)(2)(B);

7  6.  On the Sixth Claim for Relief, Plaintiffs seek an order denying Defendant his discharge

8  pursuant to 11 USC § 727(a)(3);

9  7.  On the Seventh Claim for Relief, Plaintiffs seek an order denying Defendant his

10  discharge pursuant to 11 USC § 727(a)(4);

11  8.  On the Eighth Claim for Relief, Plaintiffs seek an order denying Defendant his discharge

12  pursuant to 11 USC § 727(a)(5);

13  9.  For costs of suit incurred herein; and

14  10.  For such other and further relief as the Court may deem appropriate.

15

16  DATED:    May 12, 2023                LAW OFFICE OF BARUCH C. COHEN
                                          A Professional Law Corporation

17                                        By ___/S/ Baruch C. Cohen_____
                                          Baruch C. Cohen, Esq.
18                                        *Attorney For Creditors Robert & Esther
                                          Mermelstein*

19

20

21

22

23

24

25

26

27

28

-17-

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br><br>ROBERT & ESTHER MERMELSTEIN | DEFENDANTS<br><br>LESLIE KLEIN |
|---|---|
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br><br>Baruch C. Cohen, Esq. (SBN 159455)    (323) 937-4501<br>LAW OFFICE OF BARUCH C. COHEN, A Professional Law Corporation<br>4929 Wilshire Boulevard, Suite 940, Los Angeles CA 90010 | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only)<br>□ Debtor        □ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor     □ Other<br>□ Trustee | **PARTY** (Check One Box Only)<br>☒ Debtor        □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor     □ Other<br>□ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

COMPLAINT FOR NONDISCHARGEABILITY OF DEBT PURSUANT TO 11 USC § 523(a)(2)(A), 11 USC § 523(a)(4), & 11 USC § 523(a)(6); & FOR DENIAL OF DISCHARGE PURSUANT TO 11 USC § 727(a)(2)(A); 11 USC § 727(a)(2)(B); 11 USC § 727(a)(3); 11 USC § 727(a)(4); 11 USC § 727(a)(5)

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

| | |
|---|---|
| **FRBP 7001(1) – Recovery of Money/Property**<br>☐ 11-Recovery of money/property - §542 turnover of property<br>☐ 12-Recovery of money/property - §547 preference<br>☐ 13-Recovery of money/property - §548 fraudulent transfer<br>☐ 14-Recovery of money/property - other | **FRBP 7001(6) – Dischargeability (continued)**<br>☐ 61-Dischargeability - §523(a)(5), domestic support<br>☒ 68-Dischargeability - §523(a)(6), willful and malicious injury<br>☐ 63-Dischargeability - §523(a)(8), student loan<br>☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation<br>         (other than domestic support)<br>☐ 65-Dischargeability – other |
| **FRBP 7001(2) – Validity, Priority or Extent of Lien**<br>☐ 21-Validity, priority or extent of lien or other interest in property | |
| **FRBP 7001(3) – Approval of Sale of Property**<br>☐ 31-Approval of sale of property of estate and of a co-owner - §363(h) | **FRBP 7001(7) – Injunctive Relief**<br>☐ 71-Injunctive relief – imposition of stay<br>☐ 72-Injunctive relief – other |
| **FRBP 7001(4) – Objection/Revocation of Discharge**<br>☒ 41-Objection / revocation of discharge - §727(c),(d),(e) | **FRBP 7001(8) Subordination of Claim or Interest**<br>☐ 81-Subordination of claim or interest |
| **FRBP 7001(5) – Revocation of Confirmation**<br>☐ 51-Revocation of confirmation | **FRBP 7001(9) Declaratory Judgment**<br>☐ 91-Declaratory judgment |
| **FRBP 7001(6) – Dischargeability**<br>☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims<br>☒ 62-Dischargeability - §523(a)(2), false pretenses, false representation,<br>         actual fraud<br>☒ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny<br><br>         **(continued next column)** | **FRBP 7001(10) Determination of Removed Action**<br>☐ 01-Determination of removed claim or cause<br><br>**Other**<br>☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*<br>☐ 02-Other (e.g. other actions that would have been brought in state court<br>         if unrelated to bankruptcy case) |

| □ Check if this case involves a substantive issue of state law | □ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| □ Check if a jury trial is demanded in complaint | Demand $ 13,480,949 |
| Other Relief Sought | |

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR    LESLIE KLEIN | BANKRUPTCY CASE NO. 2:23-bk-10990-SK | |
| DISTRICT IN WHICH CASE IS PENDING<br>Central District of California | DIVISION OFFICE<br>Los Angeles | NAME OF JUDGE<br>Klein |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br>5/12/2023 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Baruch C. Cohen, Esq. | |

### INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.



1
2
Baruch C. Cohen, Esq. (SBN 159455)
LAW OFFICE OF BARUCH C. COHEN
A Professional Law Corporation
4929 Wilshire Boulevard, Suite 940
3
Los Angeles, California 90010
Tel: (323) 937-4501   Fax: (888) 316-6107
4
email: baruchcohen@baruchcohenesq.com
5
*Attorney For Plaintiff David Berger*

6

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
7
LOS ANGELES ANA DIVISION
8

9    In re                              | Case No. 2:23-bk-10990-SK

10   LESLIE KLEIN,                       | Hon.  Sandra Klein

11       Debtor and Debtor in Possession, | Chapter 11

12

13   DAVID BERGER,                       | **COMPLAINT FOR NONDISCHARGEABILITY OF DEBT PURSUANT TO  11 USC § 523(a)(2)(A), 11 USC § 523(a)(4), & 11 USC § 523(a)(6); & FOR DENIAL OF DISCHARGE PURSUANT TO 11 USC § 727(a)(2)(A); 11 USC § 727(a)(2)(B); 11 USC § 727(a)(3); 11 USC § 727(a)(4); 11 USC § 727(a)(5)**

14            Plaintiff

15   vs.

16   LESLIE KLEIN

17            Defendant

18

19
20
21

**TO THE HONORABLE SANDRA R. KLEIN, UNITED STATES BANKRUPTCY JUDGE, THE DEBTOR AND HIS COUNSEL, AND ALL OTHER INTERESTED PARTIES**:

22
23
24

Plaintiff-Creditor, David Berger ("Plaintiff"), complain for nondischargeability of debt & for denial of discharge against Defendant-Debtor, Leslie Klein ("Defendant"), and allege respectfully as follows:

25

**CORE/NON-CORE DESIGNATION**

26
27
28

1.    In accordance with Local Bankruptcy Rule 7008-1, Plaintiff alleges that this adversary proceeding constitutes a core proceeding under 28 USC § 157(b)(2). Plaintiff acknowledges that the Court has the power to enter final orders and judgments in this

1    matter. Plaintiff also consents to the Court's entry of final orders and judgments in this

2    matter under FRBP Rule 7008.

3    <div align="center">**JURISDICTION, VENUE & STANDING**</div>

4   2.   This adversary proceeding arises under *In re Klein*, 2:23-bk-10990-SK, a Chapter 11 case

5    commenced in the United States Bankruptcy Court for the Central District of California

6    ("Bankruptcy Case"). The Court has jurisdiction under 11 USC §§ 523 and 727, and 28

7    USC §§ 157 and 1334.

8   3.   The venue is proper in this Court pursuant to 28 USC § 1409.

9   4.   Plaintiff have standing to bring this action because Plaintiff is a(n omitted) creditor in the

10    Bankruptcy Case under 11 USC § 101(10).

11    <div align="center">**PARTIES**</div>

12   5.   The following is a description of the relevant parties involved in the facts forming the

13    basis of this Complaint.

14   6.   Plaintiff is an individual, residing in Los Angeles County.

15   7.   Defendant is an individual, whose principal residence is in Los Angeles County,

16    California and who regularly conducted business from Los Angeles County, California.

17    Defendant was a certified public accountant, formerly licensed by the State of California,

18    and a former, and an attorney licensed by the State of California.[1] Defendant is the debtor

19    in the above-captioned Chapter 11 bankruptcy case.

20    <div align="center">**GENERAL ALLEGATIONS**</div>

21   8.   The following general allegations form the background for the Plaintiff's claims for relief

22

---

23   [1] On September 10, 1992, the Supreme Court of the State of California, in State Bar Court Case No.
24   86-O-14258, ordered that Defendant be suspended from the practice of law for 18 months and
  further ordered that he take and pass the California Professional Responsibility Examination
25   ("CPRE"). Defendant failed the November 1993 and January 1994 CPREs. In Case No.
  86-O-14258, Defendant admitted to intentional misrepresentations. On August 3, 1995, the
26   Supreme Court of the State of California, in State Bar Court Case No. 92-O-11716 (consolidated
  with Case Nos. 93-O-11825, 94-O-13951, 94-O12055, and 94-O15901) ordered that Defendant
27   be suspended from the practice of law for one year. In Case No. 92-O-11716, as consolidated,
  Defendant admitted to willful violations of Rules of Professional Conduct concerning client trust
28   accounts and conflicts of interest.

<div align="center">-2-</div>

against Defendant.

9. Defendant was the Plaintiff's friend and neighbor for more than 55 years.

10. Plaintiff did not receive timely notice of this bankruptcy proceeding as the Debtor omitted listing Plaintiff on his Schedule F - general unsecured creditors.

11. On 2-17-2009, Leslie Klein ("Klein") on behalf of Leslie Klien & Associates, entered into a *Memorandum of Agreement for Joint Venture* with Plaintiff (the "Gardner Memo").

12. On 2-17-2009, Klein on behalf of BK Life Settlements, LLC ("BK Life") entered into a *Life Insurance Policy Purchase Agreement* ("Gardner LIPPA") with Andrew and Yvette Gardner ("Gardner") for the purchase of two (2) $5,000,000.00 life insurance Policies #1625579 & #1621379 totaling $10,000,000.00 ("Gardner Policies") on the lives of Gardner. Klein designated Leslie Klein & Associates and Plaintiff as the sole beneficiaries of the Garner Policies. Klein had Plaintiff sign the Gardner LIPPA on behalf of the buyer BK Life.

13. In furtherance of the Gardner Memo, Plaintiff paid Klein's IOLTA account with his law firm, Leslie Klien & Associates, $400,000.00 towards the purchase of the two Gardner Policies.

14. Per the Gardner Memo, Klein promised to pay Plaintiff $5,000,000.00 upon the last Gardner to die.

15. On or about 11-16-2015, Klein wrote to Plaintiff:

Dear David: You are right. We have been friends for the last fifty years and I would not do anything that would adversely affect your interest in the Gardner policy.

16. Thereafter, Klein apparently sold portions or the entirety of the Gardner Policy to GMR Life Settlements LLC ("GMR Life") without Plaintiff's consent. Klein concealed this information from Plaintiff.

17. Thereafter, on or about May of 2011, Klein apparently sold portions or the entirety of the Gardner Policy and to Life Capital Group, LLC ("LCG"), without Plaintiff's consent.

-3-

1      Klein concealed this information from Plaintiff.

2  18.  According to information recently received by Plaintiff, Klein and Shlomo Yehuda

3      Rechnitz of LCG, agreed that upon the death of Gardner, Klein and Rechnitz would be

4      reimbursed the premiums that they paid, plus interest on the premiums. Thereafter, Klein

5      and Rechnitz would split the profits 50/50 of the Gardner Policy, and that Plaintiff would

6      receive his $5,000,000.00.

7  19.  The Gardner's apparently died in 2021 - 2022, and Klein collected the Gardner Proceeds,

8      on the Gardner Policy. Klein concealed this information from Plaintiff, misappropriated

9      & kept the Gardner Proceeds for himself, and failed to pay Plaintiff the $5,000,000.00

10      per the Gardner Memo.

11  20.  Pursuant to by Bankruptcy Rule 3001(c)(2)(A), interest of 10% on the $5,000,000.00,

12      since 2-17-2009 (1565 days at $1,369.8630 interest per day) comes to $2,143,835.62,

13      bringing the total amount due at $7,143,835.62.

14  21.  During this entire time, Defendant repeatedly assured Plaintiff that premiums of the

15      Gardner Policy were being timely made, and that his investment in the Gardner Policy

16      was secure and accruing interest.

17              **PLAINTIFF'S DISCOVERY OF DEFENDANT'S FRAUD**

18  22.  On or about 7-29-2022, Plaintiff discovered the above-referenced frauds and

19      concealment.

20              **FIRST CLAIM FOR RELIEF**
         **(Nondischargeability of Debt - 11 USC § 523(a)(2)(A))**
21

22  23.  Plaintiff realleges and incorporates by reference all of the prior and subsequent

23      allegations in this Complaint as though fully set forth herein.

24  24.  At all relevant times, Defendant acted as Plaintiff' fiduciary - investment adviser.

25      Plaintiff entrusted Defendant implicitly with his investment in the Gardner insurance

26      policies.

27  25.  Defendant owed Plaintiff fiduciary duties at all relevant times, including the duty of

28      loyalty and candor. Defendant further owed a duty to use Plaintiff' funds for legitimate

-4-

business purposes and to refrain from using their funds and other property for his own personal non-business purposes.

26. Defendant embezzled and stole from Plaintiff. Defendant misrepresented the above-referenced information to Plaintiff for the purpose of convincing Plaintiff to invest in the Gardner Policy into Defendant's IOLTA client trust account. Defendant then stole more than $400,000.00 of Plaintiff' money in a complicated life insurance scam, constituting intentional fraudulent, fraudulent concealment, and breach of fiduciary duty.

27. Defendant's misappropriation of Plaintiff's funds and other property was unauthorized, without his consent and fraudulent. Defendant acted with the intent to permanently deprive Plaintiff of the possession, use and benefit of their funds and other property.

28. As a result of Defendant's unauthorized and fraudulent misappropriation of Plaintiff' funds and other property and Defendant's false pretenses, false representations, and actual fraud set forth herein, Plaintiff have suffered damages in the amount of not less than $7,143,835.62.

29. Defendant's debt to Plaintiff is nondischargeable under 11 USC § 523(a)(2) because it was incurred as a result of false pretenses, false representations, and actual fraud.

30. The damages arising from Defendant's willful and malicious false pretenses, false representation and actual fraud to Plaintiff constitutes a debt against Defendant that is nondischargeable pursuant to 11 USC § 523(a)(2)(A).

**SECOND CLAIM FOR RELIEF**
**(Nondischargeability of Debt - 11 USC § 523(a)(4))**

31. Plaintiff realleges and incorporates by reference all of the prior and subsequent allegations in this Complaint as though fully set forth herein.

32. At all relevant times, Defendant acted as Plaintiff' fiduciary - investment adviser. Plaintiff entrusted Defendant implicitly with his investments in the Gardner insurance policies.

33. Defendant owed Plaintiff fiduciary duties at all relevant times, including the duty of loyalty and candor. Defendant further owed a duty to use Plaintiff' funds for legitimate

1   business purposes and to refrain from using their funds and other property for his own

2   personal non-business purposes.

3   34.   Defendant embezzled and stole from Plaintiff. Defendant misrepresented the above-

4   referenced information to Plaintiff for the purpose of convincing Plaintiff to invest in the

5   Gardner Policy into Defendant's IOLTA client trust account. Defendant then stole more

6   than $400,000.00 of Plaintiff' money in a complicated life insurance scam, constituting

7   intentional fraudulent, fraudulent concealment, breach of fiduciary duty and elder abuse.

8   35.   Defendant's misappropriation of Plaintiff' funds and other property was unauthorized,

9   without his consent and fraudulent. Defendant acted with the intent to permanently

10   deprive Plaintiff of the possession, use and benefit of his funds and other property.

11   36.   As a result of Defendant's unauthorized and fraudulent misappropriation of Plaintiff'

12   funds and other property and Defendant's false pretenses, false representations, and

13   actual fraud set forth herein, Plaintiff have suffered damages in the amount of not less

14   than $7,143,835.62.

15   37.   The damages to Plaintiff arising from Defendant's fraud, defalcation, embezzlement and

16   larceny while acting in a fiduciary capacity constitutes a debt against Defendant that is

17   non-dischargeable pursuant to 11 USC § 523(a)(4).

18   **THIRD CLAIM FOR RELIEF**
    **(Nondischargeability of Debt - 11 USC § 523(a)(6))**

19

20   38.   Plaintiff realleges and incorporates by reference all of the prior and subsequent

21   allegations in this Complaint as though fully set forth herein.

22   39.   At all relevant times, Defendant acted as Plaintiff' fiduciary - investment adviser.

23   Plaintiff entrusted Defendant implicitly with their investments in the insurance policies.

24   40.   Defendant owed Plaintiff fiduciary duties at all relevant times, including the duty of

25   loyalty and candor. Defendant further owed a duty to use Plaintiff' funds for legitimate

26   business purposes and to refrain from using his funds and other property for his own

27   personal non-business purposes.

28   41.   Defendant embezzled and stole from Plaintiff. Defendant misrepresented the above-

referenced information to Plaintiff for the purpose of convincing Plaintiff to invest in Gardner policies into Defendant's IOLTA client trust account. Defendant then stole more than $400,000.00 of Plaintiff' money in a complicated life insurance scam, constituting intentional fraudulent, fraudulent concealment, breach of fiduciary duty and elder abuse.

42. Defendant's misappropriation of Plaintiff' funds and other property was unauthorized, without his consent and fraudulent. Defendant acted with the intent to permanently deprive Plaintiff of the possession, use and benefit of their funds and other property.

43. As a result of Defendant's unauthorized and fraudulent misappropriation of Plaintiff' funds and other property and Defendant's false pretenses, false representations, and actual fraud set forth herein, Plaintiff have suffered damages in the amount of not less than $7,143,835.62.

44. The damages to Plaintiff arising from Defendant's willful and malicious injury to Plaintiff constitutes a debt against Defendant that is non-dischargeable pursuant to 11 USC § 523(a)(6).

**FOURTH CAUSE OF ACTION**
**(Objection to Debtor's Discharge  11 USC § 727(a)(2)(A))**

45. Plaintiff realleges and incorporates by reference all of the prior and subsequent allegations in this Complaint as though fully set forth herein.

46. Plaintiff is informed and believes that within one year before the Petition, Defendant transferred, removed, and/or concealed, or permitted to be transferred, removed, and/or concealed, Defendant's property.

47. As of the dates of the transfers, removals, and/or concealments of Defendant's property, Defendant had one or more unsecured creditors.

48. The transfers, removals, and/or concealments of Defendant's property prevented the distribution of Defendant's property to Defendant's unsecured creditors.

49. Defendant, with intent to hinder, delay, and/or defraud at least one of Defendant's creditors, including, without limitation, Plaintiff, transferred, removed, and/or concealed, or permitted to be transferred, removed, and/or concealed, Defendant's property.

50.  By transferring, removing, concealing, and/or permitting the transfer, removal, and/or concealment of Defendant's property with the intent to hinder, delay, and/or defraud at least one of Defendant's creditors, Defendant violated 11 USC § 727(a)(2)(A).

51.  Defendant failed to list valuable property on his schedule of assets and failed in his statement of affairs to disclose property transfers.

52.  Defendant has a reckless indifference to the truth.

## FIFTH CAUSE OF ACTION
### (Objection to Debtor's Discharge 11 USC § 727(a)(2)(B))

53.  Plaintiff realleges and incorporates by reference all of the prior and subsequent allegations in this Complaint as though fully set forth herein.

54.  Plaintiff is informed and believes that After the Petition, Defendant transferred, removed, concealed, and/or permitted to be transferred, removed, and/or concealed, property of the Bankruptcy estate.

55.  As of the dates of the transfers, removals, and/or concealments of the property of the estate, Defendant had one or more unsecured creditors.

56.  The transfers, removals, and/or concealments of the property of the estate prevented the distribution of this property to Defendant's unsecured creditors.

57.  Defendant, with intent to hinder, delay, and/or defraud at least one of Defendant's creditors, transferred, removed, and/or concealed, or permitted to be transferred, removed, and/or concealed, property of the estate.

58.  By transferring, removing, concealing, and/or permitting the transfer, removal, and/or concealment of estate property, with the intent to hinder, delay, and/or defraud at least one of Defendant's creditors, Defendant violated 11 USC § 727(a)(2)(B).

59.  Defendant failed to list valuable property on his schedule of assets and failed in his statement of affairs to disclose property transfers.

60.  Defendant has a reckless indifference to the truth.

///

///

### SIXTH CAUSE OF ACTION
(Objection to Debtor's Discharge 11 USC § 727(a)(3))

61.  Plaintiff realleges and incorporates by reference all of the prior and subsequent allegations in this Complaint as though fully set forth herein.

62.  Plaintiff is informed and believes that Defendant has not maintained adequate books and records from which Debtor's financial condition can be ascertained. Debtor has consistently not maintained adequate books and records. His failure to keep adequate books and records is not justified considering the circumstances articulated in this Complaint.

63.  Defendant has concealed, destroyed, falsified, and/or failed to keep or preserve information from which Defendant's financial condition and/or business transactions might be ascertained.

64.  Defendant has not been cooperative with the Office of the United States Trustee ("OUST") or with his creditors. Defendant has intentionally withheld records, books, documents, and/or other papers relating to Defendant's property and/or financial affairs.

65.  Considering the foregoing, Defendant's discharge must be denied under 11 USC § 727(a)(3).

### SEVENTH CAUSE OF ACTION
(Objection to Debtor's Discharge 11 USC § 727(a)(4))

66.  Plaintiff realleges and incorporates by reference all of the prior and subsequent allegations in this Complaint as though fully set forth herein.

67.  Plaintiff is informed and believes that Defendant has not made simple isolated errors or omissions in his Bankruptcy filings. Defendant's filings, such as his schedules and statement of affairs, do not reflect inadvertence or incompetence; rather, they exhibit fraudulent intent.

68.  Defendant has a pattern of misleading conduct.

69.  Defendant has a reckless indifference to the truth.

70.  Defendant has failed to list assets in his schedules.

71. Defendant has falsely testified in the 341 Meeting.[2]

72. Defendant has knowingly and fraudulently made false oaths and/or accounts in the Bankruptcy Case.

73. Defendant has failed to provide records which are necessary for the OUST and his creditors to properly understand Defendant's financial condition and/or recent business transactions.

74. Considering the foregoing, Defendant's discharge must be denied under 11 USC § 727(a)(4).

## EIGHTH CAUSE OF ACTION
### (Objection to Debtor's Discharge 11 USC § 727(a)(5))

75. Plaintiff realleges and incorporates by reference all of the prior and subsequent allegations in this Complaint as though fully set forth herein.

76. Defendant has failed to explain satisfactorily his deficiency and/or loss of assets to meet Debtor's liabilities. No determination has yet been made of an entitlement to a discharge in this Bankruptcy Case.

77. Considering the foregoing, Defendant's discharge must be denied under 11 USC § 727(a)(5).

---

[2] At the 3-13-2023 341(a) Meeting, Defendant at circa 11:15 testified in response to omissions to be brought to the attention of the United States Trustee ("UST"), that there were only "three minor errors" which he thought that his attorney corrected. Defendant testified that there were "no" errors related to any assets that he owns. At circa 12:52, Defendant testified that he identified all assets on his schedules. Defendant at circa 1:18:30-1:09:21 testified that in the year before the Bankruptcy, he received no commissions from his third-party life insurance deals. At circa 1:20:18, Defendant testified that he has not ever collected money on his third-party life insurance deals. At circa 1:22:18, Defendant testified that he has never received a payoff on his third-party life insurance deals. At circa 1:23:21, Defendant testified that four people have died and that he has received no money. Defendant at circa 1:39:00 testified, in response to whether he had transactions with Shlomo Rechnitz in the last five or six months relating to the thirdparty life insurance policies, "nope." Defendant testified that he does not remember paying the premiums for these policies out of his attorney client trust account at any time. Defendant at circa 1:40:03 testified that he does not remember depositing his own funds into his attorney-client trust account so that these insurance premiums could be paid. In response to the question of whether Defendant traveled out of the country anywhere recently, other than Israel, Defendant at circa 2:23:00 testified, "nope." In response to the question of whether Defendant has bank accounts in Israel, Defendant at circa 2:26:48 testified, "nope." Defendant at circa 2:59:15 testified that he has not transferred any assets within the last year to a third party. Defendant at circa 2:59:33 testified that he has not given any gifts more than $12,000.00 to his family.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff request judgment on the Complaint as follows:

1. On the First Claim for Relief, Plaintiff seek an order determining that Defendant is indebted to Plaintiff in an amount not less than $7,143,835.62 and that Defendant's debt is excepted from discharge pursuant to 11 USC § 523(a)(2)(A);

2. On the Second Claim for Relief, Plaintiff seek an order determining that Defendant is indebted to Plaintiff in an amount not less than $7,143,835.62 and that Defendant's debt is excepted from discharge pursuant to 11 USC § 523(a)(4);

3. On the Third Claim for Relief, Plaintiff seek an order determining that Defendant is indebted to Plaintiff in an amount not less than $7,143,835.62 and that Defendant's debt is excepted from discharge pursuant to 11 USC § 523(a)(6);

4. On the Fourth Claim for Relief, Plaintiff seek an order denying Defendant his discharge pursuant to 11 USC § 727(a)(2)(A);

5. On the Fifth Claim for Relief, Plaintiff seek an order denying Defendant his discharge pursuant to 11 USC § 727(a)(2)(B);

6. On the Sixth Claim for Relief, Plaintiff seek an order denying Defendant his discharge pursuant to 11 USC § 727(a)(3);

7. On the Seventh Claim for Relief, Plaintiff seek an order denying Defendant his discharge pursuant to 11 USC § 727(a)(4);

8. On the Eighth Claim for Relief, Plaintiff seek an order denying Defendant his discharge pursuant to 11 USC § 727(a)(5);

9. For costs of suit incurred herein; and

10. For such other and further relief as the Court may deem appropriate.

DATED:        June 9, 2023                    LAW OFFICE OF BARUCH C. COHEN
                                              A Professional Law Corporation

                                              By    /S/ Baruch C. Cohen
                                              Baruch C. Cohen, Esq.
                                              *Attorney For Creditor David Berger*

B1040 (FORM 1040) (12/15)

| **ADVERSARY PROCEEDING COVER SHEET**<br>(Instructions on Reverse) | **ADVERSARY PROCEEDING NUMBER**<br>(Court Use Only) |
|---|---|
| **PLAINTIFFS**<br><br>DAVID BERGER | **DEFENDANTS**<br><br>LESLIE KLEIN |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br><br>Baruch C. Cohen, Esq. (SBN 159455)   (323) 937-4501<br>LAW OFFICE OF BARUCH C. COHEN, A Professional Law Corporation<br>4929 Wilshire Boulevard, Suite 940, Los Angeles CA 90010 | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only)<br>□ Debtor       □ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor    □ Other<br>□ Trustee | **PARTY** (Check One Box Only)<br>☒ Debtor       □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor    □ Other<br>□ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

COMPLAINT FOR NONDISCHARGEABILITY OF DEBT PURSUANT TO 11 USC § 523(a)(2)(A), 11 USC § 523(a)(4), & 11 USC § 523(a)(6); & FOR DENIAL OF DISCHARGE PURSUANT TO 11 USC § 727(a)(2)(A); 11 USC § 727(a)(2)(B); 11 USC § 727(a)(3); 11 USC § 727(a)(4); 11 USC § 727(a)(5)

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner – §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☒ 41-Objection / revocation of discharge – §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☒ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☒ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☒ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| □ Check if this case involves a substantive issue of state law | □ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| □ Check if a jury trial is demanded in complaint | Demand $ 7,143,835.62 |
| Other Relief Sought | |

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br> LESLIE KLEIN | BANKRUPTCY CASE NO.<br>  | 2:23-bk-10990-SK |
| DISTRICT IN WHICH CASE IS PENDING<br>Central District of California | DIVISION OFFICE<br>Los Angeles | NAME OF JUDGE<br>Klein |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br> 6/9/2023 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br> Baruch C. Cohen, Esq. | |

## INSTRUCTIONS

  The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

  A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

  The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

# EXHIBIT II A

| Attorney or Party Name, Address, Telephone & FAX Numbers, State Bar Number & Email Address | FOR COURT USE ONLY |
|---|---|
| Baruch C. Cohen, Esq. (159455)<br>Law Office of Baruch C. Cohen, APLC<br>4929 Wilshire Boulevard, Suite 940<br>Los Angeles, CA 90010<br>Office (323) 937-4501 \| Cell (323) 353-9535<br>Facsimile: (888) 316-6107<br>Email: bcc@baruchcohenesq.com | |
| ☐ *Plaintiff(s) appearing without attorney*<br>☒ *Attorney for Plaintiff(s)* | |

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| In re:<br>LESLIE KLEIN<br><br><br><div align="right">Debtor(s).</div> | CASE NUMBER: 2:23-bk-10990-SK<br>ADVERSARY NUMBER: 2:23-ap-01153-SK<br>CHAPTER: 11 |
|---|---|
| ROBERT & ESTHER MERMELSTEIN<br><br><div align="right">Plaintiff(s),</div><br><div align="center">vs.</div><br>LESLIE KLEIN<br><br><div align="right">Defendant(s).</div> | **PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT UNDER LBR 7055-1**<br><br>DATE: 2/14/2024<br>TIME: 9:00 am<br>COURTROOM: 1575<br>ADDRESS: 255 E. Temple Street, Los Angeles |

## TO THE DEFENDANT, DEFENDANT'S ATTORNEY AND OTHER INTERESTED PARTIES:

1. Name of Defendant(s) against whom default judgment is sought (*specify name*): LESLIE KLEIN

2. Plaintiff filed the complaint in the above-captioned proceeding on (*specify date*): 05/12/2023

3. The Summons and Complaint were served on Defendant by    ☐ personal service    ☒ mail service
   on the following date (*specify date*): 05/17/2023

4. A true and correct copy of the completed return of summons form is attached.

---

*"Bankruptcy Code" and "11 U.S.C." refer to the United States Bankruptcy Code, Title 11 of the United States Code.*
*"FRBP" refers to the Federal Rules of Bankruptcy Procedure. "LBR" and "LBRs" refer to the Local Bankruptcy Rule(s) of this court.*

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

5. The time for filing an answer or other response expired on (*specify date*): 07/12/2023

   Defendant was later ordered to respond to the Complaint by 11-18-2023

6. No answer or other response has been filed or served by Defendant.

7. The default of Defendant:

   a. ☐ Has not yet been entered, but is requested

   b. ☒ Was entered on (*specify date*): 11/28/2023

8. **A Status Conference:**

   a. ☒ Is scheduled for (*specify date, time, and place*): _____
      12/20/2023 at 09:00 AM 255 E. Temple St. Courtroom 1575 Los Angeles

   b. ☐ Was held on (*specify date, time, and place*): _____
      _____

9. As proof that Plaintiff is entitled to the relief requested in the complaint, Plaintiff:

   a. ☒ Relies on the complaint and attached documents.

   b. ☒ Attaches the following documents to establish a *prima facie* case:

      (1) ☒ Declaration of (*specify*): ROBERT MERMELSTEIN _____

      (2) ☐ Declaration of (*specify*): _____

      (3) ☐ Other (*specify*): _____

10. As further support for entry of a default judgment, Plaintiff submits a memorandum of points and authorities (optional).

11. **DECLARATION OF NON-MILITARY STATUS** (Servicemembers Civil Relief Act, 50 U.S.C. chapter 50 (§§ 3901-4043)). The undersigned party or counsel declares under penalty of perjury, with respect to each Defendant against whom a default judgment is sought by this motion:

    a. ☒ Defendant is not currently in military service. The facts that support this statement are as follows (*see the court's website for information about how to verify non-military status*):



    b. ☐ Defendant is currently in military service. The facts that support this statement are as follows (*if this box is checked, the plaintiff must attach a supplement to this motion addressing the requirements in 50 U.S.C. § 3931(b)(2) to appoint an attorney for the Defendant before entering a judgment*):



    c. ☐ I am unable to determine whether or not Defendant is in military service. The facts that support this statement are as follows (*if this box is checked, the plaintiff must attach a supplement to this motion addressing the bond requirement in 50 U.S.C. § 3931(b)(3)*):



---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2017                    Page 2                    F 7055-1.2.DEFAULT.JMT.MOTION

12. Defaulting party is not an infant or incompetent party.

Plaintiff requests that this court enter a default judgment in favor of Plaintiff. A copy of the lodged proposed default judgment is attached.

Date: 1/10/2024

Respectfully submitted,

Law Office of Baruch C. Cohen, APLC

Printed name of law firm

Signature

Baruch C. Cohen, Esq.

Name of Attorney for Plaintiff or Plaintiff

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2017                              Page 3                              F 7055-1.2.DEFAULT.JMT.MOTION

Baruch C. Cohen, Esq. (SBN 159455)
LAW OFFICE OF BARUCH C. COHEN
   A Professional Law Corporation
4929 Wilshire Boulevard, Suite 940
Los Angeles, California 90010
Tel: (323) 937-4501   Fax: (888) 316-6107
email: baruchcohen@baruchcohenesq.com

*Attorney For Plaintiffs Robert & Esther Mermelstein*

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
LOS ANGELES ANA DIVISION

| | |
|---|---|
| In re | Case No. 2:23-bk-10990-SK |
| LESLIE KLEIN, | Hon.  Sandra Klein |
| Debtor and Debtor in Possession, | Adv. Proc. No.: 2:23-ap-01153-SK |
| | Chapter 11 |
| ROBERT & ESTHER MERMELSTEIN, | **PROOF OF SERVICE OF:** |
| Plaintiffs | • **COMPLAINT FOR NONDISCHARGEABILITY OF DEBT PURSUANT TO  11 USC § 523(a)(2)(A), 11 USC § 523(a)(4), & 11 USC § 523(a)(6); & FOR DENIAL OF DISCHARGE PURSUANT TO 11 USC § 727(a)(2)(A); 11 USC § 727(a)(2)(B); 11 USC § 727(a)(3); 11 USC § 727(a)(4); 11 USC § 727(a)(5)** |
| vs. | |
| LESLIE KLEIN | |
| Defendant | |
| | • **ANOTHER SUMMONS ISSUED ON LESLIE KLEIN; &** |
| | • **EARLY MEETING OF COUNSEL, JOINT STATUS REPORT AND STATUS CONFERENCE INSTRUCTIONS** |

DATED:    May 16, 2023

LAW OFFICE OF BARUCH C. COHEN
   A Professional Law Corporation

*/s/ Baruch C. Cohen*
Baruch C. Cohen, Esq.
*Attorney For Creditors Robert & Esther Mermelstein*

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Baruch C Cohen<br>4929 Wilshire Blvd Ste 940<br>Los Angeles, CA 90010<br><br>323-937-4501<br><br><br><br><br>*Plaintiff or Attorney for Plaintiff* | |

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES

| In re:<br><br><br>Leslie Klein<br><br><br><br>Debtor(s) | CASE NO.:  2:23-bk-10990-SK<br><br>CHAPTER:  11 |
|---|---|
| | ADVERSARY NUMBER: 2:23-ap-01153-SK |

| Robert & Esther Mermelstein<br><br><br><br>Versus<br><br>Leslie Klein<br><br><br>Defendant(s) | Plaintiff(s) | **ANOTHER<br>SUMMONS AND NOTICE OF STATUS<br>CONFERENCE IN ADVERSARY<br>PROCEEDING [LBR 7004-1]** |
|---|---|---|

TO THE DEFENDANT(S): A Complaint has been filed by the Plaintiff against you. If you wish to defend against the Complaint, you must file with the court a written pleading in response to the Complaint. You must also serve a copy of your written response on the party shown in the upper left-hand corner of this page. The deadline to file and serve a written response is **06/12/2023.** If you do not timely file and serve the response, the court may enter a judgment by default against you for the relief demanded in the Complaint.

A status conference in the adversary proceeding commenced by the Complaint has been set for:

| | |
|---|---|
| **Date:** | **August 9, 2023** |
| **Time:** | **09:00 AM** |
| **Hearing Judge:** | **Sandra R. Klein** |
| **Location:** | **255 E Temple St., Crtrm 1575, Los Angeles, CA 90012** |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**You must comply with LBR 7016–1, which requires you to file a joint status report and to appear at a status conference.** All parties must read and comply with the rule, even if you are representing yourself. You must cooperate with the other parties in the case and file a joint status report with the court and serve it on the appropriate parties at least 14 days before a status conference. A court–approved joint status report form is available on the court's website (LBR form F 7016–1.STATUS.REPORT) with an attachment for additional parties if necessary (LBR form F 7016–1.STATUS.REPORT.ATTACH). If the other parties do not cooperate in filing a joint status report, you still must file with the court a unilateral status report and the accompanying required declaration instead of a joint status report 7 days before the status conference. **The court may fine you or impose other sanctions if you do not file a status report. The court may also fine you or impose other sanctions if you fail to appear at a status conference.**

KATHLEEN J. CAMPBELL
CLERK OF COURT

Date of Issuance of Alias Summons and Notice of Status Conference in Adversary Proceeding: May 12, 2023

By: _____ "s/" Thais D. May _____

Deputy Clerk



---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2016                    Page 2              **F 7004–1.SUMMONS.ADV.PROC**

Baruch C. Cohen, Esq. (SBN 159455)
LAW OFFICE OF BARUCH C. COHEN
   A Professional Law Corporation
4929 Wilshire Boulevard, Suite 940
Los Angeles, California 90010
Tel: (323) 937-4501   Fax: (888) 316-6107
email: baruchcohen@baruchcohenesq.com

*Attorney For Plaintiffs Robert & Esther Mermelstein*

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
LOS ANGELES ANA DIVISION

| | |
|---|---|
| In re | Case No. 2:23-bk-10990-SK |
| LESLIE KLEIN, | Hon. Sandra Klein |
| Debtor and Debtor in Possession, | Chapter 11 |
| | |
| ROBERT & ESTHER MERMELSTEIN, | **COMPLAINT FOR NONDISCHARGEABILITY OF DEBT PURSUANT TO 11 USC § 523(a)(2)(A), 11 USC § 523(a)(4), & 11 USC § 523(a)(6); & FOR DENIAL OF DISCHARGE PURSUANT TO 11 USC § 727(a)(2)(A); 11 USC § 727(a)(2)(B); 11 USC § 727(a)(3); 11 USC § 727(a)(4); 11 USC § 727(a)(5)** |
| Plaintiffs | |
| vs. | |
| LESLIE KLEIN | |
| Defendant | |

**TO THE HONORABLE SANDRA R. KLEIN, UNITED STATES BANKRUPTCY JUDGE, THE DEBTOR AND HIS COUNSEL, AND ALL OTHER INTERESTED PARTIES**:

Plaintiffs-Creditors, Robert & Esther Mermelstein ("Plaintiffs"), complain for nondischargeability of debt & for denial of discharge against Defendant-Debtor, Leslie Klein ("Defendant"), and alleges respectfully as follows:

**CORE/NON-CORE DESIGNATION**

1.    In accordance with Local Bankruptcy Rule 7008-1, Plaintiffs allege that this adversary proceeding constitutes a core proceeding under 28 USC § 157(b)(2). Plaintiffs acknowledge that the Court has the power to enter final orders and judgments in this

1    matter. Plaintiffs also consent to the Court's entry of final orders and judgments in this

2    matter under FRBP Rule 7008..

3                    **JURISDICTION, VENUE & STANDING**

4    2.    This adversary proceeding arises under *In re Klein*, 2:23-bk-10990-SK, a Chapter 11 case

5          commenced in the United States Bankruptcy Court for the Central District of California

6          ("Bankruptcy Case"). The Court has jurisdiction under 11 USC §§ 523 and 727, and 28

7          USC §§ 157 and 1334.

8    3.    The venue is proper in this Court pursuant to 28 USC § 1409.

9    4.    Plaintiffs have standing to bring this action because Plaintiffs are creditors in the

10         Bankruptcy Case under 11 USC § 101(10).

11                               **PARTIES**

12   5.    The following is a description of the relevant parties involved in the facts forming the

13         basis of this Complaint.

14   6.    Plaintiffs are individuals, senior citizens residing in Brooklyn, NY.

15   7.    Defendant is an individual, whose principal residence is in Los Angeles County,

16         California and who regularly conducted business from Los Angeles County, California.

17         Defendant was a certified public accountant, formerly licensed by the State of California,

18         and a former, and an attorney licensed by the State of California.[1] Defendant is the debtor

19         in the above-captioned Chapter 11 bankruptcy case.

20   ///

21

22   [1]   On September 10, 1992, the Supreme Court of the State of California, in State Bar
           Court Case No. 86-O-14258, ordered that Defendant be suspended from the practice
23         of law for 18 months and further ordered that he take and pass the California
           Professional Responsibility Examination ("CPRE"). Defendant failed the November
24         1993 and January 1994 CPREs. In Case No. 86-O-14258, Defendant admitted to
           intentional misrepresentations. On August 3, 1995, the Supreme Court of the State
25         of California, in State Bar Court Case No. 92-O-11716 (consolidated with Case Nos.
           93-O-11825, 94-O-13951, 94-O12055, and 94-O15901) ordered that Defendant be
26         suspended from the practice of law for one year. In Case No. 92-O-11716, as
           consolidated, Defendant admitted to willful violations of Rules of Professional
27         Conduct concerning client trust accounts and conflicts of interest.
28

-2-

1    **GENERAL ALLEGATIONS**

2    8.    The following general allegations form the background for the Plaintiffs' claims for relief

3    against Defendant.

4    9.    Plaintiffs are family relatives of Defendant, are Orthodox Jews, and are the settlors and

5    beneficiaries of the Mermelstein Charitable Remainder Unitrust Dated July 27, 2009, (the

6    " Mermelstein Trust").

7    10.    Defendant,  on behalf of The Klein Charitable Remainder Unitrust dated 2-20-1996 (the

8    "Klein Trust") solicited Plaintiffs to invest in at least seven (7) life insurance policies: (1)

9    Garza; (2) Times Square; (3) Ganz; (4) Spitzer; (5) Kohn; (6) Friedman; & (7)

10    Zimmerman.

11    **GARZA**

12    11.    On 8-3-2009, Defendant on behalf of The Klein Charitable Remainder Unitrust dated

13    2-20-1996 (the "Klein Trust") entered into a Memorandum of Agreement for Joint

14    Venture (the "Garza Memo"). The purpose of the Garza Memo, was to purchase a

15    $1,000,000.00 life insurance Policy ("Garza Policy"); American General on the life of

16    Emanuel Garza ("Garza"). In furtherance of the Garza Memo, Plaintiffs paid Klein

17    $100,000.00 towards the purchase of the Garza Policy. Defendant instructed Plaintiffs to

18    make said payments to Defendant's IOLTA - Attorney Client Trust Account. Per the

19    Garza Memo, Defendant promised to pay the Mermelstein Trust $500,000.00

20    ($400,000.00 plus return of premiums paid; plus $100,000.00).

21    12.    On 4-30-2021, Defendant executed a First Amendment to the Memorandum of

22    Agreement for Joint Venture (Garza), changing the recipient of the $500,000.00 from the

23    Mermelstein Trust to Robert & Esther Mermelstein.

24    13.    Plaintiffs are informed and believe that Defendant sold 50% to the Garza Policy, to the

25    Longevity Fund of NY and partially to the Longevity Fund of Michigan without their

26    consent.

27    14.    Plaintiffs are informed and believe that Garza apparently died in 2018, and on or about 7-

28

2-2018, Defendant collected the Garza Proceeds, on the Garza Policy. Defendant concealed this information from Plaintiffs, misappropriated & kept the Garza Proceeds for himself, and failed to pay Plaintiffs the $500,00.00 per the Garza Memo.

**TIMES SQUARE**

15. On 7-16-2012, Defendant issued Plaintiffs a Non-Recourse Promissory Note, in the amount of $333,333.00, due and payable by 7-16-2013, by Defendant on behalf of the Times Square Media Inc., containing a "*Heter Iska*" document (an approved way of restructuring a loan or debt so that it becomes an investment instead of a loan, per *Halacha* - Jewish law).

16. Plaintiffs are informed and believe that Defendant had no intention of paying the Times Square Non-Recourse Promissory Note, as Plaintiffs made no payments whatseocver.

**GANZ**

17. On 8-3-2009, Defendant on behalf of The Klein Charitable Remainder Unitrust dated 2-20-1996 (the "Klein Trust") entered into a Memorandum of Agreement for Joint Venture with plaintiffs (the "Ganz Memo"). The purpose of the Ganz Memo, was to purchase a $1,000,000.00 life insurance Policy ("Ganz Policy"); American General on the life of Emanuel Ganz ("Ganz"). In furtherance of the Ganz Memo, Plaintiffs paid Klein $100,000.00 towards the purchase of the Ganz Policy. Defendant instructed Plaintiffs to make said payments to Defendant's IOLTA - Attorney Client Trust Account. Per the Ganz Memo, Defendant promised to pay the Mermelstein Trust $500,000.00 ($400,000.00 plus return of premiums paid; plus $100,000.00).

18. On 4-30-2021, Defendant executed a First Amendment to the Memorandum of Agreement for Joint Venture (Ganz), changing the recipient of the $500,000.00 from the Mermelstein Trust to Robert & Esther Mermelstein.

19. Plaintiffs are informed and believe that Defendant apparently sold 50% to the Ganz Policy, to the Longevity Fund of NY and partially to the Longevity Fund of Michigan, without Plaintiff's consent.

-4-

20. Plaintiffs are informed and believe that Ganz apparently died in 2018, and on or about 7-2-2018, Defendant collected the Ganz Proceeds, on the Ganz Policy. Defendant concealed this information from Plaintiffs, misappropriated & kept the Ganz Proceeds for himself, and failed to pay Plaintiffs the $500,00.00 per the Ganz Memo.

**SPITZER**

21. On 8-3-2009, Defendant on behalf of The Klein Charitable Remainder Unitrust dated 2-20-1996 (the "Klein Trust") entered into a Memorandum of Agreement for Joint Venture with Plaintiffs (the "Spitzer Memo"). The purpose of the Spitzer Memo, was to make premium payments of a $5,000,000.00 life insurance Policy Number: US 0023546L ("Spitzer Policy"); American General on the life of Malvine Spitzer ("Spitzer"). In furtherance of the Spitzer Memo, Plaintiffs paid Defendant $250,000.00 towards the purchase of the Spitzer Policy. Defendant instructed Plaintiffs to make said payments to Defendant's IOLTA - Attorney Client Trust Account. Per the Spitzer Memo, Defendant promised to pay the Mermelstein Trust $2,250,000.00 ($2,000,000 plus $250,000 and all premiums paid of the proceeds).

22. On 4-30-2021, Defendant executed a First Amendment to the Memorandum of Agreement for Joint Venture (Spitzer), changing the recipient of the $2,250,000.00 from the Mermelstein Trust to Robert & Esther Mermelstein.

23. Plaintiffs are informed and believe that Defendant apparently sold portions of the Spitzer Policy, without their consent - but Plaintiffs do not know to whom. Defendant concealed this information from Plaintiffs.

**KOHN**

24. On 3-10-2010, Defendant on behalf of The Klein Charitable Remainder Unitrust dated 2-20-1996 (the "Klein Trust") entered into a Memorandum of Agreement for Joint Venture with Plaintiffs (the "Kohn Memo"). The purpose of the Kohn Memo, was to make premium payments of a $3,000,000.00 life insurance Policy ("Kohn Policy"); American General on the life of Eugene Kohn ("Kohn"). In furtherance of the Kohn

1    Memo, Plaintiffs paid Defendant $200,000.00 towards the purchase of the Kohn Policy.

2    Defendant instructed Plaintiffs to make said payments to Defendant's IOLTA - Attorney

3    Client Trust Account. Per the Kohn Memo, Defendant promised to pay the Mermelstein

4    Trust $1,200,000.00 ($200,000 and $1,000,000 and all premiums paid of the proceeds).

5    25.   On 4-30-2021, Klein executed a First Amendment to the Memorandum of Agreement for

6          Joint Venture (Kohn), changing the recipient of the $1,200,000.00 from the Mermelstein

7          Trust to Robert & Esther Mermelstein.

8    26.   Plaintiffs are informed and believe that Defendant paid premiums of the Kohn Policy up

9          to 2011. Thereafter, Defendant apparently sold portions or the entirety of the Kohn

10         Policy - without Plaintiffs' consent - to Life Capital Group, LLC ("LCG"), where Shlomo

11         Yehuda Rechnitz ("Rechnitz") was to resume paying the Kohn Policy premiums from

12         2011 onwards. Defendant concealed this information from Plaintiffs.

13   27.   According to information recently received by Plaintiffs an unsigned Amended and

14         Restated Limited Liability Company Agreement of Life Capital Group, LLC, Defendant

15         and Rechnitz agreed that upon the death of Kohn, Defendant and Rechnitz would be

16         reimbursed the premiums that they paid, plus interest on the premiums. Thereafter,

17         Defendant and Rechnitz would split the profits 50/50 of the Kohn Policy, and that

18         Plaintiffs would receive their $1,200,000.00.

19                                              **FRIEDMAN**

20   28.   On 3-1-2010, Defendant on behalf of The Klein Charitable Remainder Unitrust dated

21         2-20-1996 (the "Klein Trust") entered into a Memorandum of Agreement for Joint

22         Venture with Plaintiffs (the "Friedman Memo"). The purpose of the Friedman Memo,

23         was to purchase a $1,500,000.00 life insurance Policy ("Friedman Policy"); American

24         General on the life of Goldie Friedman ("Friedman"). In furtherance of the Friedman

25         Memo, Plaintiffs paid Klein $250,000.00 towards the purchase of the Friedman Policy.

26         Defendant instructed Plaintiffs to make said payments to Defendant's IOLTA - Attorney

27         Client Trust Account. Per the Friedman Memo, Defendant promised to pay the

28

1    Mermelstein Trust $1,000,000.00 ($250,000.00 and $750,000.00 and all premiums paid

2    of the proceeds).

3    29.    On 4-30-2021, Defendant executed a First Amendment to the  Memorandum of

4    Agreement for Joint Venture (Friedman), changing the recipient of the $1,000,000.00

5    from the Mermelstein Trust to Robert & Esther Mermelstein.

6    30.    Plaintiffs are informed and believe that Defendant apparently sold portions of the

7    Friedman Policy, to the Longevity Fund of NY and partially to the Longevity Fund of

8    Michigan, without Plaintiff's consent.

9    31.    Plaintiffs are informed and believe that Friedman apparently died in 2020, and Defendant

10    collected the Friedman Proceeds, on the Friedman Policy. Defendant concealed this

11    information from Plaintiffs, misappropriated & kept the Friedman Proceeds for himself,

12    and failed to pay Plaintiffs the  $1,000,000.00 per the Friedman Memo.

13    **ZIMMERMAN**

14    32.    On 8-3-2009, Defendant on behalf of The Klein Charitable Remainder Unitrust dated

15    2-20-1996 (the "Klein Trust") entered into a Memorandum of Agreement for Joint

16    Venture with Plaintiffs (the "Zimmerman Memo"). The purpose of the Zimmerman

17    Memo, was to purchase a $9,000,000.00 life insurance Policy ("Zimmerman Policy");

18    American General Policy # US 0023738L on the life of Rozy Pearl Zimmerman

19    ("Zimmerman"). In furtherance of the Zimmerman Memo, Plaintiffs paid Defendant

20    $150,000.00 towards the purchase of the Zimmerman Policy. Defendant instructed

21    Plaintiffs to make said payments to Defendant's IOLTA - Attorney Client Trust Account.

22    Per the Zimmerman Memo, Defendant promised to pay the Mermelstein Trust

23    $2,400,000.00 ($2,250,000.00 plus $150,000.00).

24    33.    On 4-30-2021, Defendant executed a First Amendment to the  Memorandum of

25    Agreement for Joint Venture (Zimmerman), changing the recipient of the $2,400,000.00

26    from the Mermelstein Trust to Robert & Esther Mermelstein.

27    34.    Plaintiffs are informed and believe that Defendant paid premiums of the Zimmerman

28

Policy up to 2011. Thereafter, Defendant apparently sold portions or the entirety of the Zimmerman Policy to Life Capital Group, LLC ("LCG") - without Plaintiffs' consent -, where Shlomo Yehuda Rechnitz ("Rechnitz") was to resume paying the Zimmerman Policy premiums from 2011 onwards. Defendant concealed this information from Plaintiffs.

35. Defendant, as Trustee of the Rozy Pearl Zimmerman Irrevocable Life Insurance Trust (the "Zimmerman Trust") issued three Non-Recourse Promissory Notes (the "Zimmerman Notes") to Plaintiffs secured by the Zimmerman Policy in the amount of $2,357,679.50:

    a.    Non-Recourse Promissory Notes # 1, principal sum of $1,412,679.53, dated June 15, 2011 - due June 15, 2020 (the "$1,412,679.53 Zimmerman Note");

    b.    Non-Recourse Promissory Notes # 2, principal sum of $570,000.00, dated December 7, 2009 - due December 7, 2019 (the: "$570,000.00 Zimmerman Note");

    c.    Non-Recourse Promissory Notes # 2, principal sum of $375,000.00, dated January 14, 2010 - due January 14, 2020 (the "$375,000.00 Zimmerman Note").

    d.    Interest on the three Non-Recourse Zimmerman Notes until 4-30-2023 comes to $2,939,936.84. Therefore the total amount of the claim is: $7,697,616.34 ($2,400,000.00 (Zimmerman Policy) + $2,357,679.50 (3 Zimmerman Notes) + 2,939,936.84 (interest) = $7,697,616.34.

36. According to information recently received by Plaintiffs, an unsigned Amended and Restated Limited Liability Company Agreement of Life Capital Group, LLC, Defendant and Rechnitz agreed that upon the death of Zimmerman, Defendant and Rechnitz would be reimbursed the premiums that they paid, plus interest on the premiums. Thereafter, Defendant and Rechnitz would split the profits 50/50 of the Zimmerman Policy, and that Plaintiffs would receive their $2,400,000.00. Defendant concealed this information from Plaintiffs.

**PERIODIC PAYMENTS TO PLAINTIFFS FROM DEFENDANT'S IOLTA ACCOUNT**

37. During this entire time, Defendant repeatedly assured Plaintiffs that their investments in the 7 policies were secure and accruing interest. Defendant mailed Plaintiffs periodic monthly checks of $5,000.00 issued from Defendant's IOLTA - Attorney Client Trust Account.

**PLAINTIFFS' DISCOVERY OF DEFENDANT'S FRAUD**

38. On or about 1-21-2021, Plaintiffs discovered the above-referenced frauds and concealment.

39. On or about 6-22-2022, Defendant wrote Plaintiffs assuring them that their investments were "secure" when in reality, Defendant sold them off to third parties without Plaintiffs' consent:

   I received you e mail and I disagree. I paid in on the Zmerman policy over $1,000,000. The interest for the last 10 years is over $2,300,000 . I also own 25%of the profits. *You are well secured*. You can call me if you have any questions. [Emphasis Added]

40. On or about 7-18-2022, Defendant wrote Plaintiffs admitting that he used Plaintiffs' monies from the Friedman Garza and Gans to pay for his legal fees in his lawsuit with Rechnitz.

   I got your email. I want to make it very clear we are family and I don't want to fight. I think I can make a deal with Rechnitz because I have the best lawyers in LA. If not we will go to court. I have big leverage on Rechnitz due to the Menlo case. I am not assigning the Zimmerman case to you. *I am using the money from the Friedman Garza and Gans cases for attorney fees in the Rechnitz case.* On Zimmerman Rechnitz and I paid $4,000,000 in premiums but it is return of premium. We also gave Mrs Zimmerman $200,000. I am sure they will sue to get more. It is a big policy and all big policies have big fights. [Emphasis Added]

**PLAINTIFFS' PROOF OF CLAIMS**

41. Plaintiffs timely filed seven (7) *Proofs of Claim* against Defendant totaling $13,480,949, primarily based on Defendant misappropriating insurance policies and the proceeds, as follows:

   a.   Claim # 19-1 (Garza) $500,000.00;

   b.   Claim # 20-1 (Times Square) $333,333.00;

c.     Claim # 21-1 (Ganz) $500,000.00;

d.     Claim # 22-1 (Spitzer) $2,250,000.00;

e.     Claim # 23-1 (Kohn) $1,200,000.00;

f.     Claim # 24-1 (Friedman) $1,000,000.00; &

g.     Claim # 25-2 (Zimmerman) $7,697,616.34.

TOTAL:     **$13,480,949**

### FIRST CLAIM FOR RELIEF
### (Nondischargeability of Debt - 11 USC § 523(a)(2)(A))

42.     Plaintiffs reallege and incorporate by reference all of the prior and subsequent allegations in this Complaint as though fully set forth herein.

43.     At all relevant times, Defendant acted as Plaintiffs' fiduciary - investment adviser. Plaintiffs entrusted Defendant implicitly with their investments in the insurance policies.

44.     Defendant owed Plaintiffs fiduciary duties at all relevant times, including the duty of loyalty and candor. Defendant further owed a duty to use Plaintiffs' funds for legitimate business purposes and to refrain from using their funds and other property for his own personal non-business purposes.

45.     Defendant embezzled and stole from Plaintiffs. Defendant misrepresented the above-referenced information to Plaintiffs for the purpose of convincing Plaintiffs to invest in additional policies into Defendant's IOLTA client trust account. Defendant then stole more than $13,480,949 of Plaintiffs' money in a complicated life insurance scam, constituting intentional fraudulent, fraudulent concealment, breach of fiduciary duty and elder abuse.

46.     Defendant's misappropriation of Plaintiffs' funds and other property was unauthorized, without their consent and fraudulent. Defendant acted with the intent to permanently deprive Plaintiffs of the possession, use and benefit of their funds and other property.

47.     As a result of Defendant's unauthorized and fraudulent misappropriation of Plaintiffs' funds and other property and Defendant's false pretenses, false representations, and actual fraud set forth herein, Plaintiffs have suffered damages in the amount of not less

than \$13,480,949.

48. Defendant's debt to Plaintiffs is nondischargeable under 11 USC § 523(a)(2) because it was incurred as a result of false pretenses, false representations, and actual fraud.

49. The damages arising from Defendant's willful and malicious false pretenses, false representation and actual fraud to Plaintiffs constitutes a debt against Defendant that is nondischargeable pursuant to 11 USC § 523(a)(2)(A).

## SECOND CLAIM FOR RELIEF
### (Nondischargeability of Debt - 11 USC § 523(a)(4))

50. Plaintiffs reallege and incorporate by reference all of the prior and subsequent allegations in this Complaint as though fully set forth herein.

51. At all relevant times, Defendant acted as Plaintiffs' fiduciary - investment adviser. Plaintiffs entrusted Defendant implicitly with their investments in the insurance policies.

52. Defendant owed Plaintiffs fiduciary duties at all relevant times, including the duty of loyalty and candor. Defendant further owed a duty to use Plaintiffs' funds for legitimate business purposes and to refrain from using their funds and other property for his own personal non-business purposes.

53. Defendant embezzled and stole from Plaintiffs. Defendant misrepresented the above-referenced information to Plaintiffs for the purpose of convincing Plaintiffs to invest in additional policies into Defendant's IOLTA client trust account. Defendant then stole more than \$13,480,949 of Plaintiffs' money in a complicated life insurance scam, constituting intentional fraudulent, fraudulent concealment, breach of fiduciary duty and elder abuse.

54. Defendant's misappropriation of Plaintiffs' funds and other property was unauthorized, without their consent and fraudulent. Defendant acted with the intent to permanently deprive Plaintiffs of the possession, use and benefit of their funds and other property.

55. As a result of Defendant's unauthorized and fraudulent misappropriation of Plaintiffs' funds and other property and Defendant's false pretenses, false representations, and actual fraud set forth herein, Plaintiffs have suffered damages in the amount of not less

than $13,480,949.

56.    The damages to Plaintiffs arising from Defendant's fraud, defalcation, embezzlement and larceny while acting in a fiduciary capacity constitutes a debt against Defendant that is non-dischargeable pursuant to 11 USC § 523(a)(4).

### THIRD CLAIM FOR RELIEF
### (Nondischargeability of Debt - 11 USC § 523(a)(6))

57.    Plaintiffs reallege and incorporate by reference all of the prior and subsequent allegations in this Complaint as though fully set forth herein.

58.    At all relevant times, Defendant acted as Plaintiffs' fiduciary - investment adviser. Plaintiffs entrusted Defendant implicitly with their investments in the insurance policies.

59.    Defendant owed Plaintiffs fiduciary duties at all relevant times, including the duty of loyalty and candor. Defendant further owed a duty to use Plaintiffs' funds for legitimate business purposes and to refrain from using their funds and other property for his own personal non-business purposes.

60.    Defendant embezzled and stole from Plaintiffs. Defendant misrepresented the above-referenced information to Plaintiffs for the purpose of convincing Plaintiffs to invest in additional policies into Defendant's IOLTA client trust account. Defendant then stole more than $13,480,949 of Plaintiffs' money in a complicated life insurance scam, constituting intentional fraudulent, fraudulent concealment, breach of fiduciary duty and elder abuse.

61.    Defendant's misappropriation of Plaintiffs' funds and other property was unauthorized, without their consent and fraudulent. Defendant acted with the intent to permanently deprive Plaintiffs of the possession, use and benefit of their funds and other property.

62.    As a result of Defendant's unauthorized and fraudulent misappropriation of Plaintiffs' funds and other property and Defendant's false pretenses, false representations, and actual fraud set forth herein, Plaintiffs have suffered damages in the amount of not less than $13,480,949.

63.    The damages to Plaintiffs arising from Defendant's willful and malicious injury to

Plaintiffs constitutes a debt against Defendant that is non-dischargeable pursuant to 11

USC § 523(a)(6).

**FOURTH CAUSE OF ACTION**
**(Objection to Debtor's Discharge 11 USC § 727(a)(2)(A))**

64. Plaintiffs reallege and incorporate by reference all of the prior and subsequent allegations in this Complaint as though fully set forth herein.

65. Plaintiffs are informed and believe that within one year before the Petition, Defendant transferred, removed, and/or concealed, or permitted to be transferred, removed, and/or concealed, Defendant's property.

66. As of the dates of the transfers, removals, and/or concealments of Defendant's property, Defendant had one or more unsecured creditors.

67. The transfers, removals, and/or concealments of Defendant's property prevented the distribution of Defendant's property to Defendant's unsecured creditors.

68. Defendant, with intent to hinder, delay, and/or defraud at least one of Defendant's creditors, including, without limitation, Plaintiffs, transferred, removed, and/or concealed, or permitted to be transferred, removed, and/or concealed, Defendant's property.

69. By transferring, removing, concealing, and/or permitting the transfer, removal, and/or concealment of Defendant's property with the intent to hinder, delay, and/or defraud at least one of Defendant's creditors, Defendant violated 11 USC § 727(a)(2)(A).

70. Defendant failed to list valuable property on his schedule of assets and failed in his statement of affairs to disclose property transfers.

71. Defendant has a reckless indifference to the truth.

**FIFTH CAUSE OF ACTION**
**(Objection to Debtor's Discharge 11 USC § 727(a)(2)(B))**

72. Plaintiffs reallege and incorporate by reference all of the prior and subsequent allegations in this Complaint as though fully set forth herein.

73. Plaintiffs are informed and believe that After the Petition, Defendant transferred,

removed, concealed, and/or permitted to be transferred, removed, and/or concealed, property of the Bankruptcy estate.

74. As of the dates of the transfers, removals, and/or concealments of the property of the estate, Defendant had one or more unsecured creditors.

75. The transfers, removals, and/or concealments of the property of the estate prevented the distribution of this property to Defendant's unsecured creditors.

76. Defendant, with intent to hinder, delay, and/or defraud at least one of Defendant's creditors, transferred, removed, and/or concealed, or permitted to be transferred, removed, and/or concealed, property of the estate.

77. By transferring, removing, concealing, and/or permitting the transfer, removal, and/or concealment of estate property, with the intent to hinder, delay, and/or defraud at least one of Defendant's creditors, Defendant violated 11 USC § 727(a)(2)(B).

78. Defendant failed to list valuable property on his schedule of assets and failed in his statement of affairs to disclose property transfers.

79. Defendant has a reckless indifference to the truth.

## SIXTH CAUSE OF ACTION
### (Objection to Debtor's Discharge 11 USC § 727(a)(3))

80. Plaintiffs reallege and incorporate by reference all of the prior and subsequent allegations in this Complaint as though fully set forth herein.

81. Plaintiffs are informed and believe that Defendant has not maintained adequate books and records from which Debtor's financial condition can be ascertained. Debtor has consistently not maintained adequate books and records. His failure to keep adequate books and records is not justified considering the circumstances articulated in this Complaint.

82. Defendant has concealed, destroyed, falsified, and/or failed to keep or preserve information from which Defendant's financial condition and/or business transactions might be ascertained.

83. Defendant has not been cooperative with the Office of the United States Trustee

("OUST") or with his creditors. Defendant has intentionally withheld records, books, documents, and/or other papers relating to Defendant's property and/or financial affairs.

84. Considering the foregoing, Defendant's discharge must be denied under 11 USC § 727(a)(3).

## SEVENTH CAUSE OF ACTION
### (Objection to Debtor's Discharge  11 USC § 727(a)(4))

85. Plaintiffs reallege and incorporate by reference all of the prior and subsequent allegations in this Complaint as though fully set forth herein.

86. Plaintiffs are informed and believe that Defendant has not made simple isolated errors or omissions in his Bankruptcy filings. Defendant's filings, such as his schedules and statement of affairs, do not reflect inadvertence or incompetence; rather, they exhibit fraudulent intent.

87. Defendant has a pattern of misleading conduct.

88. Defendant has a reckless indifference to the truth.

89. Defendant has failed to list assets in his schedules.

90. Defendant has falsely testified in the 341 Meeting.[2]

---

[2] At the 3-13-2023 341(a) Meeting, Defendant at circa 11:15 testified in response to omissions to be brought to the attention of the United States Trustee ("UST"), that there were only "three minor errors" which he thought that his attorney corrected. Defendant testified that there were "no" errors related to any assets that he owns. At circa 12:52, Defendant testified that he identified all assets on his schedules. Defendant at circa 1:18:30-1:09:21 testified that in the year before the Bankruptcy, he received no commissions from his third-party life insurance deals. At circa 1:20:18, Defendant testified that he has not ever collected money on his third-party life insurance deals. At circa 1:22:18, Defendant testified that he has never received a payoff on his third-party life insurance deals. At circa 1:23:21, Defendant testified that four people have died and that he has received no money. Defendant at circa 1:39:00 testified, in response to whether he had transactions with Shlomo Rechnitz in the last five or six months relating to the thirdparty life insurance policies, "nope." Defendant testified that he does not remember paying the premiums for these policies out of his attorney client trust account at any time. Defendant at circa 1:40:03 testified that he does not remember depositing his own funds into his attorney-client trust account so that these insurance premiums could be paid. In response to the question of whether Defendant traveled out of the country anywhere recently, other than Israel, Defendant at circa 2:23:00 testified, "nope." In response

91. Defendant has knowingly and fraudulently made false oaths and/or accounts in the Bankruptcy Case.

92. Defendant has failed to provide records which are necessary for the OUST and his creditors to properly understand Defendant's financial condition and/or recent business transactions.

93. Considering the foregoing, Defendant's discharge must be denied under 11 USC § 727(a)(4).

## EIGHTH CAUSE OF ACTION
### (Objection to Debtor's Discharge 11 USC § 727(a)(5))

94. Plaintiffs reallege and incorporate by reference all of the prior and subsequent allegations in this Complaint as though fully set forth herein.

95. Defendant has failed to explain satisfactorily his deficiency and/or loss of assets to meet Debtor's liabilities. No determination has yet been made of an entitlement to a discharge in this Bankruptcy Case.

96. Considering the foregoing, Defendant's discharge must be denied under 11 USC § 727(a)(5).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request judgment on the Complaint as follows:

1. On the First Claim for Relief, Plaintiffs seek an order determining that Defendant is indebted to Plaintiffs in an amount not less than $13,480,949 and that Defendant's debt is excepted from discharge pursuant to 11 USC § 523(a)(2)(A);

2. On the Second Claim for Relief, Plaintiffs seek an order determining that Defendant is indebted to Plaintiffs in an amount not less than $13,480,949 and that Defendant's debt is excepted from discharge pursuant to 11 USC § 523(a)(4);

3. On the Third Claim for Relief, Plaintiffs seek an order determining that Defendant is

---

to the question of whether Defendant has bank accounts in Israel, Defendant at circa 2:26:48 testified, "nope." Defendant at circa 2:59:15 testified that he has not transferred any assets within the last year to a third party. Defendant at circa 2:59:33 testified that he has not given any gifts more than $12,000.00 to his family.

1    indebted to Plaintiffs in an amount not less than $13,480,949 and that Defendant's debt is

2    excepted from discharge pursuant to 11 USC § 523(a)(6);

3    4.    On the Fourth Claim for Relief, Plaintiffs seek an order denying Defendant his discharge

4    pursuant to 11 USC § 727(a)(2)(A);

5    5.    On the Fifth Claim for Relief, Plaintiffs seek an order denying Defendant his discharge

6    pursuant to 11 USC § 727(a)(2)(B);

7    6.    On the Sixth Claim for Relief, Plaintiffs seek an order denying Defendant his discharge

8    pursuant to 11 USC § 727(a)(3);

9    7.    On the Seventh Claim for Relief, Plaintiffs seek an order denying Defendant his

10    discharge pursuant to 11 USC § 727(a)(4);

11    8.    On the Eighth Claim for Relief, Plaintiffs seek an order denying Defendant his discharge

12    pursuant to 11 USC § 727(a)(5);

13    9.    For costs of suit incurred herein; and

14    10.    For such other and further relief as the Court may deem appropriate.

15

16    DATED:        May 12, 2023        LAW OFFICE OF BARUCH C. COHEN
                                        A Professional Law Corporation

17                                      By ____/S/ Baruch C. Cohen_____
                                        Baruch C. Cohen, Esq.
18                                      *Attorney For Creditors Robert & Esther*
                                        *Mermelstein*
19

20

21

22

23

24

25

26

27

28

## EARLY MEETING OF COUNSEL, JOINT STATUS REPORT AND STATUS CONFERENCE INSTRUCTIONS

1.      A copy of these instructions must be attached to the copy of the complaint served upon each party, and the proof of service of the summons and complaint must indicate that such copy was served therewith.

2.      If the adversary proceeding involves money or property exceeding $10,000, or if plaintiff believes trial time will exceed 4 hours, plaintiff must serve, with the summons and complaint, a notice that compliance with Local Bankruptcy Rule 7026-1 and Federal Bankruptcy Procedure Rule 7026 is required. Plaintiff must also file a proof of service of the notice together with the proof of service of the summons and the complaint.

3.      If Local Bankruptcy Rule 7026-1 is applicable, counsel for the parties <u>MUST TIMELY MEET TO DISCUSS SETTLEMENT AND TO EXCHANGE DOCUMENTS, OTHER EVIDENCE, AND LISTS OF WITNESSES, AND PRELIMINARY DISCOVERY SCHEDULES AS PROVIDED **IN** SAID RULE. FEDERAL RULE OF CIVIL PROCEDURE 26(D DOES NOT APPLY TO THIS PROCEEDING.</u>

4.      Unless all defendants have defaulted, the parties **must** file a Joint Status Report pursuant to Local Bankruptcy Rule 7016-1(a)(2) at least 14 court days before the date of the status conference using Local Form No. F 7016-1.1. This form may be found on the Court's website, www.cacb.uscourts.gov, by clicking on "Forms/Rules/General Orders," then "Local Bankruptcy Rules & Forms." and scrolling down to F 7016-1.1. If Local Bankruptcy Rule 7026-1 is applicable, <u>the parties shall include in the Joint Status Report a statement that they have met to discuss settlement and have exchanged documents, other evidence, lists of witnesses and preliminary discovery schedules.</u>

5.      If no response to the complaint is timely filed, plaintiff may request entry of default by the clerk or by the court pursuant to Local Bankruptcy Rule 7055-1(a). Plaintiff may also request entry of a default judgment by filing and serving an appropriate motion pursuant to Local Bankruptcy Rule 7055-1(b). These motions may be brought pursuant to Local Bankruptcy Rule 9013-1.

6.      If the parties dispute whether the adversary proceeding is "core" or "non-core," they must file points and authorities in support of their positions. See 28 U.S.C. § 157. Any party that contends the proceeding is "non-core" must file and serve its points and authorities at least 14 days before the status conference. Any response must be filed and served at least 7 days before the status conference.

7.      Unless a party objects in writing in the first Joint Status Report or the court orders otherwise, direct testimony at trial will be presented by declaration.

8.      Failure to comply with these instructions may subject the responsible party to sanctions.

9.      At the initial status conference a date may be set for further status conference, a pre-trial conference and/or for trial.

10.    Failure of counsel for any party to appear at a status conference or pre-trial conference may be considered an abandonment and the adversary proceeding may be dismissed or judgment entered against the defaulting party, without further hearing.

Sandra R. Klein
United States Bankruptcy Judge

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is

4929 Wilshire Boulevard, Suite 940, Los Angeles, California 90010

A true and correct copy of the foregoing document entitled: **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004-1]** and (2) the accompanying pleading(s) entitled:

COMPLAINT FOR NONDISCHARGEABILITY OF DEBT PURSUANT TO 11 USC § 523(a)(2)(A), 11 USC § 523(a)(4), & 11 USC § 523(a)(6); & FOR DENIAL OF DISCHARGE PURSUANT TO 11 USC § 727(a)(2)(A); 11 USC § 727(a)(2)(B); 11 USC § 727(a)(3); 11 USC § 727(a)(4); 11 USC § 727(a)(5) & EARLY MEETING OF COUNSEL, JOINT STATUS REPORT AND STATUS CONFERENCE INSTRUCTIONS

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date) _5/16/2023_, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

    Baruch C Cohen    bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com
    US Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

    ☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On (date) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

    ☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) _5/16/2023_, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

VIA PERSONAL DELIVERY:
    Honorable Sandra R. Klein, 255 E. Temple Street, Suite 1582, Los Angeles, CA 90012

VIA EMAIL:
    Michael Jay Berger    michael.berger@bankruptcypower.com, yathida.nipha@bankruptcypower.com;
        michael.berger@ecf.inforuptcy.com

    ☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 5/16/2023 | Baruch C. Cohen, Esq. | /s/ Baruch C. Cohen |
|-----------|----------------------|---------------------|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**F 7004-1.SUMMONS.ADV.PROC**

1           **DECLARATION OF ROBERT MERMELSTEIN**

2       I, **ROBERT MERMELSTEIN**, declare and state as follows:

3   1.  The facts stated below are true and correct to the best of my personal knowledge and if called

4       upon to testify to them, I could and would competently do so.

5   2.  This Declaration is in support of the **PLAINTIFF'S MOTION FOR DEFAULT**

6       **JUDGMENT UNDER LBR 7055-1** filed by me, Robert Memelstein.

7           **PROCEDURAL HISTORY**

8   3.  On 5-12-2023, I filed this instant Complaint for Determination of Nondischargeability of

9       Debts and to Deny Discharge pursuant to 11 USC § 523(a)(2)(A), 11 USC § 523(a)(4), & 11

10      USC § 523(a)(6); & for Denial of Discharge Pursuant to 11 USC § 727(a)(2)(A); 11 USC §

11      727(a)(2)(B); 11 USC § 727(a)(3); 11 USC § 727(a)(4); 11 USC § 727(a)(5)("Complaint")

12      against Defendant Leslie Klein ("Defendant"). (Dkt. No. 1) Adv. # 2:23-ap-01153-SK.

13  4.  On 11-8-2023, the Court dismissed without prejudice causes of action for Denial of Discharge

14      Pursuant to 11 USC § 727(a)(2)(A); 11 USC § 727(a)(2)(B); 11 USC § 727(a)(3); 11 USC §

15      727(a)(4); 11 USC § 727(a)(5) (Dkt No 36).

16  5.  On 11-28-2023, this Court entered a default against Klein for Determination of

17      Nondischargeability of Debts and to Deny Discharge pursuant to 11 USC § 523(a)(2)(A), 11

18      USC § 523(a)(4), & 11 USC § 523(a)(6) (Dkt No 41).

19          **BACKGROUND FACTS SUPPORTING JUDGMENT**

20                  **GARZA**

21  6.  On 8-3-2009, Defendant on behalf of The Klein Charitable Remainder Unitrust dated

22      2-20-1996 (the "Klein Trust") entered into a Memorandum of Agreement for Joint Venture

23      (the "Garza Memo"). The purpose of the Garza Memo, was to purchase a $1,000,000.00 life

24      insurance Policy ("Garza Policy"); American General on the life of Emanuel Garza ("Garza").

25      In furtherance of the Garza Memo, Plaintiffs paid Klein $100,000.00 towards the purchase of

26      the Garza Policy. Defendant instructed Plaintiffs to make said payments to Defendant's

27      IOLTA - Attorney Client Trust Account. Per the Garza Memo, Defendant promised to pay the

28

1/10-2:04pm

1    Mermelstein Trust $500,000.00 ($400,000.00 plus return of premiums paid; plus

2    $100,000.00).

3  7.  On 4-30-2021, Defendant executed a First Amendment to the Memorandum of Agreement for

4    Joint Venture (Garza), changing the recipient of the $500,000.00 from the Mermelstein Trust

5    to Robert & Esther Mermelstein.

6  8.  Plaintiffs are informed and believe that Defendant sold 50% to the Garza Policy, to the

7    Longevity Fund of NY and partially to the Longevity Fund of Michigan without their consent.

8  9.  Plaintiffs are informed and believe that Garza apparently died in 2018, and on or about 7-2-

9    2018, Defendant collected the Garza Proceeds, on the Garza Policy. Defendant concealed this

10    information from Plaintiffs, misappropriated & kept the Garza Proceeds for himself, and failed

11    to pay Plaintiffs the $500,000.00 per the Garza Memo.

12                  **TIMES SQUARE**

13  10.  On 7-16-2012, Defendant issued Plaintiffs a Non-Recourse Promissory Note, in the amount

14    of $333,333.00, due and payable by 7-16-2013, by Defendant on behalf of the Times Square

15    Media Inc., containing a "*Heter Iska*" document (an approved way of restructuring a loan or

16    debt so that it becomes an investment instead of a loan, per *Halacha* - Jewish law).

17  11.  Plaintiffs are informed and believe that Defendant had no intention of paying the Times

18    Square Non-Recourse Promissory Note, as Plaintiffs made no payments whatseoever.

19                     **GANZ**

20  12.  On 8-3-2009, Defendant on behalf of The Klein Charitable Remainder Unitrust dated

21    2-20-1996 (the "Klein Trust") entered into a Memorandum of Agreement for Joint Venture

22    with plaintiffs (the "Ganz Memo"). The purpose of the Ganz Memo, was to purchase a

23    $1,000,000.00 life insurance Policy ("Ganz Policy"); American General on the life of Emanuel

24    Ganz ("Ganz"). In furtherance of the Ganz Memo, Plaintiffs paid Klein $100,000.00 towards

25    the purchase of the Ganz Policy. Defendant instructed Plaintiffs to make said payments to

26    Defendant's IOLTA - Attorney Client Trust Account. Per the Ganz Memo, Defendant

27    promised to pay the Mermelstein Trust $500,000.00 ($400,000.00 plus return of premiums

28    paid; plus $100,000.00).

1  13.  On 4-30-2021, Defendant executed a First Amendment to the Memorandum of Agreement for

2       Joint Venture (Ganz), changing the recipient of the $500,000.00 from the Mermelstein Trust

3       to Robert & Esther Mermelstein.

4  14.  Plaintiffs are informed and believe that Defendant apparently sold 50% to the Ganz Policy,

5       to the Longevity Fund of NY and partially to the Longevity Fund of Michigan, without

6       Plaintiff's consent.

7  15.  Plaintiffs are informed and believe that Ganz apparently died in 2018, and on or about 7-2-

8       2018, Defendant collected the Ganz Proceeds, on the Ganz Policy. Defendant concealed this

9       information from Plaintiffs, misappropriated & kept the Ganz Proceeds for himself, and failed

10      to pay Plaintiffs the $500,00.00 per the Ganz Memo.

11                                       **SPITZER**

12 16.  On 8-3-2009, Defendant on behalf of The Klein Charitable Remainder Unitrust dated

13      2-20-1996 (the "Klein Trust") entered into a Memorandum of Agreement for Joint Venture

14      with Plaintiffs (the "Spitzer Memo"). The purpose of the Spitzer Memo, was to make

15      premium payments of a $5,000,000.00 life insurance Policy Number: US 0023546L ("Spitzer

16      Policy"); American General on the life of Malvine Spitzer ("Spitzer"). In furtherance of the

17      Spitzer Memo, Plaintiffs paid Defendant $250,000.00 towards the purchase of the Spitzer

18      Policy. Defendant instructed Plaintiffs to make said payments to Defendant's IOLTA -

19      Attorney Client Trust Account. Per the Spitzer Memo, Defendant promised to pay the

20      Mermelstein Trust $2,250,000.00 ($2,000,000.00 plus $250,000.00 and all premiums paid of

21      the proceeds).

22 17.  On 4-30-2021, Defendant executed a First Amendment to the Memorandum of Agreement for

23      Joint Venture (Spitzer), changing the recipient of the $2,250,000.00 from the Mermelstein

24      Trust to Robert & Esther Mermelstein.

25 18.  Plaintiffs are informed and believe that Defendant apparently sold portions of the Spitzer

26      Policy, without their consent - but Plaintiffs do not know to whom. Defendant concealed this

27      information from Plaintiffs.

28 ///

1/10-2:04pm.

1                                          **KOHN**

2    19.    On 3-10-2010, Defendant on behalf of The Klein Charitable Remainder Unitrust dated

3           2-20-1996 (the "Klein Trust") entered into a Memorandum of Agreement for Joint Venture

4           with Plaintiffs (the "Kohn Memo"). The purpose of the Kohn Memo, was to make premium

5           payments of a $3,000,000.00 life insurance Policy ("Kohn Policy"); American General on the

6           life of Eugene Kohn ("Kohn"). In furtherance of the Kohn Memo, Plaintiffs paid Defendant

7           $200,000.00 towards the purchase of the Kohn Policy. Defendant instructed Plaintiffs to make

8           said payments to Defendant's IOLTA - Attorney Client Trust Account. Per the Kohn Memo,

9           Defendant promised to pay the Mermelstein Trust $1,200,000.00 ($200,000.00 and

10          $1,000,000.00 and all premiums paid of the proceeds).

11   20.    On 4-30-2021, Klein executed a First Amendment to the Memorandum of Agreement for Joint

12          Venture (Kohn), changing the recipient of the $1,200,000.00 from the Mermelstein Trust to

13          Robert & Esther Mermelstein.

14   21.    Plaintiffs are informed and believe that Defendant paid premiums of the Kohn Policy up to

15          2011. Thereafter, Defendant apparently sold portions or the entirety of the Kohn Policy -

16          without Plaintiffs' consent - to Life Capital Group, LLC ("LCG"), where Shlomo Yehuda

17          Rechnitz ("Rechnitz") was to resume paying the Kohn Policy premiums from 2011 onwards.

18          Defendant concealed this information from Plaintiffs.

19   22.    According to information recently received by Plaintiffs an unsigned Amended and Restated

20          Limited Liability Company Agreement of Life Capital Group, LLC, Defendant and Rechnitz

21          agreed that upon the death of Kohn, Defendant and Rechnitz would be reimbursed the

22          premiums that they paid, plus interest on the premiums. Thereafter, Defendant and Rechnitz

23          would split the profits 50/50 of the Kohn Policy, and that Plaintiffs would receive their

24          $1,200,000.00.

25                                       **FRIEDMAN**

26   23.    On 3-1-2010, Defendant on behalf of The Klein Charitable Remainder Unitrust dated

27          2-20-1996 (the "Klein Trust") entered into a Memorandum of Agreement for Joint Venture

28          with Plaintiffs (the "Friedman Memo"). The purpose of the Friedman Memo, was to purchase

1    a $1,500,000.00 life insurance Policy ("Friedman Policy"); American General on the life of

2    Goldie Friedman ("Friedman"). In furtherance of the Friedman Memo, Plaintiffs paid Klein

3    $250,000.00 towards the purchase of the Friedman Policy. Defendant instructed Plaintiffs to

4    make said payments to Defendant's IOLTA - Attorney Client Trust Account. Per the Friedman

5    Memo, Defendant promised to pay the Mermelstein Trust $1,000,000.00 ($250,000.00 and

6    $750,000.00 and all premiums paid of the proceeds).

7   24.   On 4-30-2021, Defendant executed a First Amendment to the Memorandum of Agreement for

8         Joint Venture (Friedman), changing the recipient of the $1,000,000.00 from the Mermelstein

9         Trust to Robert & Esther Mermelstein.

10  25.   Plaintiffs are informed and believe that Defendant apparently sold portions of the Friedman

11        Policy, to the Longevity Fund of NY and partially to the Longevity Fund of Michigan, without

12        Plaintiff's consent.

13  26.   Plaintiffs are informed and believe that Friedman apparently died in 2020, and Defendant

14        collected the Friedman Proceeds, on the Friedman Policy. Defendant concealed this

15        information from Plaintiffs, misappropriated & kept the Friedman Proceeds for himself, and

16        failed to pay Plaintiffs the $1,000,000.00 per the Friedman Memo.

17                                    **ZIMMERMAN**

18  27.   On 8-3-2009, Defendant on behalf of The Klein Charitable Remainder Unitrust dated

19        2-20-1996 (the "Klein Trust") entered into a Memorandum of Agreement for Joint Venture

20        with Plaintiffs (the "Zimmerman Memo"). The purpose of the Zimmerman Memo, was to

21        purchase a $9,000,000.00 life insurance Policy ("Zimmerman Policy"); American General

22        Policy #US 0023738L on the life of Rozy Pearl Zimmerman ("Zimmerman"). In furtherance

23        of the Zimmerman Memo, Plaintiffs paid Defendant $150,000.00 towards the purchase of the

24        Zimmerman Policy. Defendant instructed Plaintiffs to make said payments to Defendant's

25        IOLTA - Attorney Client Trust Account. Per the Zimmerman Memo, Defendant promised to

26        pay the Mermelstein Trust $2,250,000.00.

27  28.   On 4-30-2021, Defendant executed a First Amendment to the Memorandum of Agreement for

28        Joint Venture (Zimmerman), changing the recipient of the $2,250,000.00 from the

1/10-2:04pm

1     Mermelstein Trust to Robert & Esther Mermelstein.

2   29.   Plaintiffs are informed and believe that Defendant paid premiums of the Zimmerman Policy

3       up to 2011. Thereafter, Defendant apparently sold portions or the entirety of the Zimmerman

4       Policy to Life Capital Group, LLC ("LCG") - without Plaintiffs' consent - where Shlomo

5       Yehuda Rechnitz ("Rechnitz") was to resume paying the Zimmerman Policy premiums from

6       2011 onwards. Defendant concealed this information from Plaintiffs.

7   30.   Defendant, as Trustee of the Rozy Pearl Zimmerman Irrevocable Life Insurance Trust (the

8       "Zimmerman Trust") issued three Non-Recourse Promissory Notes (the "Zimmerman Notes")

9       to Plaintiffs secured by the Zimmerman Policy in the amount of $2,357,679.50:

10       a.    Non-Recourse Promissory Notes # 1, principal sum of $1,412,679.53, dated June 15,

11           2011 - due June 15, 2020 (the "$1,412,679.53 Zimmerman Note");

12       b.    Non-Recourse Promissory Notes # 2, principal sum of $570,000.00, dated December

13           7, 2009 - due December 7, 2019 (the: "$570,000.00 Zimmerman Note");

14       c.    Non-Recourse Promissory Notes # 3, principal sum of $375,000.00, dated January 14,

15           2010 - due January 14, 2020 (the "$375,000.00 Zimmerman Note").

16   31.   According to information recently received by Plaintiffs, an unsigned Amended and Restated

17       Limited Liability Company Agreement of Life Capital Group, LLC, Defendant and Rechnitz

18       agreed that upon the death of Zimmerman, Defendant and Rechnitz would be reimbursed the

19       premiums that they paid, plus interest on the premiums. Thereafter, Defendant and Rechnitz

20       would split the profits 50/50 of the Zimmerman Policy, and that Plaintiffs would receive their

21       $2,250,000.00. Defendant concealed this information from Plaintiffs.

22   **PERIODIC PAYMENTS TO PLAINTIFFS FROM DEFENDANT'S IOLTA ACCOUNT**

23   32.   The purpose of the Zimmerman Notes was to pay premiums on the 6 insurance policies

24       (Garza, Ganz, Spitzer, Kohn, Friedman, and Zimmeran). Defendant claimed he would use the

25       interest to pay the premiums.

26   33.   During this entire time, Defendant repeatedly assured Plaintiffs that their investments in the

27       6 policies were secure and accruing interest. Defendant mailed Plaintiffs periodic monthly

28       checks of $5,000.00 issued from Defendant's IOLTA - Attorney Client Trust Account.

**PLAINTIFFS' DISCOVERY OF DEFENDANT'S FRAUD**

34.   On or about 1-21-2021, Plaintiffs discovered the above-referenced frauds and concealment.

35.   On or about 6-22-2022, Defendant wrote Plaintiffs assuring them that their investments were

"secure" when in reality, Defendant sold them off to third parties without Plaintiffs' consent:

I received you e mail and I disagree. I paid in on the Zmerman policy over $1,000,000. The interest for the last 10 years is over $2,300,000 . I also own 25% of the profits. *You are well secured*. You can call me if you have any questions. [Emphasis Added]

36.   On or about 7-18-2022, Defendant wrote Plaintiffs admitting that he used Plaintiffs' monies

from the Friedman Garza and Gans to pay for his legal fees in his lawsuit with Rechnitz.

I got your email. I want to make it very clear we are family and I don't want to fight. I think I can make a deal with Rechnitz because I have the best lawyers in LA. If not we will go to court. I have big leverage on Rechnitz due to the Menlo case. I am not assigning the Zimmerman case to you. *I am using the money from the Friedman Garza and Gans cases for attorney fees in the Rechnitz case*. On Zimmerman Rechnitz and I paid $4,000,000 in premiums but it is return of premium. We also gave Mrs Zimmerman $200,000. I am sure they will sue to get more. It is a big policy and all big policies have big fights. [Emphasis Added]

**PLAINTIFFS' PROOF OF CLAIMS**

37.   Plaintiffs have filed seven (7) *Amended Proofs of Claim* against Defendant totaling

$20,997,706.72, primarily based on Defendant misappropriating insurance policies and the

proceeds, as follows:

| | | |
|---|---|---|
| a. | Claim # 19-1 (Garza) | $ 1,178,219.17 |
| b. | Claim # 20-1 (Times Square) | $   362,556.71 |
| c. | Claim # 21-1 (Ganz) | $ 1,178,219.17 |
| d. | Claim # 22-1 (Spitzer) | $ 2,928,219.17 |
| e. | Claim # 23-1 (Kohn) | $ 2,496,438.34 |
| f. | Claim # 24-1 (Friedman) | $ 2,296,438.34 |
| g. | Claim # 25-2 (Zimmerman) | $10,557,615.81 |
| | **TOTAL:** | **$20,997,706.72** |

///

///

1                          **DEFAULT INTEREST CALCULATION**

2    38.   Pursuant to Bankruptcy Rule 3001(c)(2)(A), interest on the claims has been calculated as

3          follows:

4          a.    *Garza:*

5                Pre-petition interest of 10% on the $500,000.00 from 8-3-2009 until the petition date

6                of 2-22-2023 equals $678,219.17 (4951 days at $136.99 interest/day). The total

7                amount due as of the filing date was $1,178,219.17.

8                Post-petition interest from 2-23-2023 through 1-4-2024 (320 days at $136.99

9                interest/day) comes to $43,835.62.

10               **As of 1-9-2024, the total amount due on the Garza claim is $1,222,054.79.**

11         b.    *Times Square*:

12               Pre-petition interest of 10% on the $333,333.00 from 4-8-2022 until the petition date

13               of 2-22-2023 equals $29,223.71 (320 days at $91.32 interest/day). The total amount

14               due as of the filing date was $362,556.71.

15               Post-petition interest from 2-23-2023 through 1-9-2024 (320 days at $91.32

16               interest/day) comes to $29,223.71.

17               **As of 1-9-2024, the total amount due on the Time Square claim is $391,780.42.**

18         c.    *Ganz:*

19               Pre-petition interest of 10% on the $500,000.00 from 8-3-2009 until the petition date

20               of 2-22-2023 equals $678,219.17 (4951 days at $136.99 interest/day). The total

21               amount due as of the filing date was $1,178,219.17.

22               Post-petition interest from 2-23-2023 through 1-9-2024 (320 days at $136.99

23               interest/day) comes to $43,835.62.

24               **As of 1-9-2024, the total amount due on the Ganz claim is $1,222,054.79.**

25         d.    *Spitzer:*

26               Pre-petition interest of 10% on the $500,000.00 from 8-3-2009 until the petition date

27               of 2-22-2023 equals $678,219.17 (4951 days at $136.99 interest/day). The total

28               amount due as of the filing date was $2,928,219.17.

1    Post-petition interest from 2-23-2023 through 1-9-2024 (320 days at $136.99

2    interest/day) comes to $43,835.62.

3    **As of 1-9-2024, the total amount due on the Spitzer claim is $2,972,054.79.**

4    e.    *Kohn:*

5    Pre-petition interest of 10% on the $1,000,000.00 from 3-10-2010 until the petition

6    date of 2-22-2023 equals $1,296,438.34 (4732 days at $273.97 interest/day). The total

7    amount due as of the filing date was $2,496,438.34.

8    Post-petition interest from 2-23-2023 through 1-9-2024 (320 days at $273.97

9    interest/day) comes to $87,671.23.

10   **As of 1-9-2024, the total amount due on the Kohn claim is $2,584,109.58.**

11   f.    *Friedman*:

12   Pre-petition interest of 10% on the $1,000,000.00 from 3-10-2010 until the petition

13   date of 2-22-2023 equals $1,296,438.34 (4732 days at $$273.97 interest/day). The

14   total amount due as of the filing date was $2,296,438.34.

15   Post-petition interest from 2-23-2023 through 1-9-2024 (320 days at $273.97

16   interest/day) comes to $87,671.23.

17   **As of 1-9-2024, the total amount due on the Friedman claim is $2,384,109.58.**

18   g.    *Zimmerman*:

19   i.    Pre-petition interest of 10% on the *Zimmerman Memo* from 8-3-2009 until the

20          petition date of 2-22-2023 equals $3,051,986.52 (4951 days at $616.44

21          interest/day). The total amount due as of the filing date was $5,301,986.52.

22          Post-petition interest from 2-23-2023 through 1-9-2024 (320 days at $616.44

23          interest/day) comes to $197,260.29.

24          **As of 1-9-2024, the total amount due on the Zimmerman Memo is**

25   **$5,499,246.81.**

26   ii.   Pre-petition interest of 10% on the *$1,412,679.53 Zimmerman Note* from

27          6-15-2011 until the petition date of 2-22-2023 equals $1,652,641.59 (4270

28          days at $387.04 interest/day). The total amount due as of the filing date was

1    $3,065,321.12.

2    Post-petition interest from 2-23-2023 through 1-9-2024 (320 days at $387.04

3    interest/day) comes to $123,851.36.

4    **As of 1-9-2024, the total amount due on the $1,412,679.53 Zimmerman**

5    **Note is $3,189,172.48.**

6    iii.    Pre-petition interest of 10% on the *$570,000.00 Zimmerman Note* from

7    12-7-2009 until the petition date of 2-22-2023 comes to $753,493.23 (4825

8    days at $156.16 interest/day). The total amount due as of the filing date was

9    $1,323,493.23.

10    Post-petition interest from 2-23-2023 through 1-9-2024 (320 days at $156.16

11    interest/day) comes to $49,972.61.

12    **As of 1-9-2024, the total amount due on the $570,000.00 Zimmerman Note**

13    **is $1,373,465.84.**

14    iv.    Pre-petition interest of 10% on the on the *$375,000.00 Zimmerman Note* from

15    1-14-2010 until the petition date of 2-22-2023 comes to $491,814.94 (4787

16    days at $102.74 interest/day). The total amount due as of the filing date was

17    $866,814.94.

18    Post-petition interest from 2-23-2023 through 1-9-2024 (320 days at $102.74

19    interest/day) comes to $32,876.70.

20    **As of 1-9-2024, the total amount due on the $375,000.00 Zimmerman Note**

21    **is $899,691.65.**

22    The total amount due on the Zimmerman claim is $10,961,576.77.

23    39.    The combined the total default amount due for all claims is $21,737,740.70.

24    I declare under penalty of perjury under the laws of the United States, State of California that

25    the foregoing is true and correct.

26    Executed January 10, 2024, at Los Angeles, CA

27    By /s/ Robert Mermelstein
ROBERT MERMELSTEIN

28

1/10-2:04pm

---

**Fill in this information to identify the case:**

Debtor 1    LESLIE KLEIN

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:    Central District of California

Case number    2:23-bk-10990-SK

---

Official Form 410

# Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1:    Identify the Claim

| | | |
|---|---|---|
| 1. Who is the current creditor? | **ROBERT & ESTHER MERMELSTEIN**<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor | |
| 2. Has this claim been acquired from someone else? | ☑ No<br>☐ Yes. From whom? | |
| 3. Where should notices and payments to the creditor be sent?<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**<br><br>BARUCH C. COHEN, ESQ.<br>Name<br>4929 WILSHIRE BOULEVARD, SUITE 940<br>Number    Street<br>LOS ANGELES    CA    90010<br>City    State    ZIP Code<br><br>Contact phone 323-937-4501<br><br>Contact email baruchcohen@baruchcohenesq.com | **Where should payments to the creditor be sent? (if different)**<br><br>Name<br><br>Number    Street<br><br>City    State    ZIP Code<br><br>Contact phone<br><br>Contact email |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one):<br><br>_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | |
| 4. Does this claim amend one already filed? | ☐ No<br>☑ Yes. Claim number on court claims registry (if known) 19 | Filed on 05/02/2023<br>MM / DD / YYYY |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No<br>☐ Yes. Who made the earlier filing? | |

**Part 2:** Give Information About the Claim as of the Date the Case Was Filed

| | |
|---|---|
| 6. Do you have any number you use to identify the debtor? | ☐ No<br>☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _G_ _A_ _R_ _Z_ |

| | |
|---|---|
| 7. How much is the claim? | $ ___1,178,219.17___ . Does this amount include interest or other charges?<br>☐ No<br>☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | |
|---|---|
| 8. What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br>KLEIN MISAPPROPRIATED INSURANCE POLICY PROCEEDS |

| | |
|---|---|
| 9. Is all or part of the claim secured? | ☑ No<br>☐ Yes. The claim is secured by a lien on property.<br><br>**Nature of property:**<br>☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br><br>**Basis for perfection:** _____<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:** $ _____<br>**Amount of the claim that is secured:** $ _____<br>**Amount of the claim that is unsecured:** $ _____ (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:** $ _____<br><br>**Annual Interest Rate** (when case was filed) _____ %<br>☐ Fixed<br>☐ Variable |

| | |
|---|---|
| 10. Is this claim based on a lease? | ☑ No<br>☐ Yes. Amount necessary to cure any default as of the date of the petition. $ _____ |

| | |
|---|---|
| 11. Is this claim subject to a right of setoff? | ☑ No<br>☐ Yes. Identify the property: _____ |

| 12 | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | | |
|---|---|---|---|---|

| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Yes. *Check one:* | | Amount entitled to priority |
|---|---|---|---|
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | | $ _____ |
| | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | | $ _____ |
| | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | | $ _____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | | $ _____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | | $ _____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | | $ _____ |

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:  Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    01/10/2024
                     MM / DD / YYYY

/s/ Baruch C. Cohen, Esq.
_____
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Baruch C. Cohen | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | ATTORNEY FOR DAVID BERGER | | |
| Company | LAW OFFICE OF BARUCH C. COHEN, APLC | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 4929 WILSHIRE BOULEVARD, SUITE 940 | | |
| | Number    Street | | |
| | LOS ANGELES | CA | 90010 |
| | City | State | ZIP Code |
| Contact phone | 323-937-4501 | Email baruchcohen@baruchcohenesq.com | |

1                     **DECLARATION OF ROBERT MERMELSTEIN**

2     I, **ROBERT MERMELSTEIN**, declare and state as follows:

3   1.   The facts stated below are true and correct to the best of my personal knowledge and if called

4       upon to testify to them, I could and would competently do so.

5   2.   This Declaration is in support of the **AMENDED PROOF OF CLAIM** filed by Robert &

6       Esther Mermelstein.

7   3.   My wife Esther and I are the settlors and beneficiaries of the Mermelstein Charitable

8       Remainder Unitrust Dated July 27, 2009, (the " Mermelstein Trust").

9   4.   On 8-3-2009, Leslie Klein ("Klein") on behalf of The Klein Charitable Remainder Unitrust

10      dated 2-20-1996 (the "Klein Trust") entered into a Memorandum of Agreement for Joint

11      Venture (the "Garza Memo").[1]

12   5.   The purpose of the Garza Memo, was to purchase a $1,000,000.00 Life Insurance Policy

13      ("Garza Policy"); American General on the life of Emanuel Garza ("Garza").

14   6.   In furtherance of the Garza Memo, I paid Klein $100,000.00 towards the purchase of the

15      Garza Policy.

16   7.   Per the Garza Memo, Klein promised to pay the Mermelstein Trust $500,000.00 ($400,000.00

17      plus return of premiums paid; plus $100,000.00).

18   8.   On 4-30-2021, Klein executed a First Amendment to the Memorandum of Agreement for Joint

19      Venture (Garza), changing the recipient of the $500,000.00 from the Mermelstein Trust to

20      Robert & Esther Mermelstein.[2]

21   9.   Klein apparently sold 50% to the Garza Policy, to the Longevity Fund of NY and partially to

22      the Longevity Fund of Michigan.

23   10.   Garza apparently died in 2018, and on or about 7-2-2018, Klein collected the Garza Proceeds,

24

---

25        [1]A true and correct copy of the Garza Memo is attached hereto as Exhibit "1" and is

26 incorporated herein by this reference.

27        [2]A true and correct copy of the First Amendment to the Garza Memo, is attached hereto as
Exhibit "2" and is incorporated herein by this reference.

28

I/10-11:28am

1    on the Garza Policy. Klein concealed this information from me, misappropriated & kept the

2    Garza Proceeds for himself, and failed to pay me the $500,00.00 per the Garza Memo.

3                              **INTEREST CALCULATION**

4    11.    Pursuant to Bankruptcy Rule 3001(c)(2)(A), interest of 10% on the $500,000.00 from

5    8-3-2009 until the petition date of 2-22-2023 comes to $678,219.17 (4951 days at $136.99

6    interest/day). The total amount due as of the filing date was $1,178,219.17.

7

8    I declare under penalty of perjury under the laws of the United States, States of California and

9    of New York that the foregoing is true and correct.

10    Executed January 10, 2024, at Brooklyn, New York

11                                      By     /s/ Robert Mermelstein
                                        ROBERT MERMELSTEIN
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1/10-11:28am

## Garza

| Principle | Default Date | Per diem | # of Days | 10% Int | Total POC |
|---|---|---|---|---|---|
| $500,000.00 | 8/3/2009 | $136.99 | 4951 | $678,219.17 | $1,178,219.17 |

EXHIBIT "1"

# MEMORANDUM OF AGREEMENT FOR JOINT VENTURE

Joint Venturer:     **THE MERMELSTEIN CHARITABLE REMAINDER UNITRUST
DATED July 27, 2009**

Joint Venturer:     **The Klein Charitable Remainder Unitrust Dated 2-20-1996**

## ARTICLE I. INTRODUCTION

Section 1.1

The purpose of this document is to confirm our mutual understanding and agreement
concerning the purchase of a life insurance Policy; American General Policy Number: US
0016752L on the life of **MARJORIE GARZA.**

We have reached an agreement on the essential elements of the joint venture.  This
document memorializes our agreement.

This document constitutes a fully binding and enforceable joint venture agreement
between us, on the terms and conditions set forth herein.

## ARTICLE II. PURPOSE OF JOINT VENTURE

Section 2.1

The purpose of the joint venture shall be to maintain said above described policy.

## ARTICLE III. DUTIES AND OBLIGATIONS

Section 3.1

Duties of the Parties: Each of us has agreed that we will make all the premium payments
necessary to keep the life insurance policy in force.  In the event one of the joint venturers fail to
make said payment, the other joint venturers shall have the option to make the payment for him
and charge either 13% interest or receive the pro-rated share of the defaulting parties' share of
the profits.

## ARTICLE IV. CAPITAL CONTRIBUTIONS

Page 1 of 4

Section 4.1

    Capital Contributions: Each of us has contributed the necessary capital contribution.

## ARTICLE V. MANAGEMENT STRUCTURE

Section 5.1

    Management by Committee: The joint venture shall be managed by Leslie Klein.
Trustee.

## ARTICLE VI. ASSIGNMENT

Section 6.1

    Each party shall have the right to assign his interest.

## ARTICLE VII. DISTRIBUTIONS OF EARNINGS AND PROFITS

Section 7.1

    Distribution of Profits: Distribution shall be as follows:

**THE MERMELSTEIN CHARITABLE REMAINDER UNITRUST DATED July 27, 2009
shall receive $400,000 plus return of premiums paid; plus $100,000 paid
The balance shall go to The Klein Charitable Remainder Unitrust Dated 2-20-1996**

## ARTICLE VIII. TERM

Section 8.1

    Term and Termination: This Agreement shall expire upon the death of **MARJORIE
GARZA.**

## ARTICLE IX. CONFIDENTIALITY

Section 9.1

    Definitions: For the purpose of this Agreement, "Proprietary Information" shall include
all information designated by any joint venturer, either orally or in writing, as confidential or
proprietary, or that reasonably would be considered proprietary or confidential to the business
contemplated by this Agreement.

## X. TRANSFERS

Section 10.1

Any transfer or assignment of any party's interest in the joint venture or its profits shall be subject to the rights and obligations under this Agreement except with the express written consent of the other parties.

## XI. ARBITRATION

Section 11.1

The assignment of specific duties and authority to the respective parties is made under this Agreement with the intent to avoid major differences among the parties in the conduct of the joint venture. The parties intend that the terms of this Agreement shall control the parties' authority and decisions with respect to operations of the joint venture. As to matters not specifically controlled by the terms of this Agreement however, the parties agree to submit the determination thereof to arbitration and shall be governed by California law.

## XII. INSOLVENCY OR BANKRUPTCY OF PARTY

Section 12.1

If, during the term of this Agreement, a party to this Agreement should become insolvent or bankrupt, the remaining parties shall have the option to mutually agree to continue the joint venture, excluding the insolvent or bankrupt party, on payment to such party (or to such person or persons as a court of competent jurisdiction shall direct), such party's contribution to the capital assets of the venture less accrued expenses and the further payment of any accrued profits attributable to such contribution. If the remaining parties do not mutually agree to continue the joint venture, it shall be dissolved and wound up in accordance with the provisions effective under this Agreement on its termination.

## XIII. EFFECTIVE DATE AND TERM

Section 13.1

Effective Date: The effective date of this Agreement shall be August 3, 2009

*SIGNATURES APPEAR ON THE FOLLOWING PAGE*

**THE MERMELSTEIN CHARITABLE REMAINDER UNITRUST DATED July 27, 2009**

DATED: _8/3/09_          By: _____
                              **LESLIE KLEIN - Trustee**


DATED: _8/3/09_          **THE KLEIN CHARITABLE REMAINDER
                         UNITRUST dated 2-20-1996**

                         By: _____
                              **KENNETH KLEIN, Trustee**
                              Joint Venturer

**EXHIBIT "2"**

**FIRST AMENDMENT
TO
MEMORANDUM OF AGREEMENT FOR JOINT VENTURE**

Joint Venturer:      **THE MERMELSTEIN CHARITABLE REMAINDER UNITRUST
DATED July 27, 2009**

Joint Venturer:      **The Klein Charitable Remainder Unitrust Dated 2-20-1996**

life insurance Policy: American General Policy Number: US 0016752L on the life of
**MARJORIE GARZA.**

**I, LESLIE KLEIN, state as follows:**

**That I transfer the interest of THE MERMELSTEIN CHARITABLE
REMAINDER UNITRUST DATED July 27, 2009 to ROBERT MERMELSTEIN AND
ESTI MERMELSTEIN**

Dated: _____

_____
**LESLIE KLEIN**

                     **Trustee of
The Mermelstein Charitable Remainder Unitrust
Dated July 27, 2009**

Page 1 of 1

<table>
<tr><td colspan="2"><strong>Fill in this information to identify the case:</strong></td></tr>
<tr><td>Debtor 1</td><td>LESLIE KLEIN</td></tr>
<tr><td>Debtor 2<br>(Spouse, if filing)</td><td></td></tr>
<tr><td>United States Bankruptcy Court for the:</td><td>Central District of California</td></tr>
<tr><td>Case number</td><td>2:23-bk-10990-SK</td></tr>
</table>

Official Form 410

# Proof of Claim

04/22

**Read the instructions before filling out this form.** This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1:   Identify the Claim

**1. Who is the current creditor?**

ROBERT & ESTHER MERMELSTEIN
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

BARUCH C. COHEN, ESQ.
Name

4929 WILSHIRE BOULEVARD, SUITE 940
Number   Street

LOS ANGELES   CA   90010
City   State   ZIP Code

Contact phone 323-937-4501

Contact email baruchcohen@baruchcohenesq.com

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

Where should payments to the creditor be sent? (if different)

Name

Number   Street

City   State   ZIP Code

Contact phone

Contact email

**4. Does this claim amend one already filed?**

☐ No
☑ Yes. Claim number on court claims registry (if known) 20      Filed on 05/02/2023
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing?

**Part 2:** **Give Information About the Claim as of the Date the Case Was Filed**

| 6 | Do you have any number you use to identify the debtor? | ☐ No<br>☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: __T__ __I__ __M__ __E__ |
|---|---|---|

| 7 | How much is the claim? | $ _____ 362,556.71 Does this amount include interest or other charges?<br>☐ No<br>☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |
|---|---|---|

| 8 | What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card<br><br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br><br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br>KLEIN MISAPPROPRIATED INSURANCE POLICY PROCEEDS |
|---|---|---|

| 9 | Is all or part of the claim secured? | ☑ No<br>☐ Yes. The claim is secured by a lien on property.<br><br>**Nature of property:**<br>☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br><br>**Basis for perfection:** _____<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:** $ _____<br>**Amount of the claim that is secured:** $ _____<br>**Amount of the claim that is unsecured:** $ _____ (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:** $ _____<br><br>**Annual Interest Rate** (when case was filed) _____ %<br>☐ Fixed<br>☐ Variable |
|---|---|---|

| 10 | Is this claim based on a lease? | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ |
|---|---|---|

| 11 | Is this claim subject to a right of setoff? | ☑ No<br>☐ Yes. Identify the property: _____ |
|---|---|---|

12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:   Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   01/10/2024
                   MM / DD / YYYY

/s/ Baruch C. Cohen, Esq.
_____
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Baruch C. Cohen | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | ATTORNEY FOR DAVID BERGER | | |
| Company | LAW OFFICE OF BARUCH C. COHEN, APLC | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 4929 WILSHIRE BOULEVARD, SUITE 940 | | |
| | Number          Street | | |
| | LOS ANGELES | CA | 90010 |
| | City | State | ZIP Code |
| Contact phone | 323-937-4501 | Email | baruchcohen@baruchcohenesq.com |

## DECLARATION OF ROBERT MERMELSTEIN

I, **ROBERT MERMELSTEIN**, declare and state as follows:

1. The facts stated below are true and correct to the best of my personal knowledge and if called upon to testify to them, I could and would competently do so.

2. This Declaration is in support of the **AMENDED PROOF OF CLAIM** filed by Robert & Esther Mermelstein.

3. A true and correct copy of the 7-16-2012 Non-Recourse Promissory Note, in the amount of $333,333.00, due and payable by 7-16-2013, by Leslie Klein ("Klein") on behalf of the Times Square Media Inc., containing a "*Heter Iska*" document (an approved way of restructuring a loan or debt so that it becomes an investment instead of a loan, per *Halacha* - Jewish law).

## INTEREST CALCULATION

4. Pursuant to Bankruptcy Rule 3001(c)(2)(A), interest of 10% on the $333,333.00 from 4-8-2022 until the petition date of 2-22-2023 comes to $29,223.71 (320 days at $91.32 interest/day). The total amount due as of the filing date was $362,556.71.

I declare under penalty of perjury under the laws of the United States, States of California and of New York that the foregoing is true and correct.

Executed January 10, 2024, at Brooklyn, New York

By    /s/ Robert Mermelstein
ROBERT MERMELSTEIN

1/10-11:29am

## Times

| Principle | Default Date | Per diem | # of Days | 10% Int | Total POC |
|-----------|--------------|----------|-----------|---------|-----------|
| $333,333.00 | 4/8/2022 | $91.32 | 320 | $29,223.71 | $362,556.71 |

Case 2:23-ap-01169-SK    Doc 60    Filed 01/19/24    Entered 01/19/24 15:26    Page 3 of
Main Document 12    Page 55 of 180

# EXHIBIT "1"

## NON-RECOURSE PROMISSORY NOTE

| | | |
|---|---|---|
| **Principal Sum:** | $333,333.00 | **July 16, 2012** |
| **Due Date:** | **July 16, 2013** | **State of California** |

**FOR VALUE RECEIVED,** the undersigned, **LESLIE KLEIN** as Trustee of **THE TIMES SQUARE MEDIA INC.** with offices at 14245 Ventura Boulevard, Sherman Oaks, California (the "Borrower"), hereby promises to pay to **ESTI and ROBERT MERMELSTEIN** or his registered assigns (the "Holder"), the principal sum of **$333,333.00**, plus interest of **12%** and all costs, fees and expenses (including without limitation reasonable attorneys' fees and disbursements) that the Holder incurs in order to collect any amount due under this Note, to negotiate or document a workout or restructuring, or to preserve its rights or realize upon any security for the payment of this Note now or hereafter granted ("Expenses").

**Security Agreement; Collateral Assignments.** This Note is a secured, non-recourse promissory note, secured by the policies of life insurance on the live(s) of the individual(s) above named. Pursuant to and in accordance with this agreement this Note is secured by the borrower and the borrower has granted to the lender a continuing first priority security interest in the policies and the proceeds thereof pursuant to this agreement.

**"Policy"** means any of, and **"Policies"** means all of, the life insurance policies listed on the attached Schedule "A".

**Additional Advances.** In the event that Holder makes any payment of additional premiums, adjustments to premiums or other required payments on or under any Policy or Policies on Borrower's behalf, the amount of any such advances automatically shall be deemed to be, and shall be, added to the outstanding principal balance of this Note as of the date of such advance and shall earn interest from such date.

**Interest Rate.** The outstanding principal balance of this Note shall earn interest, calculated on the basis of a 360-day year comprised of twelve 30-day months, from the date hereof until the date all amounts due hereunder are paid in full, at the rate of 12 % percent per annum.

**Payment.** The entire principal balance hereof, together with an interest accrued thereon, shall be due and payable on **July 16, 2013**, or at such time, if earlier, as the Holder has accelerated the maturity of the Note after the occurrence and during the continuation of an Event of Default under this Note or any of the other Loan Agreements. Payment shall be made in immediately available United States funds at such address as the Holder may specify in writing.

**Prepayment.** The Borrower, upon not less than three business days prior written notice, may prepay the outstanding principal amount of this Note, in whole or in part, together with accrued and unpaid interest on the principal amount so prepaid, without premium, penalty or fee.

**Events of Default.**

Each of the following events also shall constitute an "Event of Default":

      (i)     Borrower fails to pay any additional premiums or adjustments to premiums or other required payments on any Policy or Policies to which this Note relates to the Issuer thereof when due. notwithstanding payment of such amounts by Holder; and

      (ii)    Borrower fails to repay any monies advanced to it by Holder in connection with any Policy or Policies to which this Note relates by the Maturity Date.

**Following an Event of Default.**

      Upon the happening of an Event of Default, the Holder, at its option and in its sole discretion. may accelerate the due date of this Note by notice to the Borrower to such effect, effective immediately, and thereupon the entire unpaid principal balance on or under this Note. together with all interest accrued and unpaid hereon and all Expenses, shall be immediately due and payable.

**Waivers.** The Borrower hereby waives. to the fullest extent permitted by law, presentment. demand, protest and notices, including, without limitation. notices of nonperformance, notices of protest. notices of nonpayment, notices of dishonor. notices of the delivery or acceptance of this Note, and notices of the existence. creation or incurrence of new or additional obligations of the Borrower to the Holder. and all other defenses which otherwise might be available. Borrower acknowledges that the Holder has been induced to enter into this Note by, among other things. the provisions of this Section. No delay or failure by the Holder to exercise any right or remedy shall operate as a waiver thereof, and no single or partial exercise by the Holder of any right or remedy shall preclude any other or further exercise thereof.

**Non-Recourse.** Notwithstanding anything to the contrary in this Note, the Borrower's liability to the Holder under this Note shall be limited exclusively to the extent of the lenders'security interests in the Policy or Policies. the proceeds thereof. If any proceedings shall be brought to enforce the provisions of this Note. the Holder shall have recourse hereunder against the Borrower only to the extent of the Borrower's interest in the Policy or Policies. The Holder's sole recourse shall be to exercise its rights under this Note, and the Loan Agreements as to the Policy or Policies. the proceeds thereof. Neither the Borrower nor any of its trustees, fiduciaries or beneficiaries shall be personally liable or otherwise have any obligation hereunder.

**Retention of Policies.** Borrower expressly acknowledges and agrees that the satisfaction of its obligations under this Note shall not discharge. excuse, impair or terminate Holder's or its designee's rights in and to the related Policy or Policies under the Loan Agreements or any other

agreement contemplated thereby.

**Assignment; Registration.** This Note may not be assigned by the Borrower without the prior written consent of the Holder. The Holder may assign or otherwise transfer this Note. This Note is a registered Note. Upon surrender of this Note for transfer, duly endorsed, or accompanied by a written instrument of transfer duly executed. by the Holder or the Holder's attorney duly authorized. in writing, a new Note for a like principal amount will be issued to the transferee. Prior to such surrender, the Borrower shall treat the person to whom such Note is issued as the owner thereof for the purpose of receiving payment and for all other purposes, and the Borrower will not be affected by any notice to the contrary.

**Miscellaneous.** All rights and remedies of the Holder under applicable law and this Note or amendment of any provision of this Note are cumulative and not exclusive. If a court deems any provision of this Note invalid, the remainder of the Note shall remain in effect.

**Notices.** Any notice or demand hereunder shall be duly given if delivered or mailed to the Borrower at its address on page one. Such notice or demand shall be effective. if delivered, upon personal delivery or, if mailed, four business days after deposit in an official depository maintained by the United States Post Office for the collection of mail or one business day after delivery to a nationally recognized courier service for overnight delivery. Notice by e-mail is not valid notice under this Note.

**Governing Law; Jurisdiction.** THIS NOTE HAS BEEN DELIVERED TO AND ACCEPTED BY HOLDER IN. AND WILL BE DEEMED TO BE MADE AND TO BE PERFORMED WHOLLY WITHIN. THE STATE OF CALIFORNIA , AND SHALL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF SUCH STATE. EXCLUDING ITS CONFLICT OF LAWS RULES. BORROWER IRREVOCABLY CONSENTS TO THE SOLE AND EXCLUSIVE JURISDICTION OF THE STATE AND FEDERAL COURTS LOCATED IN THE COUNTY, CITY AND STATE OF CALIFORNIA IN CONNECTION WITH ANY ACTION OR PROCEEDINGS ARISING OUT OF OR RELATING TO THIS NOTE, AND HEREBY WAIVES THE RIGHT TO MOVE TO CHANGE VENUE OR ASSERT INCONVENIENT FORUM. IN ANY SUCH ACTION. BORROWER SHALL. AND HEREBY IRREVOCABLY DOES WAIVE ANY RIGHT TO A TRIAL BY JURY. In any action or proceeding on or under this Note, the Borrower waives service of any summons. complaint or other process, and agrees that service thereof shall be deemed made when first received, by personal service, or after having been mailed by certified or registered mail. return receipt requested, and mailed to the last known address of the Borrower. The Borrower waives (i) any right to assert any counterclaim or setoff or any defense based upon a statute of limitations. upon a claim of laches or any other legal theory; and (ii) its right to attack a final judgment that is

obtained as a direct or indirect result of any action on or under this Note.

THE TIMES SQUARE MEDIA INC.

By: _____

LESLIE KLEIN

Name                                    Title

STATE OF CALIFORNIA          )
                             )    ss
COUNTY OF LOS ANGELES        )

       On July 16, 2012 before me, **KENNETH KLEIN** a Notary Public in and for said County and State, personally appeared **LESLIE KLEIN**, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

Signature: _____

NOTARY PUBLIC IN AND FOR SAID COUNTY

                  | SEAL |



KENNETH K. KLEIN
COMM. # 1968495
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
My Comm. Exp. Feb. 3, 2016

## Heter Iskoh

I, the undersigned, **LESLIE KLEIN** as Trustee of **THE TIMES SQUARE MEDIA INC.** hereby acknowledge the receipt of **$333,333.00** from **ESTI and ROBERT MERMELSTEIN** with which to do business for a term of **one (1) year** from the date recorded below ("term"), and I obligate myself to purchase with the aforementioned sum such merchandise or goods of any kind as may seem likely to profit therefrom.

This money shall take precedence over my own money. As regards all the profit that Hashem may grant me in connection with this merchandise, half thereof shall belong to me, and the other half to **ESTI and ROBERT MERMELSTEIN.**

Both parties shall also equally share the losses, G-d forbid. At the expiration of the term, I obligate myself to return promptly to **ESTI and ROBERT MERMELSTEIN** the principle and one-half of the profit. My word shall not be accepted as true unless it is substantiated by two trustworthy witnesses, and as regards the profits, I shall only be trusted by taking an oath.

It is moreover agreed that if I desire to give **12%** of the principle, in lieu of his share of the profit, he relinquishes his rights of verification by oath, and the balance of the profit, if any, shall belong to me alone, even if his share of the profits far exceeded the aforementioned rate.

All the stipulations relating to the credibility of my statements shall remain in effect after the expiration of the term as long as I do not return the aforementioned principle amount. I acknowledge that I received consideration of one dollar for my labor.

Though loan papers have been drawn on this transaction which indicate interest payments, this document clarifies that in fact it is for return on investment or payment to

release from an oath regarding verification of profit. It has been written in the form of a
loan to expedite its execution.


Dated: July 16, 2012


                               THE TIMES SQUARE MEDIA INC.

By:

                               LESLIE KLEIN


_____
        (Witness)
                                      Mary Ann Newman
                                         (Witness)

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | LESLIE KLEIN |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Central District of California |
| Case number | 2:23-bk-10990-SK |

Official Form 410

# Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1:  Identify the Claim

| | | |
|---|---|---|
| 1. | Who is the current creditor? | **ROBERT & ESTHER MERMELSTEIN** <br> Name of the current creditor (the person or entity to be paid for this claim) <br><br> Other names the creditor used with the debtor _____ |
| 2. | Has this claim been acquired from someone else? | ☑ No <br> ☐ Yes. From whom? _____ |

3. Where should notices and payments to the creditor be sent?

   Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

   **Where should notices to the creditor be sent?**

   BARUCH C. COHEN, ESQ.
   Name

   4929 WILSHIRE BOULEVARD, SUITE 940
   Number     Street

   LOS ANGELES     CA     90010
   City          State      ZIP Code

   Contact phone  323-937-4501

   Contact email  baruchcohen@baruchcohenesq.com

   **Where should payments to the creditor be sent? (if different)**

   Name

   Number     Street

   City          State      ZIP Code

   Contact phone

   Contact email

   Uniform claim identifier for electronic payments in chapter 13 (if you use one):

   _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

| | | |
|---|---|---|
| 4. | Does this claim amend one already filed? | ☐ No <br> ☑ Yes.  Claim number on court claims registry (if known) 21 ____    Filed on 05/02/2023 <br> MM / DD / YYYY |
| 5. | Do you know if anyone else has filed a proof of claim for this claim? | ☑ No <br> ☐ Yes.  Who made the earlier filing? _____ |

**Part 2:**    **Give Information About the Claim as of the Date the Case Was Filed**

6. Do you have any number you use to identify the debtor?

  ☐ No

  ☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:   G   A   N   Z

7. How much is the claim?    $     1,178,219.17 . Does this amount include interest or other charges?

    ☐ No

    ☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. What is the basis of the claim?

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

KLEIN MISAPPROPRIATED INSURANCE POLICY PROCEEDS

9. Is all or part of the claim secured?

  ☑ No

  ☐ Yes. The claim is secured by a lien on property.

    **Nature of property:**

    ☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

    ☐ Motor vehicle

    ☐ Other. Describe: _____

    **Basis for perfection:** _____

    Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

    Value of property:      $_____

    Amount of the claim that is secured:    $_____

    Amount of the claim that is unsecured: $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

    Amount necessary to cure any default as of the date of the petition:    $_____

    Annual Interest Rate (when case was filed)_____%

    ☐ Fixed

    ☐ Variable

10. Is this claim based on a lease?

  ☑ No

  ☐ Yes. **Amount necessary to cure any default as of the date of the petition.**    $_____

11. Is this claim subject to a right of setoff?

  ☑ No

  ☐ Yes. Identify the property: _____

12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. Check one:                                                                    Amount entitled to priority

☐ Domestic support obligations (including alimony and child support) under
11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).                                               $ _____

☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for
personal, family, or household use. 11 U.S.C. § 507(a)(7).                           $ _____

☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the
bankruptcy petition is filed or the debtor's business ends, whichever is earlier.
11 U.S.C. § 507(a)(4).                                                               $ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).             $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).                 $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies.                 $ _____

* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:   Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.
18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   01/10/2024
                   MM / DD / YYYY

/s/ Baruch C. Cohen, Esq.
_____
Signature

Print the name of the person who is completing and signing this claim:

| | | | |
|---|---|---|---|
| Name | Baruch C. Cohen | | |
| | First name | Middle name | Last name |
| Title | ATTORNEY FOR DAVID BERGER | | |
| Company | LAW OFFICE OF BARUCH C. COHEN, APLC | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 4929 WILSHIRE BOULEVARD, SUITE 940 | | |
| | Number        Street | | |
| | LOS ANGELES | CA | 90010 |
| | City | State | ZIP Code |
| Contact phone | 323-937-4501 | Email | baruchcohen@baruchcohenesq.com |

## DECLARATION OF ROBERT MERMELSTEIN

I, **ROBERT MERMELSTEIN**, declare and state as follows:

1. The facts stated below are true and correct to the best of my personal knowledge and if called upon to testify to them, I could and would competently do so.

2. This Declaration is in support of the **AMENDED PROOF OF CLAIM** filed by Robert & Esther Mermelstein.

3. My wife Esther and I are the settlors and beneficiaries of the Mermelstein Charitable Remainder Unitrust Dated July 27, 2009, (the " Mermelstein Trust").

4. On 8-3-2009, Leslie Klein ("Klein") on behalf of The Klein Charitable Remainder Unitrust dated 2-20-1996 (the "Klein Trust") entered into a Memorandum of Agreement for Joint Venture (the "Ganz Memo").[1]

5. The purpose of the Ganz Memo, was to purchase a $1,000,000.00 Life Insurance Policy ("Ganz Policy"); American General on the life of Emanuel Ganz ("Ganz").

6. In furtherance of the Ganz Memo, I paid Klein $100,000.00 towards the purchase of the Ganz Policy.

7. Per the Ganz Memo, Klein promised to pay the Mermelstein Trust $500,000.00 ($400,000.00 plus return of premiums paid; plus $100,000.00).

8. On 4-30-2021, Klein executed a First Amendment to the  Memorandum of Agreement for Joint Venture (Ganz), changing the recipient of the $500,000.00 from the Mermelstein Trust to Robert & Esther Mermelstein.[2]

9. Klein apparently sold 50% to the Ganz Policy, to the Longevity Fund of NY and partially to the Longevity Fund of Michigan.

10. Ganz apparently died in 2018, and on or about 7-2-2018, Klein collected the Ganz Proceeds,

---

[1]A true and correct copy of the Ganz Memo is attached hereto as Exhibit "1" and is incorporated herein by this reference.

[2]A true and correct copy of the First Amendment to the Ganz Memo, is attached hereto as Exhibit "2" and is incorporated herein by this reference.

1/10-11:29am

1  on the <u>Ganz Policy</u>. Klein concealed this information from me, misappropriated & kept the

2  <u>Ganz Proceeds</u> for himself, and failed to pay me the $500,00.00 per the <u>Ganz Memo</u>.

3  **INTEREST CALCULATION**

4  11.  Pursuant to Bankruptcy Rule 3001(c)(2)(A), interest of 10% on the $500,000.00 from

5  8-3-2009 until the petition date of 2-22-2023 comes to $678,219.17 (4951 days at $136.99

6  interest/day). The total amount due as of the filing date was $1,178,219.17.

7

8  I declare under penalty of perjury under the laws of the United States, States of California and

9  of New York that the foregoing is true and correct.

10  Executed January 10, 2024, at Brooklyn, New York

11  By ___*/s/ Robert Mermelstein*___
       ROBERT MERMELSTEIN
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1/10-11:29am

## Ganz

| Principle | Default Date | Per diem | # of Days | 10% Int | Total POC |
|---|---|---|---|---|---|
| $500,000.00 | 8/3/2009 | $136.99 | 4951 | $678,219.17 | $1,178,219.17 |

Case 2:23-ap-01169-SK    Doc 57    Filed 01/16/24    Entered 01/16/24 15:26    Page 3 of
Main Document    Page 144 of 473

EXHIBIT "1"

# MEMORANDUM OF AGREEMENT FOR JOINT VENTURE

Joint Venturer: **THE MERMELSTEIN CHARITABLE REMAINDER UNITRUST DATED July 27, 2009**

Joint Venturer: **The Klein Charitable Remainder Unitrust Dated 2-20-1996**

## ARTICLE I. INTRODUCTION

Section 1.1

The purpose of this document is to confirm our mutual understanding and agreement concerning the purchase of a life insurance Policy; American General on the life of **EMANUEL GANZ.**

We have reached an agreement on the essential elements of the joint venture. This document memorializes our agreement.

This document constitutes a fully binding and enforceable joint venture agreement between us, on the terms and conditions set forth herein.

## ARTICLE II. PURPOSE OF JOINT VENTURE

Section 2.1

The purpose of the joint venture shall be to maintain said above described policy.

## ARTICLE III. DUTIES AND OBLIGATIONS

Section 3.1

Duties of the Parties: Each of us has agreed that we will make all the premium payments necessary to keep the life insurance policy in force. In the event one of the joint venturers fail to make said payment, the other joint venturers shall have the option to make the payment for him and charge either 13% interest or receive the pro-rated share of the defaulting parties' share of the profits.

## ARTICLE IV. CAPITAL CONTRIBUTIONS

Page 1 of 4

Section 4.1

     Capital Contributions: Each of us has contributed the necessary capital contribution.

## ARTICLE V. MANAGEMENT STRUCTURE

Section 5.1

     Management by Committee: The joint venture shall be managed by Leslie Klein.
Trustee.

## ARTICLE VI. ASSIGNMENT

Section 6.1

     Each party shall have the right to assign his interest.

## ARTICLE VII. DISTRIBUTIONS OF EARNINGS AND PROFITS

Section 7.1

     Distribution of Profits: Distribution shall be as follows:


**THE MERMELSTEIN CHARITABLE REMAINDER UNITRUST DATED July 27, 2009
shall receive $400,000 plus return of premiums paid; plus $100,000 paid
The balance shall go to The Klein Charitable Remainder Unitrust Dated 2-20-1996**

## ARTICLE VIII. TERM

Section 8.1

     Term and Termination: This Agreement shall expire upon the death of **EMANUEL
GANZ.**

## ARTICLE IX. CONFIDENTIALITY

Section 9.1

     Definitions: For the purpose of this Agreement, "Proprietary Information" shall include
all information designated by any joint venturer, either orally or in writing, as confidential or
proprietary, or that reasonably would be considered proprietary or confidential to the business
contemplated by this Agreement.

## X. TRANSFERS

Section 10.1

Any transfer or assignment of any party's interest in the joint venture or its profits shall be subject to the rights and obligations under this Agreement except with the express written consent of the other parties.

## XI. ARBITRATION

Section 11.1

The assignment of specific duties and authority to the respective parties is made under this Agreement with the intent to avoid major differences among the parties in the conduct of the joint venture. The parties intend that the terms of this Agreement shall control the parties' authority and decisions with respect to operations of the joint venture. As to matters not specifically controlled by the terms of this Agreement however, the parties agree to submit the determination thereof to arbitration and shall be governed by California law.

## XII. INSOLVENCY OR BANKRUPTCY OF PARTY

Section 12.1

If, during the term of this Agreement, a party to this Agreement should become insolvent or bankrupt, the remaining parties shall have the option to mutually agree to continue the joint venture, excluding the insolvent or bankrupt party, on payment to such party (or to such person or persons as a court of competent jurisdiction shall direct), such party's contribution to the capital assets of the venture less accrued expenses and the further payment of any accrued profits attributable to such contribution. If the remaining parties do not mutually agree to continue the joint venture, it shall be dissolved and wound up in accordance with the provisions effective under this Agreement on its termination.

## XIII. EFFECTIVE DATE AND TERM

Section 13.1

Effective Date: The effective date of this Agreement shall be August 3, 2009

### SIGNATURES APPEAR ON THE FOLLOWING PAGE

Page 3 of 4

**THE MERMELSTEIN CHARITABLE
REMAINDER UNITRUST DATED July 27,
2009**

DATED: 8/3/09

By:

LESLIE KLEIN - Trustee

Joint Venturers

DATED: 8/3/09

**THE KLEIN CHARITABLE REMAINDER
UNITRUST dated 2-20-1996**

By:

**KENNETH KLEIN, Trustee**
Joint Venturer

EXHIBIT "2"

## FIRST AMENDMENT
## TO
## MEMORANDUM OF AGREEMENT FOR JOINT VENTURE

Joint Venturer:    **THE MERMELSTEIN CHARITABLE REMAINDER UNITRUST
DATED July 27, 2009**

Joint Venturer:    **The Klein Charitable Remainder Unitrust Dated 2-20-1996**

Life insurance Policy: American General on the life of **EMANUEL GANZ.**

I, **LESLIE KLEIN,** state as follows:

That I transfer the interest of **THE MERMELSTEIN CHARITABLE
REMAINDER UNITRUST DATED July 27, 2009 to ROBERT MERMELSTEIN AND
ESTI MERMELSTEIN**

Dated: ___4/30/2021___

_____
**LESLIE KLEIN**
                                    **Trustee of**
                        **The Mermelstein Charitable Remainder Unitrust
Dated July 27, 2009**

Page 1 of 1

| Fill in this information to identify the case: | |
|---|---|
| Debtor 1 | LESLIE KLEIN |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Central District of California |
| Case number | 2:23-bk-10990-SK |

Official Form 410

# Proof of Claim

04/22

**Read the instructions before filling out this form.** This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1: Identify the Claim

| | | |
|---|---|---|
| 1. **Who is the current creditor?** | **ROBERT & ESTHER MERMELSTEIN** | |
| | Name of the current creditor (the person or entity to be paid for this claim) | |
| | Other names the creditor used with the debtor | |
| 2. **Has this claim been acquired from someone else?** | ☑ No<br>☐ Yes. From whom? | |
| 3. **Where should notices and payments to the creditor be sent?**<br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Where should notices to the creditor be sent?<br><br>**BARUCH C. COHEN, ESQ.**<br>Name<br>**4929 WILSHIRE BOULEVARD, SUITE 940**<br>Number     Street<br>**LOS ANGELES     CA     90010**<br>City          State     ZIP Code<br><br>Contact phone 323-937-4501<br><br>Contact email baruchcohen@baruchcohenesq.com<br><br>Uniform claim identifier for electronic payments in chapter 13 (if you use one): | Where should payments to the creditor be sent? (if different)<br><br>Name<br><br>Number     Street<br><br>City          State     ZIP Code<br><br>Contact phone<br><br>Contact email |
| 4. **Does this claim amend one already filed?** | ☐ No<br>☑ Yes.  Claim number on court claims registry (if known) 22 | Filed on 05/02/2023<br>MM / DD / YYYY |
| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No<br>☐ Yes.  Who made the earlier filing? | |

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |

6. **Do you have any number you use to identify the debtor?**

☐ No

☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:   __S__   __P__   __I__   __T__

7. **How much is the claim?**   $ _____2,928,219.17   **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

KLEIN MISAPPROPRIATED INSURANCE POLICY PROCEEDS

9. **Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:   $ _____

Amount of the claim that is secured:   $ _____

Amount of the claim that is unsecured:   $ _____   (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:   $ _____

Annual Interest Rate (when case was filed) _____%

☐ Fixed

☐ Variable

10. **Is this claim based on a lease?**

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition.   $ _____

11. **Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. Check one:

|  |  | Amount entitled to priority |
|---|---|---|
| ☐ | Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ | Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ | Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ | Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ | Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ | Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    01/10/2024
              MM / DD / YYYY

/s/ Baruch C. Cohen, Esq.
Signature

Print the name of the person who is completing and signing this claim:

| Name | Baruch C. Cohen | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | ATTORNEY FOR DAVID BERGER | | |
| Company | LAW OFFICE OF BARUCH C. COHEN, APLC | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 4929 WILSHIRE BOULEVARD, SUITE 940 | | |
| | Number    Street | | |
| | LOS ANGELES | CA | 90010 |
| | City | State | ZIP Code |
| Contact phone | 323-937-4501 | Email | baruchcohen@baruchcohenesq.com |

# DECLARATION OF ROBERT MERMELSTEIN

I, **ROBERT MERMELSTEIN**, declare and state as follows:

1. The facts stated below are true and correct to the best of my personal knowledge and if called upon to testify to them, I could and would competently do so.

2. This Declaration is in support of the **AMENDED PROOF OF CLAIM** filed by Robert & Esther Mermelstein.

3. My wife Esther and I are the settlors and beneficiaries of the Mermelstein Charitable Remainder Unitrust Dated July 27, 2009, (the " Mermelstein Trust").

4. On 8-3-2009, Leslie Klein ("Klein") on behalf of The Klein Charitable Remainder Unitrust dated 2-20-1996 (the "Klein Trust") entered into a Memorandum of Agreement for Joint Venture (the "Spitzer Memo").[1]

5. The purpose of the Spitzer Memo, was to purchase a $5,000,000.00 Life Insurance Policy Number: US 0023546L ("Spitzer Policy"); American General on the life of Malvine Spitzer ("Spitzer").

6. In furtherance of the Spitzer Memo, I paid Klein $250,000.00 towards the purchase of the Spitzer Policy.

7. Per the Spitzer Memo, Klein promised to pay the Mermelstein Trust $2,250,000.00 ($2,000,000 plus $250,000 and all premiums paid of the proceeds).

8. On 4-30-2021, Klein executed a First Amendment to the Memorandum of Agreement for Joint Venture (Spitzer), changing the recipient of the $2,250,000.00 from the Mermelstein Trust to Robert & Esther Mermelstein.[2]

9. Klein apparently sold portions of the Spitzer Policy, but I do not know to whom. Klein concealed this information from me.

---

[1] A true and correct copy of the Spitzer Memo is attached hereto as Exhibit "1" and is incorporated herein by this reference.

[2] A true and correct copy of the First Amendment to the Spitzer Memo, is attached hereto as Exhibit "2" and is incorporated herein by this reference.

1/10-11:28am

10.   Spitzer is still alive. Because of Klein deceptions concealments, I am filing this Proof of Claim against his estate - in the event of Spitzer's death, as to my entitlement.

### INTEREST CALCULATION

11.   Pursuant to Bankruptcy Rule 3001(c)(2)(A), interest of 10% on the $500,000.00 from 8-3-2009 until the petition date of 2-22-2023 comes to $678,219.17 (4951 days at $136.99 interest/day). The total amount due as of the filing date was $2,928,219.17.

I declare under penalty of perjury under the laws of the United States, States of California and of New York that the foregoing is true and correct.

Executed January 10, 2024, at Brooklyn, New York

By ___ /s/ Robert Mermelstein _____
ROBERT MERMELSTEIN

1/10-11:28am

## Spitzer

| Principle | Default Date | Per diem | # of Days | 10% Int | Total POC |
|---|---|---|---|---|---|
| $2,250,000.00 | 8/3/2009 | $136.99 | 4951 | $678,219.17 | $2,928,219.17 |

EXHIBIT "1"

# MEMORANDUM OF AGREEMENT FOR JOINT VENTURE

Joint Venturer: **THE MERMELSTEIN CHARITABLE REMAINDER UNITRUST DATED July 27, 2009**

Joint Venturer: **The Klein Charitable Remainder Unitrust Dated 2-20-1996**

## ARTICLE I. INTRODUCTION

Section 1.1

The purpose of this document is to confirm our mutual understanding and agreement concerning the purchase of a life insurance Policy; American General Policy Number: US 0023546L. on the life of **MALVINE SPITZER.**

We have reached an agreement on the essential elements of the joint venture. This document memorializes our agreement.

This document constitutes a fully binding and enforceable joint venture agreement between us, on the terms and conditions set forth herein.

## ARTICLE II. PURPOSE OF JOINT VENTURE

Section 2.1

The purpose of the joint venture shall be to maintain said above described policy.

## ARTICLE III. DUTIES AND OBLIGATIONS

Section 3.1

Duties of the Parties: Each of us has agreed that we will make all the premium payments necessary to keep the life insurance policy in force. In the event one of the joint venturers fail to make said payment, the other joint venturers shall have the option to make the payment for him and charge either 13% interest or receive the pro-rated share of the defaulting parties' share of the profits.

## ARTICLE IV. CAPITAL CONTRIBUTIONS

Section 4.1

    Capital Contributions: Each of us has contributed the necessary capital contribution.

## ARTICLE V. MANAGEMENT STRUCTURE

Section 5.1

    Management by Committee: The joint venture shall be managed by Leslie Klein.
Trustee.

## ARTICLE VI. ASSIGNMENT

Section 6.1

    Each party shall have the right to assign his interest.

## ARTICLE VII. DISTRIBUTIONS OF EARNINGS AND PROFITS

Section 7.1

    Distribution of Profits: Distribution shall be as follows:

**THE MERMELSTEIN CHARITABLE REMAINDER UNITRUST DATED July 27, 2009
shall receive $2,000,000 plus return of premiums paid; plus $250,000 paid
The balance shall go to The Klein Charitable Remainder Unitrust Dated 2-20-1996**

## ARTICLE VIII. TERM

Section 8.1

    Term and Termination: This Agreement shall expire upon the death of **MALVINE
SPITZER.**

## ARTICLE IX. CONFIDENTIALITY

Section 9.1

    Definitions: For the purpose of this Agreement, "Proprietary Information" shall include
all information designated by any joint venturer, either orally or in writing, as confidential or
proprietary, or that reasonably would be considered proprietary or confidential to the business
contemplated by this Agreement.

## X. TRANSFERS

Section 10.1

Any transfer or assignment of any party's interest in the joint venture or its profits shall be subject to the rights and obligations under this Agreement except with the express written consent of the other parties.

## XI. ARBITRATION

Section 11.1

The assignment of specific duties and authority to the respective parties is made under this Agreement with the intent to avoid major differences among the parties in the conduct of the joint venture. The parties intend that the terms of this Agreement shall control the parties' authority and decisions with respect to operations of the joint venture. As to matters not specifically controlled by the terms of this Agreement however, the parties agree to submit the determination thereof to arbitration and shall be governed by California law.

## XII. INSOLVENCY OR BANKRUPTCY OF PARTY

Section 12.1

If, during the term of this Agreement, a party to this Agreement should become insolvent or bankrupt, the remaining parties shall have the option to mutually agree to continue the joint venture, excluding the insolvent or bankrupt party, on payment to such party (or to such person or persons as a court of competent jurisdiction shall direct), such party's contribution to the capital assets of the venture less accrued expenses and the further payment of any accrued profits attributable to such contribution. If the remaining parties do not mutually agree to continue the joint venture, it shall be dissolved and wound up in accordance with the provisions effective under this Agreement on its termination.

## XIII. EFFECTIVE DATE AND TERM

Section 13.1

Effective Date:  The effective date of this Agreement shall be August 3, 2009

*SIGNATURES APPEAR ON THE FOLLOWING PAGE*

THE MERMELSTEIN CHARITABLE REMAINDER UNITRUST DATED July 27, 2009

DATED: ___8/3/09___          By: _____
                                      LESLIE KLEIN - Trustee

DATED: ___8/3/09___          **THE KLEIN CHARITABLE REMAINDER
                              UNITRUST dated 2-20-1996**

                              By: _____
                                   **KENNETH KLEIN, Trustee**
                                        Joint Venturer

Case 2:23-ap-01169-SK    Doc 46    Filed 01/10/24    Entered 01/10/24 15:28    Desc
Main Document    Page 87 of 180

# EXHIBIT "2"

**FIRST AMENDMENT**
**TO**
**MEMORANDUM OF AGREEMENT FOR JOINT VENTURE**


Joint Venturer:       **THE MERMELSTEIN CHARITABLE REMAINDER UNITRUST
DATED July 27, 2009**

Joint Venturer:       **The Klein Charitable Remainder Unitrust Dated 2-20-1996**

Life insurance Policy:  American General Policy Number: US 0023546L. on the life of
**MALVINE SPITZER.**

I, **LESLIE KLEIN, state as follows:**

That I transfer the interest of **THE MERMELSTEIN CHARITABLE
REMAINDER UNITRUST DATED July 27, 2009 to ROBERT MERMELSTEIN AND
ESTI MERMELSTEIN**

Dated: _____

_____
**LESLIE KLEIN**

**Trustee of
The Mermelstein Charitable Remainder Unitrust
Dated July 27, 2009**


Page 1 of 1

Fill in this information to identify the case:

Debtor 1     **LESLIE KLEIN**

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:     Central District of California

Case number     **2:23-bk-10990-SK**

Official Form 410

# Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. **Do not use this form to make a request for payment of an administrative expense.** Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1:    Identify the Claim

| | | |
|---|---|---|
| 1. Who is the current creditor? | **ROBERT & ESTHER MERMELSTEIN** | |
| | Name of the current creditor (the person or entity to be paid for this claim) | |
| | Other names the creditor used with the debtor | |

| | | |
|---|---|---|
| 2. Has this claim been acquired from someone else? | ☑ No | |
| | ☐ Yes. From whom? | |

| | | |
|---|---|---|
| 3. Where should notices and payments to the creditor be sent? | **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
| Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **BARUCH C. COHEN, ESQ.** | |
| | Name | Name |
| | **4929 WILSHIRE BOULEVARD, SUITE 940** | |
| | Number     Street | Number     Street |
| | **LOS ANGELES     CA     90010** | |
| | City     State     ZIP Code | City     State     ZIP Code |
| | Contact phone **323-937-4501** | Contact phone |
| | Contact email **baruchcohen@baruchcohenesq.com** | Contact email |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one): | |
| | _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | |

| | | |
|---|---|---|
| 4. Does this claim amend one already filed? | ☐ No | |
| | ☑ Yes.   Claim number on court claims registry (if known) 23 | Filed on **05/02/2023** |
| | | MM / DD / YYYY |

| | | |
|---|---|---|
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No | |
| | ☐ Yes.   Who made the earlier filing? | |

**Part 2:** **Give Information About the Claim as of the Date the Case Was Filed**

| 6. | Do you have any number you use to identify the debtor? | ☐ No |
| | | ☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:   K   O   H   N |

| 7. | How much is the claim? | $     2,496,438.34 . Does this amount include interest or other charges? |
| | |      ☐ No |
| | |      ☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| 8. | What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. |
| | | Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c). |
| | | Limit disclosing information that is entitled to privacy, such as health care information. |
| | | KLEIN MISAPPROPRIATED INSURANCE POLICY PROCEEDS |

| 9. | Is all or part of the claim secured? | ☑ No |
| | | ☐ Yes. The claim is secured by a lien on property. |
| | | **Nature of property:** |
| | | ☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*. |
| | | ☐ Motor vehicle |
| | | ☐ Other. Describe: _____ |
| | | **Basis for perfection:** _____ |
| | | Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.) |
| | | **Value of property:**      $ _____ |
| | | **Amount of the claim that is secured:**      $ _____ |
| | | **Amount of the claim that is unsecured:** $ _____    (The sum of the secured and unsecured amounts should match the amount in line 7.) |
| | | **Amount necessary to cure any default as of the date of the petition:**    $ _____ |
| | | **Annual Interest Rate** (when case was filed) _____ % |
| | | ☐ Fixed |
| | | ☐ Variable |

| 10. | Is this claim based on a lease? | ☑ No |
| | | ☐ Yes. **Amount necessary to cure any default as of the date of the petition.**    $ _____ |

| 11. | Is this claim subject to a right of setoff? | ☑ No |
| | | ☐ Yes. Identify the property: _____ |

12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?

☑ No

☐ Yes. Check one:

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |

* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:   Sign Below

The person completing this proof of claim must sign and date it.
FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.
18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   01/10/2024
                   MM / DD / YYYY

/s/ Baruch C. Cohen, Esq.
Signature

Print the name of the person who is completing and signing this claim:

| Name | Baruch C. Cohen | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | ATTORNEY FOR DAVID BERGER | | |
| Company | LAW OFFICE OF BARUCH C. COHEN, APLC | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 4929 WILSHIRE BOULEVARD, SUITE 940 | | |
| | Number      Street | | |
| | LOS ANGELES | CA | 90010 |
| | City | State | ZIP Code |
| Contact phone | 323-937-4501 | Email baruchcohen@baruchcohenesq.com | |

## DECLARATION OF ROBERT MERMELSTEIN

I, **ROBERT MERMELSTEIN**, declare and state as follows:

1. The facts stated below are true and correct to the best of my personal knowledge and if called upon to testify to them, I could and would competently do so.

2. This Declaration is in support of the **AMENDED PROOF OF CLAIM** filed by Robert & Esther Mermelstein.

3. My wife Esther and I are the settlors and beneficiaries of the Mermelstein Charitable Remainder Unitrust Dated July 27, 2009, (the " Mermelstein Trust").

4. On 3-10-2010, Leslie Klein ("Klein") on behalf of The Klein Charitable Remainder Unitrust dated 2-20-1996 (the "Klein Trust") entered into a Memorandum of Agreement for Joint Venture (the "Kohn Memo").[1]

5. The purpose of the Kohn Memo, was to purchase a $3,000,000.00 Life Insurance Policy ("Kohn Policy"); American General on the life of Eugene Kohn ("Kohn").

6. In furtherance of the Kohn Memo, I paid Klein $200,000.00 towards the purchase of the Kohn Policy.

7. Per the Kohn Memo, Klein promised to pay the Mermelstein Trust $1,200,000.00 ($200,000 and $1,000,000 and all premiums paid of the proceeds).

8. On 4-30-2021, Klein executed a First Amendment to the Memorandum of Agreement for Joint Venture (Kohn), changing the recipient of the $1,200,000.00 from the Mermelstein Trust to Robert & Esther Mermelstein.[2]

9. Klein paid premiums of the Kohn Policy up to 2011. Thereafter, Klein apparently sold portions or the entirety of the Kohn Policy to Life Capital Group, LLC ("LCG"), where Shlomo Yehuda Rechnitz ("Rechnitz") was to resume paying the Kohn Policy premiums from

---

[1]A true and correct copy of the Kohn Memo is attached hereto as Exhibit "1" and is incorporated herein by this reference.

[2]A true and correct copy of the First Amendment to the Kohn Memo, is attached hereto as Exhibit "2" and is incorporated herein by this reference.

1        2011 onwards. Klein concealed this information from me.

2   10.    According to information recently received by me, an unsigned Amended and Restated

3        Limited Liability Company Agreement of Life Capital Group, LLC,[3] Klein and Rechnitz

4        agreed that upon the death of Kohn, Klein and Rechnitz would be reimbursed the premiums

5        that they paid, plus interest on the premiums. Thereafter, Klein and Rechnitz would split the

6        profits 50/50 of the Kohn Policy, and that I would receive my $1,200,000.00.

7   11.    As far as I know, Kohn is still alive. Because of Klein's deceptions and concealments, I am

8        filing this Proof of Claim against his estate - in the event of Kohn's death, as to my

9        entitlement.

10                     **INTEREST CALCULATION**

11   12.    Pursuant to Bankruptcy Rule 3001(c)(2)(A), interest of 10% on the $1,000,000.00 from

12        3-10-2010 until the petition date of 2-22-2023 comes to $1,296,438.34 (4732 days at $$273.97

13        interest/day). The total amount due as of the filing date was $2,496,438.34.

14

15        I declare under penalty of perjury under the laws of the United States, States of California and

16   of New York that the foregoing is true and correct.

17        Executed January 10, 2024, at Brooklyn, New York

18                          By   /S/ Robert Mermelstein

19                          ROBERT MERMELSTEIN

20

21

22

23

24

25

26
        ————————————————

27      [3] A true and correct copy of the Amended and Restated Limited Liability Company Agreement
of Life Capital Group, LLC is attached hereto as Exhibit "3" and is incorporated herein by this

28   reference.

1/10-11:28am

## Kohn

| Principle | Default Date | Per diem | # of Days | 10% Int | Total POC |
|---|---|---|---|---|---|
| $1,200,000.00 | 3/10/2010 | $273.97 | 4732 | $1,296,438.34 | $2,496,438.34 |

Case 2:23-ap-01169-SK    Main Document    Filed 01/10/24    Entered 01/10/24 15:26    Page 2 of

EXHIBIT "1"

## MEMORANDUM OF AGREEMENT FOR JOINT VENTURE

Joint Venturer:      **THE MERMELSTEIN CHARITABLE REMAINDER UNITRUST
                     DATED July 27, 2009**

Joint Venturer:      **The Klein Charitable Remainder Unitrust Dated 2-20-1996**

### ARTICLE I. INTRODUCTION

Section 1.1

The purpose of this document is to confirm our mutual understanding and agreement
concerning the purchase of a life insurance Policy; American General on the life of **EUGENE
KOHN**.

We have reached an agreement on the essential elements of the joint venture. This
document memorializes our agreement.

This document constitutes a fully binding and enforceable joint venture agreement
between us, on the terms and conditions set forth herein.

### ARTICLE II. PURPOSE OF JOINT VENTURE

Section 2.1

The purpose of the joint venture shall be to maintain said above described policy.

### ARTICLE III. DUTIES AND OBLIGATIONS

Section 3.1

Duties of the Parties: Each of us has agreed that we will make all the premium payments
necessary to keep the life insurance policy in force. In the event one of the joint venturers fail to
make said payment, the other joint venturers shall have the option to make the payment for him
and charge either 13% interest or receive the pro-rated share of the defaulting parties' share of
the profits.

### ARTICLE IV. CAPITAL CONTRIBUTIONS

Section 4.1

      Capital Contributions:  Each of us has contributed the necessary capital contribution.

## ARTICLE V.  MANAGEMENT STRUCTURE

Section 5.1

      Management by Committee:  The joint venture shall be managed by Leslie Klein.
Trustee.

## ARTICLE VI.  ASSIGNMENT

Section 6.1

      Each party shall have the right to assign his interest.

## ARTICLE VII.  DISTRIBUTIONS OF EARNINGS AND PROFITS

Section 7.1

      Distribution of Profits:  Distribution shall be as follows:


**THE MERMELSTEIN CHARITABLE REMAINDER UNITRUST DATED July 27, 2009
shall receive $200,000 and $1,000,000 and all premiums paid of the proceeds.**

**The balance shall go to The Klein Charitable Remainder Unitrust Dated 2-20-1996**


## ARTICLE VIII.  TERM

Section 8.1

      Term and Termination: This Agreement shall expire upon the death of **EUGENE KOHN**


## ARTICLE IX.  CONFIDENTIALITY

Section 9.1

      Definitions:  For the purpose of this Agreement, "Proprietary Information" shall include
all information designated by any joint venturer, either orally or in writing, as confidential or
proprietary, or that reasonably would be considered proprietary or confidential to the business
contemplated by this Agreement.

## X. TRANSFERS

Section 10.1

    Any transfer or assignment of any party's interest in the joint venture or its profits shall be subject to the rights and obligations under this Agreement except with the express written consent of the other parties.

## XI. ARBITRATION

Section 11.1

    The assignment of specific duties and authority to the respective parties is made under this Agreement with the intent to avoid major differences among the parties in the conduct of the joint venture. The parties intend that the terms of this Agreement shall control the parties' authority and decisions with respect to operations of the joint venture. As to matters not specifically controlled by the terms of this Agreement however, the parties agree to submit the determination thereof to arbitration and shall be governed by California law.

## XII. INSOLVENCY OR BANKRUPTCY OF PARTY

Section 12.1

    If, during the term of this Agreement, a party to this Agreement should become insolvent or bankrupt, the remaining parties shall have the option to mutually agree to continue the joint venture, excluding the insolvent or bankrupt party, on payment to such party (or to such person or persons as a court of competent jurisdiction shall direct), such party's contribution to the capital assets of the venture less accrued expenses and the further payment of any accrued profits attributable to such contribution. If the remaining parties do not mutually agree to continue the joint venture, it shall be dissolved and wound up in accordance with the provisions effective under this Agreement on its termination.

## XIII. EFFECTIVE DATE AND TERM

Section 13.1

    <u>Effective Date</u>:  The effective date of this Agreement shall be March 1, 2010

### *SIGNATURES APPEAR ON THE FOLLOWING PAGE*

DATED: _3/12/2011_

**THE MERMELSTEIN CHARITABLE REMAINDER UNITRUST DATED July 27, 2009**

**By:** _____

LESLIE KLEIN - Trustee

Joint Venturers

DATED: _3/12/01._

**THE KLEIN CHARITABLE REMAINDER UNITRUST dated 2-20-1996**

**By:** _____

**KENNETH KLEIN, Trustee**
Joint Venturer

Page 4 of 4

EXHIBIT "2"

## FIRST AMENDMENT
## TO
## MEMORANDUM OF AGREEMENT FOR JOINT VENTURE


Joint Venturer:       **THE MERMELSTEIN CHARITABLE REMAINDER UNITRUST DATED July 27, 2009**

Joint Venturer:       **The Klein Charitable Remainder Unitrust Dated 2-20-1996**

Life insurance Policy: American General on the life of **EUGENE KOHN**


I, **LESLIE KLEIN**, state as follows:

That I transfer the interest of THE MERMELSTEIN CHARITABLE REMAINDER UNITRUST DATED July 27, 2009 to ROBERT MERMELSTEIN AND ESTI MERMELSTEIN

Dated: _____4/30/1027_____



**LESLIE KLEIN**

                         **Trustee of**
              **The Mermelstein Charitable Remainder Unitrust**
              **Dated July 27, 2009**


Page 1 of 1

| Fill in this information to identify the case: |
|---|

| Debtor 1 | LESLIE KLEIN |
|---|---|
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Central District of California |
| Case number | 2:23-bk-10990-SK |

## Official Form 410

# Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

### Part 1:   Identify the Claim

| 1. | Who is the current creditor? | ROBERT & ESTHER MERMELSTEIN |
|---|---|---|

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

| 2. | Has this claim been acquired from someone else? | ☑ No<br>☐ Yes. From whom? |
|---|---|---|

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

BARUCH C. COHEN, ESQ.
Name

4929 WILSHIRE BOULEVARD, SUITE 940
Number        Street

LOS ANGELES        CA        90010
City        State        ZIP Code

Contact phone 323-937-4501

Contact email baruchcohen@baruchcohenesq.com

Where should payments to the creditor be sent? (if different)

Name

Number        Street

City        State        ZIP Code

Contact phone

Contact email

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ — __ __ __ — __ __ __ — __ __ __ __

| 4. | Does this claim amend one already filed? | ☐ No<br>☑ Yes.  Claim number on court claims registry (if known) 24 | Filed on 05/02/2023<br>MM / DD / YYYY |
|---|---|---|---|

| 5. | Do you know if anyone else has filed a proof of claim for this claim? | ☑ No<br>☐ Yes.  Who made the earlier filing? |
|---|---|---|

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

6. Do you have any number you use to identify the debtor?

☐ No

☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:  F   R   I   E

7. How much is the claim?    $ _____2,296,438.34__. Does this amount include interest or other charges?

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. What is the basis of the claim?

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

KLEIN MISAPPROPRIATED INSURANCE POLICY PROCEEDS

9. Is all or part of the claim secured?

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property.                              $ _____

Amount of the claim that is secured:    $ _____

Amount of the claim that is unsecured: $ _____   (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:    $ _____

Annual Interest Rate (when case was filed) _____ %

☐ Fixed
☐ Variable

10. Is this claim based on a lease?

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition.    $ _____

11. Is this claim subject to a right of setoff?

☑ No

☐ Yes. Identify the property: _____

12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. Check one:

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ |
| ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ |
| ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $ |

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:   Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   01/10/2024
　　　　　　　　　　 MM / DD / YYYY

/s/ Baruch C. Cohen, Esq.
　　　 Signature

**Print the name of the person who is completing and signing this claim:**

| | | | |
|---|---|---|---|
| Name | Baruch C. Cohen | | |
| | First name | Middle name | Last name |
| Title | ATTORNEY FOR DAVID BERGER | | |
| Company | LAW OFFICE OF BARUCH C. COHEN, APLC | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 4929 WILSHIRE BOULEVARD, SUITE 940 | | |
| | Number        Street | | |
| | LOS ANGELES | CA | 90010 |
| | City | State | ZIP Code |
| Contact phone | 323-937-4501 | Email baruchcohen@baruchcohenesq.com | |

## DECLARATION OF ROBERT MERMELSTEIN

I, **ROBERT MERMELSTEIN**, declare and state as follows:

1. The facts stated below are true and correct to the best of my personal knowledge and if called upon to testify to them, I could and would competently do so.

2. This Declaration is in support of the **AMENDED PROOF OF CLAIM** filed by Robert & Esther Mermelstein.

3. My wife Esther and I are the settlors and beneficiaries of the Mermelstein Charitable Remainder Unitrust Dated July 27, 2009, (the " Mermelstein Trust").

4. On 3-1-2010, Leslie Klein ("Klein") on behalf of The Klein Charitable Remainder Unitrust dated 2-20-1996 (the "Klein Trust") entered into a Memorandum of Agreement for Joint Venture (the "Friedman Memo").[1]

5. The purpose of the Friedman Memo, was to purchase a $1,500,000.00 Life Insurance Policy ("Friedman Policy"); American General on the life of Goldie Friedman ("Friedman").

6. In furtherance of the Friedman Memo, I paid Klein $250,000.00 towards the purchase of the Friedman Policy.

7. Per the Friedman Memo, Klein promised to pay the Mermelstein Trust $1,000,000.00 ($250,000.00 and $750,000.00 and all premiums paid of the proceeds).

8. On 4-30-2021, Klein executed a First Amendment to the Memorandum of Agreement for Joint Venture (Friedman), changing the recipient of the $1,000,000.00 from the Mermelstein Trust to Robert & Esther Mermelstein.[2]

9. Klein apparently sold portions of the Friedman Policy, to the Longevity Fund of NY and partially to the Longevity Fund of Michigan.

10. Friedman apparently died in 2020, and Klein collected the Friedman Proceeds, on the

---

[1] A true and correct copy of the Friedman Memo is attached hereto as Exhibit "1" and is incorporated herein by this reference.

[2] A true and correct copy of the First Amendment to the Friedman Memo, is attached hereto as Exhibit "2" and is incorporated herein by this reference.

1/10-11:29am

Friedman Policy. Klein concealed this information from me, misappropriated & kept the Friedman Proceeds for himself, and failed to pay me the $1,000,000.00 per the Friedman Memo.

## INTEREST CALCULATION

11.    Pursuant to Bankruptcy Rule 3001(c)(2)(A), interest of 10% on the $1,000,000.00 from 3-10-2010 until the petition date of 2-22-2023 comes to $1,296,438.34 (4732 days at $$273.97 interest/day). The total amount due as of the filing date was $2,296,438.34.

I declare under penalty of perjury under the laws of the United States, States of California and of New York that the foregoing is true and correct.

Executed January 10, 2024, at Brooklyn, New York

By   /S/ Robert Mermelstein
ROBERT MERMELSTEIN

1/10-11:29am

## Friedman

| Principle | Default Date | Petition Date | Per diem | # of Days | @10% Int | Total POC |
|---|---|---|---|---|---|---|
| $1,000,000.00 | 3/10/2010 | 3/10/2010 | $273.97 | 4732 | $1,296,438.34 | $2,296,438.34 |

EXHIBIT "1"

## MEMORANDUM OF AGREEMENT FOR JOINT VENTURE

Joint Venturer:      **THE MERMELSTEIN CHARITABLE REMAINDER UNITRUST
DATED July 27, 2009**

Joint Venturer:      **The Klein Charitable Remainder Unitrust Dated 2-20-1996**

## ARTICLE I. INTRODUCTION

Section 1.1

The purpose of this document is to confirm our mutual understanding and agreement concerning the purchase of a life insurance Policy; American General on the life of **GOLDIE FRIEDMAN.**

We have reached an agreement on the essential elements of the joint venture. This document memorializes our agreement.

This document constitutes a fully binding and enforceable joint venture agreement between us, on the terms and conditions set forth herein.

## ARTICLE II. PURPOSE OF JOINT VENTURE

Section 2.1

The purpose of the joint venture shall be to maintain said above described policy.

## ARTICLE III. DUTIES AND OBLIGATIONS

Section 3.1

Duties of the Parties: Each of us has agreed that we will make all the premium payments necessary to keep the life insurance policy in force. In the event one of the joint venturers fail to make said payment, the other joint·venturers shall have the option to make the payment for him and charge either 13% interest or receive the pro-rated share of the defaulting parties' share of the profits.

## ARTICLE IV. CAPITAL CONTRIBUTIONS

Page 1 of 4

Section 4.1

      Capital Contributions: Each of us has contributed the necessary capital contribution.

## ARTICLE V. MANAGEMENT STRUCTURE

Section 5.1

      Management by Committee: The joint venture shall be managed by Leslie Klein. Trustee.

## ARTICLE VI. ASSIGNMENT

Section 6.1

      Each party shall have the right to assign his interest.

## ARTICLE VII. DISTRIBUTIONS OF EARNINGS AND PROFITS

Section 7.1

      Distribution of Profits: Distribution shall be as follows:

**THE MERMELSTEIN CHARITABLE REMAINDER UNITRUST DATED July 27, 2009 shall receive $250,000.00 and $750,000.00 and all premiums paid of the proceeds.**

**The balance shall go to The Klein Charitable Remainder Unitrust Dated 2-20-1996**

## ARTICLE VIII. TERM

Section 8.1

      Term and Termination: This Agreement shall expire upon the death of **GOLDIE FRIEDMAN.**

## ARTICLE IX. CONFIDENTIALITY

Section 9.1

      Definitions: For the purpose of this Agreement, "Proprietary Information" shall include all information designated by any joint venturer, either orally or in writing, as confidential or proprietary, or that reasonably would be considered proprietary or confidential to the business contemplated by this Agreement.

Page 2 of 4

## X. TRANSFERS

Section 10.1

Any transfer or assignment of any party's interest in the joint venture or its profits shall be subject to the rights and obligations under this Agreement except with the express written consent of the other parties.

## XI. ARBITRATION

Section 11.1

The assignment of specific duties and authority to the respective parties is made under this Agreement with the intent to avoid major differences among the parties in the conduct of the joint venture. The parties intend that the terms of this Agreement shall control the parties' authority and decisions with respect to operations of the joint venture. As to matters not specifically controlled by the terms of this Agreement however, the parties agree to submit the determination thereof to arbitration and shall be governed by California law.

## XII. INSOLVENCY OR BANKRUPTCY OF PARTY

Section 12.1

If, during the term of this Agreement, a party to this Agreement should become insolvent or bankrupt, the remaining parties shall have the option to mutually agree to continue the joint venture, excluding the insolvent or bankrupt party, on payment to such party (or to such person or persons as a court of competent jurisdiction shall direct), such party's contribution to the capital assets of the venture less accrued expenses and the further payment of any accrued profits attributable to such contribution. If the remaining parties do not mutually agree to continue the joint venture, it shall be dissolved and wound up in accordance with the provisions effective under this Agreement on its termination.

## XIII. EFFECTIVE DATE AND TERM

Section 13.1

Effective Date:  The effective date of this Agreement shall be March 1, 2010

*SIGNATURES APPEAR ON THE FOLLOWING PAGE*

Page 3 of 4

THE MERMELSTEIN CHARITABLE
REMAINDER UNITRUST DATED July 27,
2009

DATED: _3/1/2010_

By: _____

LESLIE KLEIN - Trustee

Joint Venturers

DATED: _3/1/2010_

THE KLEIN CHARITABLE REMAINDER
UNITRUST dated 2-20-1996

By: _____

KENNETH KLEIN, Trustee
Joint Venturer

Page 4 of 4

EXHIBIT "2"

# FIRST AMENDMENT
## TO
## MEMORANDUM OF AGREEMENT FOR JOINT VENTURE

Joint Venturer:    **THE MERMELSTEIN CHARITABLE REMAINDER UNITRUST
DATED July 27, 2009**

Joint Venturer:    **The Klein Charitable Remainder Unitrust Dated 2-20-1996**

Life insurance Policy: American General on the life of **GOLDIE FRIEDMAN.**

I, **LESLIE KLEIN,** state as follows:

That I transfer the interest of THE MERMELSTEIN CHARITABLE
REMAINDER UNITRUST DATED July 27, 2009 to ROBERT MERMELSTEIN AND
EST1 MERMELSTEIN

Dated: ____ 9/31/2011 ____

**LESLIE KLEIN**

**Trustee of
The Mermelstein Charitable Remainder Unitrust
Dated July 27, 2009**

Page 1 of 1

Fill in this information to identify the case:

| | |
|---|---|
| Debtor 1 | LESLIE KLEIN |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Central District of California |
| Case number | 2:23-bk-10990-SK |

Official Form 410

# Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1:   Identify the Claim

| | |
|---|---|
| 1. Who is the current creditor? | **ROBERT & ESTHER MERMELSTEIN**<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor |
| 2. Has this claim been acquired from someone else? | ☑ No<br>☐ Yes.  From whom? |
| 3. Where should notices and payments to the creditor be sent?<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Where should notices to the creditor be sent?<br><br>BARUCH C. COHEN, ESQ.<br>Name<br><br>4929 WILSHIRE BOULEVARD, SUITE 940<br>Number     Street<br>LOS ANGELES     CA     90010<br>City     State     ZIP Code<br><br>Contact phone 323-937-4501<br><br>Contact email baruchcohen@baruchcohenesq.com<br><br>Uniform claim identifier for electronic payments in chapter 13 (if you use one):<br>_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ |  Where should payments to the creditor be sent? (if different)<br><br>Name<br><br>Number     Street<br>City     State     ZIP Code<br><br>Contact phone<br><br>Contact email |
| 4. Does this claim amend one already filed? | ☐ No<br>☑ Yes.  Claim number on court claims registry (if known) 25          Filed on  05/03/2023<br>                                                                                                    MM   / DD   / YYYY |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No<br>☐ Yes.  Who made the earlier filing? |

## Part 2: Give Information About the Claim as of the Date the Case Was Filed

**6. Do you have any number you use to identify the debtor?**

☐ No

☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: __Z__ __I__ __M__ __M__

---

**7. How much is the claim?** $ _____ 10,557,615.81  **Does this amount include interest or other charges?**

    ☐ No

    ☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

---

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

KLEIN MISAPPROPRIATED INSURANCE POLICY PROCEEDS

---

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

    **Nature of property:**

    ☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

    ☐ Motor vehicle

    ☐ Other. Describe: _____

    **Basis for perfection:** _____

    Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

    **Value of property:** $ _____

    **Amount of the claim that is secured:** $ _____

    **Amount of the claim that is unsecured:** $ _____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

    **Amount necessary to cure any default as of the date of the petition:** $ _____

    **Annual Interest Rate (when case was filed)** _____ %

    ☐ Fixed

    ☐ Variable

---

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____

---

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. Check one:

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
| ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ _____ |
| ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ _____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ _____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $ _____ |

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

---

### Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.
18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    01/10/2024
                    MM / DD / YYYY

/s/ Baruch C. Cohen, Esq.
_____
Signature

**Print the name of the person who is completing and signing this claim:**

| | | | |
|---|---|---|---|
| Name | Baruch C. Cohen | | |
| | First name | Middle name | Last name |
| Title | ATTORNEY FOR DAVID BERGER | | |
| Company | LAW OFFICE OF BARUCH C. COHEN, APLC | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 4929 WILSHIRE BOULEVARD, SUITE 940 | | |
| | Number    Street | | |
| | LOS ANGELES | CA | 90010 |
| | City | State | ZIP Code |
| Contact phone | 323-937-4501 | Email | baruchcohen@baruchcohenesq.com |

**DECLARATION OF ROBERT MERMELSTEIN**

I, **ROBERT MERMELSTEIN**, declare and state as follows:

1. The facts stated below are true and correct to the best of my personal knowledge and if called upon to testify to them, I could and would competently do so.

2. This Declaration is in support of the **AMENDED PROOF OF CLAIM** filed by Robert & Esther Mermelstein.

3. My wife Esther and I are the settlors and beneficiaries of the Mermelstein Charitable Remainder Unitrust Dated July 27, 2009, (the "Mermelstein Trust").

4. On 8-3-2009, Leslie Klein ("Klein") on behalf of The Klein Charitable Remainder Unitrust dated 2-20-1996 (the "Klein Trust") entered into a Memorandum of Agreement for Joint Venture (the "Zimmerman Memo").[1]

5. The purpose of the Zimmerman Memo, was to purchase a $9,000,000.00 Life Insurance Policy ("Zimmerman Policy"); American General Policy # US 0023738L on the life of Rozy Pearl Zimmerman ("Zimmerman").

6. In furtherance of the Zimmerman Memo, I paid Klein $150,000.00 towards the purchase of the Zimmerman Policy.

7. Per the Zimmerman Memo, Klein promised to pay the Mermelstein Trust $2,250,000.00.

8. On 4-30-2021, Klein executed a First Amendment to the Memorandum of Agreement for Joint Venture (Zimmerman), changing the recipient of the $2,250,000.00 from the Mermelstein Trust to Robert & Esther Mermelstein.[2]

9. Klein paid premiums of the Zimmerman Policy up to 2011. Thereafter, Klein apparently sold portions or the entirety of the Zimmerman Policy to Life Capital Group, LLC ("LCG"), where Shlomo Yehuda Rechnitz ("Rechnitz") was to resume paying the Zimmerman Policy

---

[1] A true and correct copy of the Zimmerman Memo is attached hereto as Exhibit "1" and is incorporated herein by this reference.

[2] A true and correct copy of the First Amendment to the Zimmerman Memo, is attached hereto as Exhibit "2" and is incorporated herein by this reference.

1/10-1:34pm

1      premiums from 2011 onwards. Klein concealed this information from me.

2   10.   Klein, as Trustee of the Rozy Pearl Zimmerman Irrevocable Life Insurance Trust (the

3      "Zimmerman Trust") issued three Non-Recourse Promissory Notes (the "Zimmerman Notes")

4      to me and my wife, secured by the Zimmerman Policy[3] in the amount of $2,357,679.50:

5          a.    Non-Recourse Promissory Notes # 1, principal sum of $1,412,679.53, dated June 15,

6             2011 - due June 15, 2020 (the "$1,412,679.53 Zimmerman Note");

7          b.    Non-Recourse Promissory Notes # 2, principal sum of $570,000.00, dated December
            7, 2009 - due December 7, 2019 (the: "$570,000.00 Zimmerman Note");

8          c.    Non-Recourse Promissory Notes # 2, principal sum of $375,000.00, dated January 14,

9             2010 - due January 14, 2020 (the "$375,000.00 Zimmerman Note").

10   11.   According to information recently received by me, an unsigned Amended and Restated

11      Limited Liability Company Agreement of Life Capital Group, LLC,[4] Klein and Rechnitz

12      agreed that upon the death of Zimmerman, Klein and Rechnitz would be reimbursed the

13      premiums that they paid, plus interest on the premiums. Thereafter, Klein and Rechnitz would

14      split the profits 50/50 of the Zimmerman Policy, and that I would receive my $2,250,000.00.

15   12.   It is my understanding that Zimmerman is still alive. Because of Klein's deceptions and

16      concealment, I am filing this Proof of Claim against his estate - in the event of Zimmerman's

17      death, as to my entitlement.

18 <div align="center">**INTEREST CALCULATION**</div>

19   13.   Pursuant to Bankruptcy Rule 3001(c)(2)(A), interest of 10% on the *Zimmerman Memo* from

20      8-3-2009 until the petition date of 2-22-2023 equals $3,051,986.52 (4951 days at $616.44

21      interest/day). The total amount due as of the filing date was $5,301,986.52.

22   14.   Pursuant to Bankruptcy Rule 3001(c)(2)(A), interest of 10% on the *$1,412,679.53 Zimmerman*

23

24        [3] True and correct copies of the 3 the Zimmerman Notes are attached hereto as Exhibit "3" and

25   is incorporated herein by this reference.

26        [4] A true and correct copy of the Amended and Restated Limited Liability Company Agreement
  of Life Capital Group, LLC is attached hereto as Exhibit "4" and is incorporated herein by this

27   reference.

28

1    *Note* from 6-15-2011 until the petition date of 2-22-2023 equals $1,652,641.59 (4270 days at

2    $387.04 interest/day). The total amount due as of the filing date was $3,065,321.12.

3    15.    Pursuant to Bankruptcy Rule 3001(c)(2)(A), interest of 10% on the *$570,000.00 Zimmerman*

4    *Note* from 12-7-2009 until the petition date of 2-22-2023 comes to $753,493.23 (4825 days

5    at $156.16 interest/day). The total amount due as of the filing date was $1,323,493.23.

6    16.    Pursuant to Bankruptcy Rule 3001(c)(2)(A), interest of 10% on the *$375,000.00 Zimmerman*

7    *Note* from 1-14-2010 until the petition date of 2-22-2023 comes to $491,814.94 (4787 days

8    at $102.74 interest/day). The total amount due as of the filing date was $866,814.94.

9    17.    The total pre-petition amount owed is $10,557,615.81.

10

11    I declare under penalty of perjury under the laws of the United States, States of California and

12    of New York that the foregoing is true and correct.

13    Executed January 10, 2024, at Brooklyn, New York

14    By /s/ Robert Mermelstein
        ROBERT MERMELSTEIN

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1/10-1:34pm

## Zimmerman

| Principle | Default Date | Per diem | # of Days | 10% Int | Total POC |
|---|---|---|---|---|---|
| $2,250,000.00 | 8/3/2009 | $616.44 | 4951 | $3,051,986.52 | $5,301,986.52 |
| $1,412,679.53 | 6/15/2011 | $387.04 | 4270 | $1,652,641.59 | $3,065,321.12 |
| $570,000.00 | 12/7/2009 | $156.16 | 4825 | $753,493.23 | $1,323,493.23 |
| $375,000.00 | 1/14/2010 | $102.74 | 4787 | $491,814.94 | $866,814.94 |
| | | | | | $10,557,615.81 |

Case 2:23-ap-01169-SK    Doc 45    Filed 01/19/24    Entered 01/19/24 15:26    Desc
Main Document    65    Page 122 of 180

EXHIBIT "1"

## MEMORANDUM OF AGREEMENT FOR JOINT VENTURE

Joint Venturer:  **THE MERMELSTEIN CHARITABLE REMAINDER UNITRUST
DATED July 27, 2009**

Joint Venturer:  **The Klein Charitable Remainder Unitrust Dated 2-20-1996**

### ARTICLE I. INTRODUCTION

Section 1.1

The purpose of this document is to confirm our mutual understanding and agreement concerning the purchase of a life insurance Policy; American General Policy Number: US 0023738L. on the life of **ROZY PEARL ZIMMERMAN.**

We have reached an agreement on the essential elements of the joint venture. This document memorializes our agreement.

This document constitutes a fully binding and enforceable joint venture agreement between us, on the terms and conditions set forth herein.

### ARTICLE II. PURPOSE OF JOINT VENTURE

Section 2.1

The purpose of the joint venture shall be to maintain said above described policy.

### ARTICLE III. DUTIES AND OBLIGATIONS

Section 3.1

Duties of the Parties: Each of us has agreed that we will make all the premium payments necessary to keep the life insurance policy in force. In the event one of the joint venturers fail to make said payment, the other joint venturers shall have the option to make the payment for him and charge either 13% interest or receive the pro-rated share of the defaulting parties' share of the profits.

### ARTICLE IV. CAPITAL CONTRIBUTIONS

Section 4.1

   Capital Contributions: Each of us has contributed the necessary capital contribution.

## ARTICLE V. MANAGEMENT STRUCTURE

Section 5.1

   Management by Committee: The joint venture shall be managed by Leslie Klein, Trustee.

## ARTICLE VI. ASSIGNMENT

Section 6.1

   Each party shall have the right to assign his interest.

## ARTICLE VII. DISTRIBUTIONS OF EARNINGS AND PROFITS

Section 7.1

   Distribution of Profits: Distribution shall be as follows:

THE MERMELSTEIN CHARITABLE REMAINDER UNITRUST DATED July 27, 2009
........................................................................... 1/4
THE KLEIN CHARITABLE REMAINDER UNITRUST dated 2-20-1996 ..... 3/4

## ARTICLE VIII. TERM

Section 8.1

   Term and Termination: This Agreement shall expire upon the death of **ROZY PEARL ZIMMERMAN**

## ARTICLE IX. CONFIDENTIALITY

Section 9.1

   Definitions: For the purpose of this Agreement, "Proprietary Information" shall include all information designated by any joint venturer, either orally or in writing, as confidential or proprietary, or that reasonably would be considered proprietary or confidential to the business contemplated by this Agreement.

## X. TRANSFERS

Section 10.1

    Any transfer or assignment of any party's interest in the joint venture or its profits shall be subject to the rights and obligations under this Agreement except with the express written consent of the other parties.

## XI. ARBITRATION

Section 11.1

    The assignment of specific duties and authority to the respective parties is made under this Agreement with the intent to avoid major differences among the parties in the conduct of the joint venture. The parties intend that the terms of this Agreement shall control the parties' authority and decisions with respect to operations of the joint venture. As to matters not specifically controlled by the terms of this Agreement however, the parties agree to submit the determination thereof to arbitration and shall be governed by California law.

## XII. INSOLVENCY OR BANKRUPTCY OF PARTY

Section 12.1

    If, during the term of this Agreement, a party to this Agreement should become insolvent or bankrupt, the remaining parties shall have the option to mutually agree to continue the joint venture, excluding the insolvent or bankrupt party, on payment to such party (or to such person or persons as a court of competent jurisdiction shall direct), such party's contribution to the capital assets of the venture less accrued expenses and the further payment of any accrued profits attributable to such contribution. If the remaining parties do not mutually agree to continue the joint venture, it shall be dissolved and wound up in accordance with the provisions effective under this Agreement on its termination.

## XIII. EFFECTIVE DATE AND TERM

Section 13.1

    Effective Date:  The effective date of this Agreement shall be August 3, 2009.

**THE MERMELSTEIN CHARITABLE REMAINDER UNITRUST DATED July 27, 2009**

DATED: _8/3/09_      By: _____

                                  **LESLIE KLEIN - Trustee**

DATED: _8/3/09_      **THE KLEIN CHARITABLE REMAINDER
UNITRUST dated 2-20-1996**

                        By: _____

                         **KENNETH KLEIN, Trustee**
                              Joint Venturer

EXHIBIT "2"

## FIRST AMENDMENT
## TO
## MEMORANDUM OF AGREEMENT FOR JOINT VENTURE

Joint Venturer: **THE MERMELSTEIN CHARITABLE REMAINDER UNITRUST DATED July 27, 2009**

Joint Venturer: **The Klein Charitable Remainder Unitrust Dated 2-20-1996**

Life insurance Policy: American General Policy Number: US 0023738L. on the life of
**ROZY PEARL ZIMMERMAN.**

I, **LESLIE KLEIN, state as follows:**

That I transfer the interest of **THE MERMELSTEIN CHARITABLE REMAINDER UNITRUST DATED July 27, 2009** to **ROBERT MERMELSTEIN AND ESTI MERMELSTEIN**

Dated: _____

LESLIE KLEIN

**Trustee of
The Mermelstein Charitable Remainder Unitrust
Dated July 27, 2009**

Page 1 of 1

EXHIBIT "3"

## NON-RECOURSE PROMISSORY NOTE

**Principal Sum:**    $1,412,679.53                **June 15, 2011**
**Due Date:**        **June 15, 2020**               **State of California**

**FOR VALUE RECEIVED**, the undersigned, **LESLIE KLEIN** as Trustee of **THE ROZY PEARL ZIMMERMAN  IRREVOCABLE LIFE INSURANCE TRUST** with offices at 14245 Ventura Boulevard, Sherman Oaks, California (the "Borrower"), hereby promises to pay to **ROBERT and ESTHER MERMELSTEIN**  or their registered assigns (the "Holder"), the principal sum of **$1,412,679.53** , plus interest of **10%**  and all costs, fees and expenses (including without limitation reasonable attorneys' fees and disbursements) that the Holder incurs in order to collect any amount due under this Note, to negotiate or document a workout or restructuring, or to preserve its rights or realize upon any security for the payment of this Note now or hereafter granted ("Expenses").

**Security Agreement; Collateral Assignments.** This Note is a secured, non-recourse promissory note, secured by the policies of life insurance on the live(s) of the  individual(s) above named. Pursuant to and in accordance with this agreement this Note is secured by the borrower and the borrower has granted to the lender a continuing first priority security interest in the policies and the proceeds thereof pursuant to this agreement.

**Additional Advances.** In the event that Holder makes any payment of additional premiums, adjustments to premiums or other required payments on or under any Policy or Policies on Borrower's behalf, the amount of any such advances automatically shall be deemed to be, and shall be, added to the outstanding principal balance of this Note as of the date of such advance and shall earn interest from such date.

**Interest Rate.** The outstanding principal balance of this Note shall earn interest, calculated on the basis of a 360-day year comprised of twelve 30-day months, from the date hereof until the date all amounts due hereunder are paid in full, at the rate of 10 % percent per annum.  Accrued interest on the outstanding principal balance of this Note shall be compounded quarterly, on each three month anniversary of the date hereof.

**Payment.** The entire principal balance hereof, together with an interest accrued thereon, shall be due and payable on **June 15, 2020**, or at such time, if earlier, as the Holder has accelerated the maturity of the Note after the occurrence and during the continuation of an Event of Default under this Note or any of the other Loan Agreements. Payment shall be made in immediately available United States funds at such address as the Holder may specify in writing.

**Prepayment.** The Borrower, upon not less than three business days prior written notice, may prepay the outstanding principal amount of this Note, in whole or in part, together with accrued

Page 1 of 4

and unpaid interest on the principal amount so prepaid, without premium, penalty or fee.

**Events of Default.**
Each of the following events also shall constitute an "Event of Default":

    (i)      Borrower fails to pay any additional premiums or adjustments to premiums or other required payments on any Policy or Policies to which this Note relates to the Issuer thereof when due, notwithstanding payment of such amounts by Holder; and

    (ii)     Borrower fails to repay any monies advanced to it by Holder in connection with any Policy or Policies to which this Note relates by the Maturity Date.

**Following an Event of Default.**

        Upon the happening of an Event of Default, the Holder, at its option and in its sole discretion, may accelerate the due date of this Note by notice to the Borrower to such effect, effective immediately, and thereupon the entire unpaid principal balance on or under this Note, together with all interest accrued and unpaid hereon and all Expenses, shall be immediately due and payable.

**Waivers.** The Borrower hereby waives, to the fullest extent permitted by law, presentment, demand, protest and notices, including, without limitation, notices of nonperformance, notices of protest, notices of nonpayment, notices of dishonor, notices of the delivery or acceptance of this Note, and notices of the existence, creation or incurrence of new or additional obligations of the Borrower to the Holder, and all other defenses which otherwise might be available. Borrower acknowledges that the Holder has been induced to enter into this Note by, among other things, the provisions of this Section. No delay or failure by the Holder to exercise any right or remedy shall operate as a waiver thereof, and no single or partial exercise by the Holder of any right or remedy shall preclude any other or further exercise thereof.

**Non-Recourse.** Notwithstanding anything to the contrary in this Note, the Borrower's liability to the Holder under this Note shall be limited exclusively to the extent of the lenders' security interests in the Policy or Policies, the proceeds thereof.  If any proceedings shall be brought to enforce the provisions of this Note, the Holder shall have recourse hereunder against the Borrower only to the extent of the Borrower's interest in the Policy or Policies.   The Holder's sole recourse shall be to exercise its rights under this Note, and the Loan Agreements as to the Policy or Policies, the proceeds thereof.   Neither the Borrower nor any of its trustees, fiduciaries or beneficiaries shall be personally liable or otherwise have any obligation hereunder.

**Retention of Policies.** Borrower expressly acknowledges and agrees that the satisfaction of its obligations under this Note shall not discharge, excuse, impair or terminate Holder's or its designee's rights in and to the related Policy or Policies under the Loan Agreements or any other agreement contemplated thereby.

**Assignment; Registration.** This Note may not be assigned by the Borrower without the prior written consent of the Holder. The Holder may assign or otherwise transfer this Note. This Note is a registered Note. Upon surrender of this Note for transfer, duly endorsed, or accompanied by a written instrument of transfer duly executed, by the Holder or the Holder's attorney duly authorized, in writing, a new Note for a like principal amount will be issued to the transferee. Prior to such surrender, the Borrower shall treat the person to whom such Note is issued as the owner thereof for the purpose of receiving payment and for all other purposes, and the Borrower will not be affected by any notice to the contrary.

**Miscellaneous.** All rights and remedies of the Holder under applicable law and this Note or amendment of any provision of this Note are cumulative and not exclusive. If a court deems any provision of this Note invalid, the remainder of the Note shall remain in effect.

**Notices.** Any notice or demand hereunder shall be duly given if delivered or mailed to the Borrower at its address on page one. Such notice or demand shall be effective, if delivered, upon personal delivery or, if mailed, four business days after deposit in an official depository maintained by the United States Post Office for the collection of mail or one business day after delivery to a nationally recognized courier service for overnight delivery. Notice by e-mail is not valid notice under this Note.

**Governing Law; Jurisdiction.** THIS NOTE HAS BEEN DELIVERED TO AND ACCEPTED BY HOLDER IN, AND WILL BE DEEMED TO BE MADE AND TO BE PERFORMED WHOLLY WITHIN, THE STATE OF CALIFORNIA , AND SHALL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF SUCH STATE, EXCLUDING ITS CONFLICT OF LAWS RULES. BORROWER IRREVOCABLY CONSENTS TO THE SOLE AND EXCLUSIVE JURISDICTION OF THE STATE AND FEDERAL COURTS LOCATED IN THE COUNTY, CITY AND STATE OF CALIFORNIA IN CONNECTION WITH ANY ACTION OR PROCEEDINGS ARISING OUT OF OR RELATING TO THIS NOTE, AND HEREBY WAIVES THE RIGHT TO MOVE TO CHANGE VENUE OR ASSERT INCONVENIENT FORUM. IN ANY SUCH ACTION, BORROWER SHALL AND HEREBY IRREVOCABLY DOES WAIVE ANY RIGHT TO A TRIAL BY JURY. In any action or proceeding on or under this Note, the Borrower waives service of any summons, complaint or other process, and agrees that service thereof shall be deemed made when first received, by personal service, or after having been mailed by certified or registered mail, return receipt requested, and mailed to the last known address of the Borrower. The Borrower waives (i) any right to assert any counterclaim or setoff or any defense based upon a statute of limitations, upon a claim of laches or any other legal theory; and (ii) its right to attack a final judgment that is obtained as a direct or indirect result of any action on or under this Note.

Page 3 of 4

**THE ROZY PEARL ZIMMERMAN  IRREVOCABLE LIFE INSURANCE TRUST**

By:

_____

LESLIE KLEIN                    Trustee
Name                            Title


_____          _____
(witness)                            (witness)

Page 4 of  4

# NON-RECOURSE PROMISSORY NOTE

| | | |
|---|---|---|
| **Principal Sum:** | **$570,000.00** | **December 7, 2009** |
| **Due Date:** | **December 7, 2019** | **State of California** |

**FOR VALUE RECEIVED**, the undersigned, **LESLIE KLEIN** as Trustee of **THE ROZY PEARL ZIMMERMAN IRREVOCABLE LIFE INSURANCE TRUST** with offices at 14245 Ventura Boulevard, Sherman Oaks, California (the "Borrower"), hereby promises to pay to **ROBERT and ESTHER MERMELSTEIN** or their registered assigns (the "Holder"), the principal sum of **$570,000.00**, plus interest of **10%** and all costs, fees and expenses (including without limitation reasonable attorneys' fees and disbursements) that the Holder incurs in order to collect any amount due under this Note, to negotiate or document a workout or restructuring, or to preserve its rights or realize upon any security for the payment of this Note now or hereafter granted ("Expenses").

**Security Agreement; Collateral Assignments.** This Note is a secured, non-recourse promissory note, secured by the policies of life insurance on the live(s) of the individual(s) above named. Pursuant to and in accordance with this agreement this Note is secured by the borrower and the borrower has granted to the lender a continuing first priority security interest in the policies and the proceeds thereof pursuant to this agreement.

**Additional Advances.** In the event that Holder makes any payment of additional premiums, adjustments to premiums or other required payments on or under any Policy or Policies on Borrower's behalf, the amount of any such advances automatically shall be deemed to be, and shall be, added to the outstanding principal balance of this Note as of the date of such advance and shall earn interest from such date.

**Interest Rate.** The outstanding principal balance of this Note shall earn interest, calculated on the basis of a 360-day year comprised of twelve 30-day months, from the date hereof until the date all amounts due hereunder are paid in full, at the rate of 10 % percent per annum.

**Payment.** The entire principal balance hereof, together with an interest accrued thereon, shall be due and payable on **December 7, 2019**, or at such time, if earlier, as the Holder has accelerated the maturity of the Note after tne occurrence and during the continuation of an Event of Default under this Note or any of the other Loan Agreements. Payment shall be made in immediately available United States funds at such address as the Holder may specify in writing.

**Prepayment.** The Borrower, upon not less than three business days prior written notice, may prepay the outstanding principal amount of this Note, in whole or in part, together with accrued and unpaid interest on the principal amount so prepaid, without premium, penalty or fee.

**Events of Default.**
Each of the following events also shall constitute an "Event of Default":

    (i)    Borrower fails to pay any additional premiums or adjustments to premiums or other required payments on any Policy or Policies to which this Note relates to the Issuer thereof when due, notwithstanding payment of such amounts by Holder; and

    (ii)    Borrower fails to repay any monies advanced to it by Holder in connection with any Policy or Policies to which this Note relates by the Maturity Date.

**Following an Event of Default.**

    Upon the happening of an Event of Default, the Holder, at its option and in its sole discretion, may accelerate the due date of this Note by notice to the Borrower to such effect, effective immediately, and thereupon the entire unpaid principal balance on or under this Note, together with all interest accrued and unpaid hereon and all Expenses, shall be immediately due and payable.

**Waivers.** The Borrower hereby waives, to the fullest extent permitted by law, presentment, demand, protest and notices, including, without limitation, notices of nonperformance, notices of protest, notices of nonpayment, notices of dishonor, notices of the delivery or acceptance of this Note, and notices of the existence, creation or incurrence of new or additional obligations of the Borrower to the Holder, and all other defenses which otherwise might be available. Borrower acknowledges that the Holder has been induced to enter into this Note by, among other things, the provisions of this Section. No delay or failure by the Holder to exercise any right or remedy shall operate as a waiver thereof, and no single or partial exercise by the Holder of any right or remedy shall preclude any other or further exercise thereof.

**Non-Recourse.** Notwithstanding anything to the contrary in this Note, the Borrower's liability to the Holder under this Note shall be limited exclusively to the extent of the lenders' security interests in the Policy or Policies, the proceeds thereof. If any proceedings shall be brought to enforce the provisions of this Note, the Holder shall have recourse hereunder against the Borrower only to the extent of the Borrower's interest in the Policy or Policies. The Holder's sole recourse shall be to exercise its rights under this Note, and the Loan Agreements as to the Policy or Policies, the proceeds thereof. Neither the Borrower nor any of its trustees, fiduciaries or beneficiaries shall be personally liable or otherwise have any obligation hereunder.

**Retention of Policies.** Borrower expressly acknowledges and agrees that the satisfaction of its obligations under this Note shall not discharge, excuse, impair or terminate Holder's or its designee's rights in and to the related Policy or Policies under the Loan Agreements or any other agreement contemplated thereby.

**Assignment; Registration.** This Note may not be assigned by the Borrower without the prior written consent of the Holder. The Holder may assign or otherwise transfer this Note. This Note is a registered Note. Upon surrender of this Note for transfer, duly endorsed, or accompanied by a written instrument of transfer duly executed, by the Holder or the Holder's attorney duly authorized, in writing, a new Note for a like principal amount will be issued to the transferee. Prior to such surrender, the Borrower shall treat the person to whom such Note is issued as the owner thereof for the purpose of receiving payment and for all other purposes, and the Borrower will not be affected by any notice to the contrary.

**Miscellaneous.** All rights and remedies of the Holder under applicable law and this Note or amendment of any provision of this Note are cumulative and not exclusive. If a court deems any provision of this Note invalid, the remainder of the Note shall remain in effect.

**Notices.** Any notice or demand hereunder shall be duly given if delivered or mailed to the Borrower at its address on page one. Such notice or demand shall be effective, if delivered, upon personal delivery or, if mailed, four business days after deposit in an official depository maintained by the United States Post Office for the collection of mail or one business day after delivery to a nationally recognized courier service for overnight delivery. Notice by e-mail is not valid notice under this Note.

**Governing Law; Jurisdiction.** THIS NOTE HAS BEEN DELIVERED TO AND ACCEPTED BY HOLDER IN, AND WILL BE DEEMED TO BE MADE AND TO BE PERFORMED WHOLLY WITHIN, THE STATE OF CALIFORNIA , AND SHALL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF SUCH STATE, EXCLUDING ITS CONFLICT OF LAWS RULES. BORROWER IRREVOCABLY CONSENTS TO THE SOLE AND EXCLUSIVE JURISDICTION OF THE STATE AND FEDERAL COURTS LOCATED IN THE COUNTY, CITY AND STATE OF CALIFORNIA IN CONNECTION WITH ANY ACTION OR PROCEEDINGS ARISING OUT OF OR RELATING TO THIS NOTE, AND HEREBY WAIVES THE RIGHT TO MOVE TO CHANGE VENUE OR ASSERT INCONVENIENT FORUM. IN ANY SUCH ACTION, BORROWER SHALL AND HEREBY IRREVOCABLY DOES WAIVE ANY RIGHT TO A TRIAL BY JURY. In any action or proceeding on or under this Note, the Borrower waives service of any summons, complaint or other process, and agrees that service thereof shall be deemed made when first received, by personal service, or after having been mailed by certified or registered mail, return receipt requested, and mailed to the last known address of the Borrower. The Borrower waives (i) any

right to assert any counterclaim or setoff or any defense based upon a statute of limitations, upon a claim of laches or any other legal theory; and (ii) its right to attack a final judgment that is obtained as a direct or indirect result of any action on or under this Note.

**THE ROZY PEARL ZIMMERMAN IRREVOCABLE LIFE INSURANCE TRUST**

By: _____    _____

    **LESLIE KLEIN**                        **Trustee**
    **Name**                               **Title**

_____       _____
        (witness)                              (witness)

Page 4 of 4

## NON-RECOURSE PROMISSORY NOTE

**Principal Sum:**    $375,000                  **January 14, 2010**
**Due Date:**         January 14, 2020         **State of California**

**FOR VALUE RECEIVED**, the undersigned, **LESLIE KLEIN** as Trustee of **THE ROZY PEARL ZIMMERMAN IRREVOCABLE LIFE INSURANCE TRUST** with offices at 14245 Ventura Boulevard, Sherman Oaks, California (the "Borrower"), hereby promises to pay to **ROBERT and ESTHER MERMELSTEIN** or their registered assigns (the "Holder"), the principal sum of **$375,000,** plus interest of **10%** and all costs, fees and expenses (including without limitation reasonable attorneys' fees and disbursements) that the Holder incurs in order to collect any amount due under this Note, to negotiate or document a workout or restructuring, or to preserve its rights or realize upon any security for the payment of this Note now or hereafter granted ("Expenses").

**Security Agreement; Collateral Assignments.** This Note is a secured, non-recourse promissory note, secured by the policies of life insurance on the live(s) of the individual(s) above named. Pursuant to and in accordance with this agreement this Note is secured by the borrower and the borrower has granted to the lender a continuing first priority security interest in the policies and the proceeds thereof pursuant to this agreement.

**Additional Advances.** In the event that Holder makes any payment of additional premiums, adjustments to premiums or other required payments on or under any Policy or Policies on Borrower's behalf, the amount of any such advances automatically shall be deemed to be, and shall be, added to the outstanding principal balance of this Note as of the date of such advance and shall earn interest from such date.

**Interest Rate.** The outstanding principal balance of this Note shall earn interest, calculated on the basis of a 360-day year comprised of twelve 30-day months, from the date hereof until the date all amounts due hereunder are paid in full, at the rate of 10 % percent per annum.

**Payment.** The entire principal balance hereof, together with an interest accrued thereon, shall be due and payable on **January 14, 2020** or at such time, if earlier, as the Holder has accelerated the maturity of the Note after the occurrence and during the continuation of an Event of Default under this Note or any of the other Loan Agreements. Payment shall be made in immediately available United States funds at such address as the Holder may specify in writing.

**Prepayment.** The Borrower, upon not less than three business days prior written notice, may prepay the outstanding principal amount of this Note, in whole or in part, together with accrued

Page 1 of 4

and unpaid interest on the principal amount so prepaid, without premium, penalty or fee.

**Events of Default.**
Each of the following events also shall constitute an "Event of Default":

(i)     Borrower fails to pay any additional premiums or adjustments to premiums or other required payments on any Policy or Policies to which this Note relates to the Issuer thereof when due, notwithstanding payment of such amounts by Holder; and

(ii)    Borrower fails to repay any monies advanced to it by Holder in connection with any Policy or Policies to which this Note relates by the Maturity Date.

**Following an Event of Default.**

Upon the happening of an Event of Default, the Holder, at its option and in its sole discretion, may accelerate the due date of this Note by notice to the Borrower to such effect, effective immediately, and thereupon the entire unpaid principal balance on or under this Note, together with all interest accrued and unpaid hereon and all Expenses, shall be immediately due and payable.

**Waivers.** The Borrower hereby waives, to the fullest extent permitted by law, presentment, demand, protest and notices, including, without limitation, notices of nonperformance, notices of protest, notices of nonpayment, notices of dishonor, notices of the delivery or acceptance of this Note, and notices of the existence, creation or incurrence of new or additional obligations of the Borrower to the Holder, and all other defenses which otherwise might be available. Borrower acknowledges that the Holder has been induced to enter into this Note by, among other things, the provisions of this Section. No delay or failure by the Holder to exercise any right or remedy shall operate as a waiver thereof, and no single or partial exercise by the Holder of any right or remedy shall preclude any other or further exercise thereof.

**Non-Recourse.** Notwithstanding anything to the contrary in this Note, the Borrower's liability to the Holder under this Note shall be limited exclusively to the extent of the lenders' security interests in the Policy or Policies, the proceeds thereof. If any proceedings shall be brought to enforce the provisions of this Note, the Holder shall have recourse hereunder against the Borrower only to the extent of the Borrower's interest in the Policy or Policies. The Holder's sole recourse shall be to exercise its rights under this Note, and the Loan Agreements as to the Policy or Policies, the proceeds thereof. Neither the Borrower nor any of its trustees, fiduciaries or beneficiaries shall be personally liable or otherwise have any obligation hereunder.

**Retention of Policies.** Borrower expressly acknowledges and agrees that the satisfaction of its

obligations under this Note shall not discharge, excuse, impair or terminate Holder's or its designee's rights in and to the related Policy or Policies under the Loan Agreements or any other agreement contemplated thereby.

**Assignment; Registration.** This Note may not be assigned by the Borrower without the prior written consent of the Holder. The Holder may assign or otherwise transfer this Note. This Note is a registered Note. Upon surrender of this Note for transfer, duly endorsed, or accompanied by a written instrument of transfer duly executed, by the Holder or the Holder's attorney duly authorized, in writing, a new Note for a like principal amount will be issued to the transferee. Prior to such surrender, the Borrower shall treat the person to whom such Note is issued as the owner thereof for the purpose of receiving payment and for all other purposes, and the Borrower will not be affected by any notice to the contrary.

**Miscellaneous.** All rights and remedies of the Holder under applicable law and this Note or amendment of any provision of this Note are cumulative and not exclusive. If a court deems any provision of this Note invalid, the remainder of the Note shall remain in effect.

**Notices.** Any notice or demand hereunder shall be duly given if delivered or mailed to the Borrower at its address on page one. Such notice or demand shall be effective, if delivered, upon personal delivery or, if mailed, four business days after deposit in an official depository maintained by the United States Post Office for the collection of mail or one business day after delivery to a nationally recognized courier service for overnight delivery. Notice by e-mail is not valid notice under this Note.

**Governing Law; Jurisdiction.** THIS NOTE HAS BEEN DELIVERED TO AND ACCEPTED BY HOLDER IN, AND WILL BE DEEMED TO BE MADE AND TO BE PERFORMED WHOLLY WITHIN, THE STATE OF CALIFORNIA , AND SHALL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF SUCH STATE, EXCLUDING ITS CONFLICT OF LAWS RULES. BORROWER IRREVOCABLY CONSENTS TO THE SOLE AND EXCLUSIVE JURISDICTION OF THE STATE AND FEDERAL COURTS LOCATED IN THE COUNTY, CITY AND STATE OF CALIFORNIA IN CONNECTION WITH ANY ACTION OR PROCEEDINGS ARISING OUT OF OR RELATING TO THIS NOTE, AND HEREBY WAIVES THE RIGHT TO MOVE TO CHANGE VENUE OR ASSERT INCONVENIENT FORUM. IN ANY SUCH ACTION, BORROWER SHALL AND HEREBY IRREVOCABLY DOES WAIVE ANY RIGHT TO A TRIAL BY JURY. In any action or proceeding on or under this Note, the Borrower waives service of any summons, complaint or other process, and agrees that service thereof shall be deemed made when first received, by personal service, or after having been mailed by certified or registered mail, return receipt requested, and mailed to the last known address of the Borrower. The Borrower waives (i) any

right to assert any counterclaim or setoff or any defense based upon a statute of limitations, upon a claim of laches or any other legal theory; and (ii) its right to attack a final judgment that is obtained as a direct or indirect result of any action on or under this Note.

**THE ROZY PEARL ZIMMERMAN IRREVOCABLE LIFE INSURANCE TRUST**

By:    _____

**LESLIE KLEIN**                    **Trustee**
Name                                  Title

_____    _____
(witness)                         (witness)

Page 4 of 4

Case 2:23-ap-01169-SK    Doc 45    Filed 01/10/24    Entered 01/10/24 15:26:33    Desc
Main Document    Page 218 of 473

EXHIBIT "4"

Notes

| | | | | | |
|---|---|---|---|---|---|
| 12/7/2009 | $570,000.00 | at 10% | | | |
| 12/7/2019 | $57,000 per Year | 2009 | $ | 3,904.11 | 25 Days |
| | $156.16 per Day | 2010-2022 | $ | 741,000.00 | 13x57,000 |
| | | 2023-up to 4/30/23 | $ | 18,739.20 | 120 Days |
| | | | $ | **763,643.31** | |
| | | | | | |
| 1/14/2010 | $375,000.00 | at 10% | | | |
| 1/14/2020 | $37,500 per year | 2010 | $ | 36,164.48 | 352 Days |
| | $102.74 per Day | 2011-2022 | $ | 450,000.00 | 12x37,500 |
| | | 2023-up to 4/30/23 | $ | 12,328.80 | 120 Days |
| | | | $ | **498,493.28** | |
| | | | | | |
| 6/15/2011 | $    1,412,679.53 | at 10% | | | |
| 6/15/2020 | $141,267.95 per year | 2011 | $ | 77,408.00 | 200 days |
| | $387.04 per day | 2012-2022 | $ | 1,553,947.45 | 11x141,267.95 |
| | | 2023-up to 4/30/23 | $ | 46,444.80 | 120 Days |
| | | | $ | **1,677,800.25** | |

| | | | | |
|---|---|---|---|---|
| Total Interest | up to 4/30/23 | | $ | 763,643.31 |
| | | | $ | 498,493.28 |
| | | | $ | 1,677,800.25 |
| | | | $ | **2,939,936.84** |

Case 2:23-ap-01169-SK    Claim 2-1    Filed 01/19/24    Desc Main Document    Page 220 of 473

**EXHIBIT "5"**

# AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT

## OF

## LIFE CAPITAL GROUP, LLC

A California Limited Liability Company

Dated as of [   |  11    ], 2011

# TABLE OF CONTENTS

## ARTICLE I
### FORMATION AND BUSINESS OF THE COMPANY

Section 1.1   Formation ................................................................................................................1
Section 1.2   Name .......................................................................................................................1
Section 1.3   Purpose ...................................................................................................................1
Section 1.4   Term ........................................................................................................................1
Section 1.5   Place of Business ....................................................................................................1
Section 1.6   Registered Office and Agency ...............................................................................1
Section 1.7   Fiscal Year ..............................................................................................................2

## ARTICLE II
### MEMBERS

Section 2.1   Members ..................................................................................................................2
Section 2.2   Company Property; Company Interest .....................................................................2

## ARTICLE III
### CAPITAL CONTRIBUTIONS

Section 3.1   Initial Capital Contribution of Members, Capital Accounts ....................................2
Section 3.2   Additional Capital Contributions ...........................................................................2
Section 3.3   Withdrawal and Return of Capital Contributions ...................................................3
Section 3.4   Interest .....................................................................................................................3
Section 3.5   Negative Capital Accounts ......................................................................................3

## ARTICLE IV
### DISTRIBUTIONS AND ALLOCATIONS

Section 4.1   Allocation of Net Income and Net Losses ...............................................................3
Section 4.2   Cash Available for Distribution ..............................................................................4
Section 4.3   Proceeds of Policies ................................................................................................4
Section 4.4   Constructive Trust ...................................................................................................4
Section 4.5   Sale of Policies ........................................................................................................4
Section 4.6   Lenders ....................................................................................................................4

## ARTICLE V
### RESERVE ACCOUNT

Section 5.1   Establishing a Reserve Account ..............................................................................5
Section 5.2   Distribution of Reserve Account .............................................................................5

## ARTICLE VI
### MANAGEMENT; CONDUCT OF MEMBERS; GOVERNANCE OF THE COMPANY

-i-

Section 6.1    Rights and Powers of Manager..................................................................5
Section 6.2    Number, Tenure and Qualifications ..........................................................5
Section 6.3    Officers .....................................................................................................5
Section 6.4    Reliance .....................................................................................................6
Section 6.5    Indemnification of Manager, Members and Officers. ...............................6
Section 6.6    Exculpation ................................................................................................7
Section 6.7    No Duties ...................................................................................................7
Section 6.8    Protection of Insured's Private Information ..............................................7
Section 6.9    Delivery of Policy Files .............................................................................7
Section 6.10   Change Forms.............................................................................................7
Section 6.11   Further Assurances .....................................................................................8
Section 6.12   Indemnification of Rechnitz .......................................................................8

## ARTICLE VII
### REPRESENTATIONS AND WARRANTIES OF THE MEMBERS

Section 7.1    Representations and Warranties of Klein. ..................................................8
Section 7.2    Representations and Warranties of Rechnitz...........................................10

## ARTICLE VIII
### ADMISSION OF MEMBERS

Section 8.1    Admission of Members .............................................................................11
Section 8.2    Admission of Non-Payment Policy Members ...........................................11

## ARTICLE IX
### MAINTENANCE OF BOOKS AND RECORDS; REPORTS TO MEMBERS; TAX RETURNS

Section 9.1    Accounting Method and Records ...............................................................12
Section 9.2    Company Records......................................................................................12
Section 9.3    Company Reports.......................................................................................13
Section 9.4    Designation of Tax Matters Member..........................................................13
Section 9.5    Tax Treatment and Elections.....................................................................13

## ARTICLE X
### TRANSFER OF INTERESTS; SPECIAL PROVISIONS

Section 10.1   Transfers and Assignments.........................................................................13
Section 10.2   Permitted Transfers....................................................................................13
Section 10.3   Substitute Members ...................................................................................14
Section 10.4   Right of First Refusal. ...............................................................................14
Section 10.5   Tag-Along Rights and Obligations.............................................................15
Section 10.6   Miscellaneous Provisions Affecting Transfer. ..........................................16

## ARTICLE XI
### DISSOLUTION, LIQUIDATION, TERMINATION AND CONVERSION

Section 11.1   Dissolution, etc .........................................................................................16

NY 73548773v3

Section 11.2  Winding Up. ........................................................................................16
Section 11.3  Final Distribution ...............................................................................17
Section 11.4  Time for Liquidation, etc .....................................................................17
Section 11.5  Termination .........................................................................................17
Section 11.6  Return of Contribution Nonrecourse to Other Members .......................17

ARTICLE XII
DISPUTE RESOLUTION

Section 12.1  Rabbinical Counsel ..............................................................................18

ARTICLE XIII
MISCELLANEOUS

Section 13.1  Entire Agreement .................................................................................18
Section 13.2  Other Ventures ....................................................................................18
Section 13.3  Amendments ........................................................................................18
Section 13.4  Choice of Law .....................................................................................18
Section 13.5  Successors and Assigns; Third Party Beneficiaries ...............................18
Section 13.6  Interpretation ......................................................................................18
Section 13.7  Captions .............................................................................................19
Section 13.8  Severability .........................................................................................19
Section 13.9  Counterparts .......................................................................................19
Section 13.10 Non-Waiver ........................................................................................19
Section 13.11 Notices ...............................................................................................19

ARTICLE XIV
DEFINITIONS

Section 14.1  Definitions. .........................................................................................20

NY 73548773v3

AMENDED AND RESTATED LIMITED LIABILITY COMPANY
AGREEMENT of LIFE CAPITAL GROUP, LLC (this **"Agreement"**), a California limited
liability company (the **"Company"**), dated as of [                    ], 2011, among Shlomo Rechnitz,
an individual residing in the State of California (**"Rechnitz"**), Leslie Klein, an individual
residing in the State of California (**"Klein"**), and the Persons that become Members from time to
time after the date hereof in accordance with the terms hereof.

## WITNESSETH:

WHEREAS, Rechnitz and Klein entered into that certain Limited Liability
Company Agreement of the Company dated as of June 1, 2011 (the **"Original Agreement"**);
and

WHEREAS, Rechnitz and Klein wish to amend and restate the Original
Agreement in its entirety.

NOW, THEREFORE, in consideration of the mutual covenants set forth herein,
and for other good and valuable consideration, the receipt and sufficiency of which are hereby
acknowledged, the Members agree to amend and restate the Original Agreement in its entirety as
follows:

## ARTICLE I
### FORMATION AND BUSINESS OF THE COMPANY

Section 1.1     Formation.  The Company was formed on April 8, 2011 by the
filing of a Certificate of Formation (the **"Certificate"**) with the Secretary of State of California.
The Members hereby agree to operate the Company as a limited liability company pursuant to
the provisions of the Act and upon and subject to the terms and conditions set forth in this
Agreement. Except as expressly provided herein to the contrary, the rights and obligations of the
Members and the administration and termination of the Company shall be governed by the Act.

Section 1.2     Name.  The name of the Company shall continue to be Life Capital
Group, LLC, under which name all business and affairs of the Company shall be conducted.

Section 1.3     Purpose.  The purpose of the Company is to engage in any lawful
act or activity for which a limited liability company may be organized under the Act.

Section 1.4     Term.  The term of the Company shall continue until terminated in
accordance with the provisions of Article XI of this Agreement or otherwise dissolved and
wound up pursuant to the Act.

Section 1.5     Place of Business.  The Company shall have its principal place or
places of business at such place or places as the Manager may, from time to time, select.

Section 1.6     Registered Office and Agency.  The address of the registered
office of the Company in the State of California is 5697 W. 3rd Street, Suite 200, Los Angeles,
California 90036. The name and address of the registered agent for service of process on the

Company in the State of California is Shlomo Rechnitz, 5697 W. 3rd Street, Suite 200, Los Angeles, California 90036.

Section 1.7    Fiscal Year. The term "**Fiscal Year**" shall mean, subject to the provisions of Section 706 of the Code, each of (a) the period commencing on the date of formation of the Company and ending on December 31, 2011, (b) any subsequent 12-month period commencing on January 1 and ending on December 31 and (c) the period commencing on January 1 and ending on the Dissolution Date.

## ARTICLE II
## MEMBERS

Section 2.1    Members. The Company shall consist of the Members executing this Agreement and any substitute or additional Members admitted to the Company in accordance with the terms hereof. Each initial Member shall be deemed admitted as a Member of the Company at such time as such Member has made its Initial Capital Contribution to the Company.

Section 2.2    Company Property: Company Interest. No property of the Company shall be deemed to be owned by any Member individually, but all of such property shall be owned by, and title thereto shall be vested solely in, the Company.

## ARTICLE III
## CAPITAL CONTRIBUTIONS

Section 3.1    Initial Capital Contribution of Members, Capital Accounts. Each Member has contributed to the capital of the Company, as such Member's Initial Capital Contribution, the amount of cash, or property with a value, set forth on Schedule A. The Company shall maintain a record of: (a) the number of Interests held by each Member and (b) the respective Percentage Interest of each Member. The Manager shall update such Schedule A from time to time to reflect changes in such information. The Members agree that Klein's Initial Capital Contribution associated with each Policy shall equal the sum of the total amount of premium payments made on such Policy by Klein and all other costs and expenses incurred by Klein in servicing and maintaining such Policy as of the date of the Original Agreement. The Members agree that Rechnitz's Initial Capital Contribution associated with the Policies (in the order of each Policy that first generates proceeds) shall be deemed to be $3,800,000. The Company will establish and maintain a Capital Account for each Member throughout the full term of the Company.

Section 3.2    Additional Capital Contributions. Other than the Initial Capital Contributions made by the Members upon admission to the Company in accordance with Section 3.1 and Article VIII, the Members shall not be required to make any additional contributions to the Company; except that Rechnitz shall be obligated to contribute to the Company all premium payments and all other costs and expenses incurred by the Company in servicing and maintaining the Policies which are not Non-Payment Policies after the date of this Agreement and each Non-Payment Policy Member shall be obligated to contribute to the Company all premium payments and all other costs and expenses incurred by the Company in

NY 73548773v3

servicing and maintaining the applicable Non-Payment Policy after the date such Non-Payment Policy Member was admitted to the Company as a Member.

Section 3.3   Withdrawal and Return of Capital Contributions.

(a)   No Member shall be entitled to demand a return of such Member's Capital Contribution (including any earnings thereon) or to withdraw any portion of such Member's Capital Account except as expressly provided in this Agreement. Except as expressly provided herein, no Member shall have the right to demand a distribution of property other than cash for its Interest. Each Member hereby waives any right such Member may otherwise have to cause any asset of the Company to be partitioned or to file a complaint or institute any proceeding at law or in equity seeking the partition of any such asset. Except as otherwise provided herein, no Member shall have priority over any other Member, either as to a return of such Member's Capital Contribution or as to Net Income, Net Losses, any other item of Company income, gain, loss or deduction, or Company distributions.

(b)   No Member shall be personally liable for the return of the Capital Contributions of any other Member or any portion thereof, it being expressly understood that any such return shall be made solely from available Company assets, if any.

Section 3.4   Interest. Interest, if any, earned on funds contributed or held by the Company shall inure to the benefit of the Company. The Members shall not be entitled to receive interest or any other payments from the Company with respect to their Capital Contributions or Capital Accounts, except as otherwise provided for herein.

Section 3.5   Negative Capital Accounts. Except as may be required by the provisions of the Act or in respect of any negative balance resulting from a withdrawal of capital or distribution in contravention of this Agreement, at no time shall any Member with a negative Capital Account balance have any obligation to the Company or the other Members to restore such negative balance, and such negative balance shall not be treated as an asset of the Company.

## ARTICLE IV
## DISTRIBUTIONS AND ALLOCATIONS

Section 4.1   Allocation of Net Income and Net Losses.

(a)   Net Income with respect to a Policy for any Fiscal Year shall be allocated (i) first, to Rechnitz to the extent of Rechnitz's Priority Return with respect to such Policy; (ii) second, to Rechnitz, in an amount equal to the product of (X) fifty percent (50%) and (Y) the remaining Net Income for such Policy less the amount equal to Klein's Priority Return with respect to such Policy; (iii) third, to Rechnitz, until \$3,800,000 of Net Income plus accrued interest thereon at a rate of twelve percent (12%) per annum has been allocated to Rechnitz in the aggregate (without regard to allocations of Net Income under subclauses (i) or (ii)); and (iv) thereafter, to Klein any remaining Net Income for such Policy.

(b)   Net Losses with respect to a Policy for any Fiscal Year shall be allocated to Klein and Rechnitz in proportion to their Capital Contributions associated with such Policy.

-3-

Section 4.2 <u>Cash Available for Distribution</u>. Subject to <u>Article XI</u>, the Company shall distribute Available Cash to the Members at such times and in such amounts as determined by Rechnitz in accordance with this Agreement.

Section 4.3 <u>Proceeds of Policies</u>. If at any time the Company receives any proceeds from any Policy that is not a Non-Payment Policy (following the death of an Insured or otherwise), then any such proceeds shall be distributed as follows:

(a) first, to Rechnitz by wire transfer into an account designated by Rechnitz, in an amount up to the Rechnitz Amount for such Policy;

(b) second, to Rechnitz by wire transfer into an account designated by Rechnitz, in an amount equal to the product of (X) fifty percent (50%) and (Y) the remaining proceeds for such Policy less the amount equal to Klein's Priority Return with respect to such Policy;

(c) third, to Rechnitz by wire transfer into an account designated by Rechnitz, in an amount equal to $3,800,000 plus accrued interest thereon at a rate of twelve percent (12%) per annum;

(d) fourth, (A) first, to each of the Lenders, pro-rata, based on the outstanding principal balance owed to such Lender as set forth on <u>Schedule C</u>, until such outstanding principal balance is equal to zero, in an aggregate amount up to the Klein Amount for such Policy and (B) second, any remaining Klein Amount with respect to such Policy to Klein by wire transfer into an account designated by Klein;

(e) fifth, any remaining proceeds to Klein by wire transfer into an account designated by Klein, provided, however, that if the balance of the Reserve Account is less than $2,500,000, then proceeds distributable to Klein under this clause (e) shall be deposited in the Reserve Account until such balance is equal to $2,500,000.

Section 4.4 <u>Constructive Trust</u>. If any Member receives any proceeds in respect of any Policy (following the death of an Insured or otherwise), such Member shall hold such proceeds in a constructive trust for the Company and shall within one (1) Business Day inform the other Members and the Manager and deposit such proceeds in the Reserve Account.

Section 4.5 <u>Sale of Policies</u>. The Company shall be entitled to sell any Policy to any Person with the prior written consent of each of the Members. Notwithstanding the immediately preceding sentence, upon Klein's written consent, Rechnitz or his designee shall be entitled to purchase any Policy that is not a Non-Payment Policy from the Company by transferring an amount equal to the Klein Amount for such Policy to the Company, which for administrative convenience shall be subsequently distributed to an account designated by Klein.

Section 4.6 <u>Lenders</u>. The Members agree that (i) the Company may pay amounts pursuant to <u>Section 4.3(d)</u> directly to the Lenders, and in such event, the payments will be treated as distributions by the Company to Klein and subsequently transferred by Klein to the Lenders, (ii) nothing herein is intended to grant to the Lenders an equity interest in the Company,

and (iii) nothing herein is intended to imply that the Company is assuming the obligations owed to the Lenders.

## ARTICLE V
## RESERVE ACCOUNT

Section 5.1    Establishing a Reserve Account.    As soon as practicable the Company shall establish the Reserve Account with the Account Bank in the name of Company.

Section 5.2    Distribution of Reserve Account.    Amounts in the Reserve Account shall be distributed to certain Members in certain specified amounts under the following circumstances: (a) if the amount of Net Income allocated to Klein with respect to a Policy under Section 4.1 for a Fiscal Year exceeds the amount of proceeds distributed to Klein with respect to such Policy pursuant to Section 4.3; then 40% of such excess shall be distributed to Klein from the Reserve Account; (b) if upon a disposition of a Policy or the receipt of proceeds from such policy, the Rechnitz Amount with respect to the Policy exceeds the amount of proceeds distributed to Rechnitz with respect to such Policy pursuant to Section 4.3, then the amount of such excess shall be distributed to Rechnitz from the Reserve Account; and (c) if agreed upon by the Members, then the amount agreed upon by the Members shall be distributed to Klein from the Reserve Account.

## ARTICLE VI
## MANAGEMENT; CONDUCT OF MEMBERS; GOVERNANCE OF THE COMPANY

Section 6.1    Rights and Powers of Manager.    The business and affairs of the Company shall be managed by the Manager. The Manager shall direct, manage, and control the business of the Company to the best of the Manager's ability. Except for situations in which the approval of the Members is expressly required by this Agreement or by nonwaivable provisions of applicable law, the Manager shall have full and complete authority, power and discretion to manage and control the business, affairs and properties of the Company, to make all decisions regarding those matters and to perform any and all acts or activities customary or incident to the management of the Company's business. Nothing contained in this Agreement shall require any person to inquire into the authority of the Manager to execute and deliver any document on behalf of the Company or to bind the Company pursuant to such document.

Section 6.2    Number, Tenure and Qualifications.    The Company shall have one Manager, which initially shall be Jonathon Polter ("**Polter**"), an individual residing at 2000 Town Center, Suite 1490, Southfield, Michigan 48075. Polter shall remain as the Manager unless he resigns from such position, is relieved of his duties by (i) if there are two Members or less, a unanimous vote of the Members and (ii) otherwise, an affirmative vote of Members holding a majority of the Interests. Subsequent Managers shall be elected by the affirmative vote of Members holding a majority of the Interests. Managers need not be residents of the State of California.

Section 6.3    Officers.    The Manager may delegate the management of the Company's day-to-day business affairs to a Chief Executive Officer and other officers of the Company designated by the Manager and approved by an affirmative vote of Members holding a

majority of the Interests and, unless otherwise decided by the Manager, all actions of the Company may be taken by the appropriate duly authorized officers.

Section 6.4    Reliance.  The Manager shall be fully protected in relying in good faith upon the records of the Company and upon such information, opinions, reports or statements presented to the Company by any officers, employees, or committees of the Company, or by any other Person as to matters such Manager reasonably believes are within such other Person's professional or expert competence and who has been selected with reasonable care by or on behalf of the Company, including, without limitation, information, opinions, reports or statements as to the value and amount of the assets, liabilities, profits or losses of the Company or any other facts pertinent to the existence and amount of assets from which distributions to Members might properly be paid.

Section 6.5    Indemnification of Manager, Members and Officers.

(a)    General.  The Company shall indemnify any Person (a "**Covered Person**") who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (including an action by or in the right of the Company) by reason of the fact that he is or was a Manager, Member or officer of the Company, or is or was serving at the request of the Company as a director, manager or officer of another limited liability company, corporation, partnership, joint venture, trust or other enterprise, against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with such action, suit or proceeding if he acted in good faith with no willful misconduct or gross negligence and in a manner he reasonably believed to be in or not opposed to the best interests of the Company, and, with respect to any criminal action or proceeding, had no reasonable cause to believe his conduct was unlawful.  The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the Person did not act in good faith and in a manner which he reasonably believed to be in or not opposed to the best interests of the Company, and, with respect to any criminal action or proceeding, had reasonable cause to believe that his conduct was unlawful.

(b)    Indemnification in Certain Cases.  To the extent that a Covered Person has been successful on the merits or otherwise in defense of any action, suit or proceeding referred to in clause (a) of this Section 6.5, or in defense of any claim, issue or matter therein, he shall be indemnified against expenses (including attorneys' fees) actually and reasonably incurred by him in connection therewith.

(c)    Advances for Expenses.  Expenses (including attorneys' fees) incurred in defending a civil, criminal, administrative or investigative action, suit or proceeding may be paid by the Company in advance of the final disposition of such action, suit or proceeding upon receipt of an undertaking by or on behalf of the Covered Person to repay such amount if it shall be ultimately determined that he is not entitled to be indemnified by the Company as authorized in this Section 6.5.

(d)     Rights Non-Exclusive. The indemnification and advancement of expenses provided by, or granted pursuant to, the other subparagraphs of this Section 6.5 shall not be deemed exclusive of any other rights to which those seeking indemnification or advancement of expenses may be entitled under any law, agreement or otherwise, both as to action in his official capacity and as to action in another capacity while holding such office.

(e)     Insurance. The Company shall have the power to purchase and maintain insurance on behalf of any Person who is or was a Covered Person against any liability asserted against him and incurred by him in any such capacity, or arising out of his status as such, whether or not the Company would have the power to indemnify him against such liability under the provisions of this Section 6.5.

(f)     Survival of Rights. The indemnification and advancement of expenses provided by, or granted pursuant to this Section 6.5 shall continue as to a Person who has ceased to be an officer, Manager or Member and shall inure to the benefit of the heirs, executors and administrators of such Person.

Section 6.6     Exculpation. No Member, Manager or officer of the Company shall be liable, in damages or otherwise, to the Company or its Members for any act or omission performed or omitted by such Member, Manager or officer pursuant to authority granted by this Agreement except to the extent such Person fails to meet the standard for indemnification set forth in Section 6.5(a).

Section 6.7     No Duties. Any duties (including fiduciary duties) of a Covered Person to the Company or to any other Covered Person that would otherwise apply at law or in equity are hereby eliminated to the fullest extent permitted under the Act and any other applicable law, provided, that (i) the foregoing shall not eliminate the obligation of each Member and the Manager to act in compliance with the express terms of this Agreement and (ii) the foregoing shall not be deemed to eliminate the implied covenant of good faith and fair dealing.

Section 6.8     Protection of Insured's Private Information. Manager and each Member acknowledge that insurance regulations and other applicable Laws are structured to provide confidentiality to policy owners and insureds with respect to Consumer Information in connection with ownership or sale of their policies, and that the Manager and each Member and all of their respective agents and representatives, are obligated to keep Consumer Information confidential in accordance with applicable Laws. The Manager and each Member agree to comply with all applicable Laws with respect to the confidentiality of Consumer Information; provided, that (i) the Manager and each Member may disclose such information to their internal or external auditors and attorneys and as required or permitted by Law, and (ii) Klein may take all necessary and appropriate actions to transfer ownership of the Policies to the Company.

Section 6.9     Delivery of Policy Files. Klein has previously delivered each Policy File as directed by the Manager.

Section 6.10     Change Forms. On the date of the Original Agreement, Klein executed and delivered Change Forms to the Company or at the Company's direction, which Change Forms changed the owner and Beneficiary of the Policy to the Company or the

Company's designee. In addition, Klein shall execute and deliver any additional instruments of transfer that the Company may reasonably request necessary to evidence the assignment of the Policy and any rights therein to the Company or its designee.

Section 6.11  Further Assurances. From and after the date hereof, each Member shall execute and deliver such other documents and instruments, and take such further actions, as may be reasonably requested from time to time by another Member to carry out the provisions of this Agreement and give effect to the transactions contemplated hereby. Without limiting the foregoing, Klein shall cooperate with Rechnitz in causing the Company or its designee to be recorded as the owner and beneficiary of each Policy on the books and records of the relevant issuing insurance companies.

Section 6.12  Indemnification of Rechnitz. Klein shall indemnify and hold harmless (which indemnification shall survive any termination of this Agreement and the dissolution of the Company) Rechnitz and his Affiliates, and each such Person's respective officers, directors, employees, attorneys, agents and representatives (each, an **"Indemnified Person"**), from and against any and all suits, actions, proceedings, claims, damages, losses, liabilities and actual expenses incurred (including reasonable attorneys' fees and disbursements and other costs of investigation or defense, including those incurred upon any appeal) that may be instituted or asserted against or incurred by any such Indemnified Person, and in connection with or arising out of (i) any breach of any representation, covenant or other obligation of Klein hereunder, (ii) the transactions contemplated hereunder, (iii) any actions or failures to act in connection therewith, (iv) any and all reasonable legal costs and actual expenses arising out of or incurred in connection with disputes between or among Klein and Rechnitz or (v) any of the Policies or any claims of third parties relating thereto (collectively, **"Indemnified Liabilities"**); provided, that Klein shall not be liable for any indemnification to an Indemnified Person to the extent that any such Indemnified Liability results from that Indemnified Person's gross negligence or willful misconduct; provided, further, that the aggregate amount of Klein's liability under this Section 6.12 shall be limited to the aggregate of the Rechnitz Amounts for all of the Policies.

## ARTICLE VII
## REPRESENTATIONS AND WARRANTIES OF THE MEMBERS

Section 7.1  Representations and Warranties of Klein.

(a)  Power and Authority. Klein has full power, authority and right to execute and deliver this Agreement and has, and will continue to have during the entire term of this Agreement, full power and authority to perform his obligations hereunder, and has taken all necessary action to authorize the execution and delivery of this Agreement, as well as the performance of its obligations hereunder.

(b)  Binding Obligation. This Agreement constitutes the legal, valid and binding obligations of Klein enforceable against Klein in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization and similar laws affecting creditors' rights and remedies generally, and subject, as to enforceability, to general principles of equity, including principles of commercial reasonableness, good faith and fair dealing.

(c)    Consent of Third Parties.  No consent, waiver, approval, order, permit or authorization of, or declaration or filing with, or notification to, any Person or Governmental Authority is required by Klein in connection with the execution of this Agreement and the compliance by Klein with any of the provisions hereof or thereof, the consummation of the transactions contemplated hereby or the taking by Klein of any other action contemplated hereby.

(d)    Policies.  With respect to each Policy, to the best of Klein's knowledge:

(i)    at the issuance of such Policy, the related Insured or Original Owner thereof was not a party to any written or oral agreement or arrangement to cause the same or interests therein to be issued, assigned, sold, transferred, or otherwise disposed of in violation of applicable law or public policy;

(ii)    at the issuance of such Policy, the related Insured or Original Owner thereof had the financial capacity to pay the premiums necessary to maintain such Policy in force;

(iii)    at the issuance of such Policy the related Original Owner had an insurable interest in the life of the Insured;

(iv)    the material medical or financial information supplied by or on behalf of the Insured or Original Owner of such Policy in the application and related materials delivered to the applicable issuing insurance company in connection with the issuance of such Policy was not false, incomplete or misleading in any material respect;

(v)    Klein does not possess or control any material documentation or information related to such Policy, or the acquisition or maintenance thereof by Klein, that has not been delivered or disclosed in writing to Rechnitz or his agents;

(vi)    prior to the date of the Original Agreement, Klein was trustee of the applicable Original Owner which held sole legal and beneficial title thereto;

(vii)    Klein, in his capacity as trustee of the applicable Original Owner, acquired sole legal and beneficial title thereto and had the power and authority to enter into and consummate the Original Agreement;

(viii)    Immediately prior to its transfer to the Company under the Original Agreement, Klein held sole legal and beneficial title thereto;

(ix)    upon the transfer of such Policy, Company or its designee, holds good and marketable title to and ownership of such Policy free and clear of any liens, charges, rights, encumbrances or other interests;

(x)    such Policy was acquired in a manner in compliance, in all material respects, with the Laws applicable to the purchase of life insurance policies, as then in effect and as then interpreted by the relevant regulators or in case law;

NY 73548773v3

(xi)     except as disclosed to Rechnitz in writing, no previous owner of such Policy has waived, amended or terminated any material provision of, or any material rights in relation to, such Policy;

(xii)    except as disclosed on Schedule 7.1(d)(xii), the premiums for such Policy have been paid such that such Policy will not be in a grace period as of the date of the Original Agreement and such Policy has not been cancelled as of the date of the Original Agreement;

(xiii)   Klein has disclosed or delivered to Rechnitz and the Company in writing all information received by Klein or any of his agents from the related issuing insurance company related to any change in the terms of such Policy, including with respect to an intent to increase the cost of insurance for such Policy;

(xiv)    there is no current or pending written notice that has been issued to Klein by the related issuing insurance company of such issuing insurance company's intention to cancel, contest, rescind or refuse payment under such Policy;

(xv)     all the information contained in each of the documents in the related Policy File or otherwise delivered by or on behalf of Klein to the Company and Rechnitz in connection with such Policy is true, complete and correct in all material respects;

(xvi)    the related Policy File contains the Policy, the original application for such Policy, any Policy Illustration and any other documentation in Klein's possession.

(xvii)   there is not any pending or threatened Proceeding challenging the validity, ownership or enforceability of such Policy or Klein's ownership rights in such Policy;

(xviii)  such Policy was not issued pursuant to or in connection with an agreement whereby the premiums required to be paid on such Policy were paid by any Person pursuant to a recourse or non-recourse premium financing program;

(xix)    Klein has not required any broker to sign an agreement offering Klein or any other Person the "right of last offer" in connection with the purchase of such Policy; and

(xx)     such Policy has been issued by the related issuing insurance company and is in force and any related contestability period and any suicide exclusion period has expired.

        Section 7.2    Representations and Warranties of Rechnitz.  Rechnitz hereby represents and warrants that:

        (i)    Authority.  Rechnitz has full power, authority and right to execute this Agreement and has, and will continue to have during the entire term of this Agreement, full power and authority to perform his obligations hereunder, and has taken all

-10-

necessary action to authorize the execution and delivery of this Agreement, as well as the performance of his obligations hereunder.

(ii)    Binding Obligation. This Agreement constitutes Rechnitz's legal, valid and binding obligation, enforceable against Rechnitz in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization and similar laws affecting creditors' rights and remedies generally, and subject, as to enforceability, to general principles of equity, including principles of commercial reasonableness, good faith and fair dealing.

(iii)    Consent of Third Parties. No consent, waiver, approval, order, permit or authorization of, or declaration or filing with, or notification to, any Person or Governmental Authority is required by Rechnitz in connection with the execution of this Agreement and the compliance by Rechnitz with any of the provisions hereof or thereof, the consummation of the transactions contemplated hereby or the taking by Rechnitz of any other action contemplated hereby.

## ARTICLE VIII
## ADMISSION OF MEMBERS

Section 8.1    Admission of Members. Subject to Section 8.2, upon the approval of the Members by majority vote, one or more Persons may be admitted to the Company as Members. The Members by majority vote shall determine the number of Interests and the Percentage Interest to be offered to any such Member and the Initial Capital Contribution to be made by any such Member. Each such Person shall be admitted as a Member at the time such Person (a) executes and delivers a copy of this Agreement to the Manager and (b) if applicable, makes its Initial Capital Contribution to the Company. The Manager shall update Schedule A to reflect the admission of any such Members.

Section 8.2    Admission of Non-Payment Policy Members. It is agreed and acknowledged by the Members that Rechnitz's sole obligation with respect to the Company is making Capital Contributions for the payment of premiums on the Policies and the expenses associated with the Policies, in each case after the date of this Agreement. Rechnitz shall provide the Company and Klein with six (6) months prior written notice if Rechnitz elects to cease paying premiums in respect of any Policy (such Policy, a "**Non-Payment Policy**"). After delivery of such notice, Rechnitz or Klein shall have the right to introduce any Person to the Company as a potential Member who agrees in writing to assume Rechnitz's obligations for the payment of premiums and other costs and expenses with respect to such Non-Payment Policy, which person shall be admitted as a Member upon the approval of the Members by majority vote (such a Member, a "**Non-Payment Policy Member**"). With respect to any Non-Payment Policy, any payment of premiums and other costs and expenses shall be contributed to the capital of the Company by the applicable Non-Payment Policy Member. If at any time the Company receives any proceeds from any Non-Payment Policy (following the death of an Insured or otherwise), then any such proceeds shall be distributed as follows:

(a)    First, to the applicable Non-Payment Policy Member by wire transfer into an account designated by such Non-Payment Policy Member, in an amount up to (x) the total

amount of Capital Contributions made on such Policy by such Non-Payment Policy Member and (y) the Priority Return of such Non-Payment Policy Member on such Policy computed starting on the date such Non-Payment Policy Member was admitted as a Member;

(b)     Second, by wire transfer into an account designated by Rechnitz, in an amount equal to the Rechnitz Amount for such Policy;

(c)     Third, by wire transfer into an account designated by Klein, in an amount equal to the Klein Amount for such Policy;

(d)     Fourth, to the applicable Non-Payment Policy Member by wire transfer into an account designated by such Non-Payment Policy Member, in an amount equal to fifty percent (50%) of all remaining proceeds from such Policy;

(e)     Fifth, to Rechnitz and Klein by wire transfers into accounts respectively designated by them in proportion to the Capital Contributions made by them with respect to each such Non-Payment Member Policy; provided, however that if Klein introduced the related Non-Payment Policy Member to the Company, then 25% of the amount distributable under this clause (e) to Rechnitz shall be distributed to Klein instead.

Notwithstanding Section 4.1 hereof, Net Income associated with a Non-Payment Policy shall be allocated to each Member to the extent of any Priority Return distributed to such Member with respect to the Non-Payment Policy and to the extent of any distributions made to a Member pursuant to Section 8.2(d) or Section 8.2(e) above with respect to such Non-Payment Policy . Notwithstanding Section 4.1 hereof, Net Losses associated with a Non-Payment Policy shall be allocated to each Member in proportion to the Capital Contributions made by such Member with respect to such Non-Payment Policy.

ARTICLE IX
MAINTENANCE OF BOOKS AND RECORDS;
REPORTS TO MEMBERS; TAX RETURNS

Section 9.1     Accounting Method and Records. Rechnitz shall determine the accounting method to be used by the Company. The Company shall maintain such accounting records as shall reflect all Company transactions and as shall be appropriate and adequate for the Company's business.

Section 9.2     Company Records. The Company shall maintain the following records, within or outside the State of California: (a) a copy of the Company's accounting records and federal, state, local and foreign income tax or information returns and reports, if any, for the five most recent Fiscal Years; and (b) all other records and reports required by the Act or otherwise to be maintained by the Company. Each Member, and such Member's duly authorized representatives or agents, shall, for any purpose reasonably related to his interest as a Member, have reasonable access to such books and records at such office and shall have the right to inspect and copy such books and records; provided, however, that if a Member was an officer, consultant or employee of the Company received his/her Interest pursuant to a profits interests grant agreement ceases to be an employee, consultant or officer of the Company, such Member

-12-

shall only have the right to receive books and records that he/she has the right to require the Company to provide to him/her in accordance with applicable law.

Section 9.3 <u>Company Reports</u>. The Company shall cause to be furnished to each Member and each other Person who was a Member during the period in question (a) such reports and financial statements as may be reasonably required for his financial reporting requirements, including, without limitation, copies of all annual, quarterly and monthly financial statements, and (b) detailed financial statements and information and documents (including Form K-1) necessary or desirable for the preparation or support of such Member's tax returns required in any jurisdiction, as soon as practicable after the end of each Fiscal Year.

Section 9.4 <u>Designation of Tax Matters Member</u>. Rechnitz is designated the **"Tax Matters Member"** (as defined in Code Section 6231), and is authorized and required to represent the Company (at the Company's expense) in connection with all examinations of the Company's affairs by tax authorities, including, without limitation, administrative and judicial proceedings, and to expend Company funds for professional services and costs associated therewith. The Members agree to cooperate with each other and to do or refrain from doing any and all things reasonably required to conduct such proceedings.

Section 9.5 <u>Tax Treatment and Elections</u>. The Company shall be treated as a partnership for federal income tax purposes, the Members shall be treated as partners for federal income tax purposes, and each of the Members agrees to report consistently with such treatment. The Manager shall make all elections necessary to give effect to such treatment.

ARTICLE X
TRANSFER OF INTERESTS; SPECIAL PROVISIONS

Section 10.1 <u>Transfers and Assignments</u>.

(a) No Member shall be permitted to Transfer any Interest to a Person other than a Permitted Transferee, except in accordance with the provisions set forth in this <u>Article X</u>.

Section 10.2 <u>Permitted Transfers</u>.

(a) Each Member shall notify the Manager and the other Members of any proposed Transfer to a Permitted Transferee by such Member, or by any of its Affiliates, in the case of an indirect Transfer of an Interest, which notice shall set forth the name and address of the Permitted Transferee and the nature of the relationship between such Member and such Permitted Transferee, at least ten (10) calendar days prior to the proposed date of such Transfer. Each Member shall be responsible for paying all transfer, gains or similar taxes, if any, and all reasonable costs and expenses of the Company, including reasonable attorneys' fees, arising out of any Transfer by such Member of all or a portion of its Interest (or by any of its Affiliates in the case of an indirect Transfer of an Interest) to a Permitted Transferee. As a condition to any Transfer of all or any portion of an Interest in the Company to a Permitted Transferee shall execute and deliver to the Company a joinder agreement, in form of <u>Exhibit A</u> (a **"Joinder Agreement"**). All of the provisions of this Agreement, including without limitation, the provisions of this <u>Article X</u>, shall be applicable to and binding upon each Permitted Transferee.

(b)     The transfer by a Member of all or any portion of its Interest (including, without limitation, any transfer to a Permitted Transferee) shall not release such Member from any or all of its obligations under this Agreement arising prior to the date of such Transfer.

Section 10.3  Substitute Members.  A Permitted Transferee of the Interest of a Member or a transferee of the Interest of a Member pursuant to Sections 10.4 and 10.5 of this Agreement, or any portion thereof, shall become a substitute Member entitled to all the rights, and subject to all of the obligations and restrictions, of the transferor Member if, and only if:

(a)     the transferor assigns the transferee such right;

(b)     the transferor or transferee pays to the Company all reasonable costs and expenses incurred by the Company in connection with such substitution; and

(c)     the transferee executes and delivers a Joinder Agreement.

Section 10.4  Right of First Refusal.

(a)     Except for Transfers pursuant to or contemplated by Section 10.2, if any Member (a "**Selling Member**") receives a bona fide written offer from an independent third party (a "**Third Party**") to purchase any or all of such Selling Member's Interests for cash and such Selling Member desires to Transfer any or all of such Interests (the "**Offered Interests**") pursuant to such offer, prior to any Transfer it shall give written notice of the proposed Transfer (the "**Notice of Intention**") to the Company and the other Members (the "**Remaining Members**") specifying the number of Offered Interests which such Selling Member wishes to Transfer, the proposed transferee, the proposed purchase price for the Offered Interests (the "**Offer Price**") and the other material terms and conditions of the proposed Transfer.

(b)     For a period of thirty (30) days after receipt of the Notice of Intention (the "**Option Period**"), each of the Remaining Members shall have the irrevocable option to purchase at the Offer Price and on the other terms specified in the Notice of Intention, all of the Offered Interests pro rata based on the Percentage Interest of each Remaining Member; provided, however, that if any Remaining Member does not purchase any or all of its pro rata portion of such Offered Interests, the other Remaining Members shall have the right to purchase such portion, pro rata, until all of such Offered Interests are purchased.  The option of a Remaining Member pursuant to this Section 10.4(b) (the "**Remaining Members Option**") shall be exercisable by delivery of a notice (the "**Remaining Members Notice**") setting forth the maximum number of Offered Interests that such Remaining Member wishes to purchase, including any number which would be allocated to such Remaining Member if any other Remaining Member does not purchase all or any portion of its pro rata portion, to the Selling Member, the Company and the other Remaining Members and shall expire if the Remaining Members Notice is not delivered prior to the expiration of the Option Period.

(c)     If all notices required to be given pursuant to this Section 10.4 have been duly given, and the Remaining Members determine not to exercise their respective options to purchase all of the Offered Interests at the Offer Price and on the other terms specified in the Notice of Intention or determine, with the consent of the Selling Member, to exercise their options to purchase less than all of the Offered Interests, then the Selling Member shall have the

-14-

right, for a period of ninety (90) days from the earlier of (a) the expiration of the Option Period and (b) the date on which such Selling Member receives notice from the Remaining Members that they will not exercise the option granted pursuant to this Section 10.4, to accept the bona fide offer from the Third Party and enter into an agreement to sell the Offered Interests remaining unsold under this Section 10.4 at a price not less than the Offer Price and on the same terms as set forth in the Notice of Intention; provided that prior to any such Transfer to a Third Party, such Third Party executes and delivers to the Company, for the benefit of the Company and all Members, a Joinder Agreement and thereby becomes a party to this Agreement.

(d) The closing of any purchase and sale of any Interests to a Remaining Member pursuant to this Section 10.4 shall take place at the offices of the Company on such date, not later than sixty (60) days after the delivery to the Selling Member of the Remaining Members Notice. At the closing of such purchase and sale, the Secretary or such other officer of the Company shall record such Transfer in the books of the Company against evidence of such Transfer, delivery of the Offer Price therefor and an executed Joinder Agreement.

(e) If the Remaining Members Option is not exercised, and the Offered Interests are not sold pursuant to Section 10.4(c) within the ninety (90) day period referred to therein, such sale may not be carried out without complying again with the terms of this Section 10.4.

Section 10.5   Tag-Along Rights and Obligations.

(a) In the event that after complying with the terms of Section 10.4, the Selling Member desires to sell (the **"Disposition"**) the Offered Securities to a Third Person (the **"Acquirer"**), the Selling Member's right to accept such offer to purchase the Offered Securities shall be conditioned on each Remaining Member being offered the right to sell to the Acquirer its pro rata portion of the Offered Securities (based on the Percentage Interest of each Remaining Member) in such Disposition in accordance with this Section 10.5. The Selling Member shall give notice (the **"Disposition Notice"**) to each Remaining Member at least thirty (30) days prior to the consummation of the Disposition specifying the number of Offered Interests which such Selling Member wishes to Transfer in the proposed Disposition, the proposed transferee, the proposed purchase price for the Offered Interests and the other material terms and conditions of the proposed Disposition.

(b) The election to participate in the Disposition by the Remaining Members pursuant to Section 10.5(a) shall be exercised by notice to the Selling Member given within the time period specified in the Disposition Notice, which time period shall not be less than fifteen (15) days after such Disposition Notice is given. If any Remaining Member gives notice of its election to sell, it shall be obligated to sell the number of Interests specified in such Remaining Member's notice upon the terms and subject to the conditions specified in Section 10.5(a) to the Acquirer (which shall be the same for the other Remaining Members and the Selling Member), conditional upon the closing of the Disposition.

(c) The sale or Transfer of Interests to the Acquirer by the Selling Member and by the Remaining Members electing to participate in the Disposition pursuant to this Section 10.5 shall occur simultaneously and be on the same terms and at the same price as the

-15-

Interests sold by the Selling Member; provided that prior to any such Transfer to an Acquirer, such Acquirer shall execute and deliver to the Company, for the benefit of the Company and all Members, a Joinder Agreement and thereby become a party to this Agreement.

(d)     If the Acquirer declines to purchase from such Remaining Members their respective proportionate number of Interests calculated in accordance with this Section 10.5, the Selling Member will not sell any Interests to the Acquirer.

Section 10.6     Miscellaneous Provisions Affecting Transfer.

(a)     Upon the Transfer of all or any portion of a Member's Interests as permitted or required under this Agreement, including, without limitation, as provided in this Article X, (i) the income, loss, gain, deduction and credit attributable to the Interests so transferred shall be allocated between the transferor and transferee based upon the number of days during the applicable Fiscal Year that the Interests so transferred was held by each of them, without regard to the results of Company activities during the period in which each was the holder; provided that the Manager shall, at the request and expense of the transferring Member, cause an interim closing of the Company's books as of the effective date of Transfer for purposes of allocating such items between the transferor and transferee; and (ii) the transferor shall be entitled to all cash distributions in respect of the Interests so transferred, to the extent allocable to periods preceding the date of Transfer, and the transferee shall be entitled to all cash distributions in respect of the Interests so transferred, to the extent allocable to periods on and after the date of Transfer based upon the number of days during the applicable Fiscal Year that the Interests so transferred were held by each of them, without regard to the results of Company activities during the period in which each was the holder.

(b)     The Company shall be entitled to treat the record owner of any Interests as the absolute owner thereof, and shall incur no liability for distributions of cash or other property or allocations of income, gain, loss, deduction or credit made in good faith to such owner until such time as a written assignment of such Interests has been received, accepted and recorded on the books of the Company.

## ARTICLE XI
## DISSOLUTION, LIQUIDATION, TERMINATION AND CONVERSION

Section 11.1     Dissolution, etc.     The Company shall be dissolved upon the occurrence of any of the following events (the date of such occurrence, the **"Dissolution Date"**):

(a)     As approved by the majority vote of the Members; or

(b)     As otherwise required by applicable law.

Section 11.2     Winding Up.

(a)     Upon dissolution, an accounting shall be made by the Company's independent accountants of the accounts of the Company and of the Company's assets, liabilities and operations, from the date of the last previous accounting until the date of dissolution. The

Manager shall immediately proceed to wind up the affairs of the Company in accordance with this Section 11.2.

(b)     Notwithstanding anything to the contrary in this Agreement, upon a liquidation within the meaning of Section 1.704-1(b)(2)(ii)(g) of the Treasury Regulations, if any Member has a deficit Capital Account (after giving effect to all contributions, distributions, allocations and other Capital Account adjustments for all taxable years, including the year during which such liquidation occurs), such Member shall have no obligation to make any Capital Contribution, and the negative balance of such Member's Capital Account shall not be considered a debt owed by such Member to the Company or to any other Person for any purpose whatsoever.

(c)     The Members shall comply with all requirements of applicable law pertaining to the winding up of the affairs of the Company and the final distribution of its assets.

Section 11.3    Final Distribution.    After the application or distribution of the proceeds of the liquidation of the Company's assets in one or more installments to the satisfaction of the liabilities to creditors of the Company, including to the satisfaction of the expenses of the winding-up, liquidation and dissolution of the Company (whether by payment or the making of reasonable provision for payment thereof), the remaining proceeds, if any, plus any remaining assets of the Company shall be distributed to the Members in accordance with Sections 4.3 and 8.2, as applicable.

Section 11.4    Time for Liquidation, etc.    A reasonable time period shall be allowed for the orderly winding up and liquidation of the assets of the Company and the discharge of liabilities to creditors so as to enable the Company to seek to minimize potential losses upon such liquidation. The provisions of this Agreement shall remain in full force and effect during the period of winding up and until the filing of a certificate of cancellation of the certificate with the Secretary of State of the State of California.

Section 11.5    Termination.    Upon completion of the winding up of the Company, the Manager (or any duly elected liquidating trustee or other duly designated representative) shall execute, acknowledge and cause to be filed a certificate of cancellation of the Certificate with the Secretary of State of the State of California. Upon the cancellation of the Certificate, this Agreement and the Company shall terminate.

Section 11.6    Return of Contribution Nonrecourse to Other Members.    Except as provided by law or as expressly provided in this Agreement, upon dissolution, each Member shall look solely to the assets of the Company for the return of its Capital Contribution. If the Company property remaining after the payment or discharge of the debts and liabilities of the Company is insufficient to return the cash contribution of one or more Members, such Member or Members shall have no recourse against any other Member, except as otherwise provided by law.

## ARTICLE XII
## DISPUTE RESOLUTION

-17-

       Section 12.1   <u>Rabbinical Counsel</u>. If any dispute arises between the Members regarding this Agreement or any provision hereof, that dispute shall be resolved through a binding arbitration proceeding to be conducted in the State of California in accordance with the commercial arbitration rules of the Rabbinical Council of California.

## ARTICLE XIII
## MISCELLANEOUS

       Section 13.1   <u>Entire Agreement</u>. This Agreement, taken together with the other documents expressly referred to herein, each as amended or supplemented, constitutes the entire agreement among the parties with respect to the subject matter herein or therein and supersedes any prior agreement or understanding among the parties hereto.

       Section 13.2   <u>Other Ventures</u>. The Manager or any Member, and any firm, corporation or association with which the Manager or any Member is in any way interested or connected, may act as attorney for, deal and contract with, and be employed by the Company, and the Manager or any Member may be, in any manner, interested in or connected with any corporation, association or business in which the Company is directly or indirectly interested, all in the same manner and with the same freedom as though not a Manager or a Member, as the case may be, and without accountability for any profit, benefit or compensation received in connection with such actions or relationships, none of which shall be void or voidable.

       Section 13.3   <u>Amendments</u>. This Agreement may be amended only with the written consent of a Majority in Interest; provided that any such amendment that materially adversely affects the rights and privileges of any Member (other than any amendment effected in connection with the making of a Capital Contribution to the Company by, and/or the issuance of additional Interests to, any Member, including, without limitation, any amendment to the rights and privileges of the Interests to reflect dilution resulting from such Capital Contributions or issuance of additional Interests) must be consented to by each of the Members so affected; provided further, that any amendment to this Agreement shall not be effective without the consent of Rechnitz.

       Section 13.4   <u>Choice of Law</u>. This Agreement shall be construed in accordance with the laws of the State of California, without regard to the choice of laws rules thereof, and the obligations, rights and remedies of the Members hereunder shall be determined in accordance with such laws.

       Section 13.5   <u>Successors and Assigns; Third Party Beneficiaries</u>. This Agreement shall be binding upon, and, subject to <u>Article X</u>, shall inure to the benefit of, the parties and their legal representatives, heirs, administrators, executors, successors and permitted assigns. Except as otherwise expressly provided herein, none of the provisions of this Agreement shall be for the benefit of or enforceable by any Person not a party hereto.

       Section 13.6   <u>Interpretation</u>. Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, the feminine or neuter gender shall include the masculine, the feminine and the neuter.

-18-

Section 13.7   Captions.  Captions contained in this Agreement are inserted only as a matter of convenience and in no way define, limit or extend or otherwise affect the scope or intent of this Agreement or any provision hereof.

Section 13.8   Severability.  If any provision of this Agreement, or the application of such provision to any Person or circumstance, shall be held invalid, illegal or unenforceable in any jurisdiction, the validity, legality and enforceability of the remaining provisions of this Agreement, or the application of such provision in jurisdictions or to Persons or circumstances other than those to which it is held invalid, illegal or unenforceable, shall not be affected thereby.

Section 13.9   Counterparts.   This Agreement may be executed in several counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument.

Section 13.10   Non-Waiver.  No provision of this Agreement shall be deemed to have been waived unless such waiver is contained in a written notice given to the party claiming such waiver has occurred; provided that no such waiver shall be deemed to be a waiver of any other or further obligation or liability of the party or parties in whose favor the waiver was given.

Section 13.11   Notices.    All notices, requests, demands, claims and other communications that are required or may be given under this Agreement shall be in writing and shall be deemed to have been duly given when received if personally delivered; when transmitted if transmitted by confirmed facsimile with a copy sent by another means specified herein; the business day after it is sent, if sent for next day delivery to a domestic address by recognized overnight delivery service (e.g., Federal Express); and five business days after the date mailed by certified or registered mail, postage prepaid, if sent by certified or registered mail, return receipt requested.  In each case notice shall be sent to:

if to the Company:

c/o Shlomo Rechnitz
    5697 W. 3rd Street, Suite 200, Los Angeles, California 90036.

with a copy to:

Leslie Klein
14245 Ventura Blvd., Sherman Oaks, CA 91423

and if to a Member, to the Member's address or facsimile number on the books records of the Company, or to such other address with respect to the Company or a Member as the Company or such Member, as applicable, notifies the Company and the other Members in writing as provided above.

-19-

ARTICLE XIV
DEFINITIONS

Section 14.1   Definitions.

References in this Agreement to an **"Exhibit"** are intended to refer, unless otherwise specified, to an Exhibit attached to this Agreement, and references in this Agreement to an **"Article"** or a **"Section"** are intended to refer, unless otherwise specified, to an Article or a Section of this Agreement. As used in this Agreement, the following terms shall have the respective meanings set forth below:

**"Account Bank"** means PrivateBancorp, Inc.

**"Act"** shall have the meaning specified in the recitals to this Agreement.

**"Affiliate"** means any Person that, directly or indirectly, through one or more intermediaries, is Controlled by one or more Members. As used in this definition, "Control" means either (a) the ownership, directly or indirectly, of at least fifty percent (50%) of the voting stock of a corporation, or in the case of any Person which is not a corporation, the ownership, directly or indirectly, of at least fifty percent (50%) of the beneficial ownership interests in such Person, or (b) irrespective of stock ownership or other beneficial ownership, the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person.

**"Agreement"** means this Amended and Restated Limited Liability Company Agreement, as the same may be amended hereafter from time to time as provided herein.

**"Available Cash"** means, at the time of determination, cash generated from revenues from the Company's operations, after provision has been made for (a) all expenditures paid or to be paid by the Company to non-Members and (b) such amounts as the Manager, in his sole discretion, shall deem reasonable in order to provide for any anticipated, contingent or unforeseen expenditures or liabilities of the Company. Available Cash shall be determined without regard to (i) Capital Contributions and (ii) principal advanced on Company indebtedness.

**"Beneficiary"** means, with respect to the Policy, the legal person or persons designated as the recipients of the Death Benefit for such Policy.

**"Capital Account"** means, with respect to any Member, the Capital Account maintained for such Member by crediting such Member's Capital Contributions, such Member's share of Net Income, and the amount of any Company liabilities that are assumed by such Member (other than liabilities that are secured by any Company property distributed to such Member) and by debiting the amount of cash and the gross fair market value of any Company property distributed to such Member pursuant to any provision of this Agreement (net of liabilities secured by such distributed property that such Member is considered to assume or take subject to under Code Section 752), such Member's share of Net Losses, and the amount of any liabilities of such Member that are assumed by the Company (other than liabilities that are secured by any property contributed by such Member to the Company).

-20-

"**Capital Contribution**" means, with respect to any Member, the amount of money and the initial gross fair market value of any property contributed (or deemed contributed) from time to time by such Member to the Company (net of any liabilities secured by such property or to which such property is otherwise subject). The initial gross fair market value of each Policy contributed by Klein shall equal the sum of the total amount of premium payments made on such Policy by Klein and all other costs and expenses incurred by Klein in servicing and maintaining such Policy as of the date of this Agreement. Any reference in this Agreement to the Capital Contribution of a Member shall include the Capital Contribution made by any predecessor of a Member. For purposes of this Agreement, a Capital Contribution shall include, without limitation, any Initial Capital Contribution.

"**Certificate**" has the meaning set forth in Section 1.1.

"**Change Forms**" means the forms changing the owner and Beneficiary of the Policy using such form as is required by each of the relevant issuing insurance companies.

"**Code**" means the Internal Revenue Code of 1986, as amended, and as the same may be amended hereafter from time to time.

"**Company**" shall have the meaning specified in the preamble hereto.

"**Consumer Information**" means medical, health, financial and personal information about an Insured, an Original Owner, a Beneficiary under a Policy or a person designated by an Insured to provide periodic information regarding the medical status of the Insured, or any spouse or other individual closely related by blood or law to any such person (each, a "**Consumer**"), including, without, limitation, a Consumer's name, street or mailing address, email address, telephone or other contact information, employer, social security or tax identification number, date of birth, driver's license number, photograph or documentation of identity or residency (whether independently disclosed or contained in any disclosed document such as a Policy, life expectancy evaluation, life insurance application or life settlement application).

"**Covered Person**" shall have the meaning specified in Section 6.5(a).

"**Death Benefit**" means the cash amount of a Policy to be paid upon the death of the applicable Insured under such Policy, which amount will be net of any policy loans made under such Policy (and accrued interest thereon).

"**Disposition**" shall have the meaning specified in Section 10.5(a).

"**Disposition Notice**" shall have the meaning specified in Section 10.5(a).

"**Dissolution Date**" shall have the meaning specified in Section 11.1.

"**Fiscal Period**" means, subject to the provisions of Section 706 of the Code, (i) any Fiscal Year and (ii) any portion of a Fiscal Year for which the Company is required to allocate Net Income, Net Losses or other items of Company income, gain, loss or deduction pursuant to Article IV.

"**Fiscal Year**" shall have the meaning specified in Section 1.7.

"**Governmental Authority**" means any nation or government, any state or other political subdivision thereof and any entity exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to government.

"**Indemnified Liabilities**" shall have the meaning specified in Section 6.12.

"**Indemnified Person**" shall have the meaning specified in Section 6.12.

"**Initial Capital Contribution**" means, with respect to each Member, such Member's Initial Capital Contribution set forth on Schedule A.

"**Insured**" means, with respect to a Policy, each person whose life is insured under such Policy.

"**Interest**" means, with respect to any Member, (a) such Member's share of the profits and losses of the Company and a Member's rights to receive distributions from the Company in accordance with the provisions of this Agreement and the Act and (b) such Member's other rights and privileges in respect of the Company as herein provided.

"**Joinder Agreement**" shall have the meaning specified in Section 10.2(a).

"**Klein Amount**" shall mean, with respect to any Policy, (x) the total amount of Capital Contributions made by Klein related to such Policy and (y) the Priority Return for Klein on such Policy.

"**Law**" means any law, constitution, statute, ordinance, code, rule, regulation, decision, order, consent, decree, judgment, ordinance, release, license, permit, stipulation or other pronouncement having the effect of law enacted or issued by any Governmental Authority, any foreign country, or domestic or foreign state, country, city or other political subdivision, which includes binding judicial precedent and principles of common law.

"**Lender**" shall mean each lender identified on Schedule C.

"**Majority in Interest**" means Members that at the time in question together hold a Percentage Interest greater than 50% in the aggregate.

"**Manager**" means one or more persons designated as such pursuant to this Agreement.

"**Members**" means, collectively, the members signatory to this Agreement, and any other Persons admitted to the Company as members after the date hereof in accordance with the terms of this Agreement.

"**Net Income**" and "**Net Losses**" means, for each Fiscal Year or other period, an amount equal to the Company's taxable income or loss for such Fiscal Year or other period (for this purpose, all items of income, gain, loss or deduction required to be stated separately pursuant

-22-

to Code Section 703(a)(1) shall be included in taxable income or loss and each item of income, gain, expense, deduction and loss shall be allocable to the Members in accordance herewith).

**"Non-Payment Policy"** shall have the meaning as specified in <u>Section 8.2</u>.

**"Non-Payment Policy Member"** shall have the meaning as specified in <u>Section 8.2</u>.

**"Notice of Intention"** shall have the meaning as specified in <u>Section 10.4(a)</u>.

**"Offer Price"** shall have the meaning as specified in <u>Section 10.4(a)</u>.

**"Offered Interests"** shall have the meaning specified in <u>Section 10.4(a)</u>.

**"Option Period"** shall have the meaning as specified in <u>Section 10.4(b)</u>

**"Original Owner"** means, with respect to a Policy, the Person to which the Policy was initially issued and who was listed as owner on the initial declarations page of such Policy or the policy application, as applicable.

**"Percentage Interest"** means, with respect to any Member as of any date of determination, a fraction (expressed as a percentage) having as its numerator the aggregate number of Interests held by such Member at such time, and having as its denominator the aggregate number of Interests held by all Members at such time. Each Member's Percentage Interest as of the date hereof, and as adjusted from time to time, is set forth on <u>Schedule A</u>.

**"Permitted Transferee"** means (a) with respect to any Member who is an individual, such member's siblings, parents, spouse (former spouse, if any), and children, and trusts solely for the benefit of any of the foregoing, and (b) with respect to any Member that is an entity, an Affiliate of such Member.

**"Person"** means any individual or any corporation, partnership, limited liability company, limited liability partnership, joint venture, estate, trust, unincorporated association, business trust, tenancy-in-common or other legal entity.

**"Policy"** means each of the life insurance policies contributed to the capital of the Company by Klein, as specified in <u>Schedule B</u> hereto.

**"Policy File"** means, with respect to a Policy, the file relating to such Policy which file shall include, without limitation, the Policy, the original application for such Policy, any Policy Illustration and any other documentation in Klein's possession.

**"Policy Illustration"** means, with respect to a Policy, a policy illustration from the related issuing insurance company.

**"Polter"** shall have the meaning set forth in <u>Section 6.2</u>.

**"Priority Return"** of a Member with respect to any Policy shall mean an annual rate of return of 12% on the total amount of Capital Contributions made by a Member with respect to such Policy from the date such Capital Contribution were made but computed no earlier than from the date of this Agreement.

**"Rechnitz Amount"** shall mean, with respect to any Policy, (x) the total amount of Capital Contributions made by Rechnitz related to such Policy and (y) the Priority Return for Rechnitz on such Policy.

**"Remaining Members"** shall have the meaning specified in Section 10.4(a).

**"Remaining Members Notice"** shall have the meaning specified in Section 10.4(b).

**"Remaining Members Option"** shall have the meaning specified in Section 10.4(b).

**"Reserve Account"** means account number [   ] established at Account Bank.

**"Selling Member"** shall have the meaning specified in Section 10.4(a).

**"Third Party"** shall have the meaning as specified in Section 10.4(a).

**"Transfer"** means, as a noun, any voluntary or involuntary, and direct or indirect, assignment, transfer, pledge, syndication, sale, hypothecation, contribution, encumbrance or other disposition or purported disposition, and, as a verb, voluntarily or involuntarily, and directly or indirectly, to assign, transfer, pledge, syndicate, sell, hypothecate, contribute, encumber or otherwise dispose of.

**"Tax Matters Member"** shall have the meaning specified in Section 9.4.

**"Treasury Regulations"** means the Income Tax Regulations promulgated under the Code, as the same may be amended hereafter from time to time.

*[Remainder of Page Intentionally Left Blank]*

IN WITNESS WHEREOF, the undersigned have executed this Limited Liability
Company Agreement as of the date first set forth above.

SHLOMO RECHNITZ

_____

LESLIE KLEIN

_____

## SCHEDULE A

| Member | Initial Capital Contributions | Interests | Initial Percentage Interest |
|--------|-------------------------------|-----------|------------------------------|
| Rechnitz | $3,800,000 | 1 | 50% |
| Klein | $ ____ ] | 1 | 50% |

Sch. A-1

## SCHEDULE B

## POLICIES

[See attached]

## SCHEDULE 7.1(D)(XII)

### POLICIES IN GRACE

NY 73548773v3

## EXHIBIT A

### JOINDER AGREEMENT

Life Capital Group, LLC
c/o Shlomo Rechnitz
5697 W. 3rd Street
Suite 200
Los Angeles, California 90036

Leslie Klein
14245 Ventura Blvd.
Sherman Oaks, California 91423

Ladies and Gentlemen:

[_____] (the "**Transferee**"), the transferee of [_____] Interests and a capital account of $[_____] (the "**Transferred Interests**") of Life Capital Group, LLC, a California limited liability company (the "**Company**"), from [_____], hereby joins in and agrees to be fully bound, as if an original party thereto, by the Amended and Restated Limited Liability Company Agreement, dated as of __, 2011 (as amended, supplemented or otherwise modified from time to time, the "**Limited Liability Company Agreement**"), among the Company and the Members named therein, including, without limitation, the restrictions on transfer set forth therein, and shall be entitled to all of the rights and benefits thereof applicable to the undersigned as a Member. Capitalized terms used but not defined herein have the meaning ascribed to them in the Limited Liability Company Agreement.

In connection with the Transferee's joinder to the Limited Liability Company Agreement, the Transferee represents and warrants to the Company as follows:

1.  The Transferee has full power, authority and right to execute and deliver this Joinder Agreement and the Limited Liability Company Agreement and has, and will continue to have during the entire term of the Limited Liability Company Agreement, full power and authority to perform its obligations hereunder and thereunder, and has taken all necessary action to authorize the execution and delivery of this Joinder Agreement and the Limited Liability Company Agreement, as well as the performance of its obligations hereunder and thereunder.

2.  This Joinder Agreement and the Limited Liability Company Agreement constitute the legal, valid and binding obligations of the Transferee enforceable against the Transferee in accordance with their respective terms, subject to applicable bankruptcy, insolvency, reorganization and similar laws affecting creditors' rights and remedies generally, and subject, as to enforceability, to general principles of equity, including principles of commercial reasonableness, good faith and fair dealing.

NY 73548773v3

3.  No consent, waiver, approval, order, permit or authorization of, or declaration or filing with, or notification to, any Person or Governmental Authority is required by the Transferee in connection with the execution of this Joinder Agreement and the Limited Liability Company Agreement and the compliance by the Transferee with any of the provisions hereof or thereof, the consummation of the transactions contemplated hereby or thereby or the taking by the Transferee of any other action contemplated hereby or thereby.

4.  The Transferee is a Permitted Transferee.

5.  It has not relied on, and the Company has not made, any representations or warranties to the Transferee.

*[Signature Page Follows]*

## SCHEDULE C

### LENDERS

| Lender | Outstanding Principal Balance |
|---|---|
| Sol Majer | $243,000 |
| Leah Katzsl | $100,000 |
| ~~Ari Majer~~ | ~~$65,328~~ |
| ~~Simcha Mann~~ | ~~$110,000~~ |
| Yisroel Rechnitz | $350,000 |
| Chaim Manella | $600,000 |
| Ben Katzsl | $245,000 |
| Shlomo Rechnitz | $500,000 |
| Hirshy Krich | $240,000 |
| | |
| **TOTAL** | ~~$2,553,328~~ |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

4929 Wilshire Boulevard, Suite 940, Los Angeles, California 90010.

A true and correct copy of the foregoing document entitled: **MOTION FOR DEFAULT JUDGMENT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On 1/10/2024, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

| | |
|---|---|
| Baruch C Cohen (PL) | bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com |
| Michael I. Gottfried (IP) | mgottfried@elkinskalt.com, cavila@elkinskalt.com, lwageman@elkinskalt.com, docketing@elkinskalt.com |
| Nikko Salvatore Stevens (IP) | nikko@cym.law, mandi@cym.law |
| United States Trustee (LA) | ustpregion16.la.ecf@usdoj.gov |
| Clarisse Young (IP) | youngshumaker@smcounsel.com, levern@smcounsel.com |

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On 1/10/2024, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Leslie Klein, 322 N. June Street, Los Angeles, CA 90001

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on 1/10/2024, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Hon. Sandra R. Klein, 255 E. Temple Street, Suite 1582, Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 1/10/2024 | Baruch C. Cohen, Esq. | /s/ Baruch C. Cohen |
|---|---|---|
| Date | Printed Name | Signature |

(b)    the transferor or transferee pays to the Company all reasonable costs and expenses incurred by the Company in connection with such substitution; and

(c)    the transferee executes and delivers a Joinder Agreement.

Section 10.4    Right of First Refusal.

(a)    Except for Transfers pursuant to or contemplated by Section 10.2, if any Member (a "**Selling Member**") receives a bona fide written offer from an independent third party (a "**Third Party**") to purchase any or all of such Selling Member's Interests for cash and such Selling Member desires to Transfer any or all of such Interests (the "**Offered Interests**") pursuant to such offer, prior to any Transfer it shall give written notice of the proposed Transfer (the "**Notice of Intention**") to the Company and the other Members (the "**Remaining Members**") specifying the number of Offered Interests which such Selling Member wishes to Transfer, the proposed transferee, the proposed purchase price for the Offered Interests (the "**Offer Price**") and the other material terms and conditions of the proposed Transfer.

(b)    For a period of thirty (30) days after receipt of the Notice of Intention (the "**Option Period**"), each of the Remaining Members shall have the irrevocable option to purchase at the Offer Price and on the other terms specified in the Notice of Intention, all of the Offered Interests pro rata based on the Percentage Interest of each Remaining Member; provided, however, that if any Remaining Member does not purchase any or all of its pro rata portion of such Offered Interests, the other Remaining Members shall have the right to purchase such portion, pro rata, until all of such Offered Interests are purchased. The option of a Remaining Member pursuant to this Section 10.4(b) (the "**Remaining Members Option**") shall be exercisable by delivery of a notice (the "**Remaining Members Notice**") setting forth the maximum number of Offered Interests that such Remaining Member wishes to purchase, including any number which would be allocated to such Remaining Member if any other Remaining Member does not purchase all or any portion of its pro rata portion, to the Selling Member, the Company and the other Remaining Members and shall expire if the Remaining Members Notice is not delivered prior to the expiration of the Option Period.

(c)    If all notices required to be given pursuant to this Section 10.4 have been duly given, and the Remaining Members determine not to exercise their respective options to purchase all of the Offered Interests at the Offer Price and on the other terms specified in the Notice of Intention or determine, with the consent of the Selling Member, to exercise their options to purchase less than all of the Offered Interests, then the Selling Member shall have the right, for a period of ninety (90) days from the earlier of (a) the expiration of the Option Period and (b) the date on which such Selling Member receives notice from the Remaining Members that they will not exercise the option granted pursuant to this Section 10.4, to accept the bona fide offer from the Third Party and enter into an agreement to sell the Offered Interests remaining unsold under this Section 10.4 at a price not less than the Offer Price and on the same terms as set forth in the Notice of Intention; provided that prior to any such Transfer to a Third Party, such Third Party executes and delivers to the Company, for the benefit of the Company and all Members, a Joinder Agreement and thereby becomes a party to this Agreement.

14

(d) The closing of any purchase and sale of any Interests to a Remaining Member pursuant to this Section 10.4 shall take place at the offices of the Company on such date, not later than sixty (60) days after the delivery to the Selling Member of the Remaining Members Notice. At the closing of such purchase and sale, the Secretary or such other officer of the Company shall record such Transfer in the books of the Company against evidence of such Transfer, delivery of the Offer Price therefor and an executed Joinder Agreement.

(e) If the Remaining Members Option is not exercised, and the Offered Interests are not sold pursuant to Section 10.4(c) within the ninety (90) day period referred to therein, such sale may not be carried out without complying again with the terms of this Section 10.4.

Section 10.5 Tag-Along Rights and Obligations.

(a) In the event that after complying with the terms of Section 10.4, the Selling Member desires to sell (the "**Disposition**") the Offered Securities to a Third Person (the "**Acquirer**"), the Selling Member's right to accept such offer to purchase the Offered Securities shall be conditioned on each Remaining Member being offered the right to sell to the Acquirer its pro rata portion of the Offered Securities (based on the Percentage Interest of each Remaining Member) in such Disposition in accordance with this Section 10.5. The Selling Member shall give notice (the "**Disposition Notice**") to each Remaining Member at least thirty (30) days prior to the consummation of the Disposition specifying the number of Offered Interests which such Selling Member wishes to Transfer in the proposed Disposition, the proposed transferee, the proposed purchase price for the Offered Interests and the other material terms and conditions of the proposed Disposition.

(b) The election to participate in the Disposition by the Remaining Members pursuant to Section 10.5(a) shall be exercised by notice to the Selling Member given within the time period specified in the Disposition Notice, which time period shall not be less than fifteen (15) days after such Disposition Notice is given. If any Remaining Member gives notice of its election to sell, it shall be obligated to sell the number of Interests specified in such Remaining Member's notice upon the terms and subject to the conditions specified in Section 10.5(a) to the Acquirer (which shall be the same for the other Remaining Members and the Selling Member), conditional upon the closing of the Disposition.

(c) The sale or Transfer of Interests to the Acquirer by the Selling Member and by the Remaining Members electing to participate in the Disposition pursuant to this Section 10.5 shall occur simultaneously and be on the same terms and at the same price as the Interests sold by the Selling Member; provided that prior to any such Transfer to an Acquirer, such Acquirer shall execute and deliver to the Company, for the benefit of the Company and all Members, a Joinder Agreement and thereby become a party to this Agreement.

(d) If the Acquirer declines to purchase from such Remaining Members their respective proportionate number of Interests calculated in accordance with this Section 10.5, the Selling Member will not sell any Interests to the Acquirer.

15

Section 10.6    Miscellaneous Provisions Affecting Transfer.

(a)    Upon the Transfer of all or any portion of a Member's Interests as permitted or required under this Agreement, including, without limitation, as provided in this Article X, (i) the income, loss, gain, deduction and credit attributable to the Interests so transferred shall be allocated between the transferor and transferee based upon the number of days during the applicable Fiscal Year that the Interests so transferred was held by each of them, without regard to the results of Company activities during the period in which each was the holder; provided that the Manager shall, at the request and expense of the transferring Member, cause an interim closing of the Company's books as of the effective date of Transfer for purposes of allocating such items between the transferor and transferee; and (ii) the transferor shall be entitled to all cash distributions in respect of the Interests so transferred, to the extent allocable to periods preceding the date of Transfer, and the transferee shall be entitled to all cash distributions in respect of the Interests so transferred, to the extent allocable to periods on and after the date of Transfer based upon the number of days during the applicable Fiscal Year that the Interests so transferred were held by each of them, without regard to the results of Company activities during the period in which each was the holder.

(b)    The Company shall be entitled to treat the record owner of any Interests as the absolute owner thereof, and shall incur no liability for distributions of cash or other property or allocations of income, gain, loss, deduction or credit made in good faith to such owner until such time as a written assignment of such Interests has been received, accepted and recorded on the books of the Company.

## ARTICLE XI
## DISSOLUTION, LIQUIDATION, TERMINATION AND CONVERSION

Section 11.1    Dissolution, etc.  The Company shall be dissolved upon the occurrence of any of the following events (the date of such occurrence, the "**Dissolution Date**"):

(a)    As approved by the majority vote of the Members; or

(b)    As otherwise required by applicable law.

Section 11.2    Winding Up.

(a)    Upon dissolution, an accounting shall be made by the Company's independent accountants of the accounts of the Company and of the Company's assets, liabilities and operations, from the date of the last previous accounting until the date of dissolution. The Manager shall immediately proceed to wind up the affairs of the Company in accordance with this Section 11.2.

(b)    Notwithstanding anything to the contrary in this Agreement, upon a liquidation within the meaning of Section 1.704-1(b)(2)(ii)(g) of the Treasury Regulations, if any Member has a deficit Capital Account (after giving effect to all contributions, distributions, allocations and other Capital Account adjustments for all taxable years, including the year during which such liquidation occurs), such Member shall have no obligation to make any Capital Contribution, and the negative balance of such Member's Capital Account shall not be

16

considered a debt owed by such Member to the Company or to any other Person for any purpose whatsoever.

        (c)    The Members shall comply with all requirements of applicable law pertaining to the winding up of the affairs of the Company and the final distribution of its assets.

Section 11.3  Final Distribution. After the application or distribution of the proceeds of the liquidation of the Company's assets in one or more installments to the satisfaction of the liabilities to creditors of the Company, including to the satisfaction of the expenses of the winding-up, liquidation and dissolution of the Company (whether by payment or the making of reasonable provision for payment thereof), the remaining proceeds, if any, plus any remaining assets of the Company shall be distributed to the Members in accordance with Sections 4.3 and 8.2, as applicable.

Section 11.4  Time for Liquidation, etc. A reasonable time period shall be allowed for the orderly winding up and liquidation of the assets of the Company and the discharge of liabilities to creditors so as to enable the Company to seek to minimize potential losses upon such liquidation. The provisions of this Agreement shall remain in full force and effect during the period of winding up and until the filing of a certificate of cancellation of the certificate with the Secretary of State of the State of California.

Section 11.5  Termination. Upon completion of the winding up of the Company, the Manager (or any duly elected liquidating trustee or other duly designated representative) shall execute, acknowledge and cause to be filed a certificate of cancellation of the Certificate with the Secretary of State of the State of California. Upon the cancellation of the Certificate, this Agreement and the Company shall terminate.

Section 11.6  Return of Contribution Nonrecourse to Other Members. Except as provided by law or as expressly provided in this Agreement, upon dissolution, each Member shall look solely to the assets of the Company for the return of its Capital Contribution. If the Company property remaining after the payment or discharge of the debts and liabilities of Company is insufficient to return the cash contribution of one or more Members, such Member or Members shall have no recourse against any other Member, except as otherwise provided by law.

## ARTICLE XII
## DISPUTE RESOLUTION

Section 12.1  Rabbinical Counsel. If any dispute arises between the Members regarding this Agreement or any provision hereof, that dispute shall be resolved through a binding arbitration proceeding to be conducted in the State of California in accordance with the commercial arbitration rules of the Rabbinical Council of California.

## ARTICLE XIII
## MISCELLANEOUS

Section 13.1  Entire Agreement. This Agreement, taken together with the other documents expressly referred to herein, each as amended or supplemented, constitutes the entire

50028620.3

agreement among the parties with respect to the subject matter herein or therein and supersedes any prior agreement or understanding among the parties hereto.

Section 13.2    Other Ventures.  The Manager or any Member, and any firm, corporation or association with which the Manager or any Member is in any way interested or connected, may act as attorney for, deal and contract with, and be employed by the Company, and the Manager or any Member may be, in any manner, interested in or connected with any corporation, association or business in which the Company is directly or indirectly interested, all in the same manner and with the same freedom as though not a Manager or a Member, as the case may be, and without accountability for any profit, benefit or compensation received in connection with such actions or relationships, none of which shall be void or voidable.

Section 13.3    Amendments.  This Agreement may be amended only with the written consent of a Majority in Interest; provided that any such amendment that materially adversely affects the rights and privileges of any Member (other than any amendment effected in connection with the making of a Capital Contribution to the Company by, and/or the issuance of additional Interests to, any Member, including, without limitation, any amendment to the rights and privileges of the Interests to reflect dilution resulting from such Capital Contributions or issuance of additional Interests) must be consented to by each of the Members so affected[; provided further, that any amendment to this Agreement shall not be effective without the consent of Rechnitz].

Section 13.4    Choice of Law.  This Agreement shall be construed in accordance with the laws of the State of California, without regard to the choice of laws rules thereof, and the obligations, rights and remedies of the Members hereunder shall be determined in accordance with such laws.

Section 13.5    Successors and Assigns; Third Party Beneficiaries.  This Agreement shall be binding upon, and, subject to Article X, shall inure to the benefit of, the parties and their legal representatives, heirs, administrators, executors, successors and permitted assigns.  Except as otherwise expressly provided herein, none of the provisions of this Agreement shall be for the benefit of or enforceable by any Person not a party hereto.

Section 13.6    Interpretation.  Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, the feminine or neuter gender shall include the masculine, the feminine and the neuter.

Section 13.7    Captions.  Captions contained in this Agreement are inserted only as a matter of convenience and in no way define, limit or extend or otherwise affect the scope or intent of this Agreement or any provision hereof.

Section 13.8    Severability.  If any provision of this Agreement, or the application of such provision to any Person or circumstance, shall be held invalid, illegal or unenforceable in any jurisdiction, the validity, legality and enforceability of the remaining provisions of this Agreement, or the application of such provision in jurisdictions or to Persons or circumstances other than those to which it is held invalid, illegal or unenforceable, shall not be affected thereby.

18

Section 13.9  Counterparts. This Agreement may be executed in several counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument.

Section 13.10  Non-Waiver. No provision of this Agreement shall be deemed to have been waived unless such waiver is contained in a written notice given to the party claiming such waiver has occurred; provided that no such waiver shall be deemed to be a waiver of any other or further obligation or liability of the party or parties in whose favor the waiver was given.

Section 13.11  Notices. All notices, requests, demands, claims and other communications that are required or may be given under this Agreement shall be in writing and shall be deemed to have been duly given when received if personally delivered; when transmitted if transmitted by confirmed facsimile with a copy sent by another means specified herein; the business day after it is sent, if sent for next day delivery to a domestic address by recognized overnight delivery service (e.g., Federal Express); and five business days after the date mailed by certified or registered mail, postage prepaid, if sent by certified or registered mail, return receipt requested. In each case notice shall be sent to:

> if to the Company:
>
> c/o Shlomo Rechnitz
>  5697 W. 3rd Street, Suite 200, Los Angeles, California 90036.
>
>
> with a copy to:
>
> Leslie Klein
> 14245 Ventura Blvd., Sherman Oaks, CA 91423

and if to a Member, to the Member's address or facsimile number on the books records of the Company, or to such other address with respect to the Company or a Member as the Company or such Member, as applicable, notifies the Company and the other Members in writing as provided above.

## ARTICLE XIV
## DEFINITIONS

Section 14.1  Definitions.

References in this Agreement to an "**Exhibit**" are intended to refer, unless otherwise specified, to an Exhibit attached to this Agreement, and references in this Agreement to an "**Article**" or a "**Section**" are intended to refer, unless otherwise specified, to an Article or a Section of this Agreement. As used in this Agreement, the following terms shall have the respective meanings set forth below:

19

"**Account Bank**" means PrivateBancorp, Inc.

"**Act**" shall have the meaning specified in the recitals to this Agreement.

"**Affiliate**" means any Person that, directly or indirectly, through one or more intermediaries, is Controlled by one or more Members. As used in this definition, "Control" means either (a) the ownership, directly or indirectly, of at least fifty percent (50%) of the voting stock of a corporation, or in the case of any Person which is not a corporation, the ownership, directly or indirectly, of at least fifty percent (50%) of the beneficial ownership interests in such Person, or (b) irrespective of stock ownership or other beneficial ownership, the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person.

"**Agreement**" means this Limited Liability Company Agreement, as the same may be amended hereafter from time to time as provided herein.

"**Available Cash**" means, at the time of determination, cash generated from revenues from the Company's operations, after provision has been made for (a) all expenditures paid or to be paid by the Company to non-Members and (b) such amounts as the Manager, in his sole discretion, shall deem reasonable in order to provide for any anticipated, contingent or unforeseen expenditures or liabilities of the Company. Available Cash shall be determined without regard to (i) Capital Contributions and (ii) principal advanced on Company indebtedness.

"**Beneficiary**" means, with respect to the Policy, the legal person or persons designated as the recipients of the Death Benefit for such Policy.

"**Capital Account**" means, with respect to any Member, the Capital Account maintained for such Member by crediting such Member's Capital Contributions, such Member's share of Net Income, and the amount of any Company liabilities that are assumed by such Member (other than liabilities that are secured by any Company property distributed to such Member) and by debiting the amount of cash and the gross fair market value of any Company property distributed to such Member pursuant to any provision of this Agreement (net of liabilities secured by such distributed property that such Member is considered to assume or take subject to under Code Section 752), such Member's share of Net Losses, and the amount of any liabilities of such Member that are assumed by the Company (other than liabilities that are secured by any property contributed by such Member to the Company).

"**Capital Contribution**" means, with respect to any Member, the amount of money and the initial gross fair market value of any property contributed (or deemed contributed) from time to time by such Member to the Company (net of any liabilities secured by such property or to which such property is otherwise subject). The initial gross fair market value of each Policy contributed by Klein shall equal the sum of the total amount of premium payments made on such Policy by Klein and all other costs and expenses incurred by Klein in servicing and maintaining such Policy as of the date of this Agreement. Any reference in this Agreement to the Capital Contribution of a Member shall include the Capital Contribution made

by any predecessor of a Member. For purposes of this Agreement, a Capital Contribution shall include, without limitation, any Initial Capital Contribution.

"**Certificate**" has the meaning set forth in Section 1.1.

"**Change Forms**" means the forms changing the owner and Beneficiary of the Policy using such form as is required by each of the relevant issuing insurance companies.

"**Code**" means the Internal Revenue Code of 1986, as amended, and as the same may be amended hereafter from time to time.

"**Company**" shall have the meaning specified in the preamble hereto.

"**Consumer Information**" means medical, health, financial and personal information about an Insured, an Original Owner, a Beneficiary under a Policy or a person designated by an Insured to provide periodic information regarding the medical status of the Insured, or any spouse or other individual closely related by blood or law to any such person (each, a "**Consumer**"), including, without, limitation, a Consumer's name, street or mailing address, email address, telephone or other contact information, employer, social security or tax identification number, date of birth, driver's license number, photograph or documentation of identity or residency (whether independently disclosed or contained in any disclosed document such as a Policy, life expectancy evaluation, life insurance application or life settlement application).

"**Covered Person**" shall have the meaning specified in Section 6.5(a).

"**Death Benefit**" means the cash amount of a Policy to be paid upon the death of the applicable Insured under such Policy, which amount will be net of any policy loans made under such Policy (and accrued interest thereon).

"**Disposition**" shall have the meaning specified in Section 10.5(a).

"**Disposition Notice**" shall have the meaning specified in Section 10.5(a).

"**Dissolution Date**" shall have the meaning specified in Section 11.1.

"**Fiscal Period**" means, subject to the provisions of Section 706 of the Code, (i) any Fiscal Year and (ii) any portion of a Fiscal Year for which the Company is required to allocate Net Income, Net Losses or other items of Company income, gain, loss or deduction pursuant to Article IV.

"**Fiscal Year**" shall have the meaning specified in Section 1.7.

"**Governmental Authority**" means any nation or government, any state or other political subdivision thereof and any entity exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to government.

"**Indemnified Liabilities**" shall have the meaning specified in Section 6.12.

S0028620.3

21

"**Indemnified Person**" shall have the meaning specified in Section 6.12.

"**Initial Capital Contribution**" means, with respect to each Member, such Member's Initial Capital Contribution set forth on Schedule A.

"**Insured**" means, with respect to a Policy, each person whose life is insured under such Policy.

"**Interest**" means, with respect to any Member, (a) such Member's share of the profits and losses of the Company and a Member's rights to receive distributions from the Company in accordance with the provisions of this Agreement and the Act and (b) such Member's other rights and privileges in respect of the Company as herein provided.

"**Joinder Agreement**" shall have the meaning specified in Section 10.2(a).

"**Klein Amount**" shall mean, with respect to any Policy, (x) the total amount of Capital Contributions made by Klein related to such Policy and (y) the Priority Return for Klein on such Policy.

"**Law**" means any law, constitution, statute, ordinance, code, rule, regulation, decision, order, consent, decree, judgment, ordinance, release, license, permit, stipulation or other pronouncement having the effect of law enacted or issued by any Governmental Authority, any foreign country, or domestic or foreign state, country, city or other political subdivision, which includes binding judicial precedent and principles of common law.

"**Lender**" shall mean each lender identified on Schedule C.

"**Majority in Interest**" means Members that at the time in question together hold a Percentage Interest greater than 50% in the aggregate.

"**Manager**" means one or more persons designated as such pursuant to this Agreement.

"**Members**" means, collectively, the members signatory to this Agreement, and any other Persons admitted to the Company as members after the date hereof in accordance with the terms of this Agreement.

"**Net Income**" and "**Net Losses**" means, for each Fiscal Year or other period, an amount equal to the Company's taxable income or loss for such Fiscal Year or other period (for this purpose, all items of income, gain, loss or deduction required to be stated separately pursuant to Code Section 703(a)(1) shall be included in taxable income or loss and each item of income, gain, expense, deduction and loss shall be allocable to the Members in accordance herewith).

"**Non-Payment Policy**" shall have the meaning as specified in Section 8.2.

"**Non-Payment Policy Member**" shall have the meaning as specified in Section 8.2.

"**Notice of Intention**" shall have the meaning as specified in Section 10.4(a).

"**Offer Price**" shall have the meaning as specified in Section 10.4(a).

"**Offered Interests**" shall have the meaning specified in Section 10.4(a).

"**Option Period**" shall have the meaning as specified in Section 10.4(b)

"**Original Owner**" means, with respect to a Policy, the Person to which the Policy was initially issued and who was listed as owner on the initial declarations page of such Policy or the policy application, as applicable.

"**Percentage Interest**" means, with respect to any Member as of any date of determination, a fraction (expressed as a percentage) having as its numerator the aggregate number of Interests held by such Member at such time, and having as its denominator the aggregate number of Interests held by all Members at such time. Each Member's Percentage Interest as of the date hereof, and as adjusted from time to time, is set forth on Schedule A.

"**Permitted Transferee**" means (a) with respect to any Member who is an individual, such member's siblings, parents, spouse (former spouse, if any), and children, and trusts solely for the benefit of any of the foregoing, and (b) with respect to any Member that is an entity, an Affiliate of such Member. [**Anyone else?**]

"**Person**" means any individual or any corporation, partnership, limited liability company, limited liability partnership, joint venture, estate, trust, unincorporated association, business trust, tenancy-in-common or other legal entity.

"**Policy**" means each of the life insurance policies contributed to the capital of the Company by Klein, as specified in Schedule B hereto.

"**Policy File**" means, with respect to a Policy, the file relating to such Policy which file shall include, without limitation, the Policy, the original application for such Policy, any Policy Illustration and any other documentation in Klein's possession.

"**Policy Illustration**" means, with respect to a Policy, a policy illustration from the related issuing insurance company.

"**Polter**" shall have the meaning set forth in Section 6.2.

"**Priority Return**" of a Member with respect to any Policy shall mean an annual rate of return of 12% on the total amount of Capital Contributions made by a Member with respect to such Policy from the date such Capital Contribution were made but computed no earlier than from the date of this Agreement. .

"**Rechnitz Amount**" shall mean, with respect to any Policy, (x) the total amount of Capital Contributions made by Rechnitz related to such Policy and (y) the Priority Return for Rechnitz on such Policy.

23

"**Remaining Members**" shall have the meaning specified in Section 10.4(a).

"**Remaining Members Notice**" shall have the meaning specified in Section 10.4(b).

"**Remaining Members Option**" shall have the meaning specified in Section 10.4(b).

"**Reserve Account**" means account number [___] established at Account Bank.

"**Selling Member**" shall have the meaning specified in Section 10.4(a).

"**Third Party**" shall have the meaning as specified in Section 10.4(a).

"**Transfer**" means, as a noun, any voluntary or involuntary, and direct or indirect, assignment, transfer, pledge, syndication, sale, hypothecation, contribution, encumbrance or other disposition or purported disposition, and, as a verb, voluntarily or involuntarily, and directly or indirectly, to assign, transfer, pledge, syndicate, sell, hypothecate, contribute, encumber or otherwise dispose of.

"**Tax Matters Member**" shall have the meaning specified in Section 9.4.

"**Treasury Regulations**" means the Income Tax Regulations promulgated under the Code, as the same may be amended hereafter from time to time.

*[Remainder of Page Intentionally Left Blank]*

IN WITNESS WHEREOF, the undersigned have executed this Limited Liability Company Agreement as of the date first set forth above.

SHLOMO RECHNITZ

LESLIE KLEIN

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

4929 Wilshire Boulevard, Suite 940, Los Angeles, California 90010.

A true and correct copy of the foregoing document entitled: **PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT UNDER LBR 7055-1** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On 12/19/2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

| | |
|---|---|
| Baruch C Cohen (PL) | bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com |
| Michael I. Gottfried (IP) | mgottfried@elkinskalt.com, cavila@elkinskalt.com, lwageman@elkinskalt.com, docketing@elkinskalt.com |
| Nikko Salvatore Stevens (IP) | nikko@cym.law, mandi@cym.law |
| Clarisse Young (IP) | youngshumaker@smcounsel.com, levern@smcounsel.com |
| United States Trustee (LA) | ustpregion16.la.ecf@usdoj.gov |

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On 12/19/2023, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Leslie Klein, 322 N. June Street, Los Angeles, CA 90001

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on 12/19/2023, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Hon. Sandra R. Klein, 255 E. Temple Street, Suite 1582, Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 12/19/2023 | Baruch C. Cohen, Esq. | /s/ Baruch C. Cohen |
| Date | Printed Name | Signature |

# EXHIBIT II B

| Attorney or Party Name, Address, Telephone & FAX Numbers, State Bar Number & Email Address | FOR COURT USE ONLY |
|---|---|
| Baruch C. Cohen, Esq. (159455)<br>Law Office of Baruch C. Cohen, APLC<br>4929 Wilshire Boulevard, Suite 940<br>Los Angeles, CA 90010<br>Office (323) 937-4501 \| Cell (323) 353-9535<br>Facsimile: (888) 316-6107<br>Email: bcc@baruchcohenesq.com | |
| ☐  Plaintiff(s) appearing without attorney<br>☒  Attorney for Plaintiff(s) | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| In re:<br>LESLIE KLEIN<br><br><div align="right">Debtor(s).</div> | CASE NUMBER: 2:23-bk-10990-SK<br>ADVERSARY NUMBER: 2:23-ap-01169-SK<br>CHAPTER: 11 |
|---|---|
| DAVID BERGER<br><br><div align="right">Plaintiff(s),</div><br>vs.<br>LESLIE KLEIN<br><br><div align="right">Defendant(s).</div> | **PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT UNDER LBR 7055-1**<br><br>DATE:  2/14/2024<br>TIME:  9:00 am<br>COURTROOM: 1575<br>ADDRESS: 255 E. Temple Street, Los Angeles |

**TO THE DEFENDANT, DEFENDANT'S ATTORNEY AND OTHER INTERESTED PARTIES:**

1. Name of Defendant(s) against whom default judgment is sought (*specify name*):  LESLIE KLEIN

2. Plaintiff filed the complaint in the above-captioned proceeding on (*specify date*):  06/09/2023

3. The Summons and Complaint were served on Defendant by   ☐ personal service   ☒ mail service on the following date (*specify date*): 07/10/2023

4. A true and correct copy of the completed return of summons form is attached.

*"Bankruptcy Code" and "11 U.S.C." refer to the United States Bankruptcy Code. Title 11 of the United States Code. "FRBP" refers to the Federal Rules of Bankruptcy Procedure.  "LBR" and "LBRs" refer to the Local Bankruptcy Rule(s) of this court.*

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

5. The time for filing an answer or other response expired on *(specify date)*: 08/22/2023

   Defendant was later ordered to respond to the Complaint by 11-18-2023

6. No answer or other response has been filed or served by Defendant.

7. The default of Defendant:

   a. ☐  Has not yet been entered, but is requested

   b. ☒  Was entered on *(specify date)*: 11/28/2023

8. **A Status Conference:**

   a. ☒  Is scheduled for *(specify date, time, and place)*: _____
      12/20/2023 at 09:00 AM 255 E. Temple St. Courtroom 1575 Los Angeles

   b. ☐  Was held on *(specify date, time, and place)*: _____

9. As proof that Plaintiff is entitled to the relief requested in the complaint, Plaintiff:

   a. ☒ Relies on the complaint and attached documents.

   b. ☒ Attaches the following documents to establish a *prima facie* case:

      (1) ☒ Declaration of *(specify)*: David Berger

      (2) ☐ Declaration of *(specify)*: _____

      (3) ☐ Other *(specify)*: _____

10. As further support for entry of a default judgment, Plaintiff submits a memorandum of points and authorities (optional).

11. **DECLARATION OF NON-MILITARY STATUS** (Servicemembers Civil Relief Act, 50 U.S.C. chapter 50 (§§ 3901-4043)). The undersigned party or counsel declares under penalty of perjury, with respect to each Defendant against whom a default judgment is sought by this motion:

    a. ☒  Defendant is not currently in military service. The facts that support this statement are as follows (*see the court's website for information about how to verify non-military status*):

    b. ☐  Defendant is currently in military service. The facts that support this statement are as follows (*if this box is checked, the plaintiff must attach a supplement to this motion addressing the requirements in 50 U.S.C. § 3931(b)(2) to appoint an attorney for the Defendant before entering a judgment*):

    c. ☐  I am unable to determine whether or not Defendant is in military service. The facts that support this statement are as follows (*if this box is checked, the plaintiff must attach a supplement to this motion addressing the bond requirement in 50 U.S.C. § 3931(b)(3)*):

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2017*                    Page 2                    **F 7055-1.2.DEFAULT.JMT.MOTION**

12. Defaulting party is not an infant or incompetent party.

Plaintiff requests that this court enter a default judgment in favor of Plaintiff.  A copy of the lodged proposed default judgment is attached.

Date: 12/19/2023                           Respectfully submitted,

                                           Law Office of Baruch C. Cohen, APLC
                                           _____
                                           Printed name of law firm

                                           _____
                                           Signature

                                           Baruch C. Cohen, Esq.
                                           _____
                                           Name of Attorney for Plaintiff or Plaintiff

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California

December 2017                          Page 3                    F 7055-1.2.DEFAULT.JMT.MOTION

1              **DECLARATION OF DAVID BERGER**

2     I, **DAVID BERGER**, declare and state as follows:

3   1.   The facts stated below are true and correct to the best of my personal knowledge and if called

4       upon to testify to them, I could and would competently do so.

5   2.   This Declaration is in support of the **PLAINTIFF'S MOTION FOR DEFAULT**

6       **JUDGMENT UNDER LBR 7055-1** filed by me, David Berger.

7              **PROCEDURAL HISTORY**

8   3.   On 6-9- 2023, I filed this instant Complaint for Determination of Nondischargeability of

9       Debts and to Deny Discharge pursuant to 11 USC § 523(a)(2)(A), 11 USC § 523(a)(4), & 11

10     USC § 523(a)(6); & for Denial of Discharge Pursuant to 11 USC § 727(a)(2)(A); 11 USC §

11     727(a)(2)(B); 11 USC § 727(a)(3); 11 USC § 727(a)(4); 11 USC § 727(a)(5)("Complaint")

12     against Defendant Leslie Klein ("Defendant"). (Dkt. No. 1) Adv. # 2:23-ap-01169-SK.

13   4.   On 11-9-2023, the Court dismissed, without prejudice, causes of action for Denial of

14     Discharge Pursuant to 11 USC § 727(a)(2)(A); 11 USC § 727(a)(2)(B); 11 USC § 727(a)(3);

15     11 USC § 727(a)(4); 11 USC § 727(a)(5) (Dkt No 38).

16   5.   On 11-28-2023, this Court entered a default against Klein for Determination of

17     Nondischargeability of Debts and to Deny Discharge pursuant to 11 USC § 523(a)(2)(A), 11

18     USC § 523(a)(4), & 11 USC § 523(a)(6) (Dkt No 43).

19       **BACKGROUND FACTS SUPPORTING JUDGMENT**

20   6.   On 2-17-2009, Leslie Klein ("Klein") on behalf of Leslie Klien & Associates, entered into a

21     *Memorandum of Agreement for Joint Venture* (the "Gardner Memo").

22   7.   On 2-17-2009, Klein on behalf of BK Life Settlements, LLC ("BK Life") entered into a *Life*

23     *Insurance Policy Purchase Agreement* ("Gardner LIPPA") with Andrew and Yvette Gardner

24     ("Gardner") for the purchase of two (2) $5,000,000.00 life insurance Policies #1625579 &

25     #1621379 totaling $10,000,000.00 ("Gardner Policies") on the lives of Gardner. Klein

26     designated Leslie Klien & Associates and myself as the sole beneficiaries of the Garner

27     Policies. Klein had me sign the Gardner LIPPA on behalf of the buyer BK Life.

28

8.  In furtherance of the Gardner Memo, I paid Klein $400,000.00 towards the purchase of the two Gardner Policies.

9.  Per the Gardner Memo, Klein promised to pay me $5,000,000.00 upon the last Gardner to die.

10. Thereafter, Klein apparently sold portions or the entirety of the Gardner Policy to GMR Life Settlements LLC ("GMR Life") without my consent. Klein concealed this information from me.

11. Thereafter, on or about May of 2011, Klein apparently sold portions or the entirety of the Gardner Policy and to Life Capital Group, LLC ("LCG"), without my consent. Klein concealed this information from me.

12. According to information recently received by me, Klein and Shlomo Yehuda Rechnitz of LCG, agreed that upon the death of Gardner, Klein and Rechnitz would be reimbursed the premiums that they paid, plus interest on the premiums. Thereafter, Klein and Rechnitz would split the profits 50/50 of the Gardner Policy, and that I would receive my $5,000,000.00.

13. The Gardner's apparently died in 2021 - 2022, and Klein collected the Gardner Proceeds, on the Gardner Policy. Klein concealed this information from me, misappropriated & kept the Gardner Proceeds for himself, and failed to pay me the $5,000,000.00 per the Gardner Memo.

## INTEREST CALCULATION

14. Pursuant to Bankruptcy Rule 3001(c)(2)(A), interest of 10% on the $5,000,000.00 from 2-17-2009 until the petition date of 2-22-2023 came to $7,010,958.834 (5118 days at $1,369.8630/day). The total amount due as of the filing date was $12,010,958.834.[1]

15. Post-petition interest continues to accrue at the rate of $1,369.8630/day. The total post-petition interest from 2-23-2023 through 12-19-2023 (299 days) comes to $409,589.037. **The total amount due as of 12-19-2023 is $12,511,547.871**.

---

[1] A true and correct copy of the Amended Proof of Claim which was filed in the main case on 12/19/2023, incorporates copies of the Gardner LIPPA and the Limited Liability Company Agreement of Life Capital Group, LLC, is attached hereto as Exhibit "1" and is incorporated herein by this reference.

12/19-2:12pm

1        I declare under penalty of perjury under the laws of the United States, State of California that

2  the foregoing is true and correct.

3        Executed December 19, 2023, at Los Angeles CA.

4                           By   /s/ David Berger

5                               DAVID BERGER

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12/19-2:12pm

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Baruch C Cohen<br>4929 Wilshire Blvd Ste 940<br>Los Angeles, CA 90010<br><br>323-937-4501<br><br><br><br>*Plaintiff or Attorney for Plaintiff* | |

<div align="center">

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES**

</div>

| In re:<br><br>Leslie Klein<br><br><br><br>Debtor(s). | CASE NO.: 2:23-bk-10990-SK<br>CHAPTER: 11<br><br>ADVERSARY NUMBER: 2:23-ap-01169-SK |
|---|---|
| David Berger<br><br>Versus    Plaintiff(s)<br><br>Leslie Klein<br><br>Defendant(s) | **ANOTHER**<br>**SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004-1]** |

TO THE DEFENDANT(S): A Complaint has been filed by the Plaintiff against you. If you wish to defend against the Complaint, you must file with the court a written pleading in response to the Complaint. You must also serve a copy of your written response on the party shown in the upper left-hand corner of this page. The deadline to file and serve a written response is **08/07/2023.** If you do not timely file and serve the response, the court may enter a judgment by default against you for the relief demanded in the Complaint.

A status conference in the adversary proceeding commenced by the Complaint has been set for:

    **Date:**        September 6, 2023
    **Time:**        09:00 AM
    **Hearing Judge:** Sandra R. Klein
    **Location:**   255 E Temple St., Crtrm 1575, Los Angeles, CA 90012

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2016*        Page 1        **F 7004-1.SUMMONS.ADV.PROC**

Case 2:23-ap-01169-SK    Doc 141    Filed 07/07/23    Entered 07/07/23 15:30:35    Desc
Main Document    Page 2 of 375

You must comply with LBR 7016-1, which requires you to file a joint status report and to appear at a status conference. All parties must read and comply with the rule, even if you are representing yourself. You must cooperate with the other parties in the case and file a joint status report with the court and serve it on the appropriate parties at least 14 days before a status conference. A court-approved joint status report form is available on the court's website (LBR form F 7016-1.STATUS.REPORT) with an attachment for additional parties if necessary (LBR form F 7016-1.STATUS.REPORT.ATTACH). If the other parties do not cooperate in filing a joint status report, you still must file with the court a unilateral status report and the accompanying required declaration instead of a joint status report 7 days before the status conference. **The court may fine you or impose other sanctions if you do not file a status report. The court may also fine you or impose other sanctions if you fail to appear at a status conference.**

KATHLEEN J. CAMPBELL
**CLERK OF COURT**

Date of Issuance of Alias Summons and Notice of Status Conference in Adversary Proceeding: July 7, 2023

By: _____ "s/" Thais D. May _____

Deputy Clerk



This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2016                                    Page 2                        **F 7004-1.SUMMONS.ADV.PROC**

## EARLY MEETING OF COUNSEL, JOINT STATUS REPORT AND STATUS CONFERENCE INSTRUCTIONS

1.      A copy of these instructions must be attached to the copy of the complaint served upon each party, and the proof of service of the summons and complaint must indicate that such copy was served therewith.

2.      If the adversary proceeding involves money or property exceeding $10,000, or if plaintiff believes trial time will exceed 4 hours, plaintiff must serve, with the summons and complaint, a notice that compliance with Local Bankruptcy Rule 7026-1 and Federal Bankruptcy Procedure Rule 7026 is required. Plaintiff must also file a proof of service of the notice together with the proof of service of the summons and the complaint.

3.      If Local Bankruptcy Rule 7026-1 is applicable, counsel for the parties MUST TIMELY MEET TO DISCUSS SETTLEMENT AND TO EXCHANGE DOCUMENTS, OTHER EVIDENCE, AND LISTS OF WITNESSES, AND PRELIMINARY DISCOVERY SCHEDULES AS PROVIDED IN SAID RULE. FEDERAL RULE OF CIVIL PROCEDURE 26(f) DOES NOT APPLY TO THIS PROCEEDING.

4.      Unless all defendants have defaulted, the parties **must** file a Joint Status Report pursuant to Local Bankruptcy Rule 7016-1(a)(2) at least 14 court days before the date of the status conference using Local Form No. F 7016-1.1. This form may be found on the Court's website, www.cacb.uscourts.gov, by clicking on "Forms/Rules/General Orders," then "Local Bankruptcy Rules & Forms," and scrolling down to F 7016-1.1. If Local Bankruptcy Rule 7026-1 is applicable, the parties shall include in the Joint Status Report a statement that they have met to discuss settlement and have exchanged documents, other evidence, lists of witnesses and preliminary discovery schedules.

5.      If no response to the complaint is timely filed, plaintiff may request entry of default by the clerk or by the court pursuant to Local Bankruptcy Rule 7055-1(a). Plaintiff may also request entry of a default judgment by filing and serving an appropriate motion pursuant to Local Bankruptcy Rule 7055-1(b). These motions may be brought pursuant to Local Bankruptcy Rule 9013-1.

6.      If the parties dispute whether the adversary proceeding is "core" or "non-core," they must file points and authorities in support of their positions. See 28 U.S.C. § 157. Any party that contends the proceeding is "non-core" must file and serve its points and authorities at least 14 days before the status conference. Any response must be filed and served at least 7 days before the status conference.

7.      Unless a party objects in writing in the first Joint Status Report or the court orders otherwise, direct testimony at trial will be presented by declaration.

8.      Failure to comply with these instructions may subject the responsible party to sanctions.

9.      At the initial status conference a date may be set for further status conference, a
pre-trial conference and/or for trial.

10.      Failure of counsel for any party to appear at a status conference or pre-trial
conference may be considered an abandonment and the adversary proceeding may be
dismissed or judgment entered against the defaulting party, without further hearing.

Sandra R. Klein
United States Bankruptcy Judge

1  Baruch C. Cohen, Esq. (SBN 159455)
   LAW OFFICE OF BARUCH C. COHEN
2     A Professional Law Corporation
   4929 Wilshire Boulevard, Suite 940
3  Los Angeles, California 90010
   Tel: (323) 937-4501   Fax: (888) 316-6107
4  email: baruchcohen@baruchcohenesq.com

5  *Attorney For Plaintiff David Berger*

6         UNITED STATES BANKRUPTCY COURT
          CENTRAL DISTRICT OF CALIFORNIA
7           LOS ANGELES ANA DIVISION

8

| 9  In re | Case No. 2:23-bk-10990-SK |
|---|---|
| 10  LESLIE KLEIN, | Hon. Sandra Klein |
| 11    Debtor and Debtor in Possession, | Chapter 11 |
| 12 | |
| 13  DAVID BERGER, | **COMPLAINT FOR NONDISCHARGEABILITY OF DEBT PURSUANT TO 11 USC § 523(a)(2)(A), 11 USC § 523(a)(4), & 11 USC § 523(a)(6); & FOR DENIAL OF DISCHARGE PURSUANT TO 11 USC § 727(a)(2)(A); 11 USC § 727(a)(2)(B); 11 USC § 727(a)(3); 11 USC § 727(a)(4); 11 USC § 727(a)(5)** |
| 14       Plaintiff | |
| 15  vs. | |
| 16  LESLIE KLEIN | |
| 17      Defendant | |
| 18 | |

19

20      **TO THE HONORABLE SANDRA R. KLEIN, UNITED STATES BANKRUPTCY JUDGE, THE DEBTOR AND HIS COUNSEL, AND ALL OTHER INTERESTED PARTIES**:

22      Plaintiff-Creditor, David Berger ("Plaintiff"), complain for nondischargeability of debt &

23  for denial of discharge against Defendant-Debtor, Leslie Klein ("Defendant"), and allege

24  respectfully as follows:

25                **CORE/NON-CORE DESIGNATION**

26  1.    In accordance with Local Bankruptcy Rule 7008-1, Plaintiff alleges that this adversary

27    proceeding constitutes a core proceeding under 28 USC § 157(b)(2). Plaintiff

28    acknowledges that the Court has the power to enter final orders and judgments in this

matter. Plaintiff also consents to the Court's entry of final orders and judgments in this matter under FRBP Rule 7008.

## JURISDICTION, VENUE & STANDING

2. This adversary proceeding arises under *In re Klein*, 2:23-bk-10990-SK, a Chapter 11 case commenced in the United States Bankruptcy Court for the Central District of California ("Bankruptcy Case"). The Court has jurisdiction under 11 USC §§ 523 and 727, and 28 USC §§ 157 and 1334.

3. The venue is proper in this Court pursuant to 28 USC § 1409.

4. Plaintiff have standing to bring this action because Plaintiff is a(n omitted) creditor in the Bankruptcy Case under 11 USC § 101(10).

## PARTIES

5. The following is a description of the relevant parties involved in the facts forming the basis of this Complaint.

6. Plaintiff is an individual, residing in Los Angeles County.

7. Defendant is an individual, whose principal residence is in Los Angeles County, California and who regularly conducted business from Los Angeles County, California. Defendant was a certified public accountant, formerly licensed by the State of California, and a former, and an attorney licensed by the State of California.[1] Defendant is the debtor in the above-captioned Chapter 11 bankruptcy case.

## GENERAL ALLEGATIONS

8. The following general allegations form the background for the Plaintiff's claims for relief

---

[1] On September 10, 1992, the Supreme Court of the State of California, in State Bar Court Case No. 86-O-14258, ordered that Defendant be suspended from the practice of law for 18 months and further ordered that he take and pass the California Professional Responsibility Examination ("CPRE"). Defendant failed the November 1993 and January 1994 CPREs. In Case No. 86-O-14258, Defendant admitted to intentional misrepresentations. On August 3, 1995, the Supreme Court of the State of California, in State Bar Court Case No. 92-O-11716 (consolidated with Case Nos. 93-O-11825, 94-O-13951, 94-O12055, and 94-O15901) ordered that Defendant be suspended from the practice of law for one year. In Case No. 92-O-11716, as consolidated, Defendant admitted to willful violations of Rules of Professional Conduct concerning client trust accounts and conflicts of interest.

-2-

Case 2:23-ap-01169-SK   Doc 48   Filed 02/09/23   Entered 02/09/23 10:58:08   Desc
Main Document      Page 23 of 16

1      against Defendant.

2  9.    Defendant was the Plaintiff's friend and neighbor for more than 55 years.

3  10.   Plaintiff did not receive timely notice of this bankruptcy proceeding as the Debtor

4      omitted listing Plaintiff on his Schedule F - general unsecured creditors.

5  11.   On 2-17-2009, Leslie Klein ("Klein") on behalf of Leslie Klien & Associates, entered

6      into a *Memorandum of Agreement for Joint Venture* with Plaintiff (the "Gardner

7      Memo").

8  12.   On 2-17-2009, Klein on behalf of BK Life Settlements, LLC ("BK Life") entered into a

9      *Life Insurance Policy Purchase Agreement* ("Gardner LIPPA") with Andrew and Yvette

10     Gardner ("Gardner") for the purchase of two (2) $5,000,000.00 life insurance Policies

11     #1625579 & #1621379 totaling $10,000,000.00 ("Gardner Policies") on the lives of

12     Gardner. Klein designated Leslie Klien & Associates and Plaintiff as the sole

13     beneficiaries of the Garner Policies. Klein had Plaintiff sign the Gardner LIPPA on

14     behalf of the buyer BK Life.

15 13.   In furtherance of the Gardner Memo, Plaintiff paid Klein's IOLTA account with his law

16     firm, Leslie Klien & Associates, $400,000.00 towards the purchase of the two Gardner

17     Policies.

18 14.   Per the Gardner Memo, Klein promised to pay Plaintiff $5,000,000.00 upon the last

19     Gardner to die.

20 15.   On or about 11-16-2015, Klein wrote to Plaintiff:

21     Dear David: You are right. We have been friends for the last fifty years and I
22     would not do anything that would adversely affect your interest in the Gardner
    policy.

23 16.   Thereafter, Klein apparently sold portions or the entirety of the Gardner Policy to GMR

24     Life Settlements LLC ("GMR Life") without Plaintiff's consent. Klein concealed this

25     information from Plaintiff.

26 17.   Thereafter, on or about May of 2011, Klein apparently sold portions or the entirety of the

27     Gardner Policy and to Life Capital Group, LLC ("LCG"), without Plaintiff's consent.

28

-3-

Case 2:23-ap-01169-SK    Doc 48    Filed 05/09/23    Entered 05/09/23 10:58:05    Desc
Main Document    Page 14 of 15

1    Klein concealed this information from Plaintiff.

2  18. According to information recently received by Plaintiff, Klein and Shlomo Yehuda

3    Rechnitz of LCG, agreed that upon the death of Gardner, Klein and Rechnitz would be

4    reimbursed the premiums that they paid, plus interest on the premiums. Thereafter, Klein

5    and Rechnitz would split the profits 50/50 of the Gardner Policy, and that Plaintiff would

6    receive his $5,000,000.00.

7  19. The Gardner's apparently died in 2021 - 2022, and Klein collected the Gardner Proceeds,

8    on the Gardner Policy. Klein concealed this information from Plaintiff, misappropriated

9    & kept the Gardner Proceeds for himself, and failed to pay Plaintiff the $5,000,000.00

10   per the Gardner Memo.

11  20. Pursuant to by Bankruptcy Rule 3001(c)(2)(A), interest of 10% on the $5,000,000.00,

12   since 2-17-2009 (1565 days at $1,369.8630 interest per day) comes to $2,143,835.62,

13   bringing the total amount due at **$7,143,835.62**.

14  21. During this entire time, Defendant repeatedly assured Plaintiff that premiums of the

15   Gardner Policy were being timely made, and that his investment in the Gardner Policy

16   was secure and accruing interest.

17          **PLAINTIFF'S DISCOVERY OF DEFENDANT'S FRAUD**

18  22. On or about 7-29-2022, Plaintiff discovered the above-referenced frauds and

19   concealment.

20               **FIRST CLAIM FOR RELIEF**
       **(Nondischargeability of Debt - 11 USC § 523(a)(2)(A))**

21

22  23. Plaintiff realleges and incorporates by reference all of the prior and subsequent

    allegations in this Complaint as though fully set forth herein.

23

24  24. At all relevant times, Defendant acted as Plaintiff' fiduciary - investment adviser.

    Plaintiff entrusted Defendant implicitly with his investment in the Gardner insurance

25

26    policies.

27  25. Defendant owed Plaintiff fiduciary duties at all relevant times, including the duty of

28   loyalty and candor. Defendant further owed a duty to use Plaintiff' funds for legitimate

Case 2:23-ap-01169-SK   Doc 48   Filed 05/09/23   Entered 05/09/23 10:58:06   Desc
Main Document      Page 5 of 15

1    business purposes and to refrain from using their funds and other property for his own

2    personal non-business purposes.

3  26.   Defendant embezzled and stole from Plaintiff. Defendant misrepresented the above-

4    referenced information to Plaintiff for the purpose of convincing Plaintiff to invest in the

5    Gardner Policy into Defendant's IOLTA client trust account. Defendant then stole more

6    than $400,000.00 of Plaintiff' money in a complicated life insurance scam, constituting

7    intentional fraudulent, fraudulent concealment, and breach of fiduciary duty.

8  27.   Defendant's misappropriation of Plaintiff's funds and other property was unauthorized,

9    without his consent and fraudulent. Defendant acted with the intent to permanently

10    deprive Plaintiff of the possession, use and benefit of their funds and other property.

11  28.   As a result of Defendant's unauthorized and fraudulent misappropriation of Plaintiff'

12    funds and other property and Defendant's false pretenses, false representations, and

13    actual fraud set forth herein, Plaintiff have suffered damages in the amount of not less

14    than $7,143,835.62.

15  29.   Defendant's debt to Plaintiff is nondischargeable under 11 USC § 523(a)(2) because it

16    was incurred as a result of false pretenses, false representations, and actual fraud.

17  30.   The damages arising from Defendant's willful and malicious false pretenses, false

18    representation and actual fraud to Plaintiff constitutes a debt against Defendant that is

19    nondischargeable pursuant to 11 USC § 523(a)(2)(A).

20          **SECOND CLAIM FOR RELIEF**
          **(Nondischargeability of Debt – 11 USC § 523(a)(4))**
21

22  31.   Plaintiff realleges and incorporates by reference all of the prior and subsequent

23    allegations in this Complaint as though fully set forth herein.

24  32.   At all relevant times, Defendant acted as Plaintiff' fiduciary - investment adviser.

25    Plaintiff entrusted Defendant implicitly with his investments in the Gardner insurance

26    policies.

27  33.   Defendant owed Plaintiff fiduciary duties at all relevant times, including the duty of

28    loyalty and candor. Defendant further owed a duty to use Plaintiff' funds for legitimate

1  business purposes and to refrain from using their funds and other property for his own

2  personal non-business purposes.

3  34.  Defendant embezzled and stole from Plaintiff. Defendant misrepresented the above-

4  referenced information to Plaintiff for the purpose of convincing Plaintiff to invest in the

5  Gardner Policy into Defendant's IOLTA client trust account. Defendant then stole more

6  than $400,000.00 of Plaintiff' money in a complicated life insurance scam, constituting

7  intentional fraudulent, fraudulent concealment, breach of fiduciary duty and elder abuse.

8  35.  Defendant's misappropriation of Plaintiff' funds and other property was unauthorized,

9  without his consent and fraudulent. Defendant acted with the intent to permanently

10  deprive Plaintiff of the possession, use and benefit of his funds and other property.

11  36.  As a result of Defendant's unauthorized and fraudulent misappropriation of Plaintiff'

12  funds and other property and Defendant's false pretenses, false representations, and

13  actual fraud set forth herein, Plaintiff have suffered damages in the amount of not less

14  than $7,143,835.62.

15  37.  The damages to Plaintiff arising from Defendant's fraud, defalcation, embezzlement and

16  larceny while acting in a fiduciary capacity constitutes a debt against Defendant that is

17  non-dischargeable pursuant to 11 USC § 523(a)(4).

18  **THIRD CLAIM FOR RELIEF**
**(Nondischargeability of Debt - 11 USC § 523(a)(6))**

19

20  38.  Plaintiff realleges and incorporates by reference all of the prior and subsequent

21  allegations in this Complaint as though fully set forth herein.

22  39.  At all relevant times, Defendant acted as Plaintiff' fiduciary - investment adviser.

23  Plaintiff entrusted Defendant implicitly with their investments in the insurance policies.

24  40.  Defendant owed Plaintiff fiduciary duties at all relevant times, including the duty of

25  loyalty and candor. Defendant further owed a duty to use Plaintiff' funds for legitimate

26  business purposes and to refrain from using his funds and other property for his own

27  personal non-business purposes.

28  41.  Defendant embezzled and stole from Plaintiff. Defendant misrepresented the above-

1   referenced information to Plaintiff for the purpose of convincing Plaintiff to invest in

2   Gardner policies into Defendant's IOLTA client trust account. Defendant then stole more

3   than $400,000.00 of Plaintiff' money in a complicated life insurance scam, constituting

4   intentional fraudulent, fraudulent concealment, breach of fiduciary duty and elder abuse.

5   42.  Defendant's misappropriation of Plaintiff' funds and other property was unauthorized,

6   without his consent and fraudulent. Defendant acted with the intent to permanently

7   deprive Plaintiff of the possession, use and benefit of their funds and other property.

8   43.  As a result of Defendant's unauthorized and fraudulent misappropriation of Plaintiff'

9   funds and other property and Defendant's false pretenses, false representations, and

10  actual fraud set forth herein, Plaintiff have suffered damages in the amount of not less

11  than $7,143,835.62.

12  44.  The damages to Plaintiff arising from Defendant's willful and malicious injury to

13  Plaintiff constitutes a debt against Defendant that is non-dischargeable pursuant to 11

14  USC § 523(a)(6).

15                      **FOURTH CAUSE OF ACTION**
16         **(Objection to Debtor's Discharge  11 USC § 727(a)(2)(A))**

17  45.  Plaintiff realleges and incorporates by reference all of the prior and subsequent

18  allegations in this Complaint as though fully set forth herein.

19  46.  Plaintiff is informed and believes that within one year before the Petition, Defendant

20  transferred, removed, and/or concealed, or permitted to be transferred, removed, and/or

21  concealed, Defendant's property.

22  47.  As of the dates of the transfers, removals, and/or concealments of Defendant's property,

23  Defendant had one or more unsecured creditors.

24  48.  The transfers, removals, and/or concealments of Defendant's property prevented the

25  distribution of Defendant's property to Defendant's unsecured creditors.

26  49.  Defendant, with intent to hinder, delay, and/or defraud at least one of Defendant's

27  creditors, including, without limitation, Plaintiff, transferred, removed, and/or concealed,

28  or permitted to be transferred, removed, and/or concealed, Defendant's property

-7-

Case 2:23-ap-01169-SK   Doc 48   Filed 05/09/23   Entered 05/09/23 10:59:06   Desc
Main Document      Page 18 of 16

50. By transferring, removing, concealing, and/or permitting the transfer, removal, and/or concealment of Defendant's property with the intent to hinder, delay, and/or defraud at least one of Defendant's creditors, Defendant violated 11 USC § 727(a)(2)(A).

51. Defendant failed to list valuable property on his schedule of assets and failed in his statement of affairs to disclose property transfers.

52. Defendant has a reckless indifference to the truth.

<div align="center">

**FIFTH CAUSE OF ACTION**
**(Objection to Debtor's Discharge  11 USC § 727(a)(2)(B))**

</div>

53. Plaintiff realleges and incorporates by reference all of the prior and subsequent allegations in this Complaint as though fully set forth herein.

54. Plaintiff is informed and believes that After the Petition, Defendant transferred, removed, concealed, and/or permitted to be transferred, removed, and/or concealed, property of the Bankruptcy estate.

55. As of the dates of the transfers, removals, and/or concealments of the property of the estate, Defendant had one or more unsecured creditors.

56. The transfers, removals, and/or concealments of the property of the estate prevented the distribution of this property to Defendant's unsecured creditors.

57. Defendant, with intent to hinder, delay, and/or defraud at least one of Defendant's creditors, transferred, removed, and/or concealed, or permitted to be transferred, removed, and/or concealed, property of the estate.

58. By transferring, removing, concealing, and/or permitting the transfer, removal, and/or concealment of estate property, with the intent to hinder, delay, and/or defraud at least one of Defendant's creditors, Defendant violated 11 USC § 727(a)(2)(B).

59. Defendant failed to list valuable property on his schedule of assets and failed in his statement of affairs to disclose property transfers.

60. Defendant has a reckless indifference to the truth.

///

///

## SIXTH CAUSE OF ACTION
### (Objection to Debtor's Discharge  11 USC § 727(a)(3))

61.   Plaintiff realleges and incorporates by reference all of the prior and subsequent

allegations in this Complaint as though fully set forth herein.

62.   Plaintiff is informed and believes that Defendant has not maintained adequate books and

records from which Debtor's financial condition can be ascertained. Debtor has

consistently not maintained adequate books and records. His failure to keep adequate

books and records is not justified considering the circumstances articulated in this

Complaint.

63.   Defendant has concealed, destroyed, falsified, and/or failed to keep or preserve

information from which Defendant's financial condition and/or business transactions

might be ascertained.

64.   Defendant has not been cooperative with the Office of the United States Trustee

("OUST") or with his creditors. Defendant has intentionally withheld records, books,

documents, and/or other papers relating to Defendant's property and/or financial affairs.

65.   Considering the foregoing, Defendant's discharge must be denied under 11 USC §

727(a)(3).

## SEVENTH CAUSE OF ACTION
### (Objection to Debtor's Discharge  11 USC § 727(a)(4))

66.   Plaintiff realleges and incorporates by reference all of the prior and subsequent allegations

in this Complaint as though fully set forth herein.

67.   Plaintiff is informed and believes that Defendant has not made simple isolated errors or

omissions in his Bankruptcy filings. Defendant's filings, such as his schedules and

statement of affairs, do not reflect inadvertence or incompetence; rather, they exhibit

fraudulent intent.

68.   Defendant has a pattern of misleading conduct.

69.   Defendant has a reckless indifference to the truth.

70.   Defendant has failed to list assets in his schedules.

Case 2:23-ap-01169-SK   Doc 48   Filed 05/09/23   Entered 05/09/23 10:59:00   Desc
Main Document      Page 20 of 78

71. Defendant has falsely testified in the 341 Meeting.[2]

72. Defendant has knowingly and fraudulently made false oaths and/or accounts in the Bankruptcy Case.

73. Defendant has failed to provide records which are necessary for the OUST and his creditors to properly understand Defendant's financial condition and/or recent business transactions.

74. Considering the foregoing, Defendant's discharge must be denied under 11 USC § 727(a)(4).

### EIGHTH CAUSE OF ACTION
### (Objection to Debtor's Discharge  11 USC § 727(a)(5))

75. Plaintiff realleges and incorporates by reference all of the prior and subsequent allegations in this Complaint as though fully set forth herein.

76. Defendant has failed to explain satisfactorily his deficiency and/or loss of assets to meet Debtor's liabilities. No determination has yet been made of an entitlement to a discharge in this Bankruptcy Case.

77. Considering the foregoing, Defendant's discharge must be denied under 11 USC § 727(a)(5).

---

[2] At the 3-13-2023 341(a) Meeting, Defendant at circa 11:15 testified in response to omissions to be brought to the attention of the United States Trustee ("UST"), that there were only "three minor errors" which he thought that his attorney corrected. Defendant testified that there were "no" errors related to any assets that he owns. At circa 12:52, Defendant testified that he identified all assets on his schedules. Defendant at circa 1:18:30-1:09:21 testified that in the year before the Bankruptcy, he received no commissions from his third-party life insurance deals. At circa 1:20:18, Defendant testified that he has not ever collected money on his third-party life insurance deals. At circa 1:22:18, Defendant testified that he has never received a payoff on his third-party life insurance deals. At circa 1:23:21, Defendant testified that four people have died and that he has received no money. Defendant at circa 1:39:00 testified, in response to whether he had transactions with Shlomo Rechnitz in the last five or six months relating to the thirdparty life insurance policies, "nope." Defendant testified that he does not remember paying the premiums for these policies out of his attorney client trust account at any time. Defendant at circa 1:40:03 testified that he does not remember depositing his own funds into his attorney-client trust account so that these insurance premiums could be paid. In response to the question of whether Defendant traveled out of the country anywhere recently, other than Israel, Defendant at circa 2:23:00 testified, "nope." In response to the question of whether Defendant has bank accounts in Israel, Defendant at circa 2:26:48 testified, "nope." Defendant at circa 2:59:15 testified that he has not transferred any assets within the last year to a third party. Defendant at circa 2:59:33 testified that he has not given any gifts more than $12,000.00 to his family.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff request judgment on the Complaint as follows:

1.  On the First Claim for Relief, Plaintiff seek an order determining that Defendant is indebted to Plaintiff in an amount not less than $7,143,835.62 and that Defendant's debt is excepted from discharge pursuant to 11 USC § 523(a)(2)(A);

2.  On the Second Claim for Relief, Plaintiff seek an order determining that Defendant is indebted to Plaintiff in an amount not less than $7,143,835.62 and that Defendant's debt is excepted from discharge pursuant to 11 USC § 523(a)(4);

3.  On the Third Claim for Relief, Plaintiff seek an order determining that Defendant is indebted to Plaintiff in an amount not less than $7,143,835.62 and that Defendant's debt is excepted from discharge pursuant to 11 USC § 523(a)(6);

4.  On the Fourth Claim for Relief, Plaintiff seek an order denying Defendant his discharge pursuant to 11 USC § 727(a)(2)(A);

5.  On the Fifth Claim for Relief, Plaintiff seek an order denying Defendant his discharge pursuant to 11 USC § 727(a)(2)(B);

6.  On the Sixth Claim for Relief, Plaintiff seek an order denying Defendant his discharge pursuant to 11 USC § 727(a)(3);

7.  On the Seventh Claim for Relief, Plaintiff seek an order denying Defendant his discharge pursuant to 11 USC § 727(a)(4);

8.  On the Eighth Claim for Relief, Plaintiff seek an order denying Defendant his discharge pursuant to 11 USC § 727(a)(5);

9.  For costs of suit incurred herein; and

10. For such other and further relief as the Court may deem appropriate.

DATED:    June 9, 2023                    LAW OFFICE OF BARUCH C. COHEN
                                          A Professional Law Corporation

                                          By    /S/ Baruch C. Cohen
                                          Baruch C. Cohen, Esq.
                                          *Attorney For Creditor David Berger*

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

4929 Wilshire Boulevard, Suite 940, Los Angeles, California 90010.

true and correct copy of the foregoing document entitled: **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004-1]** and (2) the accompanying pleading(s) entitled:

EARLY MEETING OF COUNSEL, JOINT STATUS REPORT AND STATUS CONFERENCE INSTRUCTIONS, and COMPLAINT FOR NONDISCHARGEABILITY OF DEBT PURSUANT TO 11 USC § 523(a)(2)(A), 11 USC § 523(a)(4), & 11 USC § 523(a)(6); & FOR DENIAL OF DISCHARGE PURSUANT TO 11 USC § 727(a)(2)(A); 11 USC § 727(a)(2)(B); 11 USC § 727(a)(3); 11 USC § 727(a)(4); 11 USC § 727(a)(5)

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date) 7/10/2023 _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

| | |
|---|---|
| Baruch C Cohen (PL) | bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com |
| Michael I, Gottfried (IP) | mgottfried@elkinskalt.com, cavila@elkinskalt.com, lwageman@elkinskalt.com, docketing@elkinskalt.com |
| Nikko Salvatore Stevens (IP) | nikko@cym.law, mandi@cym.law |
| United States Trustee (LA) | ustpregion16.la.ecf@usdoj.gov |

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On (date) 7/10/2023 _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Leslie Klein, 322 N. June Street, Los Angeles, CA 90001

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) 7/10/2023 _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Hon. Sandra R. Klein, 255 E. Temple Street, Suite 1582, Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 7/10/2023 | Baruch C Cohen | /s/ Baruch Cohen |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2016                                    **F 7004-1.SUMMONS.ADV.PROC**

EXHIBIT "1"

**Fill in this information to identify the case:**

Debtor 1    LESLIE KLEIN

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:   Central District of California

Case number   2:23-bk-10990-SK

Official Form 410

# Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1:   Identify the Claim

| | |
|---|---|
| 1. Who is the current creditor? | **DAVID BERGER**<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor _____ |
| 2. Has this claim been acquired from someone else? | ☑ No<br>☐ Yes. From whom? _____ |
| 3. Where should notices and payments to the creditor be sent?<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**<br><br>BARUCH C. COHEN, ESQ.<br>Name<br><br>4929 WILSHIRE BOULEVARD, SUITE 940<br>Number   Street<br><br>LOS ANGELES    CA    90010<br>City     State     ZIP Code<br><br>Contact phone 323-937-4501<br><br>Contact email baruchcohen@baruchcohenesq.com<br><br>Uniform claim identifier for electronic payments in chapter 13 (if you use one):<br>_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | **Where should payments to the creditor be sent?** (if different)<br><br>Name<br><br>Number   Street<br><br>City     State     ZIP Code<br><br>Contact phone _____<br><br>Contact email _____ |
| 4. Does this claim amend one already filed? | ☐ No<br>☑ Yes. Claim number on court claims registry (if known) 35        Filed on 06/05/2023<br>MM / DD / YYYY |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No<br>☐ Yes. Who made the earlier filing? _____ |

**Part 2:**   Give Information About the Claim as of the Date the Case Was Filed

| | |
|---|---|
| 6. Do you have any number you use to identify the debtor? | ☐ No<br>☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:   B   E   R   G |

| | |
|---|---|
| 7. How much is the claim? | $              12,010,958.83   Does this amount include interest or other charges?<br>☐ No<br>☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | |
|---|---|
| 8. What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br>KLEIN MISAPPROPRIATED INSURANCE POLICY PROCEEDS |

| | |
|---|---|
| 9. Is all or part of the claim secured? | ☑ No<br>☐ Yes.  The claim is secured by a lien on property.<br><br>Nature of property:<br>☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br><br>Basis for perfection: _____<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>Value of property:                          $_____<br>Amount of the claim that is secured:    $_____<br><br>Amount of the claim that is unsecured: $_____   (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>Amount necessary to cure any default as of the date of the petition:   $_____<br><br>Annual Interest Rate (when case was filed)_____%<br>☐ Fixed<br>☐ Variable |

| | |
|---|---|
| 10. Is this claim based on a lease? | ☑ No<br>☐ Yes. Amount necessary to cure any default as of the date of the petition.   $_____ |

| | |
|---|---|
| 11. Is this claim subject to a right of setoff? | ☑ No<br>☐ Yes. Identify the property: _____ |

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | | |
|---|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority | ☐ Yes. *Check one:* | | **Amount entitled to priority** |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | | $ |
| | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | | $ |
| | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier 11 U.S.C. § 507(a)(4). | | $ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | | $ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | | $ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | | $ |
| | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | | |

---

**Part 3:   Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   12/19/2023
                    MM / DD / YYYY


/s/ Baruch C. Cohen, Esq.
Signature

Print the name of the person who is completing and signing this claim:

| Name | Baruch C. Cohen | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | ATTORNEY FOR DAVID BERGER | | |
| Company | LAW OFFICE OF BARUCH C. COHEN, APLC | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 4929 WILSHIRE BOULEVARD, SUITE 940 | | |
| | Number        Street | | |
| | LOS ANGELES | CA | 90010 |
| | City | State | ZIP Code |
| Contact phone | 323-937-4501 | Email baruchcohen@baruchcohenesq.com | |

## DECLARATION OF DAVID BERGER

I, **DAVID BERGER**, declare and state as follows:

1. The facts stated below are true and correct to the best of my personal knowledge and if called upon to testify to them, I could and would competently do so.

2. This Declaration is in support of the **PLAINTIFF'S AMENDED PROOF OF CLAIM** filed by me, David Berger.

3. I did not receive timely notice of this bankruptcy proceeding as the Debtor omitted listing me on his Schedule F - General Unsecured Creditors.

4. On 2-17-2009, Leslie Klein ("Klein") on behalf of Leslie Klien & Associates, entered into a *Memorandun of Agreement for Joint Venture* (the "Gardner Memo").

5. On 2-17-2009, Klein on behalf of BK Life Settlements, LLC ("BK Life") entered into a *Life Insurance Policy Purchase Agreement* ("Gardner LIPPA") with Andrew and Yvette Gardner ("Gardner") for the purchase of two (2) $5,000,000.00 life insurance Policies #1625579 & #1621379 totaling $10,000,000.00 ("Gardner Policies") on the lives of Gardner. Klein designated Leslie Klien & Associates and myself as the sole beneficiaries of the Garner Policies.[1] Klein had me sign the Gardner LIPPA on behalf of the buyer BK Life.

6. In furtherance of the Gardner Memo, I paid Klein $400,000.00 towards the purchase of the two Gardner Policies.

7. Per the Gardner Memo, Klein promised to pay me $5,000,000.00 upon the last Gardner to die.

8. Thereafter, Klein apparently sold portions or the entirety of the Gardner Policy to GMR Life Settlements LLC ("GMR Life") without my consent. Klein concealed this information from me.

9. Thereafter, on or about May of 2011, Klein apparently sold portions or the entirety of the Gardner Policy and to Life Capital Group, LLC ("LCG"), without my consent.[2] Klein

---

[1] A true and correct copy of the Gardner LIPPA is attached hereto as Exhibit "1" and is incorporated herein by this reference.

[2] A true and correct copy of the Limited Liability Company Agreement of Life Capital Group, LLC is attached hereto as Exhibit "2" and is incorporated herein by this reference.

12/19-1:00pm

1    concealed this information from me.

2   10.   According to information recently received by me, Klein and Shlomo Yehuda Rechnitz of

3    LCG, agreed that upon the death of Gardner, Klein and Rechnitz would be reimbursed the

4    premiums that they paid, plus interest on the premiums. Thereafter, Klein and Rechnitz would

5    split the profits 50/50 of the Gardner Policy, and that I would receive my $5,000,000.00.

6   11.   The Gardner's apparently died in 2021 - 2022, and Klein collected the Gardner Proceeds, on

7    the Gardner Policy. Klein concealed this information from me, misappropriated & kept the

8    Gardner Proceeds for himself, and failed to pay me the $5,000,000.00 per the Gardner Memo.

9                 **INTEREST CALCULATION**

10  12.   Pursuant to Bankruptcy Rule 3001(c)(2)(A), interest of 10% on the $5,000,000.00 from

11    2-17-2009 until the petition date of 2-22-2023 comes to $7,010,958.834 (5118 days

12    at$1,369.8630 interest per day). The total amount as of the filing date was **$12,010,958.834**.

13

14    I declare under penalty of perjury under the laws of the United States, State of California that

15  the foregoing is true and correct.

16    Executed December 19, 2023, at Los Angeles CA.

17                         By   /s/ David Berger
18                              DAVID BERGER

19

20

21

22

23

24

25

26

27

28

12/19-1:00pm

EXHIBIT "1"

## LIFE INSURANCE POLICY PURCHASE AGREEMENT

This PURCHASE AGREEMENT (the "Agreement") is entered into as of the 17th day of February, 2009 by and among **BK LIFE SETTLEMENTS, LLC** (together with its successors and assigns, the "Buyer"), and **ANDREW GARDNER and YVETTE GARDNER Irrevocable Life Insurance Trust** the Owner of the Policy (the "Seller") and **ANDREW GARDNER and YVETTE GARDNER** (the "Insured").

## DEFINITIONS

"Assignment Effective Date" shall mean, the date that the Insurer (or other appropriate entity) unconditionally transfers the ownership interest in the Policy from the Seller/Insured to the Buyer.

"Beneficiary" shall mean the person or entity entitled to receive the benefits payable pursuant to the terms of the Policy.

"Escrow Agent" shall mean **LESLIE KLEIN & ASSOCIATES.**

"Escrow Agreement" shall mean the agreement entered into in conjunction with the Agreement between the Buyer and the Escrow Agent to provide escrow services.

"Insurer" shall mean, the insurance company that issued the Policy that is subject of the Agreement, or any successor, as set forth in Exhibit A.

"Lien" shall mean all liens, security interests, claims, charges, restrictions and encumbrances.

"Owner" shall mean the owner of the Policy wishing to sell that Policy, who is also the insured under the Policy.

"Party" or "Parties" shall mean the person or persons that are subject to the Agreement.

"Person" shall mean army natural person.

## BACKGROUND

The Seller/Insured wishes to sell a certain life insurance policy, including all

Page 1 of 16
Offer to Purchase

Seller/Insured Initial _____
Buyer Initial _____

benefits, riders and endorsements thereto (the "Policy"), as more fully defined in Exhibit A, for a cash payment and the Buyer is willing to purchase the Policy subject to the terms, conditions and representations contained herein. Certain capitalized terms used herein are defined above, while others are defined within the text of the Agreement or the documents delivered herewith.

**NOW, THEREFORE**, in consideration of and in reliance on the mutual covenants and representations contained in the Agreement, and for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Buyer and the Seller/Insured (the "parties" and individually a "Party") hereby agree as follows, intending to be legally bound:

## 1.   ASSIGNMENT OF POLICY

The Seller/Insured hereby sells, assigns and transfers to the Buyer or its nominee as of the Assignment Effective Date, all right, title and interest in and to the Policy, free and clear of all Liens, which assignment and transfer shall include, but not be limited to, the rights to:

(i)     Change the Beneficiary on the Policy;

(ii)    Assign or surrender the Policy;

(iii)   Borrow on the Policy;

(iv)    Apply for and maintain waiver of premiums under or conversion of the Policy; and

(v)     Receive notification regarding any and all matters relative to the Policy as to which the Seller/Insured may or should be notified.

Effective as of the Assignment Effective Date, the Seller/Insured (a) irrevocably designates **LESLIE KLEIN & ASSOCIATES and DAVID BERGER** as the sole Beneficiary of the Policy and (b) relinquishes and assigns to the Buyer all rights the Seller/Insured has to, arising out of or in connection with the Policy.

The Seller/Insured shall promptly deliver to the Escrow Agent:

(i)     The executed original of the Agreement and all complete, fully executed Related Documents:

Seller/Insured Initial ___
Buyer Initial ___

(ii)     The originals of any other fully executed forms or written authorizations necessary or desirable to effect a change in both the Beneficiary designation and the ownership of the Policy as contemplated by the Agreement; and

(iii)    Such other information and documentation as the Buyer shall reasonably request.

1.4     Upon receipt of the documentation described in Section 0, the Escrow Agent shall promptly forward to the Insurer, in form and substance satisfactory to the Buyer, documentation as may be required for the insurer to transfer ownership of the Policy and change the Beneficiary designation as contemplated by Section -2 of the Agreement.

1.5     The Buyer shall cause the purchase price as set forth in Exhibit A (the "Purchase Price") to be delivered to and deposited with the Escrow Agent along with documents in Paragraph 1.4. The Escrow Agent will hold the Purchase Price in a financial institution that is a member of the Federal Deposit Insurance Corporation (the "FDIC"), where such proceeds shall remain until acknowledgment of the transfer by the Insurer.

1.6     In the event the acknowledgment is not received within thirty (30) days of taking the action required by Section 1.4. the Seller/Insured, in conjunction with the Buyer or in accordance with its instructions, will directly contact the insurer to attempt to have the Insurer issue the acknowledgment.

1.7     The Buyer is not obligated to direct the release of the Purchase Price by the Escrow Agent and may terminate the Agreement without further obligation to the Seller/Insured in the event that:

(i)      The Insurer refuses with or without sufficient reason, to change the ownership or the Beneficiary designation as contemplated by the Agreement;

(ii)     The Buyer reasonably believes that any representation, by the Seller/Insured contained in the Agreement or any related document is false;

(iii)    The Buyer is unable to obtain financing due to incomplete or inaccurate information supplied by the Seller/Insured; or

(iv)    Any condition of Section 0 has not been satisfied or waived in writing by the Buyer.

Upon such termination by the Buyer, the Buyer may request the Escrow Agent to

Seller/Insured Initial _____
Buyer Initial _____

return the Purchase Price to the Buyer and the documentation described in Section 0 to the Seller/Insured and the Escrow Agent shall do so promptly.

1.8     Subject to Sections 1.7 and **0** of the Agreement, the Escrow Agent shall pay, $400,000.00  pursuant to the Escrow Agreement, the purchase Price to the Seller/Insured within two (2) business days following the latter of:

(i)      Receipt by the Escrow Agent of written acknowledgment from the Insurer that (a) ownership of the policy has been transferred and (b) the Beneficiary designation has been changed as contemplated by the Agreement, and

(ii)     Verification by the Buyer of any information deemed necessary or desirable, including each representation of the Seller/Insured.

1.9     Following the Assignment Effective Date, the Buyer will be responsible for all payment of premiums on the Policy and will be entitled to all proceeds of the Policy including but not limited to the death benefit, cash value and dividends.

## 2.     COVENANTS AND REPRESENTATIONS OF THE SELLER/INSURED

The Seller/Insured represents to the Buyer:

(i)      That the Seller/Insured is the sole and undisputed Owner of the policy;

(ii)     The face amount of and net death benefit payable under the Policy, as well as other information relating to the policy set forth in Exhibit A, is correctly set forth in Exhibit A;

(iii)    The benefits under the Policy, including any portion of the death benefits, are incontestable, as set forth in the incontestable section of the Policy and there are no facts or circumstances in existence as of the date hereof which could serve as a defense to payment by the Insurer upon death of the Seller/Insured.

(iv)    **At all times after the transfer, the Seller/Insured will account for and report, on its books and records, in relevant disclosure documents filed with regulatory or administrative bodies or in documents made available to the public or third parties, with respect to each transferred Policy, as assets that have been sold by it to an unaffiliated third party:**

(v)     There are no Liens on the Policy;

Page 4 of 16
Offer to Purchase

Seller/Insured Initial ___
Buyer Initial ___

(vi)    Nothing prohibits or restricts the Seller/Insured from executing the Agreement, transferring the ownership of the Policy or changing the Beneficiary designation as contemplated by the Agreement and, the Seller/Insured has the full right and authority to do so;

(vii)    There are no restrictions on transfer of the Policy;

(viii)    There have been no unpaid premiums on the Policy;

(ix)    The Policy is in full force and effect and has not lapsed, and the Seller/Insured thereof had an insurable interest at the time the Policy was first issued;

(x)    All of the information contained in any document delivered to the Buyer is true, complete and correct; none of such information, any representation by the Seller/Insured contained herein or otherwise made to the Buyer, contained any untrue statement of material fact, or omitted to state a material fact necessary to make such information or representation not misleading in light of the circumstances under which any said statement was made;

(xi)    No representation by the Seller/Insured or any other person or entity contained in any application for the Policy, or otherwise made to the Insurer, contained any untrue statement of material fact, or omitted to state a material fact necessary to make such representation not misleading in light of the circumstances under which any such statement was made; and

(xii)    The Seller/Insured does not have a catastrophic or life-threatening illness or condition.

The Seller/Insured covenants to and agrees with the Buyer:

(i)    That the Seller/Insured shall pay all premiums prior to the Assignment Effective Date as they become due;

(ii)    That the Seller/Insured shall take all actions from time to time that may be necessary or desirable in the Buyer's discretion, including executing all such documents as may be required by the Buyer or the Insurer to complete the transfer of ownership and change the Beneficiary designation of the Policy as contemplated by the Agreement, and the Seller/Insured shall cooperate in any way requested by the Buyer from time to time to assist the Buyer in keeping the Policy in force;

Seller/Insured Initial _____
Buyer Initial _____

(iii)    That upon the request of the Buyer, but not more often than once every thirty (30) days if the Seller/Insured has a life expectancy of one (1) year or less, and no more than once every three (3) months if the Seller/Insured has a life expectancy of more than one (1) year, and within ten (10) days of such request, the Seller/Insured shall cause releases and authorizations to be executed from time to time, permitting or authorizing the Buyer to obtain current medical information regarding the Seller/Insured; and

(iv)    That the Seller/Insured shall inform the Buyer within thirty (30) days of any and all changes in personal information of the Seller/Insured, including address, telephone number, employment status, or attending physician information.  The Seller/Insured acknowledges that the Buyer may, from time to time but not more often than every thirty (30) days if the Seller/Insured has a life expectancy of one (1) year or less, and no more often than once every three (3) months if the Seller/Insured has a life expectancy of more than one (1) year, contact the Seller/Insured (or the Seller/Insured's Designee) for confirmation of such information.

## 3    COVENANTS OF THE BUYER

The Buyer covenants to and agrees with the Seller/Insured:

(i)    That the Buyer shall maintain medical. information concerning the Seller/Insured in confidence,  subject to applicable law, disclosure contemplated. by the Agreement or Related Documents, including the Medical Records Release, and reasonable requirements of the Buyer's business;

(ii)    That the Seller/Insured will not be required to pay any advance fees or bear any costs related to the purchase of the Policy unless otherwise noted in Exhibit A; and

(iii)    That the Buyer shall be responsible for and shall pay all, premiums on the Policy after the Assignment Effective Date.

## 4.    CONDITIONS PRECEDENT

The Agreement will not be binding upon the Buyer until the following conditions have been satisfied or waived in writing by the Buyer:

(i)    The Agreement, along with the Related Documents, in each case in form and substance satisfactory to the Buyer, must be received and accepted by the Buyer at

Seller/Insured Initial
Buyer Initial

its executive office and be further executed, if applicable, by an authorized officer
of the Buyer;

(ii)   There shall not be any pending action, proceeding or governmental action, and
there shall not have occurred any change in law or regulation, or interpretation of
the same, which challenges, seeks to avoid or otherwise places in question the
validity of the transactions contemplated by the Agreement;

(iii)  There shall not be any insolvency, reorganization or like proceedings commenced
or threatened against, by or involving the Seller/Insured, or the Insurer; and

(iv)   The credit rating of the insurer shall not have been downgraded for any reason.

**IT IS UNDERSTOOD THAT THE BUYER IS UNDER NO
OBLIGATION TO PURCHASE THE POLICY AT THE PURCHASE
PRICE UNTIL THE ASSIGNMENT EFFECTIVE DATE.
NOTWITHSTANDING THE FOREGOING, IF THE BUYER
DIRECTS THE ESCROW AGENT TO RELEASE THE PURCHASE
PRICE TO THE SELLER/INSURED, THE FOREGOING
CONDITIONS SHALL BE DEEMED SATISFIED OR WAIVED.**

5.       **NOTICES**

Any notice required or permitted hereunder must be given in writing to the party to
be notified either by personal delivery, guaranteed overnight courier or facsimile, and
shall be deemed effectively given (I) in the case of personal delivery, upon delivery to the
party to be notified, (ii) in the case of delivery by overnight courier, on the date of
delivery guaranteed by such overnight courier, or (iii) in the case of notice by facsimile,
upon telephone confirmation of receipt by the party to be notified. Any such notice shall
be addressed to the relevant party at the address given below or to such other address as
such party has given to the other parties hereto in the manner specified in this Section 0.

Seller/Insured:     **GARDENER Irrevocable Life Insurance Trust**

Buyer:              **BK LIFE SETTLEMENTS, LLC**

Seller/Insured Initial _____
Buyer Initial _____

6.    **SUBSEQUENT CONTACT REGARDING HEALTH STATUS;
SELLER/INSURED'S DESIGNEE**

Upon execution of the Agreement, the Buyer shall have the right to contact the Seller/Insured or the Seller/Insured's Designee to determine and monitor the health status of the Seller/Insured. The Buyer may contact the Seller/Insured no more often than once every thirty (30) days if the Seller/Insured has a life expectancy of one (1) year or less and no more often than once every three (3) months if the Seller/Insured has a life expectancy of more than one (I) year. Within ten (10) days of such request, the Seller/Insured shall cause releases and authorizations to be executed from. time to time, permitting or authorizing the Buyer to obtain current medical information regarding the Seller/Insured.

The Seller/Insured may designate any individual of legal age, in regular contact with the Seller/Insured, as a contact for inquiries about the Seller/Insured's health status, upon written notice providing the name, address and telephone number of the individual (the "Seller/Insured's Designee"). the Seller/Insured may change a designation at any time upon written notice to the Buyer.

If the Seller/Insured makes a designation of any individual as provided in Section 0, a life settlement provider, provider representative, or broker shall not contact the Seller/Insured for health status information about the seller/Insured, unless the life settlement provider, provider representative, or broker is unable, after diligent effort, to contact the Seller/Insured's Designee for more than thirty (30) days, subject to the restrictions set forth in Section 0.

No life settlement provider, provider representative, or broker shall contact the Seller/Insured or the Seller/Insured's Designee to determine the Seller/Insured's health status. more frequently than once every thirty (30) days if the Seller/Insured has a life expectancy of one (1) year or less, and no more often than once every three (3) months if the Seller/Insured has a life expectancy of more than one (1) year.

The Buyer shall provide to the Seller/Insured, the name, address, and telephone number of the life settlement provider, provider representative, or broker that will contact the Seller/Insured or the Seller/Insured's Designee, and shall notify the Seller/Insured of any change in such information.

Seller/Insured Initial _____
Buyer Initial _____

## 7.      POST SALE OBLIGATIONS

By entering into the Agreement, the Seller/Insured agrees to fulfill the continuing
obligation to cooperate to the fullest extent possible with the Buyer until such time as the
death benefit is paid to the designated Beneficiary, with respect to all matters concerning
the Policy and the Agreement, including but not limited to:

(i)      Assist the Buyer to maintain the Policy in full force.

(ii)     Provide current contact information such as residence address, phone number and
e-mail address in the event of any changes with respect to any of that information
provided to the Buyer,

(iii)    Complete additional paperwork in connection with the Policy, as needed, and

(iv)     Provide updates and records as to the Seller/Insured's medical status or condition,
including to assist the Buyer in obtaining the Seller/Insured's current medical
records.

If the Policy is a group insurance policy, the Seller/Insured will maintain that
policy status unless otherwise instructed by us, which such instructions the Seller/Insured
shall follow, and the Buyer may also request information regarding the Policy, including
but not limited to the Seller/Insured's employment status, from the Seller/Insured or the
Seller/Insured's Designee, from the Insurer, or from the group policyholder. The
Seller/Insured shall:

(i)      Notify the Buyer of any change in employment status, including but not limited to
retirement, notice of termination or application for short or long-term disability or
re-certification of disability status;

(ii)     Direct any employer or policyholder to promptly respond to any request for
information necessary to maintain the coverage provided in force; and

(iii)    Assign or re-assign the group life insurance contract to the Buyer if the Policy
reverts to the Seller/Insured, for any reason.

Seller/Insured Initial ___
Buyer Initial ___

8.        **RIGHT TO RESCISSION**

The Seller/Insured has the right to rescind the Agreement within fifteen (15) days after the date that the Seller/Insured executes the Agreement, as evidenced by the date of the signature of the notary evidencing the signature of the Seller/Insured. If the Seller/Insured rescinds the Agreement, then the Seller/Insured must immediately return any of the Purchase Price received from the Buyer, if any, in connection herewith.

If the Seller/Insured deceases during this rescission period, then the Agreement shall be deemed rescinded, subject to the Buyer receiving all of the Purchase Price and premiums, loans, loan interest or other amounts paid by the Buyer in connection with the Agreement.

Upon rescission of the Agreement by the Seller/Insured and the receipt by the Buyer of all of the Purchase Price paid by the Buyer, if any, in connection with the Agreement, our rights and interests in the Policy will terminate, the Company will cause such forms as are necessary to execute a change of ownership to be filed with the Insurer, to designate reversion of Policy ownership to the Seller/Insured (or to the estate of the Seller/Insured if the Seller/Insured is then deceased), and the Seller/Insured then, as owner of the Policy, may designate beneficiaries under the Policy.

9.        **RULES OF CONSTRUCTION**

All words used herein shall be construed to be of such gender or number as the circumstances require. The words "herein", "hereby", "hereof", "hereto", "hereinbefore", and "hereinafter", and words of similar import, refer to the Agreement in its entirety and not to any particular paragraph, clause or other subdivision, unless otherwise specified. Descriptive headings are for convenience only and shall not control or affect the meaning or construction of any provision of the Agreement. Except as otherwise expressly provided in the Agreement, the following rules of interpretation apply to the Agreement: (i) "or" and "any" are not exclusive and "include" and "including" are not limiting; (ii) a reference to a law includes any amendment or modification to such law and any rules or regulations issued, thereunder; (iii) a reference to a person or entity includes its successors and permitted assigns; (iv) each reference to a determination, judgment, approval or consent to be made or given by the Purchaser shall be made or given by the Purchaser in its sole discretion and in good faith; (v) a reference in the Agreement to an Article, Section, Annex, Exhibit or Schedule is to the Article, Section, Annex, Exhibit or Schedule of the Agreement; and (vi) "U.S. dollars" or "dollars" or "$" or "US$" refer to lawful currency of the United States of America.

Seller/Insured Initial
Buyer Initial

10.      **MISCELLANEOUS**

The Agreement, together with the Related Documents, constitutes the entire understanding and agreement between the Parties, and supersedes any and all prior or contemporaneous representations, understandings and agreements between the Parties with respect to the subject matter of the Agreement, all of which are merged in the Agreement.

All amendments to or modifications of the Agreement shall be binding upon the Parties, despite any lack of consideration, so long as such amendments or modifications shall be in writing and executed by all Parties. No person, other than an executive officer of the Buyer, has the authority to change the Agreement or to waive any of its provisions. In the absence of fraud, all statements made by the Seller/Insured and the Buyer shall be deemed representations and not warranties.

In the event that any portion of the Agreement is found invalid or unenforceable pursuant to judicial decree or decision, the remainder of the Agreement shall remain valid and enforceable according to its terms and such portion shall be reformed and interpreted so that it is enforceable to the maximum extent permitted by law.

The Seller/Insured shall not have any right to assign or transfer the Agreement or any rights, duties or obligations of the Seller/Insured under the Agreement, and the Agreement may not be involuntarily assigned or transferred by the Seller/Insured by operation of law, without the prior written consent of the Buyer, which consent may be granted or withheld by the Buyer in its sole discretion. Any attempted assignment or transfer without such consent shall he null and void. The Buyer shall have the right to assign the Agreement or the Policy, including all rights, benefits and obligations hereunder, in its sole and absolute discretion, to a person unknown to the Seller/Insured, without notice to or consent from the Seller/Insured or any other person.

Except as provided in Section 0, it is not the intention of the Agreement or the Parties to confer a third party beneficiary right of action upon any third party or entity whatsoever, and nothing set forth in the Agreement shall be construed so as to confer upon any third party or entity other than the Parties a right of action under the Agreement or in any manner whatsoever.

All disputes and controversies of every kind and nature between the Parties to the Agreement arising out of or in connection with the Agreement including, but not limited to, its existence, construction, validity, interpretation or meaning, performance, non-performance, enforcement, operation, breach, continuance or termination thereof shall be submitted and settled by arbitration in accordance with the rules of the American

Seller/Insured Initial ___
Buyer Initial ___

arbitration Association. The arbitration shall be held in California before a panel of three (3) arbitrators, hereafter referred to as "arbitrator", knowledgeable in the business of life insurance, one to be chosen by each party, and the third to be chosen by the two previously chosen arbitrators. The arbitrator's decision and award shall be final and binding and may be entered in any court having jurisdiction thereof. The arbitrator shall not have the power to award punitive, exemplary or consequential damages. No party may bring a claim or action, regardless of form, arising out of or related to the Agreement more than one year after the cause of action accrues. The laws of the State of California shall govern the Agreement, without regard to conflicts of law provisions.

Failure to insist upon strict compliance with any of the terms, conditions or representations of the Agreement shall not be deemed a waiver of such terms, conditions or representations.

The Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same Agreement.

**NEITHER THE BUYER., NOR ANY REPRESENTATIVE, IS OFFERING LEGAL OR TAX ADVICE IN CONNECTION WITH THE SALE OF LIFE INSURANCE POLICY(S) DESCRIBED IN THIS DOCUMENT. THE SELLER/INSURED AGREES THAT HE/SHE HAS SOUGHT INDEPENDENT ADVICE FROM A QUALIFIED TAX PROFESSIONAL OR THAT HE/SHE HAS DECIDED NOT TO SEEK SUCH ADVISE. THE SELLER/INSURED SHOULD SEEK PERSONALIZED ASSISTANCE FROM A TAX OR ESTATE PLANNING ATTORNEY, AND OTHER QUALIFIED FINANCIAL PROFESSIONAL IN HIS/HER STATE OF RESIDENCE, WHEN CREATING AND COMPLETING ANY TAX OR ESTATE PLAN, SUCH AS THIS TRANSACTION.**

**IN WITNESS WHEREOF,** the Parties have executed the Agreement on the date first above written.

*SIGNATURES APPEAR ON THE FOLLOWING PAGE*

Seller/Insured Initial
Buyer Initial

**BK LIFE SETTLEMENTS, LLC**

_____
**Signature of the Buyer**
**DAVID BERGER**

**Signature of the Seller/Insured**
**The GARDNER Irrevocable Life**
**Insurance Trust**

_____
**YVETTE GARDNER**

_____
**ANDREW GARDNER**


| | |
|---|---|
| **STATE OF CALIFORNIA** | ) |
| | ) **ss** |
| **COUNTY OF LOS ANGELES** | ) |


On _____ 2009, before me, _____, a
Notary Public in and for said County and State, personally appeared **ANDREW
GARDNER** who proved to me on the basis of satisfactory evidence to be the person
whose name is subscribed to the within instrument and acknowledged to me that he
executed the same in his authorized capacity, and that by his signature on the instrument
the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that
the foregoing paragraph is true and correct.

**WITNESS** my hand and official seal

Signature: _____
**NOTARY PUBLIC IN AND FOR SAID COUNTY**
                                        **[ SEAL ]**


Page 13 of 16
Offer to Purchase

Seller/Insured Initial _____
Buyer Initial _____

STATE OF CALIFORNIA     )
            )   ss
COUNTY OF LOS ANGELES   )

On _____ 2009, before me, _____, a Notary Public in and for said County and State, personally appeared **YVETTE GARDNER** who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

**WITNESS** my hand and official seal

Signature: _____
**NOTARY PUBLIC IN AND FOR SAID COUNTY**
           **[ SEAL ]**

LESLIE KLEIN
COMM. # 1794383
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
My Comm. Exp. Mar. 31, 2012

Page 14 of 16
Offer to Purchase

Seller/Insured Initial _____
Buyer Initial _____

Case 2:23-ap-01169-SK Claim 38   Filed 12/19/23   Entered 12/19/23 16:32 Desc of
Main Document 51   Page 44 of 75

**STATE OF CALIFORNIA**          )
                                 )      ss
**COUNTY OF LOS ANGELES**        )


On ___2/ L___ 2009, before me, ___Leslie Klein___ a
Notary Public in and for said County and State, personally appeared **DAVID BERGER**
who proved to me on the basis of satisfactory evidence to be the person whose name is
subscribed to the within instrument and acknowledged to me that he executed the same in
hIS authorized capacity, and that by hIS signature on the instrument the person, or the
entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that
the foregoing paragraph is true and correct.

**WITNESS** my hand and official seal

Signature: 
**NOTARY PUBLIC IN AND FOR SAID COUNTY**
                                        **[ SEAL ]**

LESLIE KLEIN
COMM. # 1794383
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
My Comm. Exp. Mar. 31, 2012

Seller/Insured Initial ___
Buyer Initial ___

EXHIBIT "2"

# LIMITED LIABILITY COMPANY AGREEMENT

## OF

## LIFE CAPITAL GROUP, LLC

A California Limited Liability Company

Dated as of June 1, 2011

## TABLE OF CONTENTS

### ARTICLE I
### FORMATION AND BUSINESS OF THE COMPANY

| | | |
|---|---|---|
| Section 1.1 | Formation | 1 |
| Section 1.2 | Name | 1 |
| Section 1.3 | Purpose | 1 |
| Section 1.4 | Term | 1 |
| Section 1.5 | Place of Business | 1 |
| Section 1.6 | Registered Office and Agency | 2 |
| Section 1.7 | Fiscal Year | 2 |

### ARTICLE II
### MEMBERS

| | | |
|---|---|---|
| Section 2.1 | Members | 2 |
| Section 2.2 | Company Property; Company Interest | 2 |

### ARTICLE III
### CAPITAL CONTRIBUTIONS

| | | |
|---|---|---|
| Section 3.1 | Initial Capital Contribution of Members, Capital Accounts | 2 |
| Section 3.2 | Additional Capital Contributions | 2 |
| Section 3.3 | Withdrawal and Return of Capital Contributions | 3 |
| Section 3.4 | Interest | 3 |
| Section 3.5 | Negative Capital Accounts | 3 |

### ARTICLE IV
### DISTRIBUTIONS AND ALLOCATIONS

| | | |
|---|---|---|
| Section 4.1 | Allocation of Net Income and Net Losses | 3 |
| Section 4.2 | Cash Available for Distribution | 4 |
| Section 4.3 | Proceeds of Policies | 4 |
| Section 4.4 | Constructive Trust | 4 |
| Section 4.5 | Sale of Policies | 4 |
| Section 4.6 | Lenders | 4 |

### ARTICLE V
### COMPANY ACCOUNT

| | | |
|---|---|---|
| Section 5.1 | Establishing a Reserve Account | 4 |
| Section 5.2 | Distribution of Reserve Account | 5 |

### ARTICLE VI
### MANAGEMENT; CONDUCT OF MEMBERS; GOVERNANCE OF THE COMPANY

| | | |
|---|---|---|
| Section 6.1 | Rights and Powers of Manager | 5 |

Section 6.2    Number, Tenure and Qualifications .......................................................................... 5
Section 6.3    Officers ...................................................................................................................... 5
Section 6.4    Reliance ..................................................................................................................... 5
Section 6.5    Indemnification of Manager, Members and Officers. .............................................. 6
Section 6.6    Exculpation ................................................................................................................ 7
Section 6.7    No Duties ................................................................................................................... 7
Section 6.8    Protection of Insured's Private Information .............................................................. 7
Section 6.9    Delivery of Policy Files ............................................................................................ 7
Section 6.10   Change Forms ............................................................................................................ 7
Section 6.11   Further Assurances .................................................................................................... 7
Section 6.12   Indemnification of Rechnitz ..................................................................................... 8

### ARTICLE VII
### REPRESENTATIONS AND WARRANTIES OF THE MEMBERS

Section 7.1    Representations and Warranties of Klein. ................................................................. 8
Section 7.2    Representations and Warranties of Rechnitz .......................................................... 10

### ARTICLE VIII
### ADMISSION OF MEMBERS

Section 8.1    Admission of Members ............................................................................................ 11
Section 8.2    Admission of Non-Payment Policy Members ......................................................... 11

### ARTICLE IX
### MAINTENANCE OF BOOKS AND RECORDS; REPORTS TO MEMBERS; TAX RETURNS

Section 9.1    Accounting Method and Records ............................................................................. 12
Section 9.2    Company Records ..................................................................................................... 12
Section 9.3    Company Reports ..................................................................................................... 12
Section 9.4    Designation of Tax Matters Member ....................................................................... 13
Section 9.5    Tax Treatment and Elections ................................................................................... 13

### ARTICLE X
### TRANSFER OF INTERESTS; SPECIAL PROVISIONS

Section 10.1   Transfers and Assignments ...................................................................................... 13
Section 10.2   Permitted Transfers .................................................................................................. 13
Section 10.3   Substitute Members .................................................................................................. 13
Section 10.4   Right of First Refusal. ............................................................................................. 14
Section 10.5   Tag-Along Rights and Obligations .......................................................................... 15
Section 10.6   Miscellaneous Provisions Affecting Transfer. ....................................................... 16

### ARTICLE XI
### DISSOLUTION, LIQUIDATION, TERMINATION AND CONVERSION

Section 11.1   Dissolution, etc ........................................................................................................ 16
Section 11.2   Winding Up. ............................................................................................................. 16

Section 11.3    Final Distribution..................................................................................17
Section 11.4    Time for Liquidation, etc.......................................................................17
Section 11.5    Termination ............................................................................................17
Section 11.6    Return of Contribution Nonrecourse to Other Members........................17

### ARTICLE XII
### DISPUTE RESOLUTION

Section 12.1    Rabbinical Counsel.................................................................................17

### ARTICLE XIII
### MISCELLANEOUS

Section 13.1    Entire Agreement....................................................................................17
Section 13.2    Other Ventures........................................................................................18
Section 13.3    Amendments............................................................................................18
Section 13.4    Choice of Law ........................................................................................18
Section 13.5    Successors and Assigns; Third Party Beneficiaries................................18
Section 13.6    Interpretation ..........................................................................................18
Section 13.7    Captions ..................................................................................................18
Section 13.8    Severability..............................................................................................18
Section 13.9    Counterparts............................................................................................19
Section 13.10   Non-Waiver.............................................................................................19
Section 13.11   Notices ....................................................................................................19

### ARTICLE XIV
### DEFINITIONS

Section 14.1    Definitions. .............................................................................................19

LIMITED LIABILITY COMPANY AGREEMENT of LIFE CAPITAL GROUP, LLC (this "**Agreement**"), a California limited liability company (the "**Company**"), dated as of June 1, 2011, among Shlomo Rechnitz, an individual residing in the State of California ("**Rechnitz**"), Leslie Klein, an individual residing in the State of California ("**Klein**"), and the Persons that become Members from time to time after the date hereof in accordance with the terms hereof.

## WITNESSETH:

WHEREAS, the Members desire to operate the Company as a limited liability company under Title 2.5 of the California Corporations Code, as amended from time to time (the "**Act**"), in order to accomplish certain lawful business objectives;

WHEREAS, the Certificate of Formation of Life Capital Group, LLC was filed with the Secretary of State of the State of California on April 8, 2011, in accordance with the provisions of the Act; and

WHEREAS the Members desire to set forth herein the manner in which the Company shall be governed and operated.

NOW, THEREFORE, in consideration of the mutual covenants set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Members agree as follows:

## ARTICLE I
### FORMATION AND BUSINESS OF THE COMPANY

Section 1.1    Formation. The Company was formed on April 8, 2011 by the filing of a Certificate of Formation (the "**Certificate**") with the Secretary of State of California. The Members hereby agree to operate the Company as a limited liability company pursuant to the provisions of the Act and upon and subject to the terms and conditions set forth in this Agreement. Except as expressly provided herein to the contrary, the rights and obligations of the Members and the administration and termination of the Company shall be governed by the Act.

Section 1.2    Name. The name of the Company shall be Life Capital Group, LLC, under which name all business and affairs of the Company shall be conducted.

Section 1.3    Purpose. The purpose of the Company is to engage in any lawful act or activity for which a limited liability company may be organized under the Act.

Section 1.4    Term. The term of the Company shall continue until terminated in accordance with the provisions of Article XI of this Agreement or otherwise dissolved and wound up pursuant to the Act.

Section 1.5    Place of Business. The Company shall have its principal place or places of business at such place or places as the Manager may, from time to time, select.

Section 1.6    Registered Office and Agency. The address of the registered office of the Company in the State of California is 5697 W. 3rd Street, Suite 200, Los Angeles, California 90036. The name and address of the registered agent for service of process on the Company in the State of California is Shlomo Rechnitz, 5697 W. 3rd Street, Suite 200, Los Angeles, California 90036.

Section 1.7    Fiscal Year. The term **"Fiscal Year"** shall mean, subject to the provisions of Section 706 of the Code, each of (a) the period commencing on the date of formation of the Company and ending on December 31, 2011, (b) any subsequent 12-month period commencing on January 1 and ending on December 31 and (c) the period commencing on January 1 and ending on the Dissolution Date.

## ARTICLE II
## MEMBERS

Section 2.1    Members. The Company shall consist of the Members executing this Agreement and any substitute or additional Members admitted to the Company in accordance with the terms hereof. Each initial Member shall be deemed admitted as a Member of the Company at such time as such Member has made its Initial Capital Contribution to the Company.

Section 2.2    Company Property; Company Interest. No property of the Company shall be deemed to be owned by any Member individually, but all of such property shall be owned by, and title thereto shall be vested solely in, the Company.

## ARTICLE III
## CAPITAL CONTRIBUTIONS

Section 3.1    Initial Capital Contribution of Members, Capital Accounts. Each Member has contributed to the capital of the Company, as such Member's Initial Capital Contribution, the amount of cash, or property with a value, set forth on Schedule A. The Company shall maintain a record of: (a) the number of Interests held by each Member and (b) the respective Percentage Interest of each Member. The Manager shall update such Schedule A from time to time to reflect changes in such information. The Members agree that Klein's Initial Capital Contribution associated with each Policy shall equal the sum of the total amount of premium payments made on such Policy by Klein and all other costs and expenses incurred by Klein in servicing and maintaining such Policy as of the date of this Agreement. The Members agree that Rechnitz's Initial Capital Contribution associated with the Policies (in the order of each Policy that first generates proceeds) shall be deemed to be $3,800,000. The Company will establish and maintain a Capital Account for each Member throughout the full term of the Company.

Section 3.2    Additional Capital Contributions. Other than the Initial Capital Contributions made by the Members upon admission to the Company in accordance with Section 3.1 and Article VIII, the Members shall not be required to make any additional contributions to the Company; except that Rechnitz shall be obligated to contribute to the Company all premium payments and all other costs and expenses incurred by the Company in servicing and maintaining the Policies which are not Non-Payment Policies after the date of this Agreement and each Non-Payment Policy Member shall be obligated to contribute to the

2

Company all premium payments and all other costs and expenses incurred by the Company in servicing and maintaining the applicable Non-Payment Policy after the date such Non-Payment Policy Member was admitted to the Company as a Member.

Section 3.3   Withdrawal and Return of Capital Contributions.

(a)   No Member shall be entitled to demand a return of such Member's Capital Contribution (including any earnings thereon) or to withdraw any portion of such Member's Capital Account except as expressly provided in this Agreement. Except as expressly provided herein, no Member shall have the right to demand a distribution of property other than cash for its Interest. Each Member hereby waives any right such Member may otherwise have to cause any asset of the Company to be partitioned or to file a complaint or institute any proceeding at law or in equity seeking the partition of any such asset. Except as otherwise provided herein, no Member shall have priority over any other Member, either as to a return of such Member's Capital Contribution or as to Net Income, Net Losses, any other item of Company income, gain, loss or deduction, or Company distributions.

(b)   No Member shall be personally liable for the return of the Capital Contributions of any other Member or any portion thereof, it being expressly understood that any such return shall be made solely from available Company assets, if any.

Section 3.4   Interest. Interest, if any, earned on funds contributed or held by the Company shall inure to the benefit of the Company. The Members shall not be entitled to receive interest or any other payments from the Company with respect to their Capital Contributions or Capital Accounts, except as otherwise provided for herein.

Section 3.5   Negative Capital Accounts. Except as may be required by the provisions of the Act or in respect of any negative balance resulting from a withdrawal of capital or distribution in contravention of this Agreement, at no time shall any Member with a negative Capital Account balance have any obligation to the Company or the other Members to restore such negative balance, and such negative balance shall not be treated as an asset of the Company.

## ARTICLE IV
## DISTRIBUTIONS AND ALLOCATIONS

Section 4.1   Allocation of Net Income and Net Losses.

(a)   Net Income with respect to a Policy for any Fiscal Year shall be allocated (i) first, to Rechnitz to the extent of Rechnitz's Priority Return with respect to such Policy; (ii) second, to Rechnitz until $3,800,000 of Net Income has been allocated to Rechnitz in the aggregate (without regard to allocations of Net Income under subclause (i)); (iii) third, to Klein, to the extent of Klein's Priority Return with respect to such Policy; and (iv) thereafter, to Klein and Rechnitz in proportion to their Percentage Interests.

(b)   Net Losses with respect to a Policy for any Fiscal Year shall be allocated to Klein and Rechnitz in proportion to their Capital Contributions associated with such Policy.

3

Section 4.2    Cash Available for Distribution. Subject to Article XI, the Company shall distribute Available Cash to the Members at such times and in such amounts as determined by Rechnitz in accordance with this Agreement.

Section 4.3    Proceeds of Policies. If at any time the Company receives any proceeds from any Policy that is not a Non-Payment Policy (following the death of an Insured or otherwise), then any such proceeds shall be distributed as follows:

(a)    first, to Rechnitz by wire transfer into an account designated by Rechnitz, in an amount up to the Rechnitz Amount for such Policy;

(b)    second, (A) first, to each of the Lenders, pro-rata, based on the outstanding principal balance owed to such Lender as set forth on Schedule C, until such outstanding principal balance is equal to zero, in an aggregate amount up to the Klein Amount for such Policy and (B) second, any remaining Klein Amount with respect to such Policy to Klein by wire transfer into an account designated by Klein;

(c)    third, (i) 50% to Rechnitz by wire transfer into an account designated by Rechnitz and (ii) 50% to Klein by wire transfer into an account designated by Klein, provided, however, that if the balance of the Reserve Account is less than $2,500,000, then proceeds distributable to Klein under clause (ii) above shall be deposited in the Reserve Account until such balance is equal to $2,500,000.

Section 4.4    Constructive Trust. If any Member receives any proceeds in respect of any Policy (following the death of an Insured or otherwise), such Member shall hold such proceeds in a constructive trust for the Company and shall within one (1) Business Day inform the other Members and the Manager and deposit such proceeds in the Reserve Account.

Section 4.5    Sale of Policies. The Company shall be entitled to sell any Policy to any Person with the prior written consent of each of the Members. Notwithstanding the immediately preceding sentence, upon Klein's written consent, Rechnitz or his designee shall be entitled to purchase any Policy that is not a Non-Payment Policy from the Company by transferring an amount equal to the Klein Amount for such Policy to the Company, which for administrative convenience shall be subsequently distributed to an account designated by Klein.

Section 4.6    Lenders. The Members agree that (i) the Company may pay amounts pursuant to Section 4.3(b) directly to the Lenders, and in such event, the payments will be treated as distributions by the Company to Klein and subsequently transferred by Klein to the Lenders, (ii) nothing herein is intended to grant to the Lenders an equity interest in the Company, and (iii) nothing herein is intended to imply that the Company is assuming the obligations owed to the Lenders.

## ARTICLE V
## RESERVE ACCOUNT

Section 5.1    Establishing a Reserve Account. As soon as practicable the Company shall establish the Reserve Account with the Account Bank in the name of Company.

50028620.3

Section 5.2    Distribution of Reserve Account. Amounts in the Reserve Account shall be distributed to certain Members in certain specified amounts under the following circumstances: (a) if the amount of Net Income allocated to Klein with respect to a Policy under Section 4.1 for a Fiscal Year exceeds the amount of proceeds distributed to Klein with respect to such Policy pursuant to Section 4.3; then 40% of such excess shall be distributed to Klein from the Reserve Account; (b) if upon a disposition of a Policy or the receipt of proceeds from such policy, the Rechnitz Amount with respect to the Policy exceeds the amount of proceeds distributed to Rechnitz with respect to such Policy pursuant to Section 4.3, then the amount of such excess shall be distributed to Rechnitz from the Reserve Account; and (c) if agreed upon by the Members, then the amount agreed upon by the Members shall be distributed to Klein from the Reserve Account.

## ARTICLE VI
## MANAGEMENT; CONDUCT OF MEMBERS; GOVERNANCE OF THE COMPANY

Section 6.1    Rights and Powers of Manager. The business and affairs of the Company shall be managed by the Manager. The Manager shall direct, manage, and control the business of the Company to the best of the Manager's ability. Except for situations in which the approval of the Members is expressly required by this Agreement or by nonwaivable provisions of applicable law, the Manager shall have full and complete authority, power and discretion to manage and control the business, affairs and properties of the Company, to make all decisions regarding those matters and to perform any and all acts or activities customary or incident to the management of the Company's business. Nothing contained in this Agreement shall require any person to inquire into the authority of the Manager to execute and deliver any document on behalf of the Company or to bind the Company pursuant to such document.

Section 6.2    Number, Tenure and Qualifications.   The Company shall have one Manager, which initially shall be Jonathon Polter ("**Polter**"), an individual residing at 2000 Town Center, Suite 1490, Southfield, Michigan 48075.  Polter shall remain as the Manager unless he resigns from such position, is relieved of his duties by (i) if there are two Members or less, a unanimous vote of the Members and (ii) otherwise, an affirmative vote of Members holding a majority of the Interests. Subsequent Managers shall be elected by the affirmative vote of Members holding a majority of the Interests. Managers need not be residents of the State of California.

Section 6.3    Officers. The Manager may delegate the management of the Company's day-to-day business affairs to a Chief Executive Officer and other officers of the Company designated by the Manager and approved by an affirmative vote of Members holding a majority of the Interests and, unless otherwise decided by the Manager, all actions of the Company may be taken by the appropriate duly authorized officers.

Section 6.4    Reliance. The Manager shall be fully protected in relying in good faith upon the records of the Company and upon such information, opinions, reports or statements presented to the Company by any officers, employees, or committees of the Company, or by any other Person as to matters such Manager reasonably believes are within such other Person's professional or expert competence and who has been selected with reasonable care by or on behalf of the Company, including, without limitation, information, opinions, reports or

statements as to the value and amount of the assets, liabilities, profits or losses of the Company or any other facts pertinent to the existence and amount of assets from which distributions to Members might properly be paid.

Section 6.5    Indemnification of Manager, Members and Officers.

(a)    General.    The Company shall indemnify any Person (a "**Covered Person**") who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (including an action by or in the right of the Company) by reason of the fact that he is or was a Manager, Member or officer of the Company, or is or was serving at the request of the Company as a director, manager or officer of another limited liability company, corporation, partnership, joint venture, trust or other enterprise, against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with such action, suit or proceeding if he acted in good faith with no willful misconduct or gross negligence and in a manner he reasonably believed to be in or not opposed to the best interests of the Company, and, with respect to any criminal action or proceeding, had no reasonable cause to believe his conduct was unlawful.    The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the Person did not act in good faith and in a manner which he reasonably believed to be in or not opposed to the best interests of the Company, and, with respect to any criminal action or proceeding, had reasonable cause to believe that his conduct was unlawful.

(b)    Indemnification in Certain Cases.    To the extent that a Covered Person has been successful on the merits or otherwise in defense of any action, suit or proceeding referred to in clause (a) of this Section 6.5, or in defense of any claim, issue or matter therein, he shall be indemnified against expenses (including attorneys' fees) actually and reasonably incurred by him in connection therewith.

(c)    Advances for Expenses.    Expenses (including attorneys' fees) incurred in defending a civil, criminal, administrative or investigative action, suit or proceeding may be paid by the Company in advance of the final disposition of such action, suit or proceeding upon receipt of an undertaking by or on behalf of the Covered Person to repay such amount if it shall be ultimately determined that he is not entitled to be indemnified by the Company as authorized in this Section 6.5.

(d)    Rights Non-Exclusive.    The indemnification and advancement of expenses provided by, or granted pursuant to, the other subparagraphs of this Section 6.5 shall not be deemed exclusive of any other rights to which those seeking indemnification or advancement of expenses may be entitled under any law, agreement or otherwise, both as to action in his official capacity and as to action in another capacity while holding such office.

(e)    Insurance.    The Company shall have the power to purchase and maintain insurance on behalf of any Person who is or was a Covered Person against any liability asserted against him and incurred by him in any such capacity, or arising out of his status as such,

6

whether or not the Company would have the power to indemnify him against such liability under the provisions of this Section 6.5.

(f)     Survival of Rights.  The indemnification and advancement of expenses provided by, or granted pursuant to this Section 6.5 shall continue as to a Person who has ceased to be an officer, Manager or Member and shall inure to the benefit of the heirs, executors and administrators of such Person.

Section 6.6     Exculpation.  No Member, Manager or officer of the Company shall be liable, in damages or otherwise, to the Company or its Members for any act or omission performed or omitted by such Member, Manager or officer pursuant to authority granted by this Agreement except to the extent such Person fails to meet the standard for indemnification set forth in Section 6.5(a).

Section 6.7     No Duties.  Any duties (including fiduciary duties) of a Covered Person to the Company or to any other Covered Person that would otherwise apply at law or in equity are hereby eliminated to the fullest extent permitted under the Act and any other applicable law, provided, that (i) the foregoing shall not eliminate the obligation of each Member and the Manager to act in compliance with the express terms of this Agreement and (ii) the foregoing shall not be deemed to eliminate the implied covenant of good faith and fair dealing.

Section 6.8     Protection of Insured's Private Information.  Manager and each Member acknowledge that insurance regulations and other applicable Laws are structured to provide confidentiality to policy owners and insureds with respect to Consumer Information in connection with ownership or sale of their policies, and that the Manager and each Member and all of their respective agents and representatives, are obligated to keep Consumer Information confidential in accordance with applicable Laws.  The Manager and each Member agree to comply with all applicable Laws with respect to the confidentiality of Consumer Information; provided, that (i) the Manager and each Member may disclose such information to their internal or external auditors and attorneys and as required or permitted by Law, and (ii) Klein may take all necessary and appropriate actions to transfer ownership of the Policies to the Company.

Section 6.9     Delivery of Policy Files.  Klein shall deliver each Policy File as directed by the Manager within thirty (30) Business Days of the date of this Agreement.

Section 6.10   Change Forms.  On the date of this Agreement, Klein shall execute and deliver Change Forms to the Company or at the Company's direction, changing the owner and Beneficiary of the Policy to the Company or the Company's designee.  In addition, Klein shall execute and deliver any additional instruments of transfer that the Company may reasonably request necessary to evidence the assignment of the Policy and any rights therein to the Company or its designee.

Section 6.11   Further Assurances.  From and after the date hereof, each Member shall execute and deliver such other documents and instruments, and take such further actions, as may be reasonably requested from time to time by another Member to carry out the provisions of this Agreement and give effect to the transactions contemplated hereby.  Without limiting the foregoing, Klein shall cooperate with Rechnitz in causing the Company or its designee to be

7

recorded as the owner and beneficiary of each Policy on the books and records of the relevant issuing insurance companies.

Section 6.12   Indemnification of Rechnitz.   Klein shall indemnify and hold harmless (which indemnification shall survive any termination of this Agreement and the dissolution of the Company) Rechnitz and his Affiliates, and each such Person's respective officers, directors, employees, attorneys, agents and representatives (each, an **"Indemnified Person"**), from and against any and all suits, actions, proceedings, claims, damages, losses, liabilities and actual expenses incurred (including reasonable attorneys' fees and disbursements and other costs of investigation or defense, including those incurred upon any appeal) that may be instituted or asserted against or incurred by any such Indemnified Person, and in connection with or arising out of (i) any breach of any representation, covenant or other obligation of Klein hereunder, (ii) the transactions contemplated hereunder, (iii) any actions or failures to act in connection therewith or (iv) and any and all reasonable legal costs and actual expenses arising out of or incurred in connection with disputes between or among Klein and Rechnitz (collectively, **"Indemnified Liabilities"**); provided, that Klein shall not be liable for any indemnification to an Indemnified Person to the extent that any such Indemnified Liability results from that Indemnified Person's gross negligence or willful misconduct; provided, further, that the aggregate amount of Klein's liability under this Section 6.12 shall be limited to the aggregate of the Rechnitz Amounts for all of the Policies.

### ARTICLE VII
### REPRESENTATIONS AND WARRANTIES OF THE MEMBERS

Section 7.1   Representations and Warranties of Klein.

(a)   Power and Authority.   Klein has full power, authority and right to execute and deliver this Agreement and has, and will continue to have during the entire term of this Agreement, full power and authority to perform his obligations hereunder, and has taken all necessary action to authorize the execution and delivery of this Agreement, as well as the performance of its obligations hereunder.

(b)   Binding Obligation.   This Agreement constitutes the legal, valid and binding obligations of Klein enforceable against Klein in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization and similar laws affecting creditors' rights and remedies generally, and subject, as to enforceability, to general principles of equity, including principles of commercial reasonableness, good faith and fair dealing.

(c)   Consent of Third Parties.   No consent, waiver, approval, order, permit or authorization of, or declaration or filing with, or notification to, any Person or Governmental Authority is required by Klein in connection with the execution of this Agreement and the compliance by Klein with any of the provisions hereof or thereof, the consummation of the transactions contemplated hereby or the taking by Klein of any other action contemplated hereby.

(d)   Policies.   With respect to each Policy, to the best of Klein's knowledge:

(i)    at the issuance of such Policy, the related Insured or Original Owner thereof was not a party to any written or oral agreement or arrangement to cause the same or interests therein to be issued, assigned, sold, transferred, or otherwise disposed of in violation of applicable law or public policy;

(ii)    at the issuance of such Policy, the related Insured or Original Owner thereof had the financial capacity to pay the premiums necessary to maintain such Policy in force;

(iii)    at the issuance of such Policy the related Original Owner had an insurable interest in the life of the Insured;

(iv)    the material medical or financial information supplied by or on behalf of the Insured or Original Owner of such Policy in the application and related materials delivered to the applicable issuing insurance company in connection with the issuance of such Policy was not false, incomplete or misleading in any material respect;

(v)    Klein does not possess or control any material documentation or information related to such Policy, or the acquisition or maintenance thereof by Klein, that has not been delivered or disclosed in writing to Rechnitz or his agents;

(vi)    prior to the date of this Agreement and the consummation of the transactions contemplated by [insert transfer agreement title], Klein was trustee of the applicable Original Owner which held sole legal and beneficial title thereto;

(vii)    Klein, in his capacity as trustee of the applicable Original Owner, acquired sole legal and beneficial title thereto and had the power and authority to enter into this Agreement;

(viii)    Immediately prior to its transfer to the Company hereunder, Klein held sole legal and beneficial title thereto;

(ix)    upon the transfer of such Policy, Company or its designee, will hold good and marketable title to and ownership of such Policy free and clear of any liens, charges, rights, encumbrances or other interests;

(x)    such Policy was acquired in a manner in compliance, in all material respects, with the Laws applicable to the purchase of life insurance policies, as then in effect and as then interpreted by the relevant regulators or in case law;

(xi)    except as disclosed to Rechnitz in writing, no previous owner of such Policy has waived, amended or terminated any material provision of, or any material rights in relation to, such Policy;

(xii)    except as disclosed on Schedule 7.1(d)(xii), the premiums for such Policy have been paid such that such Policy will not be in a grace period as of the date of this Agreement and such Policy has not been cancelled as of the date of this Agreement;

9

(xiii)   Klein has disclosed or delivered to Rechnitz and the Company in writing all information received by Klein or any of his agents from the related issuing insurance company related to any change in the terms of such Policy, including with respect to an intent to increase the cost of insurance for such Policy;

(xiv)   there is no current or pending written notice that has been issued to Klein by the related issuing insurance company of such issuing insurance company's intention to cancel, contest, rescind or refuse payment under such Policy;

(xv)   all the information contained in each of the documents in the related Policy File or otherwise delivered by or on behalf of Klein to the Company and Rechnitz in connection with such Policy is true, complete and correct in all material respects;

(xvi)   the related Policy File contains the Policy, the original application for such Policy, any Policy Illustration and any other documentation in Klein's possession.

(xvii)   there is not any pending or threatened Proceeding challenging the validity, ownership or enforceability of such Policy or Klein's ownership rights in such Policy;

(xviii)   such Policy was not issued pursuant to or in connection with an agreement whereby the premiums required to be paid on such Policy were paid by any Person pursuant to a recourse or non-recourse premium financing program;

(xix)   Klein has not required any broker to sign an agreement offering Klein or any other Person the "right of last offer" in connection with the purchase of such Policy; and

(xx)   such Policy has been issued by the related issuing insurance company and is in force and any related contestability period and any suicide exclusion period has expired.

Section 7.2   Representations and Warranties of Rechnitz.  Rechnitz hereby represents and warrants that:

(i)   Authority.  Rechnitz has full power, authority and right to execute this Agreement and has, and will continue to have during the entire term of this Agreement, full power and authority to perform his obligations hereunder, and has taken all necessary action to authorize the execution and delivery of this Agreement, as well as the performance of his obligations hereunder.

(ii)   Binding Obligation.  This Agreement constitutes Rechnitz's legal, valid and binding obligation, enforceable against Rechnitz in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization and similar laws affecting creditors' rights and remedies generally, and subject, as to enforceability, to general principles of equity, including principles of commercial reasonableness, good faith and fair dealing.

(iii)   Consent of Third Parties.  No consent, waiver, approval, order, permit or authorization of, or declaration or filing with, or notification to, any Person or

10

Governmental Authority is required by Rechnitz in connection with the execution of this Agreement and the compliance by Rechnitz with any of the provisions hereof or thereof, the consummation of the transactions contemplated hereby or the taking by Rechnitz of any other action contemplated hereby.

## ARTICLE VIII
## ADMISSION OF MEMBERS

Section 8.1    Admission of Members.  Subject to Section 8.2, upon the approval of the Members by majority vote, one or more Persons may be admitted to the Company as Members. The Members by majority vote shall determine the number of Interests and the Percentage Interest to be offered to any such Member and the Initial Capital Contribution to be made by any such Member.  Each such Person shall be admitted as a Member at the time such Person (a) executes and delivers a copy of this Agreement to the Manager and (b) if applicable, makes its Initial Capital Contribution to the Company.  The Manager shall update Schedule A to reflect the admission of any such Members.

Section 8.2    Admission of Non-Payment Policy Members.  It is agreed and acknowledged by the Members that Rechnitz's sole obligation with respect to the Company is making Capital Contributions for the payment of premiums on the Policies and the expenses associated with the Policies, in each case after the date of this Agreement.  Rechnitz shall provide the Company and Klein with six (6) months prior written notice if Rechnitz elects to cease paying premiums in respect of any Policy (such Policy, a "**Non-Payment Policy**").  After delivery of such notice, Rechnitz or Klein shall have the right to introduce any Person to the Company as a potential Member who agrees in writing to assume Rechnitz's obligations for the payment of premiums and other costs and expenses with respect to such Non-Payment Policy, which person shall be admitted as a Member upon the approval of the Members by [majority] vote (such a Member, a "**Non-Payment Policy Member**").  With respect to any Non-Payment Policy, any payment of premiums and other costs and expenses shall be contributed to the capital of the Company by the applicable Non-Payment Policy Member.  If at any time the Company receives any proceeds from any Non-Payment Policy (following the death of an Insured or otherwise), then any such proceeds shall be distributed as follows:

(a)    First, to the applicable Non-Payment Policy Member by wire transfer into an account designated by such Non-Payment Policy Member, in an amount up to (x) the total amount of Capital Contributions made on such Policy by such Non-Payment Policy Member and (y) the Priority Return of such Non-Payment Policy Member on such Policy computed starting on the date such Non-Payment Policy Member was admitted as a Member;

(b)    Second, by wire transfer into an account designated by Rechnitz, in an amount equal to the Rechnitz Amount for such Policy;

(c)    Third, by wire transfer into an account designated by Klein, in an amount equal to the Klein Amount for such Policy;

11

(d)     Fourth, to the applicable Non-Payment Policy Member by wire transfer into an account designated by such Non-Payment Policy Member, in an amount equal to fifty percent (50%) of all remaining proceeds from such Policy;

(e)     Fifth, to Rechnitz and Klein by wire transfers into accounts respectively designated by them in proportion to the Capital Contributions made by them with respect to each such Non-Payment Member Policy; provided, however that if Klein introduced the related Non-Payment Policy Member to the Company, then 25% of the amount distributable under this clause (e) to Rechnitz shall be distributed to Klein instead.

Notwithstanding Section 4.1 hereof, Net Income associated with a Non-Payment Policy shall be allocated to each Member to the extent of any Priority Return distributed to such Member with respect to the Non-Payment Policy and to the extent of any distributions made to a Member pursuant to Section 8.2(d) or Section 8.2(e) above with respect to such Non-Payment Policy . Notwithstanding Section 4.1 hereof, Net Losses associated with a Non-Payment Policy shall be allocated to each Member in proportion to the Capital Contributions made by such Member with respect to such Non-Payment Policy.

## ARTICLE IX
## MAINTENANCE OF BOOKS AND RECORDS;
## REPORTS TO MEMBERS; TAX RETURNS

Section 9.1     Accounting Method and Records.     Rechnitz shall determine the accounting method to be used by the Company.  The Company shall maintain such accounting records as shall reflect all Company transactions and as shall be appropriate and adequate for the Company's business.

Section 9.2     Company Records.  The Company shall maintain the following records, within or outside the State of California: (a) a copy of the Company's accounting records and federal, state, local and foreign income tax or information returns and reports, if any, for the five most recent Fiscal Years; and (b) all other records and reports required by the Act or otherwise to be maintained by the Company.  Each Member, and such Member's duly authorized representatives or agents, shall, for any purpose reasonably related to his interest as a Member, have reasonable access to such books and records at such office and shall have the right to inspect and copy such books and records; provided, however, that if a Member was an officer, consultant or employee of the Company received his/her Interest pursuant to a profits interests grant agreement ceases to be an employee, consultant or officer of the Company, such Member shall only have the right to receive books and records that he/she has the right to require the Company to provide to him/her in accordance with applicable law.

Section 9.3     Company Reports.  The Company shall cause to be furnished to each Member and each other Person who was a Member during the period in question (a) such reports and financial statements as may be reasonably required for his financial reporting requirements, including, without limitation, copies of all annual, quarterly and monthly financial statements, and (b) detailed financial statements and information and documents (including Form K-1) necessary or desirable for the preparation or support of such Member's tax returns required in any jurisdiction, as soon as practicable after the end of each Fiscal Year.

50028620.3

Section 9.4    Designation of Tax Matters Member.  Rechnitz is designated the "**Tax Matters Member**" (as defined in Code Section 6231), and is authorized and required to represent the Company (at the Company's expense) in connection with all examinations of the Company's affairs by tax authorities, including, without limitation, administrative and judicial proceedings, and to expend Company funds for professional services and costs associated therewith.  The Members agree to cooperate with each other and to do or refrain from doing any and all things reasonably required to conduct such proceedings.

Section 9.5    Tax Treatment and Elections.    The Company shall be treated as a partnership for federal income tax purposes, the Members shall be treated as partners for federal income tax purposes, and each of the Members agrees to report consistently with such treatment. The Manager shall make all elections necessary to give effect to such treatment.

ARTICLE X
TRANSFER OF INTERESTS; SPECIAL PROVISIONS

Section 10.1    Transfers and Assignments.

(a)    No Member shall be permitted to Transfer any Interest to a Person other than a Permitted Transferee, except in accordance with the provisions set forth in this Article X.

Section 10.2    Permitted Transfers.

(a)    Each Member shall notify the Manager and the other Members of any proposed Transfer to a Permitted Transferee by such Member, or by any of its Affiliates, in the case of an indirect Transfer of an Interest, which notice shall set forth the name and address of the Permitted Transferee and the nature of the relationship between such Member and such Permitted Transferee, at least ten (10) calendar days prior to the proposed date of such Transfer. Each Member shall be responsible for paying all transfer, gains or similar taxes, if any, and all reasonable costs and expenses of the Company, including reasonable attorneys' fees, arising out of any Transfer by such Member of all or a portion of its Interest (or by any of its Affiliates in the case of an indirect Transfer of an Interest) to a Permitted Transferee. As a condition to any Transfer of all or any portion of an Interest in the Company to a Permitted Transferee shall execute and deliver to the Company a joinder agreement, in form of Exhibit A (a "**Joinder Agreement**").  All of the provisions of this Agreement, including without limitation, the provisions of this Article X, shall be applicable to and binding upon each Permitted Transferee.

(b)    The transfer by a Member of all or any portion of its Interest (including, without limitation, any transfer to a Permitted Transferee) shall not release such Member from any or all of its obligations under this Agreement arising prior to the date of such Transfer.

Section 10.3    Substitute Members.  A Permitted Transferee of the Interest of a Member or a transferee of the Interest of a Member pursuant to Sections 10.4 and 10.5 of this Agreement, or any portion thereof, shall become a substitute Member entitled to all the rights, and subject to all of the obligations and restrictions, of the transferor Member if, and only if:

(a)    the transferor assigns the transferee such right;

13

        (b)    the transferor or transferee pays to the Company all reasonable costs and expenses incurred by the Company in connection with such substitution; and

        (c)    the transferee executes and delivers a Joinder Agreement.

Section 10.4   <u>Right of First Refusal</u>.

        (a)    Except for Transfers pursuant to or contemplated by <u>Section 10.2</u>, if any Member (a "**Selling Member**") receives a bona fide written offer from an independent third party (a "**Third Party**") to purchase any or all of such Selling Member's Interests for cash and such Selling Member desires to Transfer any or all of such Interests (the "**Offered Interests**") pursuant to such offer, prior to any Transfer it shall give written notice of the proposed Transfer (the "**Notice of Intention**") to the Company and the other Members (the "**Remaining Members**") specifying the number of Offered Interests which such Selling Member wishes to Transfer, the proposed transferee, the proposed purchase price for the Offered Interests (the "**Offer Price**") and the other material terms and conditions of the proposed Transfer.

        (b)    For a period of thirty (30) days after receipt of the Notice of Intention (the "**Option Period**"), each of the Remaining Members shall have the irrevocable option to purchase at the Offer Price and on the other terms specified in the Notice of Intention, all of the Offered Interests pro rata based on the Percentage Interest of each Remaining Member; provided, however, that if any Remaining Member does not purchase any or all of its pro rata portion of such Offered Interests, the other Remaining Members shall have the right to purchase such portion, pro rata, until all of such Offered Interests are purchased. The option of a Remaining Member pursuant to this <u>Section 10.4(b)</u> (the "**Remaining Members Option**") shall be exercisable by delivery of a notice (the "**Remaining Members Notice**") setting forth the maximum number of Offered Interests that such Remaining Member wishes to purchase, including any number which would be allocated to such Remaining Member if any other Remaining Member does not purchase all or any portion of its pro rata portion, to the Selling Member, the Company and the other Remaining Members and shall expire if the Remaining Members Notice is not delivered prior to the expiration of the Option Period.

        (c)    If all notices required to be given pursuant to this <u>Section 10.4</u> have been duly given, and the Remaining Members determine not to exercise their respective options to purchase all of the Offered Interests at the Offer Price and on the other terms specified in the Notice of Intention or determine, with the consent of the Selling Member, to exercise their options to purchase less than all of the Offered Interests, then the Selling Member shall have the right, for a period of ninety (90) days from the earlier of (a) the expiration of the Option Period and (b) the date on which such Selling Member receives notice from the Remaining Members that they will not exercise the option granted pursuant to this <u>Section 10.4</u>, to accept the bona fide offer from the Third Party and enter into an agreement to sell the Offered Interests remaining unsold under this <u>Section 10.4</u> at a price not less than the Offer Price and on the same terms as set forth in the Notice of Intention; provided that prior to any such Transfer to a Third Party, such Third Party executes and delivers to the Company, for the benefit of the Company and all Members, a Joinder Agreement and thereby becomes a party to this Agreement.

50028620.3

(d)     The closing of any purchase and sale of any Interests to a Remaining Member pursuant to this Section 10.4 shall take place at the offices of the Company on such date, not later than sixty (60) days after the delivery to the Selling Member of the Remaining Members Notice. At the closing of such purchase and sale, the Secretary or such other officer of the Company shall record such Transfer in the books of the Company against evidence of such Transfer, delivery of the Offer Price therefor and an executed Joinder Agreement.

(e)     If the Remaining Members Option is not exercised, and the Offered Interests are not sold pursuant to Section 10.4(c) within the ninety (90) day period referred to therein, such sale may not be carried out without complying again with the terms of this Section 10.4.

Section 10.5     Tag-Along Rights and Obligations.

(a)     In the event that after complying with the terms of Section 10.4, the Selling Member desires to sell (the "**Disposition**") the Offered Securities to a Third Person (the "**Acquirer**"), the Selling Member's right to accept such offer to purchase the Offered Securities shall be conditioned on each Remaining Member being offered the right to sell to the Acquirer its pro rata portion of the Offered Securities (based on the Percentage Interest of each Remaining Member) in such Disposition in accordance with this Section 10.5. The Selling Member shall give notice (the "**Disposition Notice**") to each Remaining Member at least thirty (30) days prior to the consummation of the Disposition specifying the number of Offered Interests which such Selling Member wishes to Transfer in the proposed Disposition, the proposed transferee, the proposed purchase price for the Offered Interests and the other material terms and conditions of the proposed Disposition.

(b)     The election to participate in the Disposition by the Remaining Members pursuant to Section 10.5(a) shall be exercised by notice to the Selling Member given within the time period specified in the Disposition Notice, which time period shall not be less than fifteen (15) days after such Disposition Notice is given. If any Remaining Member gives notice of its election to sell, it shall be obligated to sell the number of Interests specified in such Remaining Member's notice upon the terms and subject to the conditions specified in Section 10.5(a) to the Acquirer (which shall be the same for the other Remaining Members and the Selling Member), conditional upon the closing of the Disposition.

(c)     The sale or Transfer of Interests to the Acquirer by the Selling Member and by the Remaining Members electing to participate in the Disposition pursuant to this Section 10.5 shall occur simultaneously and be on the same terms and at the same price as the Interests sold by the Selling Member; provided that prior to any such Transfer to an Acquirer, such Acquirer shall execute and deliver to the Company, for the benefit of the Company and all Members, a Joinder Agreement and thereby become a party to this Agreement.

(d)     If the Acquirer declines to purchase from such Remaining Members their respective proportionate number of Interests calculated in accordance with this Section 10.5, the Selling Member will not sell any Interests to the Acquirer.

15

Section 10.6    Miscellaneous Provisions Affecting Transfer.

(a)    Upon the Transfer of all or any portion of a Member's Interests as permitted or required under this Agreement, including, without limitation, as provided in this Article X, (i) the income, loss, gain, deduction and credit attributable to the Interests so transferred shall be allocated between the transferor and transferee based upon the number of days during the applicable Fiscal Year that the Interests so transferred was held by each of them, without regard to the results of Company activities during the period in which each was the holder; provided that the Manager shall, at the request and expense of the transferring Member, cause an interim closing of the Company's books as of the effective date of Transfer for purposes of allocating such items between the transferor and transferee; and (ii) the transferor shall be entitled to all cash distributions in respect of the Interests so transferred, to the extent allocable to periods preceding the date of Transfer, and the transferee shall be entitled to all cash distributions in respect of the Interests so transferred, to the extent allocable to periods on and after the date of Transfer based upon the number of days during the applicable Fiscal Year that the Interests so transferred were held by each of them, without regard to the results of Company activities during the period in which each was the holder.

(b)    The Company shall be entitled to treat the record owner of any Interests as the absolute owner thereof, and shall incur no liability for distributions of cash or other property or allocations of income, gain, loss, deduction or credit made in good faith to such owner until such time as a written assignment of such Interests has been received, accepted and recorded on the books of the Company.

## ARTICLE XI
## DISSOLUTION, LIQUIDATION, TERMINATION AND CONVERSION

Section 11.1    Dissolution, etc.  The Company shall be dissolved upon the occurrence of any of the following events (the date of such occurrence, the **"Dissolution Date"**):

(a)    As approved by the majority vote of the Members; or

(b)    As otherwise required by applicable law.

Section 11.2    Winding Up.

(a)    Upon dissolution, an accounting shall be made by the Company's independent accountants of the accounts of the Company and of the Company's assets, liabilities and operations, from the date of the last previous accounting until the date of dissolution. The Manager shall immediately proceed to wind up the affairs of the Company in accordance with this Section 11.2.

(b)    Notwithstanding anything to the contrary in this Agreement, upon a liquidation within the meaning of Section 1.704-1(b)(2)(ii)(g) of the Treasury Regulations, if any Member has a deficit Capital Account (after giving effect to all contributions, distributions, allocations and other Capital Account adjustments for all taxable years, including the year during which such liquidation occurs), such Member shall have no obligation to make any Capital Contribution, and the negative balance of such Member's Capital Account shall not be

16

considered a debt owed by such Member to the Company or to any other Person for any purpose whatsoever.

(c)    The Members shall comply with all requirements of applicable law pertaining to the winding up of the affairs of the Company and the final distribution of its assets.

Section 11.3    Final Distribution. After the application or distribution of the proceeds of the liquidation of the Company's assets in one or more installments to the satisfaction of the liabilities to creditors of the Company, including to the satisfaction of the expenses of the winding-up, liquidation and dissolution of the Company (whether by payment or the making of reasonable provision for payment thereof), the remaining proceeds, if any, plus any remaining assets of the Company shall be distributed to the Members in accordance with Sections 4.3 and 8.2, as applicable.

Section 11.4    Time for Liquidation, etc. A reasonable time period shall be allowed for the orderly winding up and liquidation of the assets of the Company and the discharge of liabilities to creditors so as to enable the Company to seek to minimize potential losses upon such liquidation. The provisions of this Agreement shall remain in full force and effect during the period of winding up and until the filing of a certificate of cancellation of the certificate with the Secretary of State of the State of California.

Section 11.5    Termination. Upon completion of the winding up of the Company, the Manager (or any duly elected liquidating trustee or other duly designated representative) shall execute, acknowledge and cause to be filed a certificate of cancellation of the Certificate with the Secretary of State of the State of California. Upon the cancellation of the Certificate, this Agreement and the Company shall terminate.

Section 11.6    Return of Contribution Nonrecourse to Other Members.    Except as provided by law or as expressly provided in this Agreement, upon dissolution, each Member shall look solely to the assets of the Company for the return of its Capital Contribution. If the Company property remaining after the payment or discharge of the debts and liabilities of the Company is insufficient to return the cash contribution of one or more Members, such Member or Members shall have no recourse against any other Member, except as otherwise provided by law.

ARTICLE XII
DISPUTE RESOLUTION

Section 12.1    Rabbinical Counsel. If any dispute arises between the Members regarding this Agreement or any provision hereof, that dispute shall be resolved through a binding arbitration proceeding to be conducted in the State of California in accordance with the commercial arbitration rules of the Rabbinical Council of California.

ARTICLE XIII
MISCELLANEOUS

Section 13.1    Entire Agreement.    This Agreement, taken together with the other documents expressly referred to herein, each as amended or supplemented, constitutes the entire

17

50028620.3

agreement among the parties with respect to the subject matter herein or therein and supersedes any prior agreement or understanding among the parties hereto.

Section 13.2   Other Ventures. The Manager or any Member, and any firm, corporation or association with which the Manager or any Member is in any way interested or connected, may act as attorney for, deal and contract with, and be employed by the Company, and the Manager or any Member may be, in any manner, interested in or connected with any corporation, association or business in which the Company is directly or indirectly interested, all in the same manner and with the same freedom as though not a Manager or a Member, as the case may be, and without accountability for any profit, benefit or compensation received in connection with such actions or relationships, none of which shall be void or voidable.

Section 13.3   Amendments. This Agreement may be amended only with the written consent of a Majority in Interest; provided that any such amendment that materially adversely affects the rights and privileges of any Member (other than any amendment effected in connection with the making of a Capital Contribution to the Company by, and/or the issuance of additional Interests to, any Member, including, without limitation, any amendment to the rights and privileges of the Interests to reflect dilution resulting from such Capital Contributions or issuance of additional Interests) must be consented to by each of the Members so affected[; provided further, that any amendment to this Agreement shall not be effective without the consent of Rechnitz].

Section 13.4   Choice of Law. This Agreement shall be construed in accordance with the laws of the State of California, without regard to the choice of laws rules thereof, and the obligations, rights and remedies of the Members hereunder shall be determined in accordance with such laws.

Section 13.5   Successors and Assigns: Third Party Beneficiaries. This Agreement shall be binding upon, and, subject to Article X, shall inure to the benefit of, the parties and their legal representatives, heirs, administrators, executors, successors and permitted assigns. Except as otherwise expressly provided herein, none of the provisions of this Agreement shall be for the benefit of or enforceable by any Person not a party hereto.

Section 13.6   Interpretation. Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, the feminine or neuter gender shall include the masculine, the feminine and the neuter.

Section 13.7   Captions. Captions contained in this Agreement are inserted only as a matter of convenience and in no way define, limit or extend or otherwise affect the scope or intent of this Agreement or any provision hereof.

Section 13.8   Severability. If any provision of this Agreement, or the application of such provision to any Person or circumstance, shall be held invalid, illegal or unenforceable in any jurisdiction, the validity, legality and enforceability of the remaining provisions of this Agreement, or the application of such provision in jurisdictions or to Persons or circumstances other than those to which it is held invalid, illegal or unenforceable, shall not be affected thereby.

Section 13.9   Counterparts.  This Agreement may be executed in several counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument.

Section 13.10   Non-Waiver.  No provision of this Agreement shall be deemed to have been waived unless such waiver is contained in a written notice given to the party claiming such waiver has occurred; provided that no such waiver shall be deemed to be a waiver of any other or further obligation or liability of the party or parties in whose favor the waiver was given.

Section 13.11   Notices.  All notices, requests, demands, claims and other communications that are required or may be given under this Agreement shall be in writing and shall be deemed to have been duly given when received if personally delivered; when transmitted if transmitted by confirmed facsimile with a copy sent by another means specified herein; the business day after it is sent, if sent for next day delivery to a domestic address by recognized overnight delivery service (e.g., Federal Express); and five business days after the date mailed by certified or registered mail, postage prepaid, if sent by certified or registered mail, return receipt requested.  In each case notice shall be sent to:

if to the Company:

c/o Shlomo Rechnitz
    5697 W. 3rd Street, Suite 200, Los Angeles, California 90036.

with a copy to:

Leslie Klein
14245 Ventura Blvd., Sherman Oaks, CA 91423

and if to a Member, to the Member's address or facsimile number on the books records of the Company, or to such other address with respect to the Company or a Member as the Company or such Member, as applicable, notifies the Company and the other Members in writing as provided above.

## ARTICLE XIV
## DEFINITIONS

Section 14.1   Definitions.

References in this Agreement to an "**Exhibit**" are intended to refer, unless otherwise specified, to an Exhibit attached to this Agreement, and references in this Agreement to an "**Article**" or a "**Section**" are intended to refer, unless otherwise specified, to an Article or a Section of this Agreement.  As used in this Agreement, the following terms shall have the respective meanings set forth below:

19

50028620.3

"**Account Bank**" means PrivateBancorp, Inc.

"**Act**" shall have the meaning specified in the recitals to this Agreement.

"**Affiliate**" means any Person that, directly or indirectly, through one or more intermediaries, is Controlled by one or more Members. As used in this definition, "Control" means either (a) the ownership, directly or indirectly, of at least fifty percent (50%) of the voting stock of a corporation, or in the case of any Person which is not a corporation, the ownership, directly or indirectly, of at least fifty percent (50%) of the beneficial ownership interests in such Person, or (b) irrespective of stock ownership or other beneficial ownership, the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person.

"**Agreement**" means this Limited Liability Company Agreement, as the same may be amended hereafter from time to time as provided herein.

"**Available Cash**" means, at the time of determination, cash generated from revenues from the Company's operations, after provision has been made for (a) all expenditures paid or to be paid by the Company to non-Members and (b) such amounts as the Manager, in his sole discretion, shall deem reasonable in order to provide for any anticipated, contingent or unforeseen expenditures or liabilities of the Company. Available Cash shall be determined without regard to (i) Capital Contributions and (ii) principal advanced on Company indebtedness.

"**Beneficiary**" means, with respect to the Policy, the legal person or persons designated as the recipients of the Death Benefit for such Policy.

"**Capital Account**" means, with respect to any Member, the Capital Account maintained for such Member by crediting such Member's Capital Contributions, such Member's share of Net Income, and the amount of any Company liabilities that are assumed by such Member (other than liabilities that are secured by any Company property distributed to such Member) and by debiting the amount of cash and the gross fair market value of any Company property distributed to such Member pursuant to any provision of this Agreement (net of liabilities secured by such distributed property that such Member is considered to assume or take subject to under Code Section 752), such Member's share of Net Losses, and the amount of any liabilities of such Member that are assumed by the Company (other than liabilities that are secured by any property contributed by such Member to the Company).

"**Capital Contribution**" means, with respect to any Member, the amount of money and the initial gross fair market value of any property contributed (or deemed contributed) from time to time by such Member to the Company (net of any liabilities secured by such property or to which such property is otherwise subject). The initial gross fair market value of each Policy contributed by Klein shall equal the sum of the total amount of premium payments made on such Policy by Klein and all other costs and expenses incurred by Klein in servicing and maintaining such Policy as of the date of this Agreement. Any reference in this Agreement to the Capital Contribution of a Member shall include the Capital Contribution made

20

by any predecessor of a Member.  For purposes of this Agreement, a Capital Contribution shall include, without limitation, any Initial Capital Contribution.

"**Certificate**" has the meaning set forth in Section 1.1.

"**Change Forms**" means the forms changing the owner and Beneficiary of the Policy using such form as is required by each of the relevant issuing insurance companies.

"**Code**" means the Internal Revenue Code of 1986, as amended, and as the same may be amended hereafter from time to time.

"**Company**" shall have the meaning specified in the preamble hereto.

"**Consumer Information**" means medical, health, financial and personal information about an Insured, an Original Owner, a Beneficiary under a Policy or a person designated by an Insured to provide periodic information regarding the medical status of the Insured, or any spouse or other individual closely related by blood or law to any such person (each, a "**Consumer**"), including, without, limitation, a Consumer's name, street or mailing address, email address, telephone or other contact information, employer, social security or tax identification number, date of birth, driver's license number, photograph or documentation of identity or residency (whether independently disclosed or contained in any disclosed document such as a Policy, life expectancy evaluation, life insurance application or life settlement application).

"**Covered Person**" shall have the meaning specified in Section 6.5(a).

"**Death Benefit**" means the cash amount of a Policy to be paid upon the death of the applicable Insured under such Policy, which amount will be net of any policy loans made under such Policy (and accrued interest thereon).

"**Disposition**" shall have the meaning specified in Section 10.5(a).

"**Disposition Notice**" shall have the meaning specified in Section 10.5(a).

"**Dissolution Date**" shall have the meaning specified in Section 11.1.

"**Fiscal Period**" means, subject to the provisions of Section 706 of the Code, (i) any Fiscal Year and (ii) any portion of a Fiscal Year for which the Company is required to allocate Net Income, Net Losses or other items of Company income, gain, loss or deduction pursuant to Article IV.

"**Fiscal Year**" shall have the meaning specified in Section 1.7.

"**Governmental Authority**" means any nation or government, any state or other political subdivision thereof and any entity exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to government.

"**Indemnified Liabilities**" shall have the meaning specified in Section 6.12.

S0028620.3

21

"**Indemnified Person**" shall have the meaning specified in Section 6.12.

"**Initial Capital Contribution**" means, with respect to each Member, such Member's Initial Capital Contribution set forth on Schedule A.

"**Insured**" means, with respect to a Policy, each person whose life is insured under such Policy.

"**Interest**" means, with respect to any Member, (a) such Member's share of the profits and losses of the Company and a Member's rights to receive distributions from the Company in accordance with the provisions of this Agreement and the Act and (b) such Member's other rights and privileges in respect of the Company as herein provided.

"**Joinder Agreement**" shall have the meaning specified in Section 10.2(a).

"**Klein Amount**" shall mean, with respect to any Policy, (x) the total amount of Capital Contributions made by Klein related to such Policy and (y) the Priority Return for Klein on such Policy.

"**Law**" means any law, constitution, statute, ordinance, code, rule, regulation, decision, order, consent, decree, judgment, ordinance, release, license, permit, stipulation or other pronouncement having the effect of law enacted or issued by any Governmental Authority, any foreign country, or domestic or foreign state, country, city or other political subdivision, which includes binding judicial precedent and principles of common law.

"**Lender**" shall mean each lender identified on Schedule C.

"**Majority in Interest**" means Members that at the time in question together hold a Percentage Interest greater than 50% in the aggregate.

"**Manager**" means one or more persons designated as such pursuant to this Agreement.

"**Members**" means, collectively, the members signatory to this Agreement, and any other Persons admitted to the Company as members after the date hereof in accordance with the terms of this Agreement.

"**Net Income**" and "**Net Losses**" means, for each Fiscal Year or other period, an amount equal to the Company's taxable income or loss for such Fiscal Year or other period (for this purpose, all items of income, gain, loss or deduction required to be stated separately pursuant to Code Section 703(a)(1) shall be included in taxable income or loss and each item of income, gain, expense, deduction and loss shall be allocable to the Members in accordance herewith).

"**Non-Payment Policy**" shall have the meaning as specified in Section 8.2.

"**Non-Payment Policy Member**" shall have the meaning as specified in Section 8.2.

"**Notice of Intention**" shall have the meaning as specified in Section 10.4(a).

"**Offer Price**" shall have the meaning as specified in Section 10.4(a).

"**Offered Interests**" shall have the meaning specified in Section 10.4(a).

"**Option Period**" shall have the meaning as specified in Section 10.4(b)

"**Original Owner**" means, with respect to a Policy, the Person to which the Policy was initially issued and who was listed as owner on the initial declarations page of such Policy or the policy application, as applicable.

"**Percentage Interest**" means, with respect to any Member as of any date of determination, a fraction (expressed as a percentage) having as its numerator the aggregate number of Interests held by such Member at such time, and having as its denominator the aggregate number of Interests held by all Members at such time. Each Member's Percentage Interest as of the date hereof, and as adjusted from time to time, is set forth on Schedule A.

"**Permitted Transferee**" means (a) with respect to any Member who is an individual, such member's siblings, parents, spouse (former spouse, if any), and children, and trusts solely for the benefit of any of the foregoing, and (b) with respect to any Member that is an entity, an Affiliate of such Member. [**Anyone else?**]

"**Person**" means any individual or any corporation, partnership, limited liability company, limited liability partnership, joint venture, estate, trust, unincorporated association, business trust, tenancy-in-common or other legal entity.

"**Policy**" means each of the life insurance policies contributed to the capital of the Company by Klein, as specified in Schedule B hereto.

"**Policy File**" means, with respect to a Policy, the file relating to such Policy which file shall include, without limitation, the Policy, the original application for such Policy, any Policy Illustration and any other documentation in Klein's possession.

"**Policy Illustration**" means, with respect to a Policy, a policy illustration from the related issuing insurance company.

"**Polter**" shall have the meaning set forth in Section 6.2.

"**Priority Return**" of a Member with respect to any Policy shall mean an annual rate of return of 12% on the total amount of Capital Contributions made by a Member with respect to such Policy from the date such Capital Contribution were made but computed no earlier than from the date of this Agreement. .

"**Rechnitz Amount**" shall mean, with respect to any Policy, (x) the total amount of Capital Contributions made by Rechnitz related to such Policy and (y) the Priority Return for Rechnitz on such Policy.

50028620.3

"**Remaining Members**" shall have the meaning specified in Section 10.4(a).

"**Remaining Members Notice**" shall have the meaning specified in Section 10.4(b).

"**Remaining Members Option**" shall have the meaning specified in Section 10.4(b).

"**Reserve Account**" means account number [＿＿] established at Account Bank.

"**Selling Member**" shall have the meaning specified in Section 10.4(a).

"**Third Party**" shall have the meaning as specified in Section 10.4(a).

"**Transfer**" means, as a noun, any voluntary or involuntary, and direct or indirect, assignment, transfer, pledge, syndication, sale, hypothecation, contribution, encumbrance or other disposition or purported disposition, and, as a verb, voluntarily or involuntarily, and directly or indirectly, to assign, transfer, pledge, syndicate, sell, hypothecate, contribute, encumber or otherwise dispose of.

"**Tax Matters Member**" shall have the meaning specified in Section 9.4.

"**Treasury Regulations**" means the Income Tax Regulations promulgated under the Code, as the same may be amended hereafter from time to time.

*[Remainder of Page Intentionally Left Blank]*

50028620.3

IN WITNESS WHEREOF, the undersigned have executed this Limited Liability Company Agreement as of the date first set forth above.

SHLOMO RECHNITZ

LESLIE KLEIN

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

4929 Wilshire Boulevard, Suite 940, Los Angeles, California 90010.

A true and correct copy of the foregoing document entitled: **PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT UNDER LBR 7055-1** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On 12/19/2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

| | |
|---|---|
| Baruch C Cohen (PL) | bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com |
| Michael I. Gottfried (IP) | mgottfried@elkinskalt.com, cavila@elkinskalt.com, lwageman@elkinskalt.com, docketing@elkinskalt.com |
| Nikko Salvatore Stevens (IP) | nikko@cym.law, mandi@cym.law |
| Clarisse Young (IP) | youngshumaker@smcounsel.com, levern@smcounsel.com |
| United States Trustee (LA) | ustpregion16.la.ecf@usdoj.gov |

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On 12/19/2023, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Leslie Klein, 322 N. June Street, Los Angeles, CA 90001

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on 12/19/2023, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Hon. Sandra R. Klein, 255 E. Temple Street, Suite 1582, Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 12/19/2023 | Baruch C. Cohen, Esq. | /s/ Baruch C. Cohen |
|---|---|---|
| Date | Printed Name | Signature |

# EXHIBIT III A

1  Leslie Klein
2  322 North June Street
   Los Angeles, California 90004
3  TELEPHONE: (818) 501-2663
   EMAIL: les.kleinlaw@gmail.com
4
5  Debtor In Pro Se



6              UNITED STATES BANKRUPTCY COURT

7              CENTRAL DISTRICT OF CALIFORNIA

8                   LOS ANGELES DIVISION

9  | In re | Case No.: 2:23-bk-10990-SK |
10 |  | |
   | LESLIE KLEIN, | Chapter 11 |
11 |  | |
12 |      Debtor. | Adv. No.: 2:23-ap-01153-SK |
13 | ROBERT & ESTHER MERMELSTEIN, |  |
14 |  | ANSWER TO COMPLAINT TO DENY DISCHARGE OF DEBT AND DENIAL OF |
   |      Plaintiffs, | DISCHARGE (AS AMENDED BY |
15 |  | AMENDED PROOF OF CLAIM FILED |
   |      v. | 1/10/2024) |
16 |  | |
17 | LESLIE KLEIN, | Place:      Courtroom 1575 |
18 |      Defendant. | |
19

20         Comes now the Defendant, Leslie Klein ("**Defendant**") for himself only, and for

21  his answer to the Complaint to Deny Discharge of Debt and Denial of Discharge (the

22  "**Complaint**") filed by Robert Mermelstein and Esther Mermelstein (the "**Plaintiffs**"), and

23  states as follows:

24                          <u>PREFACE</u>

25         Plaintiff caused a request for entry default to be filed November 28, 2023 and

26

27  Default was entered thereon November 28, 2023. Plaintiff filed 6 amended Proof of Claim

28  dated January 10, 2024 thereby opening the default.

                              - 1 -
     ANSWER TO COMPLAINT TO DENY DISCHARGE OF DEBT AND DENIAL OF DISCHARGE

## CORE/NON-CORE DESIGNATION

1. The Defendant admits the allegations contained in paragraph 1 of the Complaint, and consents to entry of final orders or judgment by the bankruptcy court.

## JURISDICTION, VENUE & STANDING

2. The Defendant admits the allegations contained in paragraph 2 of the Complaint.

3. The Defendant admits the allegations contained in paragraph 3 of the Complaint.

4. The Defendant admits the allegations contained in paragraph 4 of the Complaint.

## PARTIES

5. The Defendant admits the allegations contained in paragraph 5 of the Complaint.

6. The Defendant admits the allegations contained in paragraph 6 of the Complaint.

7. The Defendant admits the allegations contained in paragraph 7 of the Complaint.

## GENERAL ALLEGATIONS

8-36. The Defendant generally denies all material allegations contained in paragraphs 8-36 of the Complaint and refers to the proceedings in the underlying state court action and other proceedings relating to the funds alleged. The judgment alleged has been appealed.

## PERIODIC PAYMENTS TO PLAINTIFFS FROM DEFENDANT'S IOLTA ACCOUNT

37. The Defendant denies the allegations contained in paragraph 37 of the Complaint.

## PLAINTIFF'S DISCOVERY OF DEFENDANT'S FRAUD

38-40. The Defendant generally denies all material allegations contained in paragraphs 38-40 of the Complaint and refers to the proceedings in the underlying state court action and other proceedings relating to the funds alleged. The judgment alleged has been appealed.

### PLAINTIFFS' PROOF OF CLAIMS

**41.** The Defendant denies the allegations contained in paragraph 38 of the Complaint.

### FIRST CLAIM FOR RELIEF

#### (Nondischargeability of Debt – 11 U.S.C §523(a)(2)(A))

**42-49.** The Defendant generally denies all material allegations contained in paragraphs 42-49 of the Complaint and refers to the proceedings in the underlying state court action and other proceedings relating to the funds alleged. The judgment alleged has been appealed.

### SECOND CLAIM FOR RELIEF

#### (Nondischargeability of Debt – 11 U.S.C. §523(a)(4))

**50-56.** The Defendant generally denies all material allegations contained in paragraphs 50-56 of the Complaint and refers to the proceedings in the underlying state court action and other proceedings relating to the funds alleged. The judgment alleged has been appealed.

### THIRD CLAIM FOR RELIEF

#### (Nondischargeability of Debt – 11 U.S.C. §523(a)(6))

**57-63.** The Defendant generally denies all material allegations contained in paragraphs 57-63 of the Complaint and refers to the proceedings in the underlying state court action and other proceedings relating to the funds alleged. The judgment alleged has been appealed.

### FOURTH CLAIM FOR RELIEF

#### (Objection to Debtor's Discharge – 11 U.S.C. §727(a)(2)(A))

**64-71.** Fourth Claim for Relief is dismissed by Order dated November 8, 2023.

- 3 -
ANSWER TO COMPLAINT TO DENY DISCHARGE OF DEBT AND DENIAL OF DISCHARGE

## FIFTH CLAIM FOR RELIEF

### (Objection to Debtor's Discharge – 11 U.S.C. §727(a)(2)(B))

**72-79.** Fifth Claim for Relief is dismissed by Order dated November 8, 2023.

## SIXTH CLAIM FOR RELIEF

### (Objection to Debtor's Discharge – 11 U.S.C. §727(a)(3))

**80-84.** Sixth Claim for Relief is dismissed by Order dated November 8, 2023.

## SEVENTH CLAIM FOR RELIEF

### (Objection to Debtor's Discharge – 11 U.S.C. §727(a)(4))

**85-93.** Seventh Claim for Relief is dismissed by Order dated November 8, 2023.

## EIGHTH CLAIM FOR RELIEF

### (Objection to Debtor's Discharge – 11 U.S.C. §727(a)(5))

**94-96.** Eighth Claim for Relief is dismissed by Order dated November 8, 2023.

## FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim for which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

As a separate and affirmative defense, Defendant is informed and believes and on that basis avers that Plaintiff and each person whose rights it purports to assert have unclean hands, and Plaintiff accordingly is barred from relief against Defendant for any reason stated in the Complaint or any purported Claim for Relief therein.

## THIRD AFFIRMATIVE DEFENSE

As a separate and affirmative defense, Defendant avers that the Complaint, and each purported Claim for Relief therein, is uncertain, ambiguous, and unintelligible.

//

### FOURTH AFFIRMATIVE DEFENSE

As a separate and affirmative, Defendant is informed and believes and on that basis avers that all equitable relief sought in the Complaint, and each purported Claim for Relief therein, is barred by laches.

### FIFTH AFFIRMATIVE DEFENSE

As a separate and affirmative, Defendant is informed and believes and on that basis avers that Plaintiff and each person whose rights it purports to assert are estopped from asserting each and every purported Claim for Relief in the Complaint, or from seeking any relief thereby.

### SIXTH AFFIRMATIVE DEFENSE

As a separate and affirmative, Defendant is informed and believes and on that basis avers that Plaintiff and each person whose rights it purports to assert have waived any and all right to relief against Defendant for any reason stated in the Complaint or any purported Claim for Relief therein and that the claims contained in the Complaint are subject to setoff and/or recoupment.

### SEVENTH AFFIRMATIVE DEFENSE

As a separate and affirmative defense to each and every cause of action of the Complaint, Defendants allege that Plaintiff is barred from recovery against Defendants, in whole or in part, because Plaintiff has failed to satisfy conditions or obligations precedent to Defendants' performance of the contract or contracts.

//

### EIGHT AFFIRMATIVE DEFENSE

As a separate and affirmative defense to each and every cause of action of the Complaint, Defendants allege that Plaintiff's claims are barred by the doctrine of release and waiver.

### NINTH AFFIRMATIVE DEFENSE

As a separate and affirmative defense to each and every cause of action of the Complaint, Defendants allege that Plaintiff's claims are barred by the doctrine of equitable estoppel.

### TENTH AFFIRMATIVE DEFENSE

As a separate and affirmative defense to each and every cause of action of the Complaint, Defendants allege that Plaintiff's claims are barred or reduced by their failure to mitigate their damages.

### ELEVENTH AFFIRMATIVE DEFENSE

As a separate and affirmative defense to each and every cause of action of the Complaint, Defendants allege that Plaintiff's claims are barred because Plaintiff's consented to Defendant's actions.

### TWELFTH AFFIRMATIVE DEFENSE

Defendants reserve their rights to assert additional defenses as and when they learn of all the claims asserted against them, whether submitted or not, and as their discovery and investigation continues.

**WHEREFORE**, Defendant, respectfully requests an entry of order.

- Dismissing the Complaint with prejudice;

ANSWER TO COMPLAINT TO DENY DISCHARGE OF DEBT AND DENIAL OF DISCHARGE

- Entitling Defendant to recover the costs incurred in defending this action, including attorney's fees; and

- Granting such other and further relief as this Court deems just and proper.

Dated: January ___, 2024


_____
LESLIE KLEIN
Defendant

ANSWER TO COMPLAINT TO DENY DISCHARGE OF DEBT AND DENIAL OF DISCHARGE

* Entitling Defendant to recover the costs incurred in defending this action, including attorney's fees; and

* Granting such other and further relief as this Court deems just and proper.

Dated: January 11, 2024

LESLIE KLEIN
Defendant

7

ANSWER TO COMPLAINT TO DENY DISCHARGE OF DEBT AND DENIAL OF DISCHARGE

| In re: LESLIE KLEIN | Chapter: 11 |
| Debtor(s)<br>ROBERT & ESTHER MERMELSTEIN | Case No: 2:23-bk-10990-SK<br>Adv. No: 2:23-ap-01153-SK |

### PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 301 East Colorado Boulevard, Suite 520, Pasadena, California 91101.

A true and correct copy of the foregoing document described as **ANSWER TO COMPLAINT TO DENY DISCHARGE OF DEBT AND DENIAL OF DISCHARGE** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On 1/ℓⅤ/2024, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

[x] Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicated method for each person or entity served):
On 1/ℓⅤ/2024, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

[x] Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 1/ℓⅤ/2024 | Eric J. Olson | |
| Date | Type Name | Signature |

- 8 -
**ANSWER TO COMPLAINT TO DENY DISCHARGE OF DEBT AND DENIAL OF DISCHARGE**

| In re: LESLIE KLEIN | Chapter: 11 |
|---|---|
| Debtor(s) | Case No: 2:23-bk-10990-SK |
| ROBERT & ESTHER MERMELSTEIN | Adv. No: 2:23-ap-01153-SK |

## I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")

- Baruch C. Cohen   bcc@baruchcohenesq.com,
  paralegal@baruchcohenesq.com
- Michael I. Gottfried  mgottfried@elkinskalt.com, cavila@elkinskalt.com,
  lwageman@elkinskalt.com, docketing@elkinskalt.com
- Nikko Salvatore Stevens   nikko@cym.law, mandi@cym.law
- United States Trustee (LA) ustpregio16.la.ecf@usdoj.gov
- Clarisse Young      youngshumaker@smcounsel.com, levern@smcounsel.com

## II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL – VIA U.S. MAIL

Hon. Sandra Klein
U.S. Bankruptcy Court
255 E. Temple Street #1582
Los Angeles, California 90012

ANSWER TO COMPLAINT TO DENY DISCHARGE OF DEBT AND DENIAL OF DISCHARGE

# EXHIBIT III B

Leslie Klein
322 North June Street
Los Angeles, California 90004
TELEPHONE: (818) 501-2663
EMAIL: les.kleinlaw@gmail.com

FILED
JAN 0 2 2024
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ Deputy Clerk

FILED
JAN 8 2 2023
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ Deputy Clerk

Debtor In Pro Se

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No.: 2:23-bk-10990-SK |
| LESLIE KLEIN, | Chapter 11 |
| Debtor. | Adv. No.: 2:23-ap-01169-SK |
| DAVID BERGER, Plaintiff, v. LESLIE KLEIN, Defendant. | ANSWER TO COMPLAINT TO DENY DISCHARGE OF DEBT AND DENIAL OF DISCHARGE (AS AMENDED BY PROOF OF CLAIM DATED DECEMBER 19, 2023) Place:  Courtroom 1575 |

Comes now the Defendant, Leslie Klein (**"Defendant"**) for himself only, and for his answer to the Complaint to Deny Discharge of Debt and Denial of Discharge (the **"Complaint"**) filed by David Berger (the **"Plaintiff"**), and states as follows:

## PREFACE

Plaintiff caused a request for entry default to be filed November 28, 2023 and Default was entered thereon November 29, 2023. Plaintiff filed Proof of Claim dated December 19, 2023 thereby opening the default.

- 1 -
ANSWER TO COMPLAINT TO DENY DISCHARGE OF DEBT AND DENIAL OF DISCHARGE

## CORE/NON-CORE DESIGNATION

**1.** The Defendant admits the allegations contained in paragraph 1 of the Complaint.

## JURISDICTION, VENUE & STANDING

**2.** The Defendant admits the allegations contained in paragraph 2 of the Complaint.

**3.** The Defendant admits the allegations contained in paragraph 3 of the Complaint.

**4.** The Defendant admits the allegations contained in paragraph 4 of the Complaint

except the Plaintiff has filed a Proof of Claim dated December 19, 2023.

## PARTIES

**5.** The Defendant admits the allegations contained in paragraph 5 of the Complaint.

**6.** The Defendant admits the allegations contained in paragraph 6 of the Complaint.

**7.** The Defendant admits the allegations contained in paragraph 7 of the Complaint

except that the second sentence (including footnote) should be striken.

## GENERAL ALLEGATIONS

**8-21.** The Defendant generally denies all material allegations contained in paragraphs
8-21 of the Complaint and further alleges that Plaintiff has filed a Proof of Claim on
December 19, 2023 increasing the alleged damages to $12,010,958.83; Defendant
generally denies all material allegations contained in said Proof of Claim.

## PLAINTIFF's DISCOVERY OF DEFENDANT'S FRAUD

**22.** The Defendant denies the allegations contained in paragraph 22 of the Complaint.

## FIRST CLAIM FOR RELIEF

### (Nondischargeability of Debt – 11 U.S.C §523(a)(2)(A))

**23-30.** The Defendant generally denies all material allegations contained in
paragraphs 23-30 of the Complaint and further alleges that Plaintiff has filed a Proof of

1   Claim on December 19, 2023 increasing the alleged damages to $12,010,958.83;

2   Defendant generally denies all material allegations contained in said Proof of Claim.

### SECOND CLAIM FOR RELIEF

#### (Nondischargeability of Debt – 11 U.S.C. §523(a)(4))

**31-37.** The Defendant generally denies all material allegations contained in paragraphs 31-37 of the Complaint and further alleges that Plaintiff has filed a Proof of Claim on December 19, 2023 increasing the alleged damages to $12,010,958.83; Defendant generally denies all material allegations contained in said Proof of Claim.

### THIRD CLAIM FOR RELIEF

#### (Nondischargeability of Debt – 11 U.S.C. §523(a)(6))

**38-44.** The Defendant generally denies all material allegations contained in paragraphs 38-44 of the Complaint and further alleges that Plaintiff has filed a Proof of Claim on December 19, 2023 increasing the alleged damages to $12,010,958.83; Defendant generally denies all material allegations contained in said Proof of Claim.

### FOURTH CLAIM FOR RELIEF

#### (Objection to Debtor's Discharge – 11 U.S.C. §727(a)(2)(A))

**45-52.** Fourth Claim for Relief is dismissed by Order dated November 9, 2023.

### FIFTH CLAIM FOR RELIEF

#### (Objection to Debtor's Discharge – 11 U.S.C. §727(a)(2)(B))

**53-60.** Fifth Claim for Relief is dismissed by Order dated November 9, 2023.

### SIXTH CLAIM FOR RELIEF

#### (Objection to Debtor's Discharge – 11 U.S.C. §727(a)(3))

**61-65.** Sixth Claim for Relief is dismissed by Order dated November 9, 2023.

## SEVENTH CLAIM FOR RELIEF

### (Objection to Debtor's Discharge – 11 U.S.C. §727(a)(4))

**66-74.** Seventh Claim for Relief is dismissed by Order dated November 9, 2023.

## EIGHTH CLAIM FOR RELIEF

### (Objection to Debtor's Discharge – 11 U.S.C. §727(a)(5))

**75-77.** Eighth Claim for Relief is dismissed by Order dated November 9, 2023.

## FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim for which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

As a separate and affirmative defense, Defendant is informed and believes and on that basis avers that Plaintiff and each person whose rights it purports to assert have unclean hands, and Plaintiff accordingly is barred from relief against Defendant for any reason stated in the Complaint or any purported Claim for Relief therein.

## THIRD AFFIRMATIVE DEFENSE

As a separate and affirmative defense, Defendant avers that the Complaint, and each purported Claim for Relief therein, is uncertain, ambiguous, and unintelligible.

## FOURTH AFFIRMATIVE DEFENSE

As a separate and affirmative, Defendant is informed and believes and on that basis avers that all equitable relief sought in the Complaint, and each purported Claim for Relief therein, is barred by laches.

## FIFTH AFFIRMATIVE DEFENSE

As a separate and affirmative, Defendant is informed and believes and on that basis avers that Plaintiff and each person whose rights it purports to assert are estopped from

ANSWER TO COMPLAINT TO DENY DISCHARGE OF DEBT AND DENIAL OF DISCHARGE

1  asserting each and every purported Claim for Relief in the Complaint, or from seeking

2  any relief thereby.

### SIXTH AFFIRMATIVE DEFENSE

As a separate and affirmative, Defendant is informed and believes and on that basis avers

that Plaintiff and each person whose rights it purports to assert have waived any and all

right to relief against Defendant for any reason stated in the Complaint or any purported

Claim for Relief therein and that the claims contained in the Complaint are subject to

setoff and/or recoupment.

### SEVENTH AFFIRMATIVE DEFENSE

As a separate and affirmative defense to each and every cause of action of the Complaint,

Defendants allege that Plaintiff is barred from recovery against Defendants, in whole or

in part, because Plaintiff has failed to satisfy conditions or obligations precedent to

Defendants' performance of the contract or contracts.

### EIGHT AFFIRMATIVE DEFENSE

As a separate and affirmative defense to each and every cause of action of the Complaint,

Defendants allege that Plaintiff's claims are barred by the doctrine of release and waiver.

### NINTH AFFIRMATIVE DEFENSE

As a separate and affirmative defense to each and every cause of action of the Complaint,

Defendants allege that Plaintiff's claims are barred by the doctrine of equitable estoppel.

### TENTH AFFIRMATIVE DEFENSE

As a separate and affirmative defense to each and every cause of action of the Complaint,

Defendants allege that Plaintiff's claims are barred or reduced by their failure to mitigate

their damages.

## ELEVENTH AFFIRMATIVE DEFENSE

As a separate and affirmative defense to each and every cause of action of the Complaint, Defendants allege that Plaintiff's claims are barred because Plaintiff's consented to Defendant's actions.

## TWELFTH AFFIRMATIVE DEFENSE

Defendants reserve their rights to assert additional defenses as and when they learn of all the claims asserted against them, whether submitted or not, and as their discovery and investigation continues.

**WHEREFORE**, Defendant, respectfully requests an entry of order.

- Dismissing the Complaint as Amended by the Proof of Claim with prejudice;

- Entitling Defendant to recover the costs incurred in defending this action, including attorney's fees; and

- Granting such other and further relief as this Court deems just and proper.

Dated: December ___, 2023


_____
LESLIE KLEIN
Defendant

**ELEVENTH AFFIRMATIVE DEFENSE**

As a separate and affirmative defense to each and every cause of action of the Complaint, Defendants allege that Plaintiff's claims are barred because Plaintiff consented to Defendant's actions.

**TWELFTH AFFIRMATIVE DEFENSE**

Defendants reserve their rights to assert additional defenses as and when they learn of all the claims asserted against them, whether submitted or not, and as their discovery and investigation continues.

WHEREFORE, Defendant, respectfully requests an entry of order.

- Dismissing the Complaint as Amended by the Proof of Claim with prejudice;

- Entitling Defendant to recover the costs incurred in defending this action, including attorney's fees; and

- Granting such other and further relief as this Court deems just and

Dated: December 21, 2023

LESLIE KLEIN
Defendant

| AAIn re: LESLIE KLEIN | Chapter: 11 |
| Debtor(s) | Case No: 2:23-bk-10990-SK |
| DAVID BERGER | Adv. No: 2:23-ap-01169-SK |

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 301 East Colorado Boulevard, Suite 520, Pasadena, California 91101.

A true and correct copy of the foregoing document described as **ANSWER TO COMPLAINT TO DENY DISCHARGE OF DEBT AND DENIAL OF DISCHARGE** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On 12/ /2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

[x] Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicated method for each person or entity served):
On 12/ /2023, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

[x] Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 12/ 17 /2023 | Eric J. Olson | |
| Date | Type Name | Signature |

| In re: LESLIE KLEIN | Chapter: 11 |
| Debtor(s) | Case No: 2:23-bk-10990-SK |
| DAVID BERGER | Adv. No: 2:23-ap-01169-SK |

## I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")

- Baruch C. Cohen   bcc@baruchcohenesq.com,
  paralegal@baruchcohenesq.com
- Michael I. Gottfried   mgottfried@elkinskalt.com, cavila@elkinskalt.com,
  lwageman@elkinskalt.com, docketing@elkinskalt.com
- Nikko Salvatore Stevens   nikko@cym.law, mandi@cym.law
- United States Trustee (LA) ustpregion16.la.ecf@esdoj.gov

## II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL – VIA U.S. MAIL

Hon. Sandra Klein
U.S. Bankruptcy Court
255 E. Temple Street #1582
Los Angeles, California 90012

- 8 -
ANSWER TO COMPLAINT TO DENY DISCHARGE OF DEBT AND DENIAL OF DISCHARGE

# EXHIBIT IV A

1   Leslie Klein
2   322 North June Street
    Los Angeles, California 90004
3   TELEPHONE: (818) 501-2663
    EMAIL: les.kleinlaw@gmail.com
4
5   Debtor In Pro Se



FILED

FEB 1 2 2024

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                Deputy Clerk

6              UNITED STATES BANKRUPTCY COURT

7              CENTRAL DISTRICT OF CALIFORNIA

8                   LOS ANGELES DIVISION

9   In re                          Case No.: 2:23-bk-10990-SK

10  LESLIE KLEIN,                  Chapter 11

11
            Debtor.               Adv. No.: 2:23-ap-01153-SK
12

13  ROBERT & ESTHER MERMELSTEIN,
                                   DECLARATION OF ERIC J. OLSON IN
14          Plaintiffs,            RESPONSE TO PLAINTIFF'S MOTION
                                   FOR DEFAULT JUDGMENT
15
        v.
16                                 Place:     Courtroom 1575
17  LESLIE KLEIN,                  Date:      February 14, 2024
                                   Time:      9:00 A.M.
18          Defendant.

19

20      Comes now the Defendant, Leslie Klein ("Defendant") for himself only, and for

21  his response to the Motion for Default Judgment (the "Motion") filed by Robert

22  Mermelstein and Esther Mermelstein (the "Plaintiffs"), presents the attached

23  Declaration of Eric J. Olson:

24  Dated: February 9, 2024

25

26

27                        LESLIE KLEIN
                          Defendant
28                            - 1 -
    DECLARATION OF ERIC J. OLSON IN RESPONSE TO PLAINTIFF'S MOTION FOR DEFAULT

                                  JUDGMENT

1

2

3  | In re: LESLIE KLEIN | Chapter: 11
   |                     | Case No: 2:23-bk-10990-SK
   | Debtor(s)           |
4  | ROBERT & ESTHER MERMELSTEIN | Adv. No: 2:23-ap-01153-SK

5

6  ## PROOF OF SERVICE OF DOCUMENT

7      I am over the age of 18 and not a party to this bankruptcy case or adversary
8  proceeding. My business address is 301 East Colorado Boulevard, Suite 520, Pasadena,
   California 91101.

9
   A true and correct copy of the foregoing document described as **DECLARATION OF
10 ERIC J. OLSON IN RESPONSE TO PLAINTIFF'S MOTION FOR DEFAULT
   JUDGMENT** will be served or was served (a) on the judge in chambers in the form and
11 manner required by LBR 5005-2(d); and (b) in the manner indicated below:

12
   **I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** –
13 Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the
   foregoing document will be served by the court via NEF and hyperlink to the document.
14 On 2/12/2024, I checked the CM/ECF docket for this bankruptcy case or adversary
15 proceeding and determined that the following person(s) are on the Electronic Mail Notice
   List to receive NEF transmission at the email address(es) indicated below:

16
17                                    [x] Service information continued on attached page

18
   **II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicated method for each person or
19 entity served):
   On 2/12/2024, I served the following person(s) and/or entity(ies) at the last known
20 address(es) in this bankruptcy case or adversary proceeding by placing a true and correct
   copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid,
21 and/or with an overnight mail service addressed as follows. Listing the judge here
22 constitutes a declaration that mailing to the judge will be completed no later than 24 hours
   after the document is filed.
23
24                                    [x] Service information continued on attached page

25
   I declare under penalty of perjury under the laws of the United States of America that the
26 foregoing is true and correct.

27

28                                    - 2 -
   **DECLARATION OF ERIC J. OLSON IN RESPONSE TO PLAINTIFF'S MOTION FOR DEFAULT**

   **JUDGMENT**

1 | 2/12 /2024 _____ Jasper Pantaleon _____
Date                Type Name                          Signature
2

3

4 | In re: LESLIE KLEIN                    | Chapter: 11
                    Debtor(s)              | Case No: 2:23-bk-10990-SK
5 | ROBERT & ESTHER MERMELSTEIN            | Adv. No: 2:23-ap-01153-SK

6 | **I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

7 | • Baruch C. Cohen   bcc@baruchcohenesq.com,
        paralegal@baruchcohenesq.com
8 | • Michael I. Gottfried   mgottfried@elkinskalt.com, cavila@elkinskalt.com,
        lwageman@elkinskalt.com, docketing@elkinskalt.com
9 | • Nikko Salvatore Stevens   nikko@cym.law, mandi@cym.law
10 | • United States Trustee (LA) ustpregio16.la.ecf@usdoj.gov
11 | • Clarisse Young       youngshumaker@smcounsel.com, levern@smcounsel.com

12

13 | **II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL – VIA U.S. MAIL**

14 | Hon. Sandra Klein
U.S. Bankruptcy Court
15 | 255 E. Temple Street #1582
Los Angeles, California 90012
16

17

18

19

20

21

22

23

24

25

26

27

28 | - 3 -
**DECLARATION OF ERIC J. OLSON IN RESPONSE TO PLAINTIFF'S MOTION FOR DEFAULT**

**JUDGMENT**

## DECLARATION OF ERIC J OLSON RE MOTIONS FOR DEFAULT

## JUDGMENT BY BERGER AND MERMELSTEIN

ERIC OLSON states:

1.    I am an attorney at law, at one period I appeared on behalf of Leslie Klein while he engaged a bankruptcy lawyer, but I was substituted out in favor of the bankruptcy lawyer. Subsequently I have, without appearing, consulted with Mr. Klein and drafted documents for him in pro se.  All matters set forth herein are based on my own first-hand knowledge unless stated otherwise and I am competent to testify thereto.

2.    Based on the facts below, the motions of both plaintiffs should be denied because:

a.    EACH PLAINTIFF RECOGNIZED HIS/HER OBLIGATION TO GIVE DEFENDANT KLEIN WARNING OF A POTENTIAL DEFAULT BUT THEN THE NEXT DAY, FILED THEIR REQUESTS FOR DEFAULT.   DEFENDANT RESPONDED PROMPTLY BUT PLAINTIFFS FAILED TO RESPOND TO HIS REQUEST TO STIPULATE TO SET ASIDE THE DEFAULT SO THE ANSWERS COULD BE FILED.  THE COURT SHOULD

PERMIT THE ANSWERS REFERRED TO BELOW TO BE FILED.

b. SUBSEQUENTLY EACH PLAINTIFF FILED AMENDMENTS TO THEIR CLAIMS SUBSTANTIALLY INCREASING THEM. TAKING THE POSITION THAT THIS "OPENED" THE DEFAULTS, DEFENDANT HAS FILED ANSWERS TO THE MOTIONS AS AMENDED BY THE AMENDED CLAIMS, NO OBJECTION HAS BEEN RECEIVED OR MOTION TO STRIKE OR OTHERWISE SET ASIDE SUCH ANSWERS BY REASON OF SUCH ANSWERS DEFAULT JUDGMENTS SHOULD BE DENIED.

3. On November 27, 2023 the Attorney for Plaintiff Berger sent the letter dated November 27, 2023 attached as Exhibit A warning of Proposed Default. He also sent an identical letter on behalf of the Mermelstein Plaintiffs.

4. The authorities cited by the Attorney regarding warning include reference to Weil & Brown, Civil Procedure Before Trial (Rutter 2007) 5:68- 5.70. In 5.71 Rutter states: "PRACTICE POINTER If you're representing plaintiff and have had *any* contact with a lawyer representing defendant, don't even *attempt* to get a default entered

DECLARATION OF ERIC J. OLSON RE: MOTIONS FOR DEFAULT JUDGMENT BY BERGER AND MERMELSTEIN
- 2 -

without giving such lawyer written notice of your intent to request entry

of default, *and a reasonable time within which time within which*

*defendant's pleading must be filed to prevent your doing so.* [Fasuyi v.

Permatex, Inc., supra 167 CA4th at 701...[quoting text]

5.    At an earlier time, when I was attorney of record for Mr. Klein, I

dealt with the attorney for Plaintiffs herein and prepared a stipulation

for extension to plead which both parties signed and the Court

approved.

6.    Mr. Klein contacted us on or about November 28, 2023 to draft

answers for him. On or about November 28, 2023 I asked my assistant

to check the dockets and he reported that such Plaintiffs had already

requested entry of default. I sent the attorney a letter on November 29,

2023, a copy of which, together with the additional sections from Rutter

that I referred to therein as Exhibit B. I never heard back from him.

7.    On December 8, 2023 I followed up with an email, a copy of

which is attached as Exhibit C. I never heard back from him.

8.    I was informed that there was a status conference on or about

December 20, 2023 where Mr. Klein was instructed to present his

grounds for being permitted to file answers and set aside the defaults

at hearings scheduled 2/14/24. Such grounds appear herein.

9.    Subsequently in each case the Plaintiff(s) filed amendments to their claims and I revised the draft answers referred to in Exhibit C for Mr. Klein and had my assistant present them for filing on his behalf. Such Answers were filed and conformed copies are attached hereto as Exhibit D (as to Berger) and E (as to Mermelstein). I have not heard directly or indirectly from the attorney for Plaintiffs about them.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and executed at Pasadena, California this February 2, 2024.

Eric J. Olson

| In re: LESLIE KLEIN | Chapter: 11 |
|---|---|
| Debtor(s) | Case No: 2:23-bk-10990-SK |
| ROBERT & ESTHER MERMELSTEIN | Adv. No: 2:23-ap-01153-SK |

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 301 East Colorado Boulevard, Suite 520, Pasadena, California 91101.

A true and correct copy of the foregoing document described as **DECLARATION OF ERIC J. OLSON IN RESPONSE TO PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On 2/12/2024, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

[x] Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicated method for each person or entity served):
On 2/12/2024, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

[x] Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

- 2 -
**DECLARATION OF ERIC J. OLSON IN RESPONSE TO PLAINTIFF'S MOTION FOR DEFAULT**

**JUDGMENT**

| 1 | 2/12 /2024 | Jasper Pantaleon | *[signature]* |
| 2 | Date | Type Name | Signature |

In re: LESLIE KLEIN — Chapter: 11
Debtor(s) — Case No: 2:23-bk-10990-SK
ROBERT & ESTHER MERMELSTEIN — Adv. No: 2:23-ap-01153-SK

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

- Baruch C. Cohen   bcc@baruchcohenesq.com, paralegal@baruchcohenesq.com
- Michael I. Gottfried mgottfried@elkinskalt.com, cavila@elkinskalt.com, lwageman@elkinskalt.com, docketing@elkinskalt.com
- Nikko Salvatore Stevens   nikko@cym.law, mandi@cym.law
- United States Trustee (LA) ustpregio16.la.ecf@usdoj.gov
- Clarisse Young   youngshumaker@smcounsel.com, levern@smcounsel.com

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL – VIA U.S. MAIL**

Hon. Sandra Klein
U.S. Bankruptcy Court
255 E. Temple Street #1582
Los Angeles, California 90012

- 3 -
**DECLARATION OF ERIC J. OLSON IN RESPONSE TO PLAINTIFF'S MOTION FOR DEFAULT**

**JUDGMENT**

# EXHIBIT A

Law Office of

# Baruch C. Cohen, Esq.

A Professional Law Corporation

---

4929 Wilshire Boulevard, Suite 940
Los Angeles, California 90010-3823
Email: baruchcohen@baruchcohenesq.com

Telephone: (323) 937-4501
Facsimile: (888) 316-6107
bcc4929@gmail.com

November 27, 2023

*Via Email: les.kleinlaw@gmail.com*

Leslie Klein
322 North June Street
Los Angeles, CA 90001

Leslie Klein
14245 Ventura Boulevard, 3rd Floor
Sherman Oaks, CA 91423

Re:   *David Berger vs Leslie Klein, 2:23-ap-01169-SK, Warning of Proposed Default*

Dear Mr. Klein:

Per the Court's Order on Defendant's Motion for Order Dismissing Certain Causes of Action in Complaint, you were supposed to respond to the Complaint by 11-18-2023. As of today, 11-27-2023, you failed to respond to the Complaint. As you are representing yourself in pro per, I am giving you a professional courtesy notice of our intentions to pursue a default against the you.[1]

If you have any questions or comments regarding the above, please do not hesitate to call.

Respectfully,

*Baruch Cohen*

BARUCH C. COHEN
cc:   David Berger
D:\DATA\DOCS\BERGER-2\WARNING OF PROPOSED DEFAULT.wpd
11/27-9:50am

---

[1]Pursuant to: Section 15 of the State Bar's enacted California Attorney Guidelines of Civility and Professionalism; *Shapell Socal Rental Properties, LLC v. Chico's FAS, Inc.,* (2019) 36 Cal.App.5th at 134,137, No. G060411, 2022 Cal. App. LEXIS 854 (Ct. App. Oct. 17, 2022); ; *Fasuyi v. Permatex, Inc.,* 84 Cal. Rptr. 3d 351 (Cal. Ct. App. 2008), quoting *Au-Yang v. Barton,* 90 Cal. Rptr. 2d 227 (1999)); *Lasalle v. Vogel,* 36 Cal. App. 5th 127, 248 Cal. Rptr. 3d 263 (2019); *Pearson v. Continental Airlines,* (1970) 11 Cal.3d 613, 619); Weil & Brown, Civil Procedure Before Trial (Rutter 2007) 5:68-5:70

# Eric J. Olson
Attorney at Law

T: (818) 245 2246
C: (626) 224 5619
www.EJOlsonLaw.com
Eric@EJOlsonLaw.com

November 29, 2023

Baruch C. Cohen, Esq.          email: baruchcohen@baruchcohenesq.com

Re: Mermelstein v. Leslie Klein – Case No. 2:23-ap-01153-SK
    Berger v. Leslie Klein – Case No. 2:23-ap-01169-SK

Dear Mr. Cohen:

I am writing regarding your letters dated November 27 "Warning of Proposed Default".

Mr. Klein, who is still in pro se, requested that I contact you to advise that I have been asked to assist him in drafting answers. To my surprise, my assistant advised that he found notices from the Clerk that your office had submitted requests to enter default yesterday and they were entered.

I am requesting that you confirm that you will stipulate to setting aside the default to permit him to file his answers (which I would contemplate tendering to the Court with the stipulation). That would be consistent with 9th Circuit authority. See *Ahanchian v. Xenon Pictures, Inc.* (9th Cir 2010). See also Civil Procedure Before Trial (TRG) 5.29-5.29.1(b). I hope to have answers ready by December 8, 2023.

Mr. Klein is still in pro se as he seeks to engage a new "real" bankruptcy lawyer.

I understand that the Court has urged the parties to see if they cannot mediate the various complaints and we hope to have arrangements soon.

Very truly yours,

*Eric Olson*

Eric Olson

301 E. Colorado Blvd, Ste 520, Pasadena, CA 91101

**(b) Examples**

1) **[5:27]** In a personal injury action, if summons is served by substitute service, D's response is not due until *40 days* after copies of the summons and complaint were *mailed* to defendant (10 days after the mailing, plus 30 days to respond), whereas if D had been served personally, he or she would have had only 30 days to respond.

2) **[5:28]** In an unlawful detainer action, if the summons and complaint are served personally, D has only 5 days within which to file a responsive pleading, but if substitute service is used, D would have *15 days* after copies are *mailed*.

**(2) [5:29] Where time extended:** Defendant's time to respond to the complaint may be extended, either by stipulation with plaintiff's counsel (limited to 15 days—Gov.C. §68616), or by court order on a showing of "good cause" (limited to 30 days without adverse party's consent—CCP §1054).

**(a) [5:29.1] Duty to extend:** Unless time is of the essence, judges expect counsel to grant a request for extension within the 15-day limitation imposed by Gov.C. §68616, so as to obviate the need for defendant making an ex parte application which the court is likely to grant.

Some local rules recommend that consideration be given to an opponent's "schedule of professional and personal engagements" and that no unfair and extraneous conditions be attached to a stipulated extension of time to plead. [See L.A. Sup.Ct. Rule 3.26, App. 3.A(a)]

*Civility Guidelines:*

— "Unless time is of the essence, an attorney should agree to an extension without requiring motions or other formalities, regardless of whether the requesting counsel previously refused to grant an extension;

— "An attorney should place conditions on an agreement to an extension only if they are fair and essential or if the attorney is entitled to impose them, for instance to preserve rights or seek reciprocal scheduling concessions." [State Bar California Attorney Guidelines of Civility and Professionalism §6]

As stated by one court, "*We do not approve of the 'hardball' tactics unfortunately used by some law*

firms today . . . Where, as here, there is no indication of bad faith, prejudice or undue delay, *attorneys should not oppose reasonable requests for extensions* of time brought by their adversaries." [*Ahanchian v. Xenon Pictures, Inc.* (9th Cir. 2010) 624 F3d 1253, 1263 (emphasis added; internal quotes omitted) (citing Cal. Attorney Guidelines of Civility & Prof. §6)]

(b) [5:29.2] **Duty to warn?** On expiration of the extension, plaintiff's counsel may request entry of defendant's default. *However*, where the time to respond was extended by stipulation, plaintiff's *duty to warn* before entry of default is *particularly strong.* Entry of default immediately upon expiration of the extension, without prior warning to defense counsel, is a professional discourtesy and would almost certainly be set aside. *See ¶5:68 ff.*

*Civility Guideline:* An attorney should not take the default of an opposing party known to be represented by counsel without giving the party advance warning. [State Bar California Attorney Guidelines of Civility and Professionalism §15]

(c) [5:29.3] **Limitation:** Parties may not stipulate to more than one 15-day extension of time to plead without court order. [Gov.C. §68616, *see ¶6:386*; CRC 3.110(d)]

(d) [5:29.4] **Application for further extension:** The court may extend the time to respond *sua sponte* or on a party's application. [CRC 3.110(e)]

A party's application for an order extending the time to *serve any pleading* (complaint, cross-complaint, or responsive pleading) must be filed with the court *before the time for service* has expired. In addition, the application must be accompanied by a declaration:
— "showing why service has not been completed;
— "documenting the efforts that have been made to complete service; and
— "specifying the date by which service is proposed to be completed." [CRC 3.110(e)]

*FORM:* The application for further extension may be made on optional Judicial Council form CM-020, Ex Parte Application for Extension of Time to Serve Pleading and Orders.

*See Form 5:2* in Rivera, *Cal. Prac. Guide: Civ. Pro. Before Trial FORMS* (TRG).

# EXHIBIT C

## Eric@EJOlsonLaw.com

| | |
|---|---|
| **From:** | eric@EJOlsonLaw.com |
| **Sent:** | Friday, December 8, 2023 1:03 PM |
| **To:** | baruchcohen@baruchcohenlaw.com |
| **Subject:** | FW: klein - ltr cohen 11-29-23a |
| **Attachments:** | klein - ltr cohen 11-29-23a.pdf |

Mr. Cohen, I am writing to follow up on this letter. As estimated I have a draft answer and would like to reiterate my request to let me prepare a suitable stipulation and get the answer on file as part of moving forward to attempting to mediate a resolution to this matter. Please let me know.

Note New Address

*Eric J Olson*
E J Olson Law
301 E. Colorado Blvd. Ste 520
Pasadena, CA 91101
T: 818 245 2246
C: 626 224 5619
Eric@EJOlsonLaw.com

**From:** eric@EJOlsonLaw.com <eric@EJOlsonLaw.com>
**Sent:** Wednesday, November 29, 2023 4:36 PM
**To:** baruchcohen@baruchcohenesq.com
**Subject:** klein - ltr cohen 11-29-23a

Note New Address

*Eric J Olson*
E J Olson Law
301 E. Colorado Blvd. Ste 520
Pasadena, CA 91101
T: 818 245 2246
C: 626 224 5619
Eric@EJOlsonLaw.com

1

# EXHIBIT D

Leslie Klein
322 North June Street
Los Angeles, California 90004
TELEPHONE: (818) 501-2663
EMAIL: les.kleinlaw@gmail.com

**FILED**
JAN 02 2024
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ Deputy Clerk

**FILED**
JAN 02 2023
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ Deputy Clerk

Debtor In Pro Se

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No.: 2:23-bk-10990-SK |
| LESLIE KLEIN, | Chapter 11 |
| Debtor | Adv. No.: 2:23-ap-01169-SK |
| | |
| DAVID BERGER, | **ANSWER TO COMPLAINT TO DENY DISCHARGE OF DEBT AND DENIAL OF DISCHARGE (AS AMENDED BY PROOF OF CLAIM DATED DECEMBER 19, 2023)** |
| Plaintiff, | |
| v. | |
| LESLIE KLEIN, | Place:    Courtroom 1575 |
| Defendant. | |

Comes now the Defendant, Leslie Klein (**"Defendant"**) for himself only, and for his answer to the Complaint to Deny Discharge of Debt and Denial of Discharge (the **"Complaint"**) filed by David Berger (the **"Plaintiff"**), and states as follows:

## PREFACE

Plaintiff caused a request for entry default to be filed November 28, 2023 and Default was entered thereon November 29, 2023. Plaintiff filed Proof of Claim dated December 19, 2023 thereby opening the default.

- 1 -

ANSWER TO COMPLAINT TO DENY DISCHARGE OF DEBT AND DENIAL OF DISCHARGE

## CORE/NON-CORE DESIGNATION

1. The Defendant admits the allegations contained in paragraph 1 of the Complaint.

## JURISDICTION, VENUE & STANDING

2. The Defendant admits the allegations contained in paragraph 2 of the Complaint.

3. The Defendant admits the allegations contained in paragraph 3 of the Complaint.

4. The Defendant admits the allegations contained in paragraph 4 of the Complaint except the Plaintiff has filed a Proof of Claim dated December 19, 2023.

## PARTIES

5. The Defendant admits the allegations contained in paragraph 5 of the Complaint.

6. The Defendant admits the allegations contained in paragraph 6 of the Complaint.

7. The Defendant admits the allegations contained in paragraph 7 of the Complaint except that the second sentence (including footnote) should be striken.

## GENERAL ALLEGATIONS

8-21. The Defendant generally denies all material allegations contained in paragraphs 8-21 of the Complaint and further alleges that Plaintiff has filed a Proof of Claim on December 19, 2023 increasing the alleged damages to $12,010,958.83; Defendant generally denies all material allegations contained in said Proof of Claim.

## PLAINTIFF's DISCOVERY OF DEFENDANT'S FRAUD

22. The Defendant denies the allegations contained in paragraph 22 of the Complaint.

## FIRST CLAIM FOR RELIEF

### (Nondischargeability of Debt – 11 U.S.C §523(a)(2)(A))

23-30. The Defendant generally denies all material allegations contained in paragraphs 23-30 of the Complaint and further alleges that Plaintiff has filed a Proof of

ANSWER TO COMPLAINT TO DENY DISCHARGE OF DEBT AND DENIAL OF DISCHARGE

1   Claim on December 19, 2023 increasing the alleged damages to $12,010,958.83

2   Defendant generally denies all material allegations contained in said Proof of Claim.

3
4                           **SECOND CLAIM FOR RELIEF**

5              **(Nondischargeability of Debt – 11 U.S.C. §523(a)(4))**

6       **31-37.** The Defendant generally denies all material allegations contained in

7   paragraphs 31-37 of the Complaint and further alleges that Plaintiff has filed a Proof of

8   Claim on December 19, 2023 increasing the alleged damages to $12,010,958.83

9   Defendant generally denies all material allegations contained in said Proof of Claim.

10
11                          **THIRD CLAIM FOR RELIEF**

12             **(Nondischargeability of Debt – 11 U.S.C. §523(a)(6))**

13      **38-44.** The Defendant generally denies all material allegations contained in

14  paragraphs 38-44 of the Complaint and further alleges that Plaintiff has filed a Proof of

15  Claim on December 19, 2023 increasing the alleged damages to $12,010,958.83

16  Defendant generally denies all material allegations contained in said Proof of Claim.

17
18                          **FOURTH CLAIM FOR RELIEF**

19           **(Objection to Debtor's Discharge – 11 U.S.C. §727(a)(2)(A))**

20      **45-52.** Fourth Claim for Relief is dismissed by Order dated November 9, 2023.

21
22                          **FIFTH CLAIM FOR RELIEF**

23           **(Objection to Debtor's Discharge – 11 U.S.C. §727(a)(2)(B))**

24      **53-60.** Fifth Claim for Relief is dismissed by Order dated November 9, 2023.

25                          **SIXTH CLAIM FOR RELIEF**

26           **(Objection to Debtor's Discharge – 11 U.S.C. §727(a)(3))**

27      **61-65.** Sixth Claim for Relief is dismissed by Order dated November 9, 2023.

28

ANSWER TO COMPLAINT TO DENY DISCHARGE OF DEBT AND DENIAL OF DISCHARGE

## SEVENTH CLAIM FOR RELIEF

### (Objection to Debtor's Discharge – 11 U.S.C. §727(a)(4))

66-74. Seventh Claim for Relief is dismissed by Order dated November 9, 2023.

## EIGHTH CLAIM FOR RELIEF

### (Objection to Debtor's Discharge – 11 U.S.C. §727(a)(5))

75-77. Eighth Claim for Relief is dismissed by Order dated November 9, 2023.

## FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim for which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

As a separate and affirmative defense, Defendant is informed and believes and on that basis avers that Plaintiff and each person whose rights it purports to assert have unclean hands, and Plaintiff accordingly is barred from relief against Defendant for any reason stated in the Complaint or any purported Claim for Relief therein.

## THIRD AFFIRMATIVE DEFENSE

As a separate and affirmative defense, Defendant avers that the Complaint, and each purported Claim for Relief therein, is uncertain, ambiguous, and unintelligible.

## FOURTH AFFIRMATIVE DEFENSE

As a separate and affirmative, Defendant is informed and believes and on that basis avers that all equitable relief sought in the Complaint, and each purported Claim for Relief therein, is barred by laches.

## FIFTH AFFIRMATIVE DEFENSE

As a separate and affirmative, Defendant is informed and believes and on that basis avers that Plaintiff and each person whose rights it purports to assert are estopped from

ANSWER TO COMPLAINT TO DENY DISCHARGE OF DEBT AND DENIAL OF DISCHARGE

1  asserting each and every purported Claim for Relief in the Complaint, or from seeking

2  any relief thereby.

### SIXTH AFFIRMATIVE DEFENSE

As a separate and affirmative, Defendant is informed and believes and on that basis avers

that Plaintiff and each person whose rights it purports to assert have waived any and all

right to relief against Defendant for any reason stated in the Complaint or any purported

Claim for Relief therein and that the claims contained in the Complaint are subject to

setoff and/or recoupment.

### SEVENTH AFFIRMATIVE DEFENSE

As a separate and affirmative defense to each and every cause of action of the Complaint,

Defendants allege that Plaintiff is barred from recovery against Defendants, in whole or

in part, because Plaintiff has failed to satisfy conditions or obligations precedent to

Defendants' performance of the contract or contracts.

### EIGHT AFFIRMATIVE DEFENSE

As a separate and affirmative defense to each and every cause of action of the Complaint,

Defendants allege that Plaintiff's claims are barred by the doctrine of release and waiver.

### NINTH AFFIRMATIVE DEFENSE

As a separate and affirmative defense to each and every cause of action of the Complaint,

Defendants allege that Plaintiff's claims are barred by the doctrine of equitable estoppel.

### TENTH AFFIRMATIVE DEFENSE

As a separate and affirmative defense to each and every cause of action of the Complaint,

Defendants allege that Plaintiff's claims are barred or reduced by their failure to mitigate

their damages.

ANSWER TO COMPLAINT TO DENY DISCHARGE OF DEBT AND DENIAL OF DISCHARGE

## ELEVENTH AFFIRMATIVE DEFENSE

As a separate and affirmative defense to each and every cause of action of the Complaint, Defendants allege that Plaintiff's claims are barred because Plaintiff's consented to Defendant's actions.

## TWELFTH AFFIRMATIVE DEFENSE

Defendants reserve their rights to assert additional defenses as and when they learn of all the claims asserted against them, whether submitted or not, and as their discovery and investigation continues.

WHEREFORE, Defendant, respectfully requests an entry of order.

- • Dismissing the Complaint as Amended by the Proof of Claim with prejudice;

- • Entitling Defendant to recover the costs incurred in defending this action, including attorney's fees; and

- • Granting such other and further relief as this Court deems just and proper.

Dated: December ___, 2023

LESLIE KLEIN
Defendant

ANSWER TO COMPLAINT TO DENY DISCHARGE OF DEBT AND DENIAL OF DISCHARGE

**ELEVENTH AFFIRMATIVE DEFENSE**

As a separate and affirmative defense to each and every cause of action of the Complaint, Defendants allege that Plaintiff's claims are barred because Plaintiff's consented to Defendant's actions

**TWELFTH AFFIRMATIVE DEFENSE**

Defendants reserve their rights to assert additional defenses as and when they learn of all the claims asserted against them, whether submitted or not, and as their discovery and investigation continues

WHEREFORE, Defendant, respectfully requests an entry of order.

- Dismissing the Complaint as Amended by the Proof of Claim with prejudice;

- Entitling Defendant to recover the costs incurred in defending this action, including attorney's fees; and

- Granting such other and further relief as this Court deems just and proper.

Dated: December 26, 2023

LESLIE KLEIN
Defendant

| AAIn re: LESLIE KLEIN | Chapter: 11 |
| Debtor(s) | Case No: 2:23-bk-10990-SK |
| DAVID BERGER | Adv. No: 2:23-ap-01169-SK |

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 301 East Colorado Boulevard, Suite 520, Pasadena, California 91101.

A true and correct copy of the foregoing document described as **ANSWER TO COMPLAINT TO DENY DISCHARGE OF DEBT AND DENIAL OF DISCHARGE** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On 12/ /2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

[x] Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicated method for each person or entity served):
On 12/ /2023, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

[x] Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

12/ /2023        Eric J. Olson
Date              Type Name              Signature

- 7 -
ANSWER TO COMPLAINT TO DENY DISCHARGE OF DEBT AND DENIAL OF DISCHARGE

| In re: LESLIE KLEIN | Chapter: 11 |
| Debtor(s) | Case No: 2:23-bk-10990-SK |
| DAVID BERGER | Adv. No: 2:23-ap-01169-SK |

## I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")

- Baruch C. Cohen    bcc@baruchcohenesq.com,
  paralegal@baruchcohenesq.com
- Michael I. Gottfried    mgottfried@elkinskalt.com, cavila@elkinskalt.com,
  lwageman@elkinskalt.com, docketing@elkinskalt.com
- Nikko Salvatore Stevens    nikko@cym.law, mandi@cym.law
- United States Trustee (LA) ustpregion16.la.ecf@esdoj.gov

## II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL – VIA U.S. MAIL

Hon. Sandra Klein
U.S. Bankruptcy Court
255 E. Temple Street #1582
Los Angeles, California 90012

- 8 -
ANSWER TO COMPLAINT TO DENY DISCHARGE OF DEBT AND DENIAL OF DISCHARGE

# EXHIBIT E

**FILED**

JAN 12 2024

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                    Deputy Clerk

Leslie Klein
322 North June Street
Los Angeles, California 90004
TELEPHONE: (818) 501-2663
EMAIL: les.kleinlaw@gmail.com

Debtor In Pro Se

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No.: 2:23-bk-10990-SK |
| LESLIE KLEIN, | Chapter 11 |
| Debtor. | Adv. No.: 2:23-ap-01153-SK |
| ROBERT & ESTHER MERMELSTEIN, | |
| Plaintiffs, | **ANSWER TO COMPLAINT TO DENY DISCHARGE OF DEBT AND DENIAL OF DISCHARGE (AS AMENDED BY AMENDED PROOF OF CLAIM FILED 1/10/2024)** |
| v. | |
| LESLIE KLEIN, | Place:        Courtroom 1575 |
| Defendant. | |

Comes now the Defendant, Leslie Klein ("**Defendant**") for himself only, and for his answer to the Complaint to Deny Discharge of Debt and Denial of Discharge (the "**Complaint**") filed by Robert Mermelstein and Esther Mermelstein (the "**Plaintiffs**"), and states as follows:

## PREFACE

Plaintiff caused a request for entry default to be filed November 28, 2023 and Default was entered thereon November 28, 2023. Plaintiff filed 6 amended Proof of Claim dated January 10, 2024 thereby opening the default.

- 1 -
ANSWER TO COMPLAINT TO DENY DISCHARGE OF DEBT AND DENIAL OF DISCHARGE

## CORE/NON-CORE DESIGNATION

1. The Defendant admits the allegations contained in paragraph 1 of the Complaint, and consents to entry of final orders or judgment by the bankruptcy court.

## JURISDICTION, VENUE & STANDING

2. The Defendant admits the allegations contained in paragraph 2 of the Complaint.

3. The Defendant admits the allegations contained in paragraph 3 of the Complaint.

4. The Defendant admits the allegations contained in paragraph 4 of the Complaint.

## PARTIES

5. The Defendant admits the allegations contained in paragraph 5 of the Complaint.

6. The Defendant admits the allegations contained in paragraph 6 of the Complaint.

7. The Defendant admits the allegations contained in paragraph 7 of the Complaint.

## GENERAL ALLEGATIONS

8-36. The Defendant generally denies all material allegations contained in paragraphs 8-36 of the Complaint and refers to the proceedings in the underlying state court action and other proceedings relating to the funds alleged. The judgment alleged has been appealed.

## PERIODIC PAYMENTS TO PLAINTIFFS FROM DEFENDANT'S IOLTA ACCOUNT

37. The Defendant denies the allegations contained in paragraph 37 of the Complaint.

## PLAINTIFF'S DISCOVERY OF DEFENDANT'S FRAUD

38-40. The Defendant generally denies all material allegations contained in paragraphs 38-40 of the Complaint and refers to the proceedings in the underlying state court action and other proceedings relating to the funds alleged. The judgment alleged has been appealed.

-1-
ANSWER TO COMPLAINT TO DENY DISCHARGE OF DEBT AND DENIAL OF DISCHARGE

## PLAINTIFFS' PROOF OF CLAIMS

41. The Defendant denies the allegations contained in paragraph 38 of the Complaint.

### FIRST CLAIM FOR RELIEF

### (Nondischargeability of Debt – 11 U.S.C §523(a)(2)(A))

42-49. The Defendant generally denies all material allegations contained in paragraphs 42-49 of the Complaint and refers to the proceedings in the underlying state court action and other proceedings relating to the funds alleged. The judgment alleged has been appealed.

### SECOND CLAIM FOR RELIEF

### (Nondischargeability of Debt – 11 U.S.C. §523(a)(4))

50-56. The Defendant generally denies all material allegations contained in paragraphs 50-56 of the Complaint and refers to the proceedings in the underlying state court action and other proceedings relating to the funds alleged. The judgment alleged has been appealed.

### THIRD CLAIM FOR RELIEF

### (Nondischargeability of Debt – 11 U.S.C. §523(a)(6))

57-63. The Defendant generally denies all material allegations contained in paragraphs 57-63 of the Complaint and refers to the proceedings in the underlying state court action and other proceedings relating to the funds alleged. The judgment alleged has been appealed.

### FOURTH CLAIM FOR RELIEF

### (Objection to Debtor's Discharge – 11 U.S.C. §727(a)(2)(A))

64-71. Fourth Claim for Relief is dismissed by Order dated November 8, 2023.

- 3 -
ANSWER TO COMPLAINT TO DENY DISCHARGE OF DEBT AND DENIAL OF DISCHARGE

1

## FIFTH CLAIM FOR RELIEF

2

### (Objection to Debtor's Discharge – 11 U.S.C. §727(a)(2)(B))

3

72-79. Fifth Claim for Relief is dismissed by Order dated November 8, 2023.

4

## SIXTH CLAIM FOR RELIEF

5

### (Objection to Debtor's Discharge – 11 U.S.C. §727(a)(3))

6

7

80-84. Sixth Claim for Relief is dismissed by Order dated November 8, 2023.

8

## SEVENTH CLAIM FOR RELIEF

9

### (Objection to Debtor's Discharge – 11 U.S.C. §727(a)(4))

10

85-93. Seventh Claim for Relief is dismissed by Order dated November 8, 2023.

11

12

## EIGHTH CLAIM FOR RELIEF

13

### (Objection to Debtor's Discharge – 11 U.S.C. §727(a)(5))

14

94-96. Eighth Claim for Relief is dismissed by Order dated November 8, 2023.

15

## FIRST AFFIRMATIVE DEFENSE

16

17

The Complaint fails to state a claim for which relief can be granted.

18

## SECOND AFFIRMATIVE DEFENSE

19

As a separate and affirmative defense, Defendant is informed and believes and on

20

that basis avers that Plaintiff and each person whose rights it purports to assert have

21

22

unclean hands, and Plaintiff accordingly is barred from relief against Defendant for any

reason stated in the Complaint or any purported Claim for Relief therein.

23

24

## THIRD AFFIRMATIVE DEFENSE

25

As a separate and affirmative defense, Defendant avers that the Complaint, and

26

each purported Claim for Relief therein, is uncertain, ambiguous, and unintelligible.

27

//

28

- 4 -
**ANSWER TO COMPLAINT TO DENY DISCHARGE OF DEBT AND DENIAL OF DISCHARGE**

## FOURTH AFFIRMATIVE DEFENSE

As a separate and affirmative, Defendant is informed and believes and on that basis avers that all equitable relief sought in the Complaint, and each purported Claim for Relief therein, is barred by laches.

## FIFTH AFFIRMATIVE DEFENSE

As a separate and affirmative, Defendant is informed and believes and on that basis avers that Plaintiff and each person whose rights it purports to assert are estopped from asserting each and every purported Claim for Relief in the Complaint, or from seeking any relief thereby.

## SIXTH AFFIRMATIVE DEFENSE

As a separate and affirmative, Defendant is informed and believes and on that basis avers that Plaintiff and each person whose rights it purports to assert have waived any and all right to relief against Defendant for any reason stated in the Complaint or any purported Claim for Relief therein and that the claims contained in the Complaint are subject to setoff and/or recoupment.

## SEVENTH AFFIRMATIVE DEFENSE

As a separate and affirmative defense to each and every cause of action of the Complaint, Defendants allege that Plaintiff is barred from recovery against Defendants, in whole or in part, because Plaintiff has failed to satisfy conditions or obligations precedent to Defendants' performance of the contract or contracts.

//

## EIGHT AFFIRMATIVE DEFENSE

As a separate and affirmative defense to each and every cause of action of the Complaint, Defendants allege that Plaintiff's claims are barred by the doctrine of release and waiver.

## NINTH AFFIRMATIVE DEFENSE

As a separate and affirmative defense to each and every cause of action of the Complaint, Defendants allege that Plaintiff's claims are barred by the doctrine of equitable estoppel.

## TENTH AFFIRMATIVE DEFENSE

As a separate and affirmative defense to each and every cause of action of the Complaint, Defendants allege that Plaintiff's claims are barred or reduced by their failure to mitigate their damages.

## ELEVENTH AFFIRMATIVE DEFENSE

As a separate and affirmative defense to each and every cause of action of the Complaint, Defendants allege that Plaintiff's claims are barred because Plaintiff's consented to Defendant's actions.

## TWELFTH AFFIRMATIVE DEFENSE

Defendants reserve their rights to assert additional defenses as and when they learn of all the claims asserted against them, whether submitted or not, and as their discovery and investigation continues.

**WHEREFORE**, Defendant, respectfully requests an entry of order.

- Dismissing the Complaint with prejudice;

- 6 -
ANSWER TO COMPLAINT TO DENY DISCHARGE OF DEBT AND DENIAL OF DISCHARGE

1      • Entitling Defendant to recover the costs incurred in defending this

2      action, including attorney's fees; and

3      • Granting such other and further relief as this Court deems just and

4      proper.

5

6

7    Dated: January ____, 2024

8

9

10                              LESLIE KLEIN
                                Defendant
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 7 -
ANSWER TO COMPLAINT TO DENY DISCHARGE OF DEBT AND DENIAL OF DISCHARGE



| In re: LESLIE KLEIN | Chapter: 11 |
| Debtor(s) | Case No: 2:23-bk-10990-SK |
| ROBERT & ESTHER MERMELSTEIN | Adv. No: 2:23-ap-01153-SK |

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 301 East Colorado Boulevard, Suite 520, Pasadena, California 91101.

A true and correct copy of the foregoing document described as **ANSWER TO COMPLAINT TO DENY DISCHARGE OF DEBT AND DENIAL OF DISCHARGE** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On 1/ /2024, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

[x] Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL (indicated method for each person or entity served):**
On 1/ /2024, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

[x] Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_1/ /2024_          _Eric J. Olson_
Date                 Type Name                    Signature

- 8 -
**ANSWER TO COMPLAINT TO DENY DISCHARGE OF DEBT AND DENIAL OF DISCHARGE**

| In re: LESLIE KLEIN | Chapter: 11 |
| Debtor(s) | Case No: 2:23-bk-10990-SK |
| ROBERT & ESTHER MERMELSTEIN | Adv. No: 2:23-ap-01153-SK |

## I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")

- Baruch C. Cohen   bcc@baruchcohenesq.com,
  paralegal@baruchcohenesq.com
- Michael I. Gottfried mgottfried@elkinskalt.com, cavila@elkinskalt.com,
  lwageman@elkinskalt.com, docketing@elkinskalt.com
- Nikko Salvatore Stevens   nikko@cym.law, mandi@cym.law
- United States Trustee (LA) ustpregio16.la.ecf@usdoj.gov
- Clarisse Young      youngshumaker@smcounsel.com, levern@smcounsel.com

## II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL – VIA U.S. MAIL

Hon. Sandra Klein
U.S. Bankruptcy Court
255 E. Temple Street #1582
Los Angeles, California 90012

- 9 -
ANSWER TO COMPLAINT TO DENY DISCHARGE OF DEBT AND DENIAL OF DISCHARGE

# EXHIBIT IV B

1 | Leslie Klein
2 | 322 North June Street
    Los Angeles, California 90004
3 | TELEPHONE: (818) 501-2663
    EMAIL: les.kleinlaw@gmail.com
4 |
5 | Debtor In Pro Se

FILED

FEB 1 2 2024

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                    Deputy Clerk

6 |        UNITED STATES BANKRUPTCY COURT

7 |          CENTRAL DISTRICT OF CALIFORNIA

8 |               LOS ANGELES DIVISION

9 | In re                          | Case No.: 2:23-bk-10990-SK
10 |
11 | LESLIE KLEIN,                  | Chapter 11
12 |        Debtor.                 | Adv. No.: 2:23-ap-01169-SK
13 |
14 | DAVID BERGER,                  | DECLARATION OF ERIC J. OLSON IN
                                     RESPONSE TO PLAINTIFF'S MOTION
15 |        Plaintiff,              | FOR DEFAULT JUDGMENT
16 |
17 |    v.                         | Place:    Courtroom 1575
                                     Date:     February 14, 2024
18 | LESLIE KLEIN,                  | Time:     9:00 A.M.
19 |        Defendant.
20 |
21 |        Comes now the Defendant, Leslie Klein ("Defendant") for himself only, and for

22 | his response to the Motion for Default Judgment (the "Motion") filed by David Berger

23 | (the "Plaintiff") presents the attached Declaration of Eric J. Olson:

24 | Dated: February 9, 2024

25 |

26 |

27 | LESLIE KLEIN
    Defendant
28 |

- 1 -
DECLARATION OF ERIC J. OLSON IN RESPONSE TO PLAINTIFF'S MOTION FOR DEFAULT
JUDGMENT

1  Leslie Klein
2  322 North June Street
   Los Angeles, California 90004
3  TELEPHONE: (818) 501-2663
   EMAIL: les.kleinlaw@gmail.com
4
5  Debtor In Pro Se

FILED

FEB 1 2 2024

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                      Deputy Clerk

6           UNITED STATES BANKRUPTCY COURT

7            CENTRAL DISTRICT OF CALIFORNIA

8                  LOS ANGELES DIVISION

9  | In re | Case No.: 2:23-bk-10990-SK |
10 | | |
11 | LESLIE KLEIN, | Chapter 11 |
12 | Debtor. | Adv. No.: 2:23-ap-01169-SK |
13 | | |
14 | DAVID BERGER, | DECLARATION OF ERIC J. OLSON IN RESPONSE TO PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT |
15 | Plaintiff, | |
16 | | |
17 | v. | Place:    Courtroom 1575 |
18 | LESLIE KLEIN, | Date:     February 14, 2024 Time:     9:00 A.M. |
19 | Defendant. | |
20

21       Comes now the Defendant, Leslie Klein ("Defendant") for himself only, and for

22  his response to the Motion for Default Judgment (the "Motion") filed by David Berger

23  (the "Plaintiff") presents the attached Declaration of Eric J. Olson:

24  Dated: February 7, 2024

25

26

27                                      LESLIE KLEIN
                                         Defendant
28

                                     - 1 -
    DECLARATION OF ERIC J. OLSON IN RESPONSE TO PLAINTIFF'S MOTION FOR DEFAULT

                                  JUDGMENT

| In re: LESLIE KLEIN | Chapter: 11 |
| Debtor(s) | Case No: 2:23-bk-10990-SK |
| DAVID BERGER | Adv. No: 2:23-ap-01169-SK |

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 301 East Colorado Boulevard, Suite 520, Pasadena, California 91101.

A true and correct copy of the foregoing document described as **DECLARATION OF ERIC J. OLSON IN RESPONSE TO PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On 2/12/2024, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

[x] Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicated method for each person or entity served):
On 2/12/2024, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

[x] Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 2/12/2024 | Jasper Pantaleon | |
|---|---|---|
| Date | Type Name | Signature |

- 2 -
DECLARATION OF ERIC J. OLSON IN RESPONSE TO PLAINTIFF'S MOTION FOR DEFAULT

JUDGMENT

| In re: LESLIE KLEIN | Chapter: 11 |
|---|---|
| Debtor(s) | Case No: 2:23-bk-10990-SK |
| DAVID BERGER | Adv. No: 2:23-ap-01169-SK |

## I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")

- Baruch C. Cohen    bcc@baruchcohenesq.com,
  paralegal@baruchcohenesq.com
- Michael I. Gottfried   mgottfried@elkinskalt.com, cavila@elkinskalt.com,
  lwagerman@elkinskalt.com, docketing@elkinskalt.com
- Nikko Salvatore Stevens    nikko@cym.law, mandi@cym.law
- United States Trustee (LA) ustpregion16.la.ecf@esdoj.gov

## II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL – VIA U.S. MAIL

Hon. Sandra Klein
U.S. Bankruptcy Court
255 E. Temple Street #1582
Los Angeles, California 90012

- 3 -
**DECLARATION OF ERIC J. OLSON IN RESPONSE TO PLAINTIFF'S MOTION FOR DEFAULT**

**JUDGMENT**

## DECLARATION OF ERIC J OLSON RE MOTIONS FOR DEFAULT

## JUDGMENT BY BERGER AND MERMELSTEIN

ERIC OLSON states:

1.    I am an attorney at law, at one period I appeared on behalf of Leslie Klein while he engaged a bankruptcy lawyer, but I was substituted out in favor of the bankruptcy lawyer. Subsequently I have, without appearing, consulted with Mr. Klein and drafted documents for him in pro se. All matters set forth herein are based on my own first-hand knowledge unless stated otherwise and I am competent to testify thereto.

2.    Based on the facts below, the motions of both plaintiffs should be denied because:

a.    EACH PLAINTIFF RECOGNIZED HIS/HER OBLIGATION TO GIVE DEFENDANT KLEIN WARNING OF A POTENTIAL DEFAULT BUT THEN THE NEXT DAY, FILED THEIR REQUESTS FOR DEFAULT.   DEFENDANT RESPONDED PROMPTLY BUT PLAINTIFFS FAILED TO RESPOND TO HIS REQUEST TO STIPULATE TO SET ASIDE THE DEFAULT SO THE ANSWERS COULD BE FILED.   THE COURT SHOULD

PERMIT THE ANSWERS REFERRED TO BELOW TO BE FILED.

b.    SUBSEQUENTLY    EACH    PLAINTIFF    FILED AMENDMENTS TO THEIR CLAIMS SUBSTANTIALLY INCREASING THEM.  TAKING THE POSITION THAT THIS "OPENED" THE DEFAULTS, DEFENDANT HAS FILED ANSWERS TO THE MOTIONS AS AMENDED BY THE AMENDED CLAIMS, NO OBJECTION HAS BEEN RECEIVED OR MOTION TO STRIKE OR OTHERWISE SET ASIDE SUCH ANSWERS. BY REASON OF SUCH ANSWERS DEFAULT JUDGMENTS SHOULD BE DENIED.

3.    On November 27, 2023 the Attorney for Plaintiff Berger sent the letter dated November 27, 2023 attached as Exhibit A warning of Proposed Default. He also sent an identical letter on behalf of the Mermelstein Plaintiffs.

4.    The authorities cited by the Attorney regarding warning include reference to Weil & Brown, Civil Procedure Before Trial (Rutter 2007) 5:68- 5.70. In 5.71 Rutter states: "PRACTICE POINTER If you're representing plaintiff and have had *any* contact with a lawyer representing defendant, don't even *attempt* to get a default entered

DECLARATION OF ERIC J. OLSON RE: MOTIONS FOR DEFAULT JUDGMENT BY BERGER AND
MERMELSTEIN
- 2 -

without giving such lawyer written notice of your intent to request entry of default, *and a reasonable time within which time within which defendant's pleading must be filed to prevent your doing so.* [Fasuyi v. Permatex, Inc., supra 167 CA4th at 701...[quoting text]

5.    At an earlier time, when I was attorney of record for Mr. Klein, I dealt with the attorney for Plaintiffs herein and prepared a stipulation for extension to plead which both parties signed and the Court approved.

6.    Mr. Klein contacted us on or about November 28, 2023 to draft answers for him. On or about November 28, 2023 I asked my assistant to check the dockets and he reported that such Plaintiffs had already requested entry of default. I sent the attorney a letter on November 29, 2023, a copy of which, together with the additional sections from Rutter that I referred to therein as Exhibit B. I never heard back from him.

7.    On December 8, 2023 I followed up with an email, a copy of which is attached as Exhibit C. I never heard back from him.

8.    I was informed that there was a status conference on or about December 20, 2023 where Mr. Klein was instructed to present his grounds for being permitted to file answers and set aside the defaults at hearings scheduled 2/14/24. Such grounds appear herein.

DECLARATION OF ERIC J. OLSON RE: MOTIONS FOR DEFAULT JUDGMENT BY BERGER AND MERMELSTEIN
- 3 -

9.      Subsequently in each case the Plaintiff(s) filed amendments to their claims and I revised the draft answers referred to in Exhibit C for Mr. Klein and had my assistant present them for filing on his behalf. Such Answers were filed and conformed copies are attached hereto as Exhibit D (as to Berger) and E (as to Mermelstein). I have not heard directly or indirectly from the attorney for Plaintiffs about them.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and executed at Pasadena, California this February 2, 2024.

Eric J. Olson

DECLARATION OF ERIC J. OLSON RE: MOTIONS FOR DEFAULT JUDGMENT BY BERGER AND MERMELSTEIN
- 4 -

| In re: LESLIE KLEIN | Chapter: 11 |
| | Case No: 2:23-bk-10990-SK |
| | Adv. No: 2:23-ap-01169-SK |
| Debtor(s) | |
| DAVID BERGER | |

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 301 East Colorado Boulevard, Suite 520, Pasadena, California 91101.

A true and correct copy of the foregoing document described as **DECLARATION OF ERIC J. OLSON IN RESPONSE TO PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On 2/12/2024, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

[x] Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicated method for each person or entity served):
On 2/12/2024, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

[x] Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 2/12/2024 | Jasper Pantaleon | |
| Date | Type Name | Signature |

- 2 -
DECLARATION OF ERIC J. OLSON IN RESPONSE TO PLAINTIFF'S MOTION FOR DEFAULT

JUDGMENT

| In re: LESLIE KLEIN | Chapter: 11 |
|---|---|
| Debtor(s) | Case No: 2:23-bk-10990-SK |
| DAVID BERGER | Adv. No: 2:23-ap-01169-SK |

## I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")

- Baruch C. Cohen   bcc@baruchcohenesq.com, paralegal@baruchcohenesq.com
- Michael I. Gottfried  mgottfried@elkinskalt.com, cavila@elkinskalt.com, lwageman@elkinskalt.com, docketing@elkinskalt.com
- Nikko Salvatore Stevens   nikko@cym.law, mandi@cym.law
- United States Trustee (LA) ustpregion16.la.ecf@esdoj.gov

## II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL – VIA U.S. MAIL

Hon. Sandra Klein
U.S. Bankruptcy Court
255 E. Temple Street #1582
Los Angeles, California 90012

- 3 -
**DECLARATION OF ERIC J. OLSON IN RESPONSE TO PLAINTIFF'S MOTION FOR DEFAULT**

**JUDGMENT**

# EXHIBIT A

Law Office of
# Baruch C. Cohen, Esq.
A Professional Law Corporation

4929 Wilshire Boulevard, Suite 940
Los Angeles, California 90010-3823
Email: baruchcohen@baruchcohenesq.com

Telephone: (323) 937-4501
Facsimile: (888) 316-6107
bcc4929@gmail.com

November 27, 2023

*Via Email: les.kleinlaw@gmail.com*

Leslie Klein
322 North June Street
Los Angeles, CA 90001

Leslie Klein
14245 Ventura Boulevard, 3rd Floor
Sherman Oaks, CA 91423

Re:  *David Berger vs Leslie Klein, 2:23-ap-01169-SK, Warning of Proposed Default*

Dear Mr. Klein:

Per the Court's Order on Defendant's Motion for Order Dismissing Certain Causes of Action in Complaint, you were supposed to respond to the Complaint by 11-18-2023. As of today, 11-27-2023, you failed to respond to the Complaint. As you are representing yourself in pro per, I am giving you a professional courtesy notice of our intentions to pursue a default against the you.[1]

If you have any questions or comments regarding the above, please do not hesitate to call.

Respectfully,

Baruch Cohen

BARUCH C. COHEN
cc:  David Berger
D:\DATA\DOCS\BERGER-2\WARNING OF PROPOSED DEFAULT.wpd
11/27-9:50am

---

[1]Pursuant to: Section 15 of the State Bar's enacted California Attorney Guidelines of Civility and Professionalism; *Shapell Socal Rental Properties, LLC v. Chico's FAS, Inc.,* (2019) 36 Cal.App.5th at 134,137, No. G060411, 2022 Cal. App. LEXIS 854 (Ct. App. Oct. 17, 2022); ; *Fasuyi v. Permatex, Inc.,* 84 Cal. Rptr. 3d 351 (Cal. Ct. App. 2008), quoting *Au-Yang v. Barton,* 90 Cal. Rptr. 2d 227 (1999)); *Lasalle v. Vogel,* 36 Cal. App. 5th 127, 248 Cal. Rptr. 3d 263 (2019); *Pearson v. Continental Airlines,* (1970) 11 Cal.3d 613, 619); Weil & Brown, Civil Procedure Before Trial (Rutter 2007) 5:68-5:70

Page 1 of 1

# EXHIBIT B

# Eric J. Olson
Attorney at Law

T: (818) 245 2246
C: (626) 224 5619
www.EJOlsonLaw.com
Eric@EJOlsonLaw.com

November 29, 2023

Baruch C. Cohen, Esq.          email: baruchcohen@baruchcohenesq.com

Re: Mermelstein v. Leslie Klein – Case No. 2:23-ap-01153-SK
    Berger v. Leslie Klein – Case No. 2:23-ap-01169-SK

Dear Mr. Cohen:

I am writing regarding your letters dated November 27 "Warning of Proposed Default".

Mr. Klein, who is still in pro se, requested that I contact you to advise that I have been asked to assist him in drafting answers. To my surprise, my assistant advised that he found notices from the Clerk that your office had submitted requests to enter default yesterday and they were entered.

I am requesting that you confirm that you will stipulate to setting aside the default to permit him to file his answers (which I would contemplate tendering to the Court with the stipulation). That would be consistent with 9th Circuit authority. See *Ahanchian v. Xenon Pictures, Inc.* (9th Cir 2010). See also Civil Procedure Before Trial (TRG) 5.29-5.29.1(b). I hope to have answers ready by December 8, 2023.

Mr. Klein is still in pro se as he seeks to engage a new "real" bankruptcy lawyer.

I understand that the Court has urged the parties to see if they cannot mediate the various complaints and we hope to have arrangements soon.

Very truly yours,

*Eric Olson*

Eric Olson

301 E. Colorado Blvd, Ste 520, Pasadena, CA 91101

(b) **Examples**

1) [5:27] In a personal injury action, if summons is served by substitute service, D's response is not due until *40 days* after copies of the summons and complaint were *mailed* to defendant (10 days after the mailing, plus 30 days to respond), whereas if D had been served personally, he or she would have had only 30 days to respond.

2) [5:28] In an unlawful detainer action, if the summons and complaint are served personally, D has only 5 days within which to file a responsive pleading, but if substitute service is used, D would have *15 days* after copies are *mailed.*

(2) [5:29] **Where time extended:** Defendant's time to respond to the complaint may be extended, either by stipulation with plaintiff's counsel (limited to 15 days—Gov.C. §68616), or by court order on a showing of "good cause" (limited to 30 days without adverse party's consent—CCP §1054).

(a) [5:29.1] **Duty to extend:** Unless time is of the essence, judges expect counsel to grant a request for extension within the 15-day limitation imposed by Gov.C. §68616, so as to obviate the need for defendant making an ex parte application which the court is likely to grant.

Some local rules recommend that consideration be given to an opponent's "schedule of professional and personal engagements" and that no unfair and extraneous conditions be attached to a stipulated extension of time to plead. [See L.A. Sup.Ct. Rule 3.26, App. 3.A(a)]

*Civility Guidelines:*
— "Unless time is of the essence, an attorney should agree to an extension without requiring motions or other formalities, regardless of whether the requesting counsel previously refused to grant an extension;
— "An attorney should place conditions on an agreement to an extension only if they are fair and essential or if the attorney is entitled to impose them, for instance to preserve rights or seek reciprocal scheduling concessions." [State Bar California Attorney Guidelines of Civility and Professionalism §6]

As stated by one court, "*We do not approve of the 'hardball' tactics unfortunately used by some law*

*firms today . . . Where, as here, there is no indication of bad faith, prejudice or undue delay, attorneys should not oppose reasonable requests for extensions of time brought by their adversaries."* [*Ahanchian v. Xenon Pictures, Inc.* (9th Cir. 2010) 624 F3d 1253, 1263 (emphasis added; internal quotes omitted) (citing Cal. Attorney Guidelines of Civility & Prof. §6)]

(b) [5:29.2]  **Duty to warn?**  On expiration of the extension, plaintiff's counsel may request entry of defendant's default.  *However,* where the time to respond was extended by stipulation, plaintiff's *duty to warn* before entry of default is *particularly strong.* Entry of default immediately upon expiration of the extension, without prior warning to defense counsel, is a professional discourtesy and would almost certainly be set aside. *See ¶5:68 ff.*

*Civility Guideline:* An attorney should not take the default of an opposing party known to be represented by counsel without giving the party advance warning. [State Bar California Attorney Guidelines of Civility and Professionalism §15]

(c) [5:29.3]  **Limitation:**  Parties may not stipulate to more than one 15-day extension of time to plead without court order. [Gov.C. §68616, *see ¶6:386;* CRC 3.110(d)]

(d) [5:29.4]  **Application for further extension:**  The court may extend the time to respond *sua sponte* or on a party's application. [CRC 3.110(e)]

A party's application for an order extending the time to *serve any pleading* (complaint, cross-complaint, or responsive pleading) must be filed with the court *before the time for service* has expired. In addition, the application must be accompanied by a declaration:
— "showing why service has not been completed;
— "documenting the efforts that have been made to complete service; and
— "specifying the date by which service is proposed to be completed." [CRC 3.110(e)]

***FORM:***  The application for further extension may be made on optional Judicial Council form CM-020, Ex Parte Application for Extension of Time to Serve Pleading and Orders.

*See Form 5:2* in Rivera, *Cal. Prac. Guide: Civ. Pro. Before Trial FORMS* (TRG).

# EXHIBIT C

**Eric@EJOlsonLaw.com**

| | |
|---|---|
| **From:** | eric@EJOlsonLaw.com |
| **Sent:** | Friday, December 8, 2023 1:03 PM |
| **To:** | baruchcohen@baruchcohenlaw.com |
| **Subject:** | FW: klein - ltr cohen 11-29-23a |
| **Attachments:** | klein - ltr cohen 11-29-23a.pdf |

Mr. Cohen, I am writing to follow up on this letter. As estimated I have a draft answer and would like to reiterate my request to let me prepare a suitable stipulation and get the answer on file as part of moving forward to attempting to mediate a resolution to this matter. Please let me know.

Note New Address

*Eric J Olson*
E J Olson Law
301 E. Colorado Blvd. Ste 520
Pasadena, CA 91101
T: 818 245 2246
C: 626 224 5619
Eric@EJOlsonLaw.com

**From:** eric@EJOlsonLaw.com <eric@EJOlsonLaw.com>
**Sent:** Wednesday, November 29, 2023 4:36 PM
**To:** baruchcohen@baruchcohenesq.com
**Subject:** klein  ltr cohen 11-29-23a

Note New Address

*Eric J Olson*
E J Olson Law
301 E. Colorado Blvd. Ste 520
Pasadena, CA 91101
T: 818 245 2246
C: 626 224 5619
Eric@EJOlsonLaw.com

1

EXHIBIT D



1  Leslie Klein
   322 North June Street
2  Los Angeles, California 90004
3  TELEPHONE: (818) 501-2663
   EMAIL: les.kleinlaw@gmail.com
4
5  Debtor In Pro Se

6               UNITED STATES BANKRUPTCY COURT

7               CENTRAL DISTRICT OF CALIFORNIA

8                    LOS ANGELES DIVISION

9  In re                          Case No.: 2:23-bk-10990-SK
10
   LESLIE KLEIN,                   Chapter 11
11
12      Debtor                     Adv. No.: 2:23-ap-01169-SK

13

14                                 ANSWER TO COMPLAINT TO DENY
   DAVID BERGER,                   DISCHARGE OF DEBT AND DENIAL OF
15                                 DISCHARGE (AS AMENDED BY PROOF
        Plaintiff,                 OF CLAIM DATED DECEMBER 19,
16                                 2023)
17      v.

18 LESLIE KLEIN,                   Place:      Courtroom 1575

19      Defendant.

20

21      Comes now the Defendant, Leslie Klein ("**Defendant**") for himself only, and for

22 his answer to the Complaint to Deny Discharge of Debt and Denial of Discharge (the

23 "**Complaint**") filed by David Berger (the "**Plaintiff**"), and states as follows:

24                        **PREFACE**

25

26      Plaintiff caused a request for entry default to be filed November 28, 2023 and

27 Default was entered thereon November 29, 2023. Plaintiff filed Proof of Claim dated

28 December 19, 2023 thereby opening the default.

                                - 1 -
ANSWER TO COMPLAINT TO DENY DISCHARGE OF DEBT AND DENIAL OF DISCHARGE

## CORE/NON-CORE DESIGNATION

1. The Defendant admits the allegations contained in paragraph 1 of the Complaint.

## JURISDICTION, VENUE & STANDING

2. The Defendant admits the allegations contained in paragraph 2 of the Complaint.

3. The Defendant admits the allegations contained in paragraph 3 of the Complaint.

4. The Defendant admits the allegations contained in paragraph 4 of the Complaint

except the Plaintiff has filed a Proof of Claim dated December 19, 2023.

## PARTIES

5. The Defendant admits the allegations contained in paragraph 5 of the Complaint.

6. The Defendant admits the allegations contained in paragraph 6 of the Complaint.

7. The Defendant admits the allegations contained in paragraph 7 of the Complaint

except that the second sentence (including footnote) should be striken.

## GENERAL ALLEGATIONS

8-21. The Defendant generally denies all material allegations contained in paragraphs

8-21 of the Complaint and further alleges that Plaintiff has filed a Proof of Claim on

December 19, 2023 increasing the alleged damages to $12,010,958.83; Defendant

generally denies all material allegations contained in said Proof of Claim.

## PLAINTIFF's DISCOVERY OF DEFENDANT'S FRAUD

22. The Defendant denies the allegations contained in paragraph 22 of the Complaint.

## FIRST CLAIM FOR RELIEF

### (Nondischargeability of Debt – 11 U.S.C §523(a)(2)(A))

23-30. The Defendant generally denies all material allegations contained in

paragraphs 23-30 of the Complaint and further alleges that Plaintiff has filed a Proof of

- 2 -
ANSWER TO COMPLAINT TO DENY DISCHARGE OF DEBT AND DENIAL OF DISCHARGE

1 Claim on December 19, 2023 increasing the alleged damages to $12,010,958.83.

2 Defendant generally denies all material allegations contained in said Proof of Claim.

3
### SECOND CLAIM FOR RELIEF
4

5 ### (Nondischargeability of Debt – 11 U.S.C. §523(a)(4))

6 31-37. The Defendant generally denies all material allegations contained in

7 paragraphs 31-37 of the Complaint and further alleges that Plaintiff has filed a Proof of

8 Claim on December 19, 2023 increasing the alleged damages to $12,010,958.83.

9 Defendant generally denies all material allegations contained in said Proof of Claim.

10
### THIRD CLAIM FOR RELIEF
11

12 ### (Nondischargeability of Debt – 11 U.S.C. §523(a)(6))

13 38-44. The Defendant generally denies all material allegations contained in

14 paragraphs 38-44 of the Complaint and further alleges that Plaintiff has filed a Proof of

15 Claim on December 19, 2023 increasing the alleged damages to $12,010,958.83.

16

17 Defendant generally denies all material allegations contained in said Proof of Claim.

18
### FOURTH CLAIM FOR RELIEF

19 ### (Objection to Debtor's Discharge – 11 U.S.C. §727(a)(2)(A))

20 45-52. Fourth Claim for Relief is dismissed by Order dated November 9, 2023.

21
### FIFTH CLAIM FOR RELIEF
22

23 ### (Objection to Debtor's Discharge – 11 U.S.C. §727(a)(2)(B))

24 53-60. Fifth Claim for Relief is dismissed by Order dated November 9, 2023.

25
### SIXTH CLAIM FOR RELIEF
26

### (Objection to Debtor's Discharge – 11 U.S.C. §727(a)(3))

27
61-65. Sixth Claim for Relief is dismissed by Order dated November 9, 2023.
28

- 3 -
ANSWER TO COMPLAINT TO DENY DISCHARGE OF DEBT AND DENIAL OF DISCHARGE

### SEVENTH CLAIM FOR RELIEF

### (Objection to Debtor's Discharge – 11 U.S.C. §727(a)(4))

**66-74.** Seventh Claim for Relief is dismissed by Order dated November 9, 2023

### EIGHTH CLAIM FOR RELIEF

### (Objection to Debtor's Discharge – 11 U.S.C. §727(a)(5))

**75-77.** Eighth Claim for Relief is dismissed by Order dated November 9, 2023.

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim for which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

As a separate and affirmative defense, Defendant is informed and believes and on that basis avers that Plaintiff and each person whose rights it purports to assert have unclean hands, and Plaintiff accordingly is barred from relief against Defendant for any reason stated in the Complaint or any purported Claim for Relief therein.

### THIRD AFFIRMATIVE DEFENSE

As a separate and affirmative defense, Defendant avers that the Complaint, and each purported Claim for Relief therein, is uncertain, ambiguous, and unintelligible.

### FOURTH AFFIRMATIVE DEFENSE

As a separate and affirmative, Defendant is informed and believes and on that basis avers that all equitable relief sought in the Complaint, and each purported Claim for Relief therein, is barred by laches.

### FIFTH AFFIRMATIVE DEFENSE

As a separate and affirmative, Defendant is informed and believes and on that basis avers that Plaintiff and each person whose rights it purports to assert are estopped from

ANSWER TO COMPLAINT TO DENY DISCHARGE OF DEBT AND DENIAL OF DISCHARGE

asserting each and every purported Claim for Relief in the Complaint, or from seeking

any relief thereby.

### SIXTH AFFIRMATIVE DEFENSE

As a separate and affirmative, Defendant is informed and believes and on that basis avers

that Plaintiff and each person whose rights it purports to assert have waived any and all

right to relief against Defendant for any reason stated in the Complaint or any purported

Claim for Relief therein and that the claims contained in the Complaint are subject to

setoff and/or recoupment.

### SEVENTH AFFIRMATIVE DEFENSE

As a separate and affirmative defense to each and every cause of action of the Complaint,

Defendants allege that Plaintiff is barred from recovery against Defendants, in whole or

in part, because Plaintiff has failed to satisfy conditions or obligations precedent to

Defendants' performance of the contract or contracts.

### EIGHT AFFIRMATIVE DEFENSE

As a separate and affirmative defense to each and every cause of action of the Complaint,

Defendants allege that Plaintiff's claims are barred by the doctrine of release and waiver.

### NINTH AFFIRMATIVE DEFENSE

As a separate and affirmative defense to each and every cause of action of the Complaint,

Defendants allege that Plaintiff's claims are barred by the doctrine of equitable estoppel.

### TENTH AFFIRMATIVE DEFENSE

As a separate and affirmative defense to each and every cause of action of the Complaint,

Defendants allege that Plaintiff's claims are barred or reduced by their failure to mitigate

their damages.

## ELEVENTH AFFIRMATIVE DEFENSE

As a separate and affirmative defense to each and every cause of action of the Complaint, Defendants allege that Plaintiff's claims are barred because Plaintiff's consented to Defendant's actions.

## TWELFTH AFFIRMATIVE DEFENSE

Defendants reserve their rights to assert additional defenses as and when they learn of all the claims asserted against them, whether submitted or not, and as their discovery and investigation continues.

    **WHEREFORE**, Defendant, respectfully requests an entry of order.

- Dismissing the Complaint as Amended by the Proof of Claim with prejudice;

- Entitling Defendant to recover the costs incurred in defending this action, including attorney's fees; and

- Granting such other and further relief as this Court deems just and proper.

Dated: December ___, 2023


                                    LESLIE KLEIN
                                      Defendant

ANSWER TO COMPLAINT TO DENY DISCHARGE OF DEBT AND DENIAL OF DISCHARGE

Main Document    Page 431 of 473

Case 2:23-ap-01169-SK    Doc 54    Filed 02/12/24    Entered 02/12/24 13:43:24    Desc
Case 2:23-ap-01169-SK    Main Document    Filed 01/03/24    Page 25 of 39    Entered 01/03/24 14:30:30    Desc
Main Document    Page 7 of 9

**ELEVENTH AFFIRMATIVE DEFENSE**

As a seventh and affirmative defense to each and every cause of action of the Complaint, Defendants allege that Plaintiff's claims are barred because Plaintiff's consented to Defendant's actions

**TWELFTH AFFIRMATIVE DEFENSE**

Defendants reserve their rights to assert additional defenses as and when they learn of all the claims asserted against them, whether submitted or not, and as their discovery and investigation continues

WHEREFORE, Defendant, respectfully requests an entry of order.

- Dismissing the Complaint as Amended by the Proof of Claim with prejudice;

- Entering Defendant to recover the costs incurred in defending the action, including attorney's fees; and

- Granting such other and further relief as this Court deems just and proper.

Dated: December 21, 2023

_____
**LESLIE KLEIN**
**Defendant**

| AAIn re: LESLIE KLEIN | Chapter: 11 |
|---|---|
| Debtor(s) | Case No: 2:23-bk-10990-SK |
| DAVID BERGER | Adv. No: 2:23-ap-01169-SK |

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 301 East Colorado Boulevard, Suite 520, Pasadena, California 91101.

A true and correct copy of the foregoing document described as **ANSWER TO COMPLAINT TO DENY DISCHARGE OF DEBT AND DENIAL OF DISCHARGE** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On 12/ /2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

[x] Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL (indicated method for each person or entity served):**
On 12/ /2023, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

[x] Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 12/ /2023 | Eric J. Olson | |
|---|---|---|
| Date | Type Name | Signature |

- 7 -
ANSWER TO COMPLAINT TO DENY DISCHARGE OF DEBT AND DENIAL OF DISCHARGE

| In re: LESLIE KLEIN | Chapter: 11 |
|---|---|
| Debtor(s) | Case No: 2:23-bk-10990-SK |
| DAVID BERGER | Adv. No: 2:23-ap-01169-SK |

## I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")

- Baruch C. Cohen   bcc@baruchcohenesq.com, paralegal@baruchcohenesq.com
- Michael I. Gottfried   mgottfried@elkinskalt.com, cavila@elkinskalt.com, lwageman@elkinskalt.com, docketing@elkinskalt.com
- Nikko Salvatore Stevens   nikko@cym.law, mandi@cym.law
- United States Trustee (LA) ustpregion16.la.ecf@esdoj.gov

## II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL – VIA U.S. MAIL

Hon. Sandra Klein
U.S. Bankruptcy Court
255 E. Temple Street #1582
Los Angeles, California 90012

- 8 -
ANSWER TO COMPLAINT TO DENY DISCHARGE OF DEBT AND DENIAL OF DISCHARGE

# EXHIBIT E

Leslie Klein
322 North June Street
Los Angeles, California 90004
TELEPHONE: (818) 501-2663
EMAIL: les.kleinlaw@gmail.com

**FILED**

**JAN 12 2024**

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:_____ Deputy Clerk

Debtor In Pro Se

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No.: 2:23-bk-10990-SK |
| LESLIE KLEIN, | Chapter 11 |
| Debtor. | Adv. No.: 2:23-ap-01153-SK |
| ROBERT & ESTHER MERMELSTEIN, | **ANSWER TO COMPLAINT TO DENY DISCHARGE OF DEBT AND DENIAL OF DISCHARGE (AS AMENDED BY AMENDED PROOF OF CLAIM FILED 1/10/2024)** |
| Plaintiffs, | |
| v. | |
| LESLIE KLEIN, | |
| Defendant. | Place:      Courtroom 1575 |

Comes now the Defendant, Leslie Klein ("**Defendant**") for himself only, and for his answer to the Complaint to Deny Discharge of Debt and Denial of Discharge (the "**Complaint**") filed by Robert Mermelstein and Esther Mermelstein (the "**Plaintiffs**"), and states as follows:

## PREFACE

Plaintiff caused a request for entry default to be filed November 28, 2023 and Default was entered thereon November 28, 2023. Plaintiff filed 6 amended Proof of Claim dated January 10, 2024 thereby opening the default.

- 1 -
ANSWER TO COMPLAINT TO DENY DISCHARGE OF DEBT AND DENIAL OF DISCHARGE

## CORE/NON-CORE DESIGNATION

1. The Defendant admits the allegations contained in paragraph 1 of the Complaint and consents to entry of final orders or judgment by the bankruptcy court.

## JURISDICTION, VENUE & STANDING

2. The Defendant admits the allegations contained in paragraph 2 of the Complaint.

3. The Defendant admits the allegations contained in paragraph 3 of the Complaint.

4. The Defendant admits the allegations contained in paragraph 4 of the Complaint.

## PARTIES

5. The Defendant admits the allegations contained in paragraph 5 of the Complaint.

6. The Defendant admits the allegations contained in paragraph 6 of the Complaint.

7. The Defendant admits the allegations contained in paragraph 7 of the Complaint.

## GENERAL ALLEGATIONS

8-36. The Defendant generally denies all material allegations contained in paragraphs 8-36 of the Complaint and refers to the proceedings in the underlying state court action and other proceedings relating to the funds alleged. The judgment alleged has been appealed.

## PERIODIC PAYMENTS TO PLAINTIFFS FROM DEFENDANT'S IOLTA ACCOUNT

37. The Defendant denies the allegations contained in paragraph 37 of the Complaint.

## PLAINTIFF'S DISCOVERY OF DEFENDANT'S FRAUD

38-40. The Defendant generally denies all material allegations contained in paragraphs 38-40 of the Complaint and refers to the proceedings in the underlying state court action and other proceedings relating to the funds alleged. The judgment alleged has been appealed.

ANSWER TO COMPLAINT TO DENY DISCHARGE OF DEBT AND DENIAL OF DISCHARGE

## PLAINTIFFS' PROOF OF CLAIMS

41. The Defendant denies the allegations contained in paragraph 38 of the Complaint.

## FIRST CLAIM FOR RELIEF

### (Nondischargeability of Debt – 11 U.S.C §523(a)(2)(A))

42-49. The Defendant generally denies all material allegations contained in paragraphs 42-49 of the Complaint and refers to the proceedings in the underlying state court action and other proceedings relating to the funds alleged. The judgment alleged has been appealed.

## SECOND CLAIM FOR RELIEF

### (Nondischargeability of Debt – 11 U.S.C. §523(a)(4))

50-56. The Defendant generally denies all material allegations contained in paragraphs 50-56 of the Complaint and refers to the proceedings in the underlying state court action and other proceedings relating to the funds alleged. The judgment alleged has been appealed.

## THIRD CLAIM FOR RELIEF

### (Nondischargeability of Debt – 11 U.S.C. §523(a)(6))

57-63. The Defendant generally denies all material allegations contained in paragraphs 57-63 of the Complaint and refers to the proceedings in the underlying state court action and other proceedings relating to the funds alleged. The judgment alleged has been appealed.

## FOURTH CLAIM FOR RELIEF

### (Objection to Debtor's Discharge – 11 U.S.C. §727(a)(2)(A))

64-71. Fourth Claim for Relief is dismissed by Order dated November 8, 2023.

- 3 -
**ANSWER TO COMPLAINT TO DENY DISCHARGE OF DEBT AND DENIAL OF DISCHARGE**

## FIFTH CLAIM FOR RELIEF

### (Objection to Debtor's Discharge – 11 U.S.C. §727(a)(2)(B))

72-79. Fifth Claim for Relief is dismissed by Order dated November 8, 2023.

## SIXTH CLAIM FOR RELIEF

### (Objection to Debtor's Discharge – 11 U.S.C. §727(a)(3))

80-84. Sixth Claim for Relief is dismissed by Order dated November 8, 2023.

## SEVENTH CLAIM FOR RELIEF

### (Objection to Debtor's Discharge – 11 U.S.C. §727(a)(4))

85-93. Seventh Claim for Relief is dismissed by Order dated November 8, 2023.

## EIGHTH CLAIM FOR RELIEF

### (Objection to Debtor's Discharge – 11 U.S.C. §727(a)(5))

94-96. Eighth Claim for Relief is dismissed by Order dated November 8, 2023.

## FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim for which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

As a separate and affirmative defense, Defendant is informed and believes and on that basis avers that Plaintiff and each person whose rights it purports to assert have unclean hands, and Plaintiff accordingly is barred from relief against Defendant for any reason stated in the Complaint or any purported Claim for Relief therein.

## THIRD AFFIRMATIVE DEFENSE

As a separate and affirmative defense, Defendant avers that the Complaint, and each purported Claim for Relief therein, is uncertain, ambiguous, and unintelligible.

//

- 4 -
**ANSWER TO COMPLAINT TO DENY DISCHARGE OF DEBT AND DENIAL OF DISCHARGE**

### FOURTH AFFIRMATIVE DEFENSE

As a separate and affirmative, Defendant is informed and believes and on that basis avers that all equitable relief sought in the Complaint, and each purported Claim for Relief therein, is barred by laches.

### FIFTH AFFIRMATIVE DEFENSE

As a separate and affirmative, Defendant is informed and believes and on that basis avers that Plaintiff and each person whose rights it purports to assert are estopped from asserting each and every purported Claim for Relief in the Complaint, or from seeking any relief thereby.

### SIXTH AFFIRMATIVE DEFENSE

As a separate and affirmative, Defendant is informed and believes and on that basis avers that Plaintiff and each person whose rights it purports to assert have waived any and all right to relief against Defendant for any reason stated in the Complaint or any purported Claim for Relief therein and that the claims contained in the Complaint are subject to setoff and/or recoupment.

### SEVENTH AFFIRMATIVE DEFENSE

As a separate and affirmative defense to each and every cause of action of the Complaint, Defendants allege that Plaintiff is barred from recovery against Defendants, in whole or in part, because Plaintiff has failed to satisfy conditions or obligations precedent to Defendants' performance of the contract or contracts.

//

**ANSWER TO COMPLAINT TO DENY DISCHARGE OF DEBT AND DENIAL OF DISCHARGE**

## EIGHT AFFIRMATIVE DEFENSE

As a separate and affirmative defense to each and every cause of action of the Complaint, Defendants allege that Plaintiff's claims are barred by the doctrine of release and waiver.

## NINTH AFFIRMATIVE DEFENSE

As a separate and affirmative defense to each and every cause of action of the Complaint, Defendants allege that Plaintiff's claims are barred by the doctrine of equitable estoppel.

## TENTH AFFIRMATIVE DEFENSE

As a separate and affirmative defense to each and every cause of action of the Complaint, Defendants allege that Plaintiff's claims are barred or reduced by their failure to mitigate their damages.

## ELEVENTH AFFIRMATIVE DEFENSE

As a separate and affirmative defense to each and every cause of action of the Complaint, Defendants allege that Plaintiff's claims are barred because Plaintiff's consented to Defendant's actions.

## TWELFTH AFFIRMATIVE DEFENSE

Defendants reserve their rights to assert additional defenses as and when they learn of all the claims asserted against them, whether submitted or not, and as their discovery and investigation continues.

WHEREFORE, Defendant, respectfully requests an entry of order.

- Dismissing the Complaint with prejudice;

ANSWER TO COMPLAINT TO DENY DISCHARGE OF DEBT AND DENIAL OF DISCHARGE

- Entitling Defendant to recover the costs incurred in defending this action, including attorney's fees; and

- Granting such other and further relief as this Court deems just and proper.

Dated: January ___, 2024


LESLIE KLEIN
Defendant

- 7 -
ANSWER TO COMPLAINT TO DENY DISCHARGE OF DEBT AND DENIAL OF DISCHARGE

| In re: LESLIE KLEIN | Chapter: 11 |
| Debtor(s) | Case No: 2:23-bk-10990-SK |
| ROBERT & ESTHER MERMELSTEIN | Adv. No: 2:23-ap-01153-SK |

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 301 East Colorado Boulevard, Suite 520, Pasadena, California 91101.

A true and correct copy of the foregoing document described as **ANSWER TO COMPLAINT TO DENY DISCHARGE OF DEBT AND DENIAL OF DISCHARGE** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On 1/17/2024, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

[x] Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicated method for each person or entity served):
On 1/17/2024, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

[x] Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

1/17/2024        Eric J. Olson
Date                Type Name                        Signature

- 8 -

ANSWER TO COMPLAINT TO DENY DISCHARGE OF DEBT AND DENIAL OF DISCHARGE

| In re: LESLIE KLEIN | Chapter: 11 |
| Debtor(s) | Case No: 2:23-bk-10990-SK |
| ROBERT & ESTHER MERMELSTEIN | Adv. No: 2:23-ap-01153-SK |

## I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")

- Baruch C. Cohen    bcc@baruchcohenesq.com,
  paralegal@baruchcohenesq.com
- Michael I. Gottfried  mgottfried@elkinskalt.com, cavila@elkinskalt.com,
  lwageman@elkinskalt.com, docketing@elkinskalt.com
- Nikko Salvatore Stevens    nikko@cvm.law, mandi@cvm.law
- United States Trustee (LA) ustpregio16.la.ecf@usdoj.gov
- Clarisse Young    youngshumaker@smcounsel.com, levern@smcounsel.com

## II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL – VIA U.S. MAIL

Hon. Sandra Klein
U.S. Bankruptcy Court
255 E. Temple Street #1582
Los Angeles, California 90012

- 9 -
ANSWER TO COMPLAINT TO DENY DISCHARGE OF DEBT AND DENIAL OF DISCHARGE

EXHIBIT V A

1  Baruch C. Cohen, Esq. (SBN 159455)
   LAW OFFICE OF BARUCH C. COHEN
2      A Professional Law Corporation
   4929 Wilshire Boulevard, Suite 940
3  Los Angeles, California 90010
   Tel: (323) 937-4501   Fax:  (888) 316-6107
4  email: baruchcohen@baruchcohenesq.com

5  *Attorney For Plaintiffs Robert & Esther Mermelstein*

6                    UNITED STATES BANKRUPTCY COURT
                     CENTRAL DISTRICT OF CALIFORNIA
7                        LOS ANGELES DIVISION

8

9  | In re | Case No. 2:23-bk-10990-SK |

10 | LESLIE KLEIN, | Adv. # 2:23-ap-01153-SK |

11 |    Debtor and Debtor in Possession, | Hon.  Sandra Klein |

12 | | Chapter 11 |

13 | ROBERT & ESTHER MERMELSTEIN, | **ROBERT & ESTHER MERMELSTEIN'S** |
                                     **REPLY TO DECLARATION OF ERIC J.**
14 |        Plaintiffs | **OLSON IN RESPONSE TO PLAINTIFF'S** |
                        **MOTION FOR DEFAULT JUDGMENT**
15 | vs. | **[Doc-49]** |

16 | LESLIE KLEIN | Date: 2-14-2024 |
                   Time: 9:00am
17 |        Defendant | Place: 255 E. Temple Street, Los Angeles |
                       Courtroom: 1575

18

19 **TO THE HONORABLE SANDRA R. KLEIN, UNITED STATES BANKRUPTCY**

20 **JUDGE, THE DEBTOR AND HIS COUNSEL, AND ALL OTHER INTERESTED**

21 **PARTIES:**

22     Plaintiffs-Creditors, Robert & Esther Mermelstein ("Plaintiffs"), hereby reply to the

23 Declaration of Eric J. Olson in Response to Plaintiff's Motion for Default Judgment "Olson

24 Declaration") [Doc-49].

25 DATED:      February 7, 2024          LAW OFFICE OF BARUCH C. COHEN
                                        A Professional Law Corporation
26
                                        By ___ /s/ Baruch C. Cohen ___
27                                      Baruch C. Cohen, Esq.
                                        *Attorney For Plaintiffs Robert & Esther*
28                                      *Mermelstein*

1

**TABLE OF CONTENTS**

2

3   MEMORANDUM OF POINTS & AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

4       RELEVANT FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

5       LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-

6               THE OLSON DECLARATION - TO THE EXTENT IT SERVES AS AN

7                       OPPOSITION - IS LATE AND PROPERLY DISREGARDED . . . . . . -4-

8               THE OLSON DECLARATION DOES NOT QUALIFY AS A MOTION TO SET

9                       ASIDE ENTRY OF DEFAULT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-

10              THE OLSON DECLARATION FAILS TO PRESENT "GOOD CAUSE"

11                      GROUNDS UNDER  FRCP 55© AND FRBP 7055, AND FAILS TO

12                      PRESENT EVIDENCE AND GROUNDS  FOR MISTAKE,

13                      INADVERTENCE, SURPRISE, OR EXCUSABLE NEGLECT, UNDER

14                      FRCP 60(B)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-

15              DEFENDANT WAS CULPABLE WHICH LED TO THE DEFAULT . . . . . . -5-

16              DEFENDANT HAS NO MERITORIOUS DEFENSE TO THE COMPLAINT

17                      . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-

18              REOPENING THE LITIGATION PREJUDICES PLAINTIFFS . . . . . . . . . . . -8-

19       CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**

**CASES**

*Falk v. Allen*, 739 F.2d 461 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-

*Franchise Holding II*, 375 F.3d at, 926 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-

*Franchise Holding II, LLC. v. Huntington Restaurants Grp., Inc.*, 375 F.3d 922, 926 (9th Cir.
2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-

*Halper v. Cohen (In re Halper)*, 2019 WL 2762340, BAP No. CC-18-1225-TaLS, at *5 (B.A.P.
9th Cir. Jun. 28, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-

*U.S. v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010)
(citing *Falk v. Allen*, 739 F.2d 461 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-

*U.S. v. Signed Pers. Check*, 615 F.3d 1085 at 1094 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-

**STATUTES**

FRBP 7055 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-

FRBP 9024 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-

FRCP 55(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-

FRCP 60(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-

FRCP 60(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-

LBR 9013-1(f)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-

**OTHER**

1 Schwarzer, Tashima and Wagstaffe, California Practice Guide: Federal Civil Procedure Before
Trial, ¶ 6:150 at 6-40 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-

1    1.    **MEMORANDUM OF POINTS & AUTHORITIES**

2        a.    **RELEVANT FACTS**

3        On 5-12-2023, Plaintiffs Robert & Esther Mermelstein filed the Complaint for

4    Nondischargeability of Debt Pursuant to 11 USC § 523(a)(6) & for Denial of Discharge Pursuant

5    to 11 USC § 727(a) ("Complaint") against the Debtor/Defendant Leslie Klein [Doc-1].

6        On 5-12-203, the Court's *Summons & Notice of Status Conference* ("Summons") [Doc-2-

7    1] set 6-12-2023 as the Defendant's deadline to respond to the Complaint.

8        On 5-17-2023, Plaintiffs filed and served the Complaint, Summons and Early Meeting of

9    Counsel and Status Conference Instructions Effective February 17, 2012 on Defendant [Doc-3].

10       On 6-8-2023, Debtor's counsel Eric Olson ("Olson") contacted Plaintiffs' counsel

11   Baruch Cohen ("Cohen") requesting a 30-day extension to respond to the Complaint, on the

12   representation that the Defendant needed time to retain a "real attorney" for the adversary ("1st

13   Extension Request").

14       On 6-12-2023, the parties executed and signed a Stipulation to Extend Time to Respond

15   to Complaint for Nondischargeability, etc. [Doc-7]

16       On 6-13-2023, the Court signed the Order on Stipulation to Extend Time to Respond to

17   Complaint for Nondischargeability, etc, continuing Defendant's response date to 7-12-2023.

18   [Doc-9].

19       On 7-17-2023, Cohen gave Olson a professional courtesy notice of Plaintiffs' intentions

20   to pursue a default against the Debtor/Defendant, pursuant to Section 15 of the State Bar's

21   enacted California Attorney Guidelines of Civility and Professionalism; *Shapell Socal Rental

22   Properties, LLC v. Chico's FAS, Inc.,* (2019) 36 Cal.App.5th at 134,137, No. G060411, 2022

23   Cal. App. LEXIS 854 (Ct. App. Oct. 17, 2022); *Fasuyi v. Permatex, Inc.*, 84 Cal. Rptr. 3d 351

24   (Cal. Ct. App. 2008), quoting *Au-Yang v. Barton*, 90 Cal. Rptr. 2d 227 (1999)); *Lasalle v. Vogel*,

25   36 Cal. App. 5th 127, 248 Cal. Rptr. 3d 263 (2019); *Pearson v. Continental Airlines*, (1970) 11

26   Cal.3d 613, 619); Weil & Brown, Civil Procedure Before Trial (Rutter 2007) 5:68-5:70.

27

28                                        -1-

1    On 7-17-2023, Olson wrote Cohen that Klein retained counsel to defend the adversary,

2    but declined to inform Cohen who that lawyer was/is, and that he intended to request yet another

3    30-day extension.

4    On 7-18-2023, without a named defense counsel with whom to stipulate with for another

5    extension, Plaintiffs proceeded with the request for default which was entered on that date [Doc-

6    12].

7    On 7-24-2023, Klein susbstituted Michael Kogan as his defense counsel. [Doc-13].

8    On 7-24-2023, the parties filed a Stipulation By Leslie Klein and Stipulation (1) to

9    Extend Time to Respond to Complaint, (2) Withdraw Request for the Clerk to Enter Default, and

10   (3) to Continue Status Conference [Doc-14], which was entered on that date [Doc-16].

11   Defendant's new response date was 8-15-2023 ("2nd Extension Request").

12   On 8-14-2023, Kogan moved to dismiss the 727 causes of action. [Doc-18].

13   On 10-18-2023, the Court held its hearing on Defendant's Motion for Order Dismissing

14   Certain Causes of Action in Complaint [Doc-36], and granted the Motion, dismissing without

15   prejudice causes of action for Denial of Discharge Pursuant to 11 USC § 727(a)(2)(A); 11 USC

16   § 727(a)(2)(B); 11 USC § 727(a)(3); 11 USC § 727(a)(4); 11 USC § 727(a)(5) [Doc-36].

17   Defendant appeared at 5th hearing in pro per and the Court instructed him to respond to the

18   Complaint by 11-18-2023.

19   On 10-19-2023, Kogan moved to withdraw as Klein's counsel [Doc-30].

20   On 11-27-2023, Cohen gave Klein yet another professional courtesy notice of Plaintiffs'

21   intentions to pursue a default against the Defendant, pursuant to Section 15 of the State Bar's

22   enacted California Attorney Guidelines of Civility and Professionalism.

23   On 11-28-2023, this Court entered a default against Klein for Determination of

24   Nondischargeability of Debts and to Deny Discharge pursuant to 11 USC § 523(a)(2)(A), 11

25   USC § 523(a)(4), & 11 USC § 523(a)(6) (Dkt No 41).

26   On 11-29-2023, after the default was entered, Olson resurfaced - without a filed

27

28                                              -2-

1  substitution of attorney - requested yet another stipulation setting aside the default, and a

2  continued response date. See, Olson Declaration, Exhibit"B" [Doc-49] ("3rd Extension

3  Request").

4      On 12-6-2023, Plaintiffs filed their Unilateral Status Report - since Defendant defaulted.

5  [Doc-44]

6      On 12-7-2023, Defendant - in pro per - filed a Unilateral Status Report [Doc-45], wherein

7  Defendant acknowledged that his answer was not filed and might have to file a motion to set

8  aside the default.

9      On 12-8-2023, Olson followed up with Cohen requesting same. See,  See, Olson

10  Declaration, Exhibit "C" [Doc-49]

11      Olson's 11-29-2023 and 12-8-2023 letters ("2nd Extension Request") were irrelevant and

12  nullities since Olson was not counsel of record for Defendant. Olson never substituted into this

13  adversary as counsel for Defendant, admitting that he's not even a "real bankruptcy attorney."

14  Accordingly, his letters to Plaintiff's counsel are of no consequence, as Plaintiff's counsel had no

15  obligation to respond to Defendant's non-lawyer. Plaintiffs, after being victimized by Defendant

16  for so long, and out of so much money, could not in good faith agree to Defendant's further

17  requests for extensions.

18      On 1-10-2024, Plaintiffs filed their Motion for Default Judgment [Doc-46] scheduled for

19  2-14-2024.

20      On 1-12-2024, Defendant filed his Answer to Complaint to Deny Discharge of Debt and

21  Denial of Discharge [Doc-48] - without first setting aside the 11-28-2023 default.

22      On 2-5-2024, Defendant filed the Olson Declaration [Doc-49].

23      b.   **LEGAL ARGUMENT**

24      The Olson Declaration is borne from status quo of Defendant's strategic delay tactics and

25  the Court should deny it. Defendant fails to satisfy all three of the *Falk* factors, notwithstanding

26  that failure to satisfy any is grounds to deny relief to Defendant. The culpability for Defendant's

27

28               -3-

1  failure to file a response by the twice-postponed deadlines rests with Defendant. Moreover, the

2  Olson Declaration does not allege facts constituting defenses to the Complaint. Finally,

3  reopening the litigation prejudices Plaintiffs who will suffer more injury prosecuting the

4  Complaint incurring more fees and costs against Defendant. The Olson Declaration fails under

5  the Falk factors, therefore Defendant's request for relief is properly denied.

6                    i.      **THE OLSON DECLARATION - TO THE EXTENT IT SERVES AS**

7                            **AN OPPOSITION - IS LATE AND PROPERLY DISREGARDED**

8         LBR 9013-1(f)(1) requires opposition to be filed not later than 14 days before the date

9  designated for hearing. The hearing date is 2-14-2024, and any opposition was due 1-31-2024.

10  On 2-5-2024, Defendant filed the Olson Declaration [Doc-49]

11                   ii.     **THE OLSON DECLARATION DOES NOT QUALIFY AS A**

12                           **MOTION TO SET ASIDE ENTRY OF DEFAULT.**

13         FRCP 55(c), incorporated into bankruptcy proceedings by FRBP 7055, allows a court to

14  set aside entry of default for "good cause," and allows the court to set aside default pursuant to

15  FRCP 60(b), incorporated into bankruptcy proceedings by FRBP 9024, wherein the court may

16  grant relief from a final judgment or order for mistake, inadvertence, surprise, or excusable

17  neglect. See FRCP 60(b)(1). Such a motion must be brought within a reasonable time of the

18  court's entry of default. See 1 Schwarzer, Tashima and Wagstaffe, California Practice Guide:

19  Federal Civil Procedure Before Trial, ¶ 6:150 at 6-40 (2011).

20         The Olson Declaration was not filed within a reasonable time. On 11-28-2023, this Court

21  entered a default against Klein [Doc-41], and the Olson Declaration was filed on 2-5-2024, sixty-

22  nine (69) days later.

23         Defendant's 1-5-2024 Answer is also a nullity, since Plaintiff did not first obtain an

24  order setting aside the 11-28-2023 default. Plaintiff had no obligation t move to set aside

25  Defendant's Answer for that reason - it was procedurally improper. Defendant's 1-5-2024

26  Answer is also meritless, since Defendant has provided no authority for his proposition that

27

28                                              -4-

1    Plaintiffs "opened up the default' by filing their Amended Proofs of Claim to reflect the

2    increased interest owed.

3         The Olson Declaration is also a nullity since Eric Olson is not counsel of record for

4    Defendant. Olson did substitute into this adversary as counsel for Defendant – after Kogan

5    withdrew as counsel. Olson admitted that he's not even a bankruptcy attorney. Accordingly,

6    Olson's letters to Plaintiff's counsel are irrelevant, as Cohen had no obligation to respond to

7    Defendant's non-lawyer.

8              iii.    **THE OLSON DECLARATION FAILS TO PRESENT "GOOD**

9                      **CAUSE" GROUNDS UNDER  FRCP 55(c) AND FRBP 7055, AND**

10                     **FAILS TO PRESENT EVIDENCE AND GROUNDS  FOR**

11                     **MISTAKE, INADVERTENCE, SURPRISE, OR EXCUSABLE**

12                     **NEGLECT, UNDER FRCP 60(B)(1).**

13        The Ninth Circuit has explained three factors must be satisfied to meet the "good

14   cause" standard of FRCP 55(c):

15        To determine "good cause", a court must "consider three factors: (1) whether the
          party seeking to set aside the default engaged in culpable conduct that led to the
16        default; (2) whether it had no meritorious defense; or (3) whether reopening the
          default judgment would prejudice the other party ... . This standard, which is the
17        same as is used to determine whether a default judgment should be set aside under
          Rule 60(b), is disjunctive, such that a finding that any one of these factors is true
18        is sufficient reason for the district court to refuse to set aside the default.

19   *U.S. v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010)

20   (citing  *Falk v. Allen*, 739 F.2d 461 (9th Cir. 1984) (the "Falk Factors"). The party seeking to

21   vacate the default bears the burden of proof. See, *Franchise Holding II, LLC. v. Huntington*

22   *Restaurants Grp., Inc.*, 375 F.3d 922, 926 (9th Cir. 2004).

23              iv.    **DEFENDANT WAS CULPABLE WHICH LED TO THE DEFAULT**

24        The Olson Declaration lacks merit under the factors set forth in *Falk v. Allen*, 739 F.2d

25   461 (9th Cir. 1984) that Defendant's culpable conduct led to the default because Defendant had

26   actual knowledge of his deadline to timely respond to the complaint and let the deadline

27

28                                          -5-

1   knowingly and intentionally pass (presumably because Defendant benefitted from two prior

2   stipulations to extend the deadline).

3        "The Ninth Circuit has held that a 'defendant's conduct is culpable for purposes of the

4   Falk factors where there is no explanation of the default inconsistent with a devious, deliberate,

5   willful, or bad faith failure to respond." *Halper v. Cohen (In re Halper)*, 2019 WL 2762340,

6   BAP No. CC-18-1225-TaLS, at *5 (B.A.P. 9th Cir. Jun. 28, 2019). If a defendant "has received

7   actual or constructive notice of the filing of the action and failed to answer, its conduct is

8   culpable." *Franchise Holding II*, 375 F.3d, at 926.

9        In this instance, there is no question that Defendant had actual notice of the extended

10  Response Deadline of 11-18-2023. Per the Court's instructions on 10-18-2023 on Defendant's

11  Motion for Order Dismissing Certain Causes of Action in Complaint [Doc-36], Defendant was at

12  the hearing and was instructed by the Court to respond to the Complaint by 11-18-2023. On 11-

13  27-2023, Cohen gave Klein yet another professional courtesy notice of Plaintiffs' intentions to

14  pursue a default against the Defendant, pursuant to Section 15 of the State Bar's enacted

15  California Attorney Guidelines of Civility and Professionalism. Defendant's 12-7-2023

16  Unilateral Status Report [Doc-45], further acknowledged that his answer was not filed and might

17  have to file a motion to set aside the default.

18       Thus, no argument can be made that Defendant did not have notice—actual or

19  constructive—of the continued Response Deadline of 11-18-2023 and, under controlling Ninth

20  Circuit law, the failure to file a response by the Response Deadline is culpable conduct by

21  Defendant.

22       The Olson Declaration did not raise an argument that excusable neglect exists in this

23  case, and if it did, it would be groundless. The Olson Declaration does not attest to any error,

24  mistake, misunderstanding, or other excuse for failure to comply with the requirement to timely

25  respond to the Complaint. Next, even if it had submitted one, the testimony would lack

26  credibility. A deadline to respond to a complaint and summons is not unique to bankruptcy law

27

28                                              -6-

1  and Olson furthermore demonstrated his familiarity with the importance of such deadline when

2  he requested and obtained the first extension. There is no excusable neglect. Defendant and his

3  non-counsel simply ignored the deadline. This is a prime example of culpable conduct.

4      Defendant is also a (dubious) attorney himself and should understand the importance of a

5  deadline for responding to a complaint, as well as the consequences of missing such a deadline.

6              v.      **DEFENDANT HAS NO MERITORIOUS DEFENSE TO THE**

7                      **COMPLAINT**

8      With regard to this second factor:

9      A defendant seeking to vacate a default judgment must **present specific facts**
       **that would constitute a defense**. But the burden on a party seeking to vacate a
10     default judgment is not extraordinarily heavy... . All that is necessary to satisfy
       the 'meritorious defense' requirement is to allege sufficient facts that, if true,
11     would constitute a defense: 'the question whether the factual allegation is true' is
       not to be determined by the court when it decides the motion to set aside the
12     default ... . Rather, that question 'would be the subject of the later litigation.'
       [Emphasis Added]
13
   *U.S. v. Signed Pers. Check*, 615 F.3d 1085 at 1094.
14
       Here, the Olson Declaration and the Defendant's Answer alleged zero facts that would
15
   constitute a defense to the claims for relief under 11 U.S.C. §§ 523(a)(2)(A), (a)(4), and (a)(6)
16
   (collectively, "523 Claims"). The burden is on Defendant to present the "specific facts" that
17
   would constitute a defense to the 523 Claims. See *Franchise Holding II*, 375 F.3d at, 926. The
18
   Olson Declaration and the Defendant's Answer failed to carry that burden.
19
       There is nothing whatsoever in the Olson Declaration and the Defendant's Answer that
20
   amounts to allegations of "sufficient facts that, if true, would constitute a defense" *(U.S. v.*
21
   *Signed Pers. Check*, supra), nor do they assert any such facts. Instead, Defendant merely, baldly
22
   contends that he has meritorious legal defenses - without specifying the facts supporting them.
23
   This argument does not even come close to addressing the requirement that Defendant "must
24
   present specific facts that would constitute a defense." *U.S. v. Signed Pers. Check*, supra. To
25
   obtain relief from default, the burden is on Defendant to demonstrate a meritorious defense.
26
   Reliance on the fallacious argument "Plaintiff has not proved the elements of those causes of
27

28                                    -7-

1 action" is unavailing.

2       Defendant through the Olson Declaration must prove a meritorious case. This is near to

3 impossible considering the circumstances - Defendant is a criminal, fraudster, thief, a

4 "sophisticated" attorney, and discredited accountant. In Plaintiff's 2-1-2024 Comments to the

5 Chapter 11 Trustee's Third Status Report [Doc-637], Plaintiffs presented the Court with David

6 Levy's 1-25-2024 Proof of Claim # 36-1, which attached a curious 2001 Memorandum

7 Agreement between Klein and Levy dated 5-18-2010, where on page 2 of the agreement, Klein

8 recorded the ownership percentages of the parties of the Kohn policy - policy # US0016289L -

9 showing that Klein had no ownership in the Kohn policy. However, in 2011 Klein made a deal

10 with Life Capital ("LCG") without informing Mermelstein - and without informing LCG - that

11 he did not have ownership in the Kohn policy. Levy's Proof of Claim adds major fuel to the

12 existing fire of Klein's brazen fraud to Plaintiffs (Klein charged Levy premiums up to 2023 even

13 though he allegedly sold the Kohn Policy to LCG in 2011) and raises serious questions whether

14 Klein's sale of the Kohn Policy to LCG was valid - since Klein sold something he did not own

15 under his name.

16       vi.     **REOPENING THE LITIGATION PREJUDICES PLAINTIFFS**

17       "Under *Falk*, the question for prejudice is whether the plaintiff's ability to pursue

18 its claim will be hindered" and attorneys' fees incurred by the non-defaulting party "are

19 a significant source of prejudice." *Halper*, supra at *6.

20       Here, Plaintiffs will be prejudiced if the Olson Declaration somehow constituted an

21 effective Motion in that they will be forced to incur additional and duplicative attorneys' fees to

22 potentially relitigate facts and issues for which Defendant has no defense (as acknowledged by

23 his failure to even allege facts to contest the allegations of the Complaint). Defendant wants to

24 delay and waste time litigating against the Complaint. But Plaintiff does not. More delay is the

25 sole motivation for the Olson Declaration, a tactic overused by Defendant.

26     c.    **CONCLUSION**

27

28                       -8-

1      Plaintiffs understand the preference for judgment on the merits. But this is not that. The

2  Olson Declaration proffers no excuse for the neglect of Defendant. The [late and procedurally

3  improper] Olson Declaration does not proffer the requisite showing of a defense based on the

4  merits - because there is no defense. The burden is on Defendant and he failed to carry it.

5      Based on the foregoing, Plaintiff requests the [late and procedurally improper] Olson

6  Declaration be disregarded, in that Defendant has failed to carry his burden to show the absence

7  of all or frankly any of the three *Falk* factors. Defendant engaged in culpable conduct, failed to

8  allege any facts that would constitute a meritorious defense, and reopening the litigation would

9  severely prejudice Plaintiff.

11  DATED:     February 7, 2024        LAW OFFICE OF BARUCH C. COHEN

12                         A Professional Law Corporation

13                         By   /s/ Baruch C. Cohen

                              Baruch C. Cohen, Esq.

14                         *Attorney For Plaintiffs Robert & Esther*

                              *Mermelstein*

-9-

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

4929 Wilshire Boulevard, Suite 940, Los Angeles, California 90010.

A true and correct copy of the foregoing document entitled: **ROBERT & ESTHER MERMELSTEIN'S REPLY TO DECLARATION OF ERIC J. OLSON IN RESPONSE TO PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT [Doc-49]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On 2/7/2024, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

| | |
|---|---|
| Baruch C Cohen (PL) | bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com |
| Michael I. Gottfried (IP) | mgottfried@elkinskalt.com, cavila@elkinskalt.com, lwageman@elkinskalt.com, docketing@elkinskalt.com |
| Nikko Salvatore Stevens (IP) | nikko@cym.law, mandi@cym.law |
| United States Trustee (LA) | ustpregion16.la.ecf@usdoj.gov |
| Clarisse Young (IP) | youngshumaker@smcounsel.com, levern@smcounsel.com |

☐ Service Information continued on attached page

**2. SERVED BY UNITED STATES MAIL:** On 2/7/2024, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Leslie Klein, 322 N. June Street, Los Angeles, CA 90001

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on 2/7/2024, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Hon. Sandra R. Klein, 255 E. Temple Street, Suite 1582, Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 2/7/2024 | Baruch C. Cohen, Esq. | /s/ Baruch C. Cohen |
| Date | Printed Name | Signature |

# EXHIBIT V B

1 | Baruch C. Cohen, Esq. (SBN 159455)
LAW OFFICE OF BARUCH C. COHEN
2 |     A Professional Law Corporation
4929 Wilshire Boulevard, Suite 940
3 | Los Angeles, California 90010
Tel: (323) 937-4501   Fax: (888) 316-6107
4 | email: baruchcohen@baruchcohenesq.com

5 | *Attorney For Plaintiff David Berger*

6 |                    UNITED STATES BANKRUPTCY COURT
                       CENTRAL DISTRICT OF CALIFORNIA
7 |                       LOS ANGELES DIVISION

8 |

9 | In re                              | Case No. 2:23-bk-10990-SK

10 | LESLIE KLEIN,                     | Adv. No. 2:23-ap-01169-SK

11 |     Debtor and Debtor in Possession, | Hon.  Sandra Klein

12 | _____       | Chapter 11

13 | DAVID BERGER,                     | **DAVID BERGER'S REPLY TO**
                                       **DECLARATION OF ERIC J. OLSON IN**
14 |         Plaintiff                 | **RESPONSE TO PLAINTIFF'S MOTION FOR**
                                       **DEFAULT JUDGMENT [Doc-51]**
15 | vs.
                                       | Date: 2-14-2024
16 | LESLIE KLEIN                      | Time: 9:00am
                                       | Place: 255 E. Temple Street, Los Angeles
17 |         Defendant                 | Courtroom: 1575

18 |

19 |       **TO THE HONORABLE SANDRA R. KLEIN, UNITED STATES BANKRUPTCY**

20 | **JUDGE, THE DEBTOR AND HIS COUNSEL, AND ALL OTHER INTERESTED**

21 | **PARTIES:**

22 |       Plaintiff David Berger ("Plaintiff"), hereby replies to the Declaration of Eric J. Olson in

23 | Response to Plaintiff's Motion for Default Judgment "Olson Declaration") [Doc-51].

24 | DATED:      February 7, 2024      LAW OFFICE OF BARUCH C. COHEN
                                       A Professional Law Corporation
25 |

26 |                                   By ___ /s/ Baruch C. Cohen _____
                                       Baruch C. Cohen, Esq.
27 |                                   *Attorney For Plaintiff David Berger*

28 |

# TABLE OF CONTENTS

MEMORANDUM OF POINTS & AUTHORITIES ................................. -1-

RELEVANT FACTS .................................................. -1-

LEGAL ARGUMENT .................................................. -3-

THE OLSON DECLARATION - TO THE EXTENT IT SERVES AS AN

OPPOSITION - IS LATE AND PROPERLY DISREGARDED...... -4-

THE OLSON DECLARATION DOES NOT QUALIFY AS A MOTION TO SET

ASIDE ENTRY OF DEFAULT............................... -4-

THE OLSON DECLARATION FAILS TO PRESENT "GOOD CAUSE"

GROUNDS UNDER  FRCP 55© AND FRBP 7055, AND FAILS TO

PRESENT EVIDENCE AND GROUNDS  FOR MISTAKE,

INADVERTENCE, SURPRISE, OR EXCUSABLE NEGLECT, UNDER

FRCP 60(B)(1) .......................................... -5-

DEFENDANT WAS CULPABLE WHICH LED TO THE DEFAULT ...... -5-

DEFENDANT HAS NO MERITORIOUS DEFENSE TO THE COMPLAINT

.......................................................... -7-

REOPENING THE LITIGATION PREJUDICES PLAINTIFFS ........... -8-

CONCLUSION........................................................ -8-

# TABLE OF AUTHORITIES

**CASES**

*Falk v. Allen*, 739 F.2d 461 (9th Cir. 1984) .......................................... -5-

*Franchise Holding II*, 375 F.3d at, 926 ............................................. -7-

*Franchise Holding II, LLC. v. Huntington Restaurants Grp., Inc.*, 375 F.3d 922, 926 (9th Cir. 2004)............................................................. -5-

*Halper v. Cohen (In re Halper)*, 2019 WL 2762340, BAP No. CC-18-1225-TaLS, at *5 (B.A.P. 9th Cir. Jun. 28, 2019) ............................................................ -5-

*U.S. v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010) (citing *Falk v. Allen*, 739 F.2d 461 (9th Cir. 1984) ................................... -5-

*U.S. v. Signed Pers. Check*, 615 F.3d 1085 at 1094 .................................... -7-

**STATUTES**

FRBP 7055 ............................................................... -4-

FRBP 9024 ............................................................... -4-

FRCP 55(c) ............................................................... -4-

FRCP 60(b)............................................................... -4-

FRCP 60(b)(1) ............................................................ -4-

LBR 9013-1(f)(1) .......................................................... -4-

**OTHER**

1 Schwarzer, Tashima and Wagstaffe, California Practice Guide: Federal Civil Procedure Before Trial, ¶ 6:150 at 6-40 (2011)..................................................... -4-

1    **1.**    **MEMORANDUM OF POINTS & AUTHORITIES**

2         **a.**    **RELEVANT FACTS**

3         On 6-9- 2023, Plaintiff filed this instant Complaint for Determination of

4    Nondischargeability of Debts and to Deny Discharge pursuant to  11 USC § 523(a)(2)(A), 11

5    USC § 523(a)(4), & 11 USC § 523(a)(6); & for Denial of Discharge Pursuant to 11 USC §

6    727(a)(2)(A); 11 USC § 727(a)(2)(B); 11 USC § 727(a)(3); 11 USC § 727(a)(4); 11 USC §

7    727(a)(5)("Complaint") against Defendant Leslie Klein ("Defendant"). [Doc-1] Adv. #

8    2:23-ap-01169-SK.

9         On 6-9-2023, the Court's *Summons & Notice of Status Conference* ("Summons") [Doc-3]

10    set 7-10-2023 as the Defendant's deadline to respond to the Complaint.

11         On 7-7-2023, the Court's 2nd *Summons & Notice of Status Conference* ("Summons")

12    [Doc-10] set 8-7-2023 as the Defendant's deadline to respond to the Complaint.

13         On 7-10-2023, Plaintiffs filed and served the Complaint, Summons and Early Meeting of

14    Counsel and Status Conference Instructions Effective February 17, 2012 on Defendant [Doc-11].

15         On 7-24-2023, Klein substituted Michael Kogan as his defense counsel. [Doc-13].

16         On 7-24-2023, the parties executed and signed a Stipulation to Extend Time to Respond

17    to Complaint for Nondischargeability, etc. [Doc-14]

18         On 7-24-2023, the Court signed the Order on Stipulation to Extend Time to Respond to

19    Complaint for Nondischargeability, etc, continuing Defendant's response date to 8-22-2023.

20    [Doc-16].

21         On 8-14-2023, Kogan moved to dismiss the 727 causes of action. [Doc-18].

22         On 10-18-2023, the Court held its hearing on Defendant's Motion for Order Dismissing

23    Certain Causes of Action in Complaint [Doc-36], and granted the Motion, dismissing without

24    prejudice causes of action for Denial of Discharge Pursuant to 11 USC § 727(a)(2)(A); 11 USC §

25    727(a)(2)(B); 11 USC § 727(a)(3); 11 USC § 727(a)(4); 11 USC § 727(a)(5).

26         On 10-19-2023, Kogan moved to withdraw as Klein's counsel [Doc-30].

27         On 11-9-2023, the Court entered its Order Granting Motion of Leslie Klein for an Order

28

1   Dismissing Certain Causes of Action in the Complaint [Doc-38].

2       On 11-27-2023, Cohen gave Klein a professional courtesy notice of Plaintiffs' intentions

3   to pursue a default against the Defendant, pursuant to Section 15 of the State Bar's enacted

4   California Attorney Guidelines of Civility and Professionalism.

5       On 11-28-2023, this Court entered a default against Klein for Determination of

6   Nondischargeability of Debts and to Deny Discharge pursuant to 11 USC § 523(a)(2)(A), 11

7   USC § 523(a)(4), & 11 USC § 523(a)(6) [Doc-43].

8       On 11-29-2023, after the default was entered, Olson surfaced - without a filed

9   substitution of attorney - requested a stipulation setting aside the default, and a continued

10  response date. See, Olson Declaration, Exhibit"B" [Doc-51]

11      On 12-6-2023, Plaintiff filed his Unilateral Status Report - since Defendant defaulted.

12  [Doc-42]

13      On 12-7-2023, Defendant - in pro per - filed a Unilateral Status Report [Doc-47], wherein

14  Defendant acknowledged that his answer was not filed and might have to file a motion to set

15  aside the default.

16      On 12-8-2023, Olson followed up with Cohen requesting same. See, See, Olson

17  Declaration, Exhibit "C" [Doc-51]

18      Olson's 11-29-2023 and 12-8-2023 letters were irrelevant and nullities since Olson was

19  not counsel of record for Defendant. Olson never substituted into this adversary as counsel for

20  Defendant, admitting that he's not even a "real bankruptcy attorney." Accordingly, his letters to

21  Plaintiff's counsel are of no consequence, as Plaintiff's counsel had no obligation to respond to

22  Defendant's non-lawyer. Plaintiffs, after being victimized by Defendant for so long, and out of

23  so much money, could not in good faith agree to Defendant's further requests for extensions.

24      On 12-19-2023, Plaintiff filed his Motion for Default Judgment [Doc-48] scheduled for

25  2-14-2024.

26      On 1-2-2024, Defendant filed his Answer to Complaint to Deny Discharge of Debt and

27  Denial of Discharge [Doc-50] - without first setting aside the 11-28-2023 default.

28

-2-

1     On 2-5-2024, Defendant filed the Olson Declaration [Doc-52].

2        b.    **LEGAL ARGUMENT**

3         The Olson Declaration is borne from status quo of Defendant's strategic delay tactics and

4    the Court should deny it. Defendant fails to satisfy all three of the *Falk* factors, notwithstanding

5    that failure to satisfy any is grounds to deny relief to Defendant. The culpability for Defendant's

6    failure to file a response by the twice-postponed deadlines rests with Defendant. Moreover, the

7    Olson Declaration does not allege facts constituting defenses to the Complaint. Finally,

8    reopening the litigation prejudices Plaintiffs who will suffer more injury prosecuting the

9    Complaint incurring more fees and costs against Defendant. The Olson Declaration fails under

10   the Falk factors, therefore Defendant's request for relief is properly denied.

11        i.    **THE OLSON DECLARATION - TO THE EXTENT IT SERVES AS**

12             **AN OPPOSITION - IS LATE AND PROPERLY DISREGARDED**

13         LBR 9013-1(f)(1) requires opposition to be filed not later than 14 days before the date

14   designated for hearing. The hearing date is 2-14-2024, and any opposition was due 1-31-2024.

15   On 2-5-2024, Defendant filed the Olson Declaration [Doc-49]

16        ii.    **THE OLSON DECLARATION DOES NOT QUALIFY AS A**

17             **MOTION TO SET ASIDE ENTRY OF DEFAULT.**

18         FRCP 55(c), incorporated into bankruptcy proceedings by FRBP 7055, allows a court to

19   set aside entry of default for "good cause," and allows the court to set aside default pursuant to

20   FRCP 60(b), incorporated into bankruptcy proceedings by FRBP 9024, wherein the court may

21   grant relief from a final judgment or order for mistake, inadvertence, surprise, or excusable

22   neglect. See FRCP 60(b)(1). Such a motion must be brought within a reasonable time of the

23   court's entry of default. See 1 Schwarzer, Tashima and Wagstaffe, California Practice Guide:

24   Federal Civil Procedure Before Trial, ¶ 6:150 at 6-40 (2011).

25         The Olson Declaration  was not filed within a reasonable time. On 11-28-2023, this Court

26   entered a default against Klein, and the Olson Declaration was filed on 2-5-2024, sixty-nine (69)

27   days later.

28

1      Defendant's 1-2-2024 Answer is also a nullity, since Plaintiff did not first obtain an

2 order setting aside the 11-28-2023 default. Plaintiff had no obligation t move to set aside

3 Defendant's Answer for that reason - it was procedurally improper. Defendant's 1-2-2024

4 Answer is also meritless, since Defendant has provided no authority for his proposition that

5 Plaintiffs "opened up the default' by filing their Amended Proofs of Claim to reflect the

6 increased interest owed.

7      The Olson Declaration is also a nullity since Eric Olson is not counsel of record for

8 Defendant. Olson did substitute into this adversary as counsel for Defendant - after Kogan

9 withdrew as counsel. Olson admitted that he's not even a bankruptcy attorney. Accordingly,

10 Olson's letters to Plaintiff's counsel are irrelevant, as Cohen had no obligation to respond to

11 Defendant's non-lawyer.

12         iii.    **THE OLSON DECLARATION FAILS TO PRESENT "GOOD**

13                 **CAUSE" GROUNDS UNDER FRCP 55(c) AND FRBP 7055, AND**

14                 **FAILS TO PRESENT EVIDENCE AND GROUNDS FOR**

15                 **MISTAKE, INADVERTENCE, SURPRISE, OR EXCUSABLE**

16                 **NEGLECT, UNDER FRCP 60(B)(1).**

17      The Ninth Circuit has explained three factors must be satisfied to meet the "good

18 cause" standard of FRCP 55(c):

19      To determine "good cause", a court must "consider three factors: (1) whether the
party seeking to set aside the default engaged in culpable conduct that led to the

20      default; (2) whether it had no meritorious defense; or (3) whether reopening the
default judgment would prejudice the other party ... . This standard, which is the

21      same as is used to determine whether a default judgment should be set aside under
Rule 60(b), is disjunctive, such that a finding that any one of these factors is true

22      is sufficient reason for the district court to refuse to set aside the default.

23 *U.S. v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010)

24 (citing *Falk v. Allen*, 739 F.2d 461 (9th Cir. 1984) (the "Falk Factors"). The party seeking to

25 vacate the default bears the burden of proof. See, *Franchise Holding II, LLC. v. Huntington*

26 *Restaurants Grp., Inc.*, 375 F.3d 922, 926 (9th Cir. 2004).

27 ///

28

1    ///

2        iv.    **DEFENDANT WAS CULPABLE WHICH LED TO THE DEFAULT**

3    The Olson Declaration lacks merit under the factors set forth in *Falk v. Allen*, 739 F.2d

4    461 (9th Cir. 1984) that Defendant's culpable conduct led to the default because Defendant had

5    actual knowledge of his deadline to timely respond to the complaint and let the deadline

6    knowingly and intentionally pass (presumably because Defendant benefitted from two prior

7    stipulations to extend the deadline).

8    "The Ninth Circuit has held that a 'defendant's conduct is culpable for purposes of the

9    Falk factors where there is no explanation of the default inconsistent with a devious, deliberate,

10   willful, or bad faith failure to respond." *Halper v. Cohen (In re Halper)*, 2019 WL 2762340,

11   BAP No. CC-18-1225-TaLS, at *5 (B.A.P. 9th Cir. Jun. 28, 2019). If a defendant "has received

12   actual or constructive notice of the filing of the action and failed to answer, its conduct is

13   culpable." *Franchise Holding II*, 375 F.3d, at 926.

14   In this instance, there is no question that Defendant had actual notice of the extended

15   Response Deadline of 11-18-2023. Per the Court's instructions on 10-18-2023 on Defendant's

16   Motion for Order Dismissing Certain Causes of Action in Complaint, Defendant was at the

17   hearing and was instructed by the Court to respond to the Complaint by 11-18-2023. On 11-27-

18   2023, Cohen gave Klein a professional courtesy notice of Plaintiffs' intentions to pursue a

19   default against the Defendant, pursuant to Section 15 of the State Bar's enacted California

20   Attorney Guidelines of Civility and Professionalism. Defendant's 12-7-2023 Unilateral Status

21   Report [Doc-47], further acknowledged that his answer was not filed and might have to file a

22   motion to set aside the default.

23   Thus, no argument can be made that Defendant did not have notice—actual or

24   constructive—of the continued Response Deadline of 11-18-2023 and, under controlling Ninth

25   Circuit law, the failure to file a response by the Response Deadline is culpable conduct by

26   Defendant.

27   The Olson Declaration did not raise an argument that excusable neglect exists in this

28

1   case, and if did, it would be groundless. The Olson Declaration does not attest to any error,

2   mistake, misunderstanding, or other excuse for failure to comply with the requirement to timely

3   respond to the Complaint. Next, even if it had submitted one, the testimony would lack

4   credibility. A deadline to respond to a complaint and summons is not unique to bankruptcy law

5   and Olson furthermore demonstrated his familiarity with the importance of such deadline when

6   he requested and obtained the first extension. There is no excusable neglect. Defendant and his

7   non-counsel simply ignored the deadline. This is a prime example of culpable conduct.

8       Defendant is also a (dubious) attorney himself and should understand the importance of a

9   deadline for responding to a complaint, as well as the consequences of missing such a deadline.

10      v.    **DEFENDANT HAS NO MERITORIOUS DEFENSE TO THE**

11            **COMPLAINT**

12       With regard to this second factor:

13       A defendant seeking to vacate a default judgment must **present specific facts**
        **that would constitute a defense.** But the burden on a party seeking to vacate a

14       default judgment is not extraordinarily heavy... . All that is necessary to satisfy
        the 'meritorious defense' requirement is to allege sufficient facts that, if true,

15       would constitute a defense: 'the question whether the factual allegation is true' is
        not to be determined by the court when it decides the motion to set aside the

16       default ... . Rather, that question 'would be the subject of the later litigation.'
        [Emphasis Added]

17

18   *U.S. v. Signed Pers. Check*, 615 F.3d 1085 at 1094.

19       Here, the Olson Declaration and the Defendant's Answer alleged zero facts that would

20   constitute a defense to the claims for relief under 11 U.S.C. §§ 523(a)(2)(A), (a)(4), and (a)(6)

21   (collectively, "523 Claims"). The burden is on Defendant to present the "specific facts" that

22   would constitute a defense to the 523 Claims. See *Franchise Holding II*, 375 F.3d at, 926. The

23   Olson Declaration and the Defendant's Answer failed to carry that burden.

24       There is nothing whatsoever in the Olson Declaration and the Defendant's Answer that

25   amounts to allegations of "sufficient facts that, if true, would constitute a defense" *(U.S. v.*

26   *Signed Pers. Check*, supra), nor do they assert any such facts. Instead, Defendant merely, baldly

27   contends that he has meritorious legal defenses - without specifying the facts supporting them.

28   This argument does not even come close to addressing the requirement that Defendant "must

present specific facts that would constitute a defense." *U.S. v. Signed Pers. Check*, supra. To obtain relief from default, the burden is on Defendant to demonstrate a meritorious defense. Reliance on the fallacious argument "Plaintiff has not proved the elements of those causes of action" is unavailing.

Defendant through the Olson Declaration must prove a meritorious case. This is near to impossible considering the circumstances - Defendant is a criminal, fraudster, thief, a "sophisticated" attorney, and discredited accountant.

<div align="center">vi.    <strong>REOPENING THE LITIGATION PREJUDICES PLAINTIFFS</strong></div>

"Under *Falk*, the question for prejudice is whether the plaintiff's ability to pursue its claim will be hindered" and attorneys' fees incurred by the non-defaulting party "are a significant source of prejudice." *Halper*, supra at *6.

Here, Plaintiff will be prejudiced if the Olson Declaration somehow constituted an effective Motion in that they will be forced to incur additional and duplicative attorneys' fees to potentially relitigate facts and issues for which Defendant has no defense (as acknowledged by his failure to even allege facts to contest the allegations of the Complaint). Defendant wants to delay and waste time litigating against the Complaint. But Plaintiff does not. More delay is the sole motivation for the Olson Declaration, a tactic overused by Defendant.

    c.    **CONCLUSION**

Plaintiff understands the preference for judgment on the merits. But this is not that. The Olson Declaration proffers no excuse for the neglect of Defendant. The [late and procedurally improper] Olson Declaration does not proffer the requisite showing of a defense based on the merits - because there is no defense. The burden is on Defendant and he failed to carry it.

Based on the foregoing, Plaintiff requests the [late and procedurally improper] Olson Declaration be disregarded, in that Defendant has failed to carry his burden to show the absence of all or frankly any of the three *Falk* factors. Defendant engaged in culpable conduct, failed to allege any facts that would constitute a meritorious defense, and reopening the litigation would severely prejudice Plaintiff.

1   ///

2   DATED:     February 7, 2024     LAW OFFICE OF BARUCH C. COHEN
3                                 A Professional Law Corporation

4                                 By _____ /S/ Baruch C. Cohen
5                                 Baruch C. Cohen, Esq.
                                *Attorney For Plaintiff David Berger*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-8-

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

4929 Wilshire Boulevard, Suite 940, Los Angeles, California 90010.

A true and correct copy of the foregoing document entitled: **DAVID BERGER'S REPLY TO DECLARATION OF ERIC J. OLSON IN RESPONSE TO PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT [Doc-51]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On 2/7/2024, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

| | |
|---|---|
| Baruch C Cohen (PL) | bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com |
| Michael I. Gottfried (IP) | mgottfried@elkinskalt.com, cavila@elkinskalt.com, lwageman@elkinskalt.com, docketing@elkinskalt.com |
| Nikko Salvatore Stevens (IP) | nikko@cym.law, mandi@cym.law |
| Clarisse Young (IP) | youngshumaker@smcounsel.com, levern@smcounsel.com |
| United States Trustee (LA) | ustpregion16.la.ecf@usdoj.gov |

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On 2/7/2024, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Leslie Klein, 322 N. June Street, Los Angeles, CA 90001

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on 2/7/2024, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Hon. Sandra R. Klein, 255 E. Temple Street, Suite 1582, Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | | |
|---|---|---|---|
| 2/7/2024 | Baruch C. Cohen, Esq. | | /s/ Baruch C. Cohen |
| Date | Printed Name | | Signature |

| In re: LESLIE KLEIN | Chapter: 11 |
| --- | --- |
| Debtor(s) | Case No: 2:23-bk-10990-SK |
| DAVID BERGER | Adv. No: 2:23-ap-01169-SK |

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 301 **East Colorado Boulevard, Suite 520, Pasadena, California 91101.**

A true and correct copy of the foregoing document described as **MOTION FOR RELIEF FROM JUDGMENT** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**
Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On 03/01/2024, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

[x] Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicated method for each person or entity served):
On 03/01/2024, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

[x] Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| _03/01/2024_ | _Jasper Pantaleon_ | _[signature]_ |
| --- | --- | --- |
| Date | Type Name | Signature |

| In re: LESLIE KLEIN | Chapter: 11 |
|---|---|
| Debtor(s) | Case No: 2:23-bk-10990-SK |
| DAVID BERGER | Adv. No: 2:23-ap-01169-SK |

## I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")

- Baruch C. Cohen   bcc@baruchcohenesq.com, paralegal@baruchcohenesq.com
- Michael I. Gottfried  mgottfried@elkinskalt.com, cavila@elkinskalt.com, lwageman@elkinskalt.com, docketing@elkinskalt.com
- Nikko Salvatore Stevens   nikko@cym.law, mandi@cym.law
- United States Trustee (LA) ustpregion16.la.ecf@esdoj.gov

## II. SERVED BY U.S. MAIL

Hon. Sandra Klein
U.S. Bankruptcy Court
255 E. Temple Street #1582
Los Angeles, California 90012

**MOTION FOR RELIEF FROM JUDGMENT**